## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

WILLIAM D. PAYNE, NICOLE PAYNE,
and LESLIE B. BENSON, on behalf of
themselves and all others similarly situated,

      Plaintiffs,

vs.                                                                                  No. CIV 14-1044 JB/KBM

TRI-STATE CAREFLIGHT, LLC,
and BLAKE A. STAMPER,
Individually,

      Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Opposed Motion to Intervene as Parties

Plaintiff and Class Representatives, filed December 15, 2015 (Doc. 73)("Motion").  The Court

held a hearing on January 25, 2016.  The primary issue is whether the Court should, pursuant to

rule 24(a) or rule 24(b) of the Federal Rules of Civil Procedure, allow Keith Bastian, Cason N.

Heard, Gregory Oldham, Sherry K. Welch, and Jacqueline Fernandez-Quezada (collectively, the

"Intervenors") to intervene in this case.  The Court will grant the Motion.  First, the Court

concludes that although Plaintiffs William D. Payne ("W. Payne") and Nicole Payne ("N.

Payne")(collectively, "the Paynes"), have entered into a settlement agreement and Plaintiff

Leslie B. Benson has entered into a global release, there is a case or controversy sufficient to

support the Court's Article III jurisdiction.  Second, the Court will allow the Intervenors to

intervene pursuant to rule 24(b).  To intervene as of right, the Intervenors must show that: (i)

their Motion is timely; (ii) they claim an interest relating to the property or transaction which is

the subject of the action; (iii) their interest relating to the property may be impaired or impeded;

and (iv) the existing parties do not adequately represent their interest.  See Elliot Indus. Ltd P'ship v. Am. Prod. Co., 407 F.3d 1091, 1103 (10th Cir. 2005).  The Intervenors have not shown that they meet each of these requirements.  Although the Intervenors cannot demonstrate their ability to intervene as of right, the Court will allow permissive intervention under rule 24(b).

## FACTUAL BACKGROUND

Defendant Tri-State Careflight, LLC operates an air ambulance service in New Mexico. The Plaintiffs seek recovery for themselves -- and all similarly situated Tri-State Careflight employees employed in New Mexico at any time since June 19, 2009 -- of: (i) unpaid overtime compensation under the New Mexico Minimum Wage Act, N.M. Stat. Ann. §§ 50-4-1 through 50-4-33 ("NMMWA"); and (ii) other unpaid compensation on a unjust enrichment theory.  Tri-State Careflight employed W. Payne as a flight paramedic, N. Payne as a flight nurse, and Benson as a pilot.  Tri-State Careflight currently employs Bastian as a flight paramedic, and Welch as a flight nurse.  See Motion at 2-3.  Tri-State Careflight employed Heard as a pilot from approximately September 26, 2014 to approximately October 21, 2015.  See Motion at 2-3.  Tri-State Careflight employed Oldham as a pilot from approximately August 26, 2013 until approximately July 15, 2015.  See Motion at 2-3.  Tri-State Careflight employed Fernandez-Quezada as a flight nurse from approximately October 25, 2010, to approximately January 5, 2013.  See Fernandez-Quezada Errata Sheet at 1.

## PROCEDURAL BACKGROUND

The Plaintiffs filed their case in state court on September 11, 2014.  See Payne v. Tri-State Careflight, LLC, D-101-CV-2014-02048 (1st Jud. Dist. Ct., Cnty. of Santa Fe, State of N.M.)(Montes, J.).  The Defendants, Tri-State Careflight, and Blake A. Stamper, removed the case to federal court on November 17, 2014.  See Notice of Removal, filed November 17, 2014

(Doc. 1)("Notice of Removal").  The Defendants invoked diversity jurisdiction, representing that there is complete diversity of citizenship between the Plaintiffs and the Defendants.  See Notice of Removal ¶ 4, at 2.

On August 24, 2015, the Plaintiffs moved to amend their complaint to: (i) eliminate a claim asserted for compensation for certain travel time; and (ii) to add an additional Plaintiff -- Benson.  See Plaintiffs' Amended Opposed Motion for Leave to File First Amended Complaint, filed August 24, 2015 (Doc. 44)("First Motion to Amend").  On September 4, 2015, the Plaintiffs filed Plaintiffs' Motion for and Brief in Support of Class Certification, filed September 4, 2015 (Doc. 48)("First Motion for Class Cert.").[1]  The Court held a hearing on the First Motion to Amend on October 28, 2015.  See Clerk's Minutes, filed October 28, 2015 (Doc. 67)("Oct. 28th Clerk's Minutes").  At the October 28, 2015, hearing, the Court granted the First Motion to Amend.  See Oct. 28th Clerk's Minutes at 1.  The same day as the hearing, the Plaintiffs filed their First Amended Representative Action Complaint for Damages for Violation of New Mexico Minimum Wage Act, filed October 28, 2015, (Doc. 68)("First Amended Complaint"), in which D. Payne, N. Payne, and the new Plaintiff – Benson -- asserted one count against the Defendants for violation of the NMMWA.  See First Amended Complaint at 1-5.

On November 19, 2015, the Paynes resolved their claims via a settlement with the Defendants, in which the Defendants agreed to provide them with full relief under the NMMWA. See Motion at 1-2.  At some point on or around November 19, 2015, the Intervenors also received notice that Benson signed a global release in an unrelated administrative proceeding before the Occupational Safety and Health Administration ("OSHA").

---

[1]The Plaintiffs subsequently withdrew their First Motion for Class Cert on January 26, 2016.  See Plaintiffs' Notice of Withdrawal of Motion for Class Certification, filed January 26, 2016 (Doc. 96).

1.      **The Motion.**

The Intervenors filed the Motion on December 15, 2015.   See Motion at 1.   In the

Motion, the Intervenors explain that W. Payne and N. Payne recently resolved their claims via a

settlement with the Defendants on November 19, 2015, in which the Defendants agreed to

provide them with full relief under the NMMWA.   See Motion at 1-2.   They also contend that it

is likely that Benson will be required to dismiss his claims.   See Motion at 2.   The Intervenors

argue:

> As such, none of the currently named Plaintiffs will be able to pursue this matter
> either individually or on behalf of the putative class members who were deprived
> of overtime pay pursuant to Defendants' uniform and unlawful overtime policies
> applicable to flight nurses, flight paramedics and pilots.  Intervenors seek to pick
> up the prosecution of this lawsuit where the current Plaintiffs are soon to depart.

Motion at 2.  They further allege that they do not seek to state any claims beyond those that the

First Amended Complaint asserts.   See Motion at 2.   With respect to the Intervenors, they

provide the following information:

> Keith Bastian is currently employed in New Mexico by Tri-State as a
> Flight Paramedic.  He has been employed by Tri-State since approximately
> January 6, 2014 and is a resident of New Mexico.  He has worked overtime hours
> for which he has not been paid time and one-half.
>
> Cason N. Heard was employed by Tri-State in New Mexico as a Pilot
> from approximately September 26, 2014 to approximately October 21, 2015.  He
> is a resident of Oklahoma.  He has worked overtime hours for which he has not
> been paid time and one-half.  He has also worked shifts in excess of twelve (12)
> hours and was not compensated for the hours in excess of twelve (12).
>
> Gregory Oldham was employed by Defendant Tri-State in New Mexico as
> a Pilot from approximately August 26, 2013 until approximately July 15, 2015.
> He is a resident of Hawaii.  He has worked overtime hours for which he has not
> been paid time and one-half.  He has also worked shifts in excess of twelve (12)
> hours and was not compensated for the hours in excess of twelve (12).
>
> Sherry K. Welch is currently employed in New Mexico by Tri-State as a
> Flight Nurse.  She has been employed by Tri-State since approximately March 17,

2014 and is a resident of New Mexico.  She has worked overtime hours for which she has not been paid time and one-half.

All of the Intervenors are members of the putative class which is the subject of the Motion for Class Certification [Doc. 48] filed with the Court on September 4, 2015.  All intervenors worked hours in excess of forty (40) in a work week for which they were not paid time and one-half times their regular hourly rates, as required by the NMMWA.  Both of the Pilots worked shifts in excess of twelve (12) hours while being paid only for twelve (12) hours.  All Intervenors therefore have claims identical to the claims already asserted in the case.

Motion at 2-3.

The Intervenors argue that they are entitled to intervene either as a matter of right under rule 24(a) of the Federal Rules of Civil Procedure or permissively under rule 23(b) of the Federal Rules of Civil Procedure.  See Motion at 3-4.  The Intervenors contend that both rule 24(a) and 24(b) require that an intervention application be timely, and that, in this case, the Motion is timely.  See Motion at 4-6.  The Intervenors argue that, although fifteen months have elapsed since this suit was first filed in state court, only one and one-half months have passed since the Plaintiffs filed the First Amended Complaint on October 28, 2015, to include Benson as a named Plaintiff.  See Motion at 5.  The Intervenors further assert that they filed the Motion within several weeks of the Paynes settlement on November 19, 2015, and their receiving notice that Benson had recently signed a global release in an unrelated administrative proceeding before the OSHA.  See Motion at 5.  The Intervenors insist that, before that time, "there was no need for putative class members to intervene because their interests were already adequately protected by the currently named Plaintiffs, who diligently engaged in class-based discovery and filed a Motion for Class Certification."  Motion at 5.  According to the Intervenors, once "the legal reality that none of the currently named Plaintiffs could continue to proceed with the prosecution

of this lawsuit as a class representative became apparent, the Intervenors promptly and timely filed the instant motion to vindicate their legal rights."  Motion at 5-6.

The Intervenors next argue that, rule 24(a)'s remaining elements are present here.  <u>See</u> Motion at 6.  First, with respect to the interest element, the Intervenors assert that they have exactly the same claims as those already asserted in this case and thus share the same, particularized interests.  <u>See</u> Motion at 6.  They maintain that their "claims differ only with regard to how many overtime hours each Intervenor worked for which he/she was not paid overtime compensation and how much overtime compensation each is owed."  Motion at 6. Second, the Intervenors contend that, absent intervention, the current lawsuit will impair or impede the Intervenors' interests because, because of Paynes' settlement and Benson's recent global release, there will be no named Plaintiff to prosecute the case.  <u>See</u> Motion at 6.  The Intervenors further explain:

> Lest there be any doubt as to the reality of the situation, Defendants have specifically moved to stay the case and declare as moot the pending Motion for Class Certification.  *See Doc. 71, filed 12.09.2015.*  Clearly a stay and ultimately a dismissal with prejudice will both impair **and** impede the interests of the Intervenors, who are putative class members and who would benefit directly and substantially if the motion for conditional class certification were granted and the lawsuit proceeded to the merits stage.

Motion at 6 (emphasis in Motion).  Finally, the Intervenors insist that "the existing parties can no longer adequately represent the intervenors' interest for the reasons stated above."  Motion at 6-7.

The Intervenors next argue that if the Court concludes "that permissive joinder under Fed. R. Civ. P. 24(b) is the more appropriate analysis the standards applicable to permissive joinder are also met."  Motion at 7.  The Intervenors contend that rule 24(b) provides for permissive intervention when the intervening plaintiff "has a claim . . . that shares with the main

action a common question of law or fact."  Motion at 4.  The Intervenors assert that, in addition

to the Motion being timely, the following additional conditions must be met for permissive

intervention: (i) the applicant's claim or defense and the main action have a question of law or

fact in common; and (ii) intervention will not unduly delay or prejudice the adjudication of the

original parties' rights.  See Motion at 4 (citing Forest Guardians v. U.S. Dep't of Interior, No.

CIV-02-1003 JB/WDS, 2004 WL 3426413 at *10 (D.N.M. Jan. 12, 2004)(Browning, J.)).  On

the second element, the Intervenors maintain that they "share not only common questions of law

and fact, but also identical questions of law on their NMMWA claims and their unjust

enrichment claims."  Motion at 7.  They insist that "[t]his more than satisfied the second element

of permissive intervention under Fed. R. Civ. P. 24(b)."  Motion at 7.

On the third element, the Intervenors assert that permitting intervention in this case will

not unduly delay or prejudice the adjudication of the original parties' rights.  See Motion at 7.

They explain:

> Granting leave for Intervenors to join the case here will not result in undue
> delay or prejudice and the requested intervention does not adversely affect the
> rights of Defendants in any respect.  Representative/class claims are already
> asserted against Defendants.  The requested intervention serves only to add new
> class representatives, all of whom are already members of the putative class or
> classes.  The claims to be litigated and the company's policies upon which
> Plaintiffs are suing will not change in any respect.  The only thing that will
> change is the identities of the class representatives.
>
> The Court has ordered [Doc. 65, filed 10.16.2015] class certification
> discovery and that discovery is nearly complete.  The parties have engaged in
> discovery regarding Defendant Tri-State's pay and scheduling policies for Pilots,
> Flight Nurses and Flight Paramedics -- the three job classifications that Plaintiffs
> seek to represent.  Adding the Intervenors to the case will not create a need for
> additional discovery on class certification issues.  The Intervenors are either
> Pilots, Flight Nurses or Flight Paramedics.  Thus, they were subject to the policies
> and pay practices as to which discovery has already been conducted.  Notably,
> merits discovery has not yet occurred.  According to the Rule 16 Scheduling
> Order [doc. 18, filed 02.19.15] and Order Adopting JSR & PDP [doc. 19, filed
> 02.19.15], merits discovery will occur only following the Court's ruling on the

- 7 -

> Motion for Class Certification.  Plaintiffs are at a loss to identify any issue Defendants could conceivably need to take class certification discovery on regarding the Intervenors.  While the adequacy of class representatives is always a valid issue for inquiry, there is nothing about any of the Intervenors of which counsel is aware that render them inadequate representatives.  All have claims identical to those already asserted and all have represented that they wish to serve as class representatives.

Motion at 7-8.  The Intervenors maintain that allowing intervention will prejudice the Defendants only in that this lawsuit will continue.  See Motion at 8.

The Intervenors contend that the Motion will not impact the Court's ability to rule on the First Motion for Class Cert.  See Motion at 8.  They assert that the Court has ordered supplemental class certification discovery, but that the Defendants have objected to providing any responses, premised on their view that Benson must be dismissed and that will moot the issue of discovery.  See Motion at 8-9.  The Intervenors contend that the Plaintiffs intend to file a motion to compel in the near future.  See Motion at 9.  They further state that the Court has ordered supplemental briefing on the First Motion for Class Cert., with the Plaintiffs' initial brief due on December 28, 2015.  See Motion at 9.  They contend that "[a]ny delay in meeting that briefing schedule will be due to the intransigence of Defendants in refusing to provide basic discovery rather than from granting intervention to the Intervenors."  Motion at 9.  Finally, they assert that permitting intervention will not impact the issues that the Court will need to address in ruling on the First Motion for Class Cert.  See Motion at 9.  They maintain that it is not uncommon in class litigation to substitute class representatives, which can happen for a variety of reasons.  See Motion at 9-11.  According to the Intervenors,

> [i]ntervention should be granted to keep the case alive for the benefit of the class, an interest that the Court should protect against the cynical efforts of Defendants to get the case dismissed before the Court can address class certification and before Defendants have to face the reality that their overtime policies harmed a substantial number of individuals.

Motion at 9.

      **2.**      **The Response.**

      The Defendants responded to the Motion on January 5, 2016.  <u>See</u> Defendants' Response in Opposition to Opposed Motion to Intervene as Parties Plaintiff and Class Representatives, filed January 5, 2016 (Doc. 82)("Response").  The Defendants first clarify that "[i]t is now undisputed that all the named Plaintiffs in the instant lawsuit -- William 'David' Payne, Nicole Payne, and Leslie B. Benson -- have fully and finally settled all of their claims."  Response at 2. The Defendants also contend that the First Amended Complaint does not assert an unjust enrichment claim, but rather, sets forth a single claim under the NMMWA, identified as "Count I."  Response at 3.  They therefore assert:

> [T]he lawsuit currently pending before the Court does not encompass claims of unjust enrichment based on the alleged differential between the amount of time that Pilots allegedly were scheduled to work and the amount of time they actually worked, nor is there any "class action" claim that will be subject to Rule 23 of the Federal Rules of the Civil Procedure.

Response at 3.  Moreover, the Defendants maintain that, to maintain unjust enrichment claims, the Intervenors would need to "file a new complaint, and given that all of the original claims and plaintiffs have or will be dismissed with prejudice, it makes more sense to do so in a separate lawsuit rather than in this one."  Response at 4.

      The Defendants next argue that intervention is neither mandatory nor appropriate in this case.  <u>See</u> Response at 4.  First, they argue that intervention as of right is not appropriate here, because the Intervenors: (i) have not established that their Motion is timely; and (ii) have not and cannot demonstrate that their interests may be impaired or impeded.  <u>See</u> Response at 4.  With respect to the timeliness element, the Defendants argue that the Motion is untimely:

> In sum, a lot has happened in this lawsuit since it was filed in September of 2014, but none of the activity had anything to do with Keith Bastian, Cason N.

Heard, Gregory Oldham, or Sherry K. Welch -- the proposed intervenors in this lawsuit. In particular, the discovery and the briefing to date did not concern or address any of the proposed intervenors. Despite two discovery periods, the parties have not conducted discovery on the claims or potential claims of the proposed intervenors, the key facts regarding their employment at Tri-State, or the appropriateness of any of those people to serve as class representatives. That is not because of a lack of diligence on Defendants' part; those individuals simply were not disclosed as potential parties until after the close of the second discovery period (which was limited by Court Order to Leslie B. Benson issues in any case). Plaintiffs have never amended any of their witness lists to disclose those individuals as potential witnesses, much less parties. In addition, Defendants have not conducted discovery on the "Pilot Pay" unjust enrichment theory because it has never been an actual claim in this lawsuit.

As a fundamental due process matter, Defendants have the right to conduct discovery on the claims and allegations of named plaintiffs and proposed class representatives. Although the intervenors seem to think that they can simply "substitute" for the Paynes and Mr. Benson, (*see* Motion to Intervene at 8), the fact that one of the original plaintiffs acted as a manager and another signed a general release in a separate proceeding establish that there are important, individualized facts that need to be explored. Discovery on the original claims was completed, and the original claims have been resolved. Indeed, as a practical matter, the lawsuit that the Paynes and Mr. Benson filed is over except for the determination of reasonable attorneys' fees as to the settlement of the Paynes' claims. Intervening into a lawsuit that is essentially concluded is untimely, especially when the intervenors have the option of filing their own lawsuit, which apparently will include a new claim that Plaintiffs contemplated but have never asserted in any pleading in this litigation. (*See* note 1, *supra*, and Fed. R. Civ. P. 24(c) (requiring the pleading-in-intervention to "accompany" the motion to intervene).)

Response at 6-7.

The Defendants argue that denial of intervention will not impair or impede the Intervenors' interests. See Response at 7. They argue that, even if the Intervenors have legitimate interests under the NMMWA or New Mexico common law, denying the Motion "will not have any effect on those interests, much less 'impair' or ['] impede' them." Response at 7. According to the Defendants, if the Court denies the Motion, "the lawsuit will be dismissed, but because the Court never certified (even conditionally) any class or ruled upon the merits of any claim, the dismissal will not affect the rights or interests of anyone in the proposed class except

- 10 -

David Payne, Nicole Payne, and Leslie Benson."  Response at 7-8.  They further assert that the Intervenors do not justify their statement to the contrary and that the Plaintiffs "recognize the option 'to file a new lawsuit against Defendants raising precisely the same issues' is a viable option if the Court denies the Motion to Intervene."  Response at 8 (quoting Plaintiffs' Response to Motion to Stay Discovery and Dismiss as Moot Plaintiffs' Motion for Class Certification at 3, filed December 28, 2015 (Doc. 77)).

Second, the Intervenors assert that permissive intervention under rule 24(b) is not appropriate, because: (i) the Motion is untimely and will delay resolution of the lawsuit; and (ii) the Intervenors have an adequate, alternative remedy available.  See Response at 8-10.  On the first point, the Intervenors contend that the Motion is untimely "in this lawsuit, which is essentially concluded by settlement after two periods of discovery[.]"  Response at 9.  They maintain that the Intervenors admit that it is proper to deny a motion to intervene if a case is in its "final stages" and contend that "this case *is* in its 'final stages.'"  Response at 9 (emphasis in original).  The Defendants insist that, if the Court denies the Motion, this case will be promptly resolved and dismissed.  See Response at 9.  On the second point, the Defendants argue that the Intervenors have an adequate, alternative remedy available, and that there is no evidence that pursuing a separate lawsuit would impair or impede their rights.  See Response at 9.

> The Rule 23 cases that the movants cite regarding intervention, (Motion to Intervene at 10), are not relevant.  First, there is no Rule 23 class claim asserted in the governing First Amended Complaint.  Second, a dismissal *before* the court has certified any class (as would be the case here) is very different from a dismissal *after* the court has determined that one or more classes should be certified (as in *In re Telectronics Pacing Sys., Inc.,* 172 F.R.D. 271 (S.D. Ohio 1997)).

> In fact, Plaintiffs have recognized that the option "to file a new lawsuit against Defendants raising precisely the same issues" is a viable option for the proposed intervenors if the Court denies the Motion to Intervene.  (Pls.' Resp. to Motion to Stay Discovery and Dismiss as Moot Pls.' Mot. for Class Certification [Doc. No. 77], at 3.)  In such cases, it is appropriate to deny permissive

intervention under Rule 24(b). 6 J. Moore, Moore's Federal Practice § 24.10[2][d], at 24-69 (3d ed. 2015); *see also Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1124 (6th Cir. 1989).

Response at 9-10.

### 3.     The Fernandez-Quezada Errata Sheet.

Fernandez-Quezada filed an errata sheet on January 4, 2016.  See Errata Sheet to Opposed Motion to Intervene as Parties Plaintiff and Class Representatives, filed January 4, 2016 (Doc. 84)("Fernandez-Quezada Errata Sheet").  In the Fernandez-Quezada Errata Sheet, Fernandez-Quezada asks the Court to permit her, along with Bastian, Heard, Oldham, and Welch, "to intervene in this case as parties Plaintiff and Class Representative."  Fernandez-Quezada Errata Sheet at 1.  She also states: "[A]pologies for any inconvenience to the parties and the Court caused by this late inclusion of Ms. Fernandez-Quezada."  Fernandez-Quezada Errata Sheet at 1.  She asserts that Tri-State Careflight employed her in New Mexico as a flight nurse from approximately October 25, 2010, to approximately January 5, 2013.  See Fernandez-Quezada Errata Sheet at 1.  She states that she is a resident of Santa Fe, New Mexico, and contends that "[s]he has worked overtime hours for which she has not been paid time and one-half."  Fernandez-Quezada Errata Sheet at 1.  She also maintains that she is willing to serve as a class representative in this lawsuit.  See Fernandez-Quezada Errata Sheet at 1.

### 4.     The Reply.

The Intervenors replied on January 15, 2016.  See Intervenors' Reply to Motion to Intervene, filed January 15, 2016 (Doc. 93)("Reply").  The Intervenors first argue that, because of an honest mistake, the Plaintiffs filed a First Amended Complaint that did not include the unjust enrichment claim.  Reply at 2.  They assert that the Defendants did not alert counsel to this omission when they filed their Answer, but instead highlighted it numerous times in their

Response.  See Reply at 2.  The Intervenors explain that this was the Plaintiffs' mistake and that they have asked the Defendants about filing a *nunc pro tunc* motion to fix the inadvertent filing error.  Reply at 2.  They contend that, if the Defendants concur in the *nunc pro tunc* fix, "this should at least resolve the issue of direct intervention into a properly filed First Amended Complaint that includes Count II for unjust enrichment."  Reply at 2.  They then state:

> The following constitute additional, procedural options: (1) treat the instant Rule 24 Motion as essentially a request for amendment under Rules 15 & 24 (after all, it is the relief that is requested that matters, not necessarily how the motion is styled) and allow the filing of a formal Amended Complaint in the name of the Intervenors that includes the missing Count II for unjust enrichment; or (2) grant the Rule 24 Motion as it pertains to the incorrectly filed First Amended Complaint and permit the Intervenors to file another Motion to Amend to include the unjust enrichment claim as Count II.  Counsel apologizes to all for the obvious inconvenience caused by this administrative error.

Reply at 2-3.

The Intervenors next argue that intervention is neither inappropriate nor untimely.  See Reply at 3.  They contend that the Tenth Circuit is pro-intervention, and that it is ironic that the Defendants take no issue with the Intervenors filing a new lawsuit that would be entirely identical in substance and form to the current case.  See Reply at 3.  The assert that they should not need to file a separate lawsuit "because one is already on-going and Intervenors satisfy the requirements of Rule 24(a)."  Reply at 3.  On the Motion's timeliness, the Intervenors assert that they did not intervene earlier, because, before the Paynes' settlement and Benson's dismissal, the Plaintiffs' efforts to advance class claims and to move for class certification adequately represented the Intervenors.  See Reply at 3-4.  They contend that, although over a year has passed since the filing of the original lawsuit,

> the Court in *Utah Assoc. of Counties v. Clinton*, [255 F.3d 1246 (10th Cir. 2001)] held that a motion to intervene was timely where it was filed approximately two and one-half years after the case began, particularly "in view of the relatively early stage of the litigation and the lack of prejudice to the plaintiffs flowing from

the length of time between the initiation of the proceedings and the motion to intervene."

Reply at 4 (quoting Utah Assoc. of Counties v. Clinton, 255 F.3d at 1250-51).  The Intervenors posit that the Motion here comes less than two and one-half years after the suit was filed and that it is not uncommon for parties to seek intervention in rule 23 cases "where the class representative has been picked off at a later stage in the proceedings."  Reply at 4.

The Intervenors reject the Defendants' argument that "the discovery and the briefing to date did not concern or address any of the proposed intervenors" as inaccurate and as failing to establish untimeliness or prejudice.  Reply at 4 (citing Response at 6).  They also attack the Defendants' due-process argument.  See Reply at 5.  The Intervenors argue that the "Plaintiffs have never suggested, let alone argued, that Defendants would somehow be precluded from conducting discovery on the Intervenors."  Reply at 5.  The Intervenors state:

> Of course they would, and the Court can do exactly what it did when Plaintiff Benson joined the lawsuit: tailor an appropriate, but limited discovery window for Defendants to obtain whatever information from the Intervenors that they believe is necessary to inform the class certification issues.  If class certification is granted, then Defendants will again be provided full and fair opportunity to conduct merits based discovery on the Intervenors.  However, as to class certification discovery, Defendants' unlawful, uniform policies on overtime pay and pay for work performed outside of regular hours (pilots), along with their universal application to flight nurses, flight paramedics and pilots, are well-documented.  Intervention will not necessitate discovery duplication, and it should only take a short amount of time to schedule, and take, some routine depositions.  Due process will be properly protected and preserved.

Reply at 5.

The Intervenors next assert that under rule 24(b), they will have their rights impaired or impeded.  See Reply at 5-6.  They reject the Defendants' argument that they have not met their minimal burden and that they must file a new lawsuit.  See Reply at 5.  The Intervenors state:

> The problem there is threefold: (1) first, while conditional class certification has not been granted, the briefing has been completed and the Intervenors, who are

- 14 -

putative class members, have a legitimate stake in the outcome of the Motion; that right will be impacted; (2) the filing of this class action lawsuit has tolled the statute of limitations on the NMMWA and the unjust enrichment claims. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974). Intervenors will lose that benefit if they have to file a new lawsuit; and (3) the filing of a new lawsuit will increase administrative and judicial costs and contribute to significant delay in the adjudication of the Intervenors' legal claims, especially with the possibility of a new trial court, new discovery deadlines, and new class certification deadlines.

Reply at 5-6. The Intervenors insist that forcing them to essentially start over impacts their rights for timely adjudication of their legal claims and conclude that they have legitimate interests at stake that allow for intervention as of right. See Reply at 6.

The Intervenors last address the Defendants' argument that intervention by permission under rule 24(b) is inappropriate. See Reply at 6. They reject the Defendants' argument that they have an alternative remedy in the form of filing an identical, new, lawsuit against the Defendants for the same NMMWA and unjust enrichment claims. See Reply at 6. The Intervenors posit that this proposition is incorrect, explaining:

> In fact, neither Professor Miller nor the 6th Circuit (nor even the 11th in *Worlds v. Department of Health & Rehab Servs.,* 929 F. 2d 591, 595 (11th Cir. 1991)), concluded that denying permissive intervention is "appropriate" where an intervenor can file his/her own lawsuit. What Miller and the 6th Circuit notably stated is that a District Court does not **abuse its discretion** in denying permissive intervention if a party has an alternative remedy at law. Not a single one of the authorities relied upon by Defendants hold that it is proper for a District Court: (a) to deny permissive intervention altogether whenever a party has an alternative remedy; (2) to ignore application of the actual factors governing whether permissive intervention is appropriate; or (3) to determine that the existence of an alternative remedy trumps, if not usurps altogether, all of the other relevant factors governing permissive intervention.

Reply at 6 (emphasis in original). The Intervenors note that rule 24(b) focuses on the Court's discretion, and maintain that forcing them to file a new lawsuit will contribute to undue delay and prejudice. See Reply at 7. With respect to the Defendants' prejudice, the Intervenors contend that forcing the Intervenors to file a new lawsuit would put the Defendants in the same

position of defending against the same claims in the same venue.  See Reply at 7.  The Intervenors also assert that intervention is especially appropriate in rule 23 cases, such as this one, where class representatives can no longer proceed for whatever reason and there is nobody to carry the case forward.  See Reply at 7 (citing Larry James Oldsmobile-Pontiac-GMC Truck Co. v. GMC, 175 F.R.D. 234, 239-40 (N.D. Miss. 1997)(Davidson, J.).

**5.      The Hearing.**

The Court held a hearing on the Motion on January 25, 2016.  See Transcript of Hearing (taken January 25, 2016)("Tr.").[2]  The Court first asked the Defendants if they agreed that there are no jurisdictional or constitutional issues that would preclude the Court from granting the Motion, and that it was purely a question of discretion that is built into rule 24(a) and (b).  See Tr. at 8:19-9:2 (Court).  The Defendants agreed with the Court's observation and explained that they believe intervention is an incorrect procedural device.  See Tr. at 9:1-22 (Vigil).  The Court then observed that it looked like there would be entirely new briefing on the class certification, and the Defendants agreed.  See Tr. at 9:23-10:1 (Court, Vigil).  The Court stated that there were "representations that they don't oppose any sort of discovery against it," and given that representation, asked the Defendants' for their greatest objection to allowing intervention.  Tr. at 10:2-5 (Court).  The Defendants explained that their greatest objection is that it is an incorrect procedural device, because the Intervenors did not attach a complaint to it.  See Tr. at 10:6-11 (Court, Vigil).

The Court then asked the Intervenors what complaint they are going to use.  See Tr. at 10:12-19 (Court).  The Intervenors agreed that they are not going to use the First Amended

---

[2]The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version.  Any final version may contain slightly different page and/or line numbers.

Complaint given that they made a mistake in filing it.  <u>See</u> Tr. at 10:15-11:8 (Court, Stanford). They explained that their Complaint would be two counts: one count predicated on NMMWA overtime violations and one count on unjust enrichment.  <u>See</u> Tr. at 11:9-15 (Stanford).  The Court then asked the Defendants, given that the Intervenors clarified that they would use the complaint that should have been filed, what their biggest problem with the Motion would be. <u>See</u> Tr. at 11:16-20 (Court).  The Defendants responded that the Intervenors also seek to add an additional intervenor via an errata sheet and that there is also the issue about which complaint they are using.  <u>See</u> Tr. at 11:21-25 (Vigil).  They further explained:

> The one they proposed to include does have an unjust enrichment claim the factual predicate for that is different than the factual predicate for their original unjust enrichment claim and we want to do discovery on that.  I guess my suggestion would be if we're going down this road that maybe the Court just allow them to amend so we have all the right plaintiffs in . . . a procedurally correct way with all the claims they want to put in as they want them stated.  We can answer that new complaint and we could go forward from there.  [R]ight now it's really kind of a procedural mess in terms of what we have before the Court, and if the Court is inclined to allow as I said I think you're going to I'd rather have it starting off in a clean procedural fashion so we know who we're talking about and what the claims.

Tr. at 11:25-12:16 (Vigil).

The Court then asked the Intervenors whether they had a clean complaint ready to go with the four intervenors and the unjust enrichment claim ready to go.  <u>See</u> Tr. at 12:17-19 (Court).  The Intervenors confirmed that they had it ready to go, and that they could have someone print it off at the office and send it over.  <u>See</u> Tr. at 12:20-13:1 (Court, Moody).  They also explained that, with respect to Fernandez-Quezada, they now had a signed fee arrangement. <u>See</u> Tr. at 13:1-7 (Court, Moody).  The Court instructed the Intervenors to email the new complaint to the Court and that it would put out an order giving the Defendants something at

which to shoot.  See Tr. at 13:8-14:3 (Court, Moody, Stanford, Vigil).  The parties later had the

following exchange:

> THE COURT:  So on the motion to intervene.  I need to go ahead and give you an
> opinion and order granting that, and then this will be something separate, I guess
> we're doing; is that correct.
>
> MR. MOODY:  I think that's right, Your Honor.
>
> THE COURT:  Is that your understanding.
>
> MR. VIGIL:  I think so.

Tr. at 21:17-25 (Court, Moody, Vigil).

## LAW REGARDING INTERVENTION AS OF RIGHT

Rule 24(a) provides for intervention of right:

> (a)   **Intervention of Right.**  On timely motion, the court must permit anyone
> to intervene who:
>
> > (1)    is given an unconditional right to intervene by a federal
> > statute; or
> >
> > (2)    claims an interest relating to the property or transaction that
> > is the subject of the action, and is so situated that disposing
> > of the action may as a practical matter impair or impede the
> > movant's ability to protect its interest, unless existing
> > parties adequately represent that interest.

Fed. R. Civ. P. 24(a).  The movant bears the burden of establishing its right to intervene.  See

United States v. Tex. E. Transmission Corp., 923 F.2d 410, 414 (5th Cir. 1991).  A court

generally may not consider concerns of judicial economy and efficiency when ruling on a request

to intervene as of right.  See United States v. Union Elec. Co., 64 F.3d 1152, 1158 & n.1 (8th

Cir. 1995)("We find that supplanting the standards applicable to intervention as of right under

Rule 24(a) with policy considerations led to the erroneous denial of intervention in this case.");

In re Sierra Club, 945 F.2d 776, 779 (4th Cir. 1991)("The district court, however, incorrectly

bolstered its denial of intervention of right by referring to concerns of judicial economy and need

- 18 -

for guidance.  Although those issues have a place in motions for permissive intervention, Rule 24(a) affords them no weight.").

To intervene as a matter of right under rule 24(a)(2), the movant must show that: (i) the motion is timely; (ii) the movant claims an interest relating to the property or transaction which is the subject of the action; (iii) the movant's interest relating to the property may be impaired or impeded; and (iv) the existing parties do not adequately represent the movant's interest.  See Elliot Indus. Ltd P'ship v. Am. Prod. Co., 407 F.3d at 1103.

## 1.    **Timeliness.**

"The timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances." Am. Assoc. of People with Disabilities v. Herrera, 257 F.R.D. 236, 245 (D.N.M. 2008)(Browning, J.)(quoting Utah Ass'n of Ctys. v. Clinton, 255 F.3d at 1250).   "Unusual circumstances" refers to those circumstances that would excuse the untimely filing of a motion to intervene.  In re SEC, 296 F. App'x 637, 640 (10th Cir. 2008)(unpublished).[3]   In measuring

---

[3]In re SEC is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.   See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court finds In re SEC and Ute Distrib. Corp. v. Norton, 43 F. App'x 272, 279 (10th Cir. 2002), have persuasive value with respect to material issues, and will assist the Court in its disposition of this Memorandum Opinion and Order.

timeliness by the length of time that the applicant knew of its interest, the Tenth Circuit looks to the time "when the movant was on notice that its interests may not be protected by a party already in the case." Okla. ex rel. Edmondson v. Tyson Foods, Inc., 619 F.3d 1223, 1232 (10th Cir. 2010).

       2.    **Sufficient Interest**.

"Under rule 24(a)(2), the applicants must claim . . . an interest relating to the property or transaction which is the subject of the action." Utah Assoc. of Ctys. v. Clinton, 255 F.3d at 1250 (internal quotation marks omitted). "The Tenth Circuit requires that the interest be 'direct, substantial, and legally protectable.'" Forest Guardians v. U.S. Dep't of Interior, No. CIV-02-1003, 2004 WL 3426413, at *5 (D.N.M. Jan. 12, 2004)(Browning, J.)(quoting Utah Assoc. of Ctys. v. Clinton, 255 F. 3d at 1250). The Tenth Circuit has also noted that the inquiry is "highly fact-specific," and that "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." Utah Assoc. of Ctys. v. Clinton, 255 F.3d at 1251-52. "The threshold for finding the requisite legal protectable interest is not high." Forest Guardians v. U.S. Dep't of Interior, 2004 WL 3426413, at *5 (citing Utahns for Better Transp. v. U.S. Dep't of Transp., 295 F.3d 1111, 1115 (10th Cir. 2002))("Furthermore, the Tenth Circuit has deemed the mere threat of economic injury to be sufficient for granting intervention.").

"[T]he federal judiciary has experienced considerable difficulty in defining the interest necessary to satisfy Rule 24(a)(2) since the time of its 1966 amendment." Carl Tobias, Standing to Intervene, 1991 Wis. L. Rev. 415, 432 (1991). See Panola Land Buying Ass'n v. Clark, 844 F.2d 1506, 1523 (11th Cir.1988)(Clark, J., dissenting)("[N]o authoritative definition of this term has emerged."); Nuesse v. Camp, 385 F.2d 694, 700 (D.C. Cir. 1967)("We know of no concise

- 20 -

yet comprehensive definition of what constitutes a litigable 'interest' for the purposes of standing and intervention under Rule 24(a)."), cited with approval in Jansen v. City of Cincinnati, 904 F.2d 335, 341 (6th Cir. 1990).  The Supreme Court of the United States has said that the interest must be "significantly protectable."  Donaldson v. United States, 400 U.S. 517, 528 (1971). Charles Wright, however, observes that "'significantly protectable interest' has not been a term of art in the law and there is sufficient room for disagreement about what it means . . . ." 7C C. Wright et al., Federal Practice and Procedure § 1908 (3d ed. 2015).

While some courts define "interest" narrowly, see Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d 216, 220 (3d Cir. 2005)(McKee, J.), the Tenth Circuit has interpreted rule 24(a) more broadly, see Utahns for Better Transp. v. U.S. Dep't of Transp., 295 F.3d at 1115 ("[O]ur court has tended to follow a somewhat liberal line in allowing intervention.").   In contrast with the Third Circuit, see Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d at 220 ("In general, a mere economic interest in the outcome of litigation is insufficient to support a motion to intervene."), "the Tenth Circuit has deemed the mere threat of economic injury to be sufficient for granting intervention," Utahns for Better Transp. v. U.S. Dep't of Transp., 295 F.3d at 1115.

The Tenth Circuit has described the interest test as "a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."  San Juan Cty., Utah v. United States, 503 F.3d at 1195 (quoting Coalition of Ariz./N.M. Counties for Stable Economic Growth v. Dep't of Interior, 100 F.3d 837, 841 (10th Cir. 1996))(internal quotation marks omitted).  The Tenth Circuit has stated that this more lenient view "best reflects the purpose of Rule 24(a)(2)."  San Juan Cty., Utah v. United States, 503 F.3d at 1195.

As the Advisory Committee Notes to the 1966 Amendment state, "If an absentee would be substantially affected in a practical sense by the determination made in

- 21 -

an action, he should, as a general rule, be entitled to intervene . . . ."  Fed. R. Civ. P. 24, advisory committee notes (1966 Amendment); *see* Comm. on Rules of Practice and Procedure, Report, Ex. B, *supra* ("The effect of the amendment [to Rule 24] is to provide that if a person who would be affected *in a practical sense* by the disposition of an action is not joined as a party, he has a right to intervene unless he is adequately represented by an existing party.") . . . .

As we understand Rule 24(a)(2), the factors mentioned in the Rule are intended to capture the circumstances in which the practical effect on the prospective intervenor justifies its participation in the litigation.  Those factors are not rigid, technical requirements.

San Juan Cty., Utah v. United States, 503 F.3d at 1195.  As a consequence, the Tenth Circuit directs courts to "focus on the language and purpose of the Rule."  San Juan Cty., Utah v. United States, 503 F.3d at 1195.  Other Courts of Appeal have correspondingly interpreted rule 24 broadly.  For example, the Sixth Circuit has stated that "interest" for the purposes of rule 24(a) "is to be construed liberally."  Bradley v. Milliken, 828 F.2d 1186, 1192 (6th Cir. 1987)(citing Hatton v. Cty. Bd. of Educ. Of Maury Cty., Tenn., 422 F.2d 457, 461 (6th Cir. 1970)).

A source of particular disagreement has been "[w]hether an interest contingent upon the outcome of other pending litigation constitutes a 'significantly protectable interest[.]'"  Teague v. Bakker, 931 F.2d 259, 261 (4th Cir. 1991)(Chapman, J.).  Some courts have denied intervention when an intervenor's interest is contingent upon future events, like winning a separate lawsuit.  See Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co., 105 F.R.D. 106, 110 (D.D.C. 1985)(Flannery, J.).  They contend that, without "a present, non-contingent interest" in the case in which the intervenor seeks to intervene, the intervenor lacks the "'significantly protectable interest' required for intervention as of right."  Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co., 105 F.R.D. at 110.

As a rejoinder to this reasoning, other courts, including the Tenth Circuit, have concluded that "the contingent nature of the movant's interest is certainly an important factor which should

influence the court in its determination as to the appropriateness of intervention, [but] this one factor alone should not be determinative."  New Hampshire Ins. Co. v. Greaves, 110 F.R.D. 549, 552 (D.R.I. 1986)(Pettine, J.).   See San Juan Cty., Utah v. United States, 503 F.3d at 1203 ("Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation.")(quoting United States v. Union Elec. Co., 64 F.3d 1152 1162 (8th Cir. 1995)); St. Paul Fire & Marine Ins. Co. v. Summit-Warren Indus. Co., 143 F.R.D. 129, 134 (N.D. Ohio 1992)(Bell, J.).  "There is nothing in the wording or history of Rule 24 which indicates intent to exclude would be intervenors whose interest in the pending litigation is not yet vested.  In many instances, such exclusion would seem highly inappropriate and unjust."  New Hampshire Ins. Co. v. Greaves, 110 F.R.D at 552.  Moreover, allowing an intervenor with a contingent interest to intervene will usually only strengthen the litigation, making the parties' presentation of the issues more sharply focused:

> Surely it runs counter to our notions of fairness and justice to find that the company would be harmed by being forced to face a stronger, more vigorous opposition.  The role of this court and the judicial process is to reach a just and equitable resolution based on the facts, a task which can only be aided and served by the assistance of the strongest possible arguments by counsel.

New Hampshire Ins. Co. v. Greaves, 110 F.R.D at 552.  See Teague v. Bakker, 931 F.2d 259, 261 (4th Cir. 1991)(expressly adopting this reasoning).

In line with this reasoning, the Tenth Circuit and numerous other Courts of Appeal have permitted intervenors with a contingent interest to intervene.  For instance, in Security Insurance Co. of Hartford v. Schipporeit, Inc., 69 F.3d 1377 (7th Cir. 1995), the United States Court of Appeals for the Seventh Circuit permitted a church suing an architect to intervene in a suit by the architect's insurer for a declaratory judgment that it had no obligation to defend or indemnify the

architect, whose only significant asset was the insurance policy.  <u>See</u> 69 F.3d at 1380-81.  The church's economic interest was contingent upon its ability to win its lawsuit against the architect.  <u>See</u> 69 F.3d at 1380-81.  Despite the church's contingent interest, the Seventh Circuit affirmed the district court order permitting intervention.  <u>See</u> 69 F.3d at 1380-81.

Similarly, the United States Court of Appeals for the Eighth Circuit has also interpreted rule 24 to allow intervention when the intervenor's interest is not directly at issue.  <u>See</u> <u>Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action</u>, 558 F.2d 861 (8th Cir. 1977)(Gibson, J.).

> In *Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action*, 558 F.2d 861 (8th Cir. 1977), for example, a group of homeowners was allowed to intervene in an action involving the constitutionality of a municipal ordinance which placed a temporary moratorium on the operation of abortion clinics.  The potential loss in the market value of the intervenors' homes constituted a sufficient "interest" under Rule 24(a)(2) even though three events would have had to take place before the homeowners experienced any actual loss: (1) the city had to lose the court fight on the constitutionality of the ordinance, (2) the abortion clinic had to open, and (3) the clinic's operation had to lead to a reduction in the homeowners' property values.

<u>San Juan Cty., Utah v. United States</u>, 503 F.3d at 1197-98 (quoting <u>SEC v. Flight Transp. Corp.</u>, 699 F.2d 943, 948 (8th Cir. 1983)).

Furthermore, the United States Court of Appeals for the Fifth Circuit affirmed a judgment permitting an insurer to intervene to appeal a judgment against its insured.  <u>See</u> <u>Ross v. Marshall</u>, 426 F.3d 745, 757 (5th Cir. 2005)(describing the interest test as a "practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process").  The Fifth Circuit observed that "an insurer has a financial stake in securing a favorable outcome for its insured in a lawsuit alleging potentially covered claims," even though "some contingency remains in that [the insurer] may still avoid liability if it prevails in its coverage action."  426 F.3d at 757-59.  The Fifth Circuit found "this contingency insufficient to

preclude intervention."   426 F.3d at 759.   "The court appeared more interested in practical matters . . . ."   San Juan Cty., Utah v. United States, 503 F.3d at 1198.

Like these other Courts of Appeal, the Tenth Circuit has determined that an economic interest, which may be contingent upon future events, can constitute a sufficient interest to allow intervention.   See National Farm Lines v. Interstate Commerce Commission, 546 F.2d 381, 384 (10th Cir. 1977)(permitting intervention when a lawsuit would subject the intervenors to "unregulated competition"); Utahns for Better Transp. v. U.S. Dep't of Transp., 295 F.3d at 1115-16 (concluding that a trade association had a sufficient interest when a lawsuit's resolution could result in the potential loss of government contracts).   In allowing intervention in San Juan County, Utah v. United States, the Tenth Circuit expressly stated that "intervention may be based on an interest that is contingent upon the outcome of the litigation."   San Juan Cty., Utah v. United States, 503 F.3d at 1203.   In San Juan County, Utah v. United States, the Tenth Circuit limited its opinion in City of Stilwell, Okla. v. Ozarks Rural Elec. Co-op. Corp., 79 F.3d 1039, 1042 (10th Cir. 1996), which suggested that some contingent interests were not sufficient to permit intervention.   See San Juan Cty., Utah v. United States, 503 F.3d at 1202-03.   Instead, the Tenth Circuit stated that it "do[es] not read [City of Stilwell, Okla. v. Ozarks Rural Elec. Co-op. Corp.] to say that every contingent interest fails to satisfy Rule 24(a)(2). . . .   KAMO's problem was that its interest was *too* contingent, *too* indirect, and hardly substantial . . . ."   San Juan Cty., Utah v. United States, 503 F.3d at 1203.   See Design Basics, LLC v. Estate of Aus, 2014 WL 65754, at *3 (D. Kan. 2014)(O'Hara)(stating that the Tenth Circuit has affirmed "that not *every* contingent interest fails to satisfy Rule 24(a)(2)")(emphasis in original)(citing San Juan Cty., Utah v. United States, 503 F.3d at 1202).   The Tenth Circuit concluded: "Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may

be based on an interest that is contingent upon the outcome of the litigation." San Juan Cty.,

Utah v. United States, 503 F.3d at 1203.

In SWEPI, LP v. Mora County, N.M., 2014 WL 6983288 (D.N.M. Dec. 5,

2014)(Browning, J.), the Court concluded that one of the intervenor-applicants had: (i) a

sufficient interest in using the state lands for hunting, fishing, riding horseback, hiking, traveling

on all-terrain vehicles; and (ii) a sufficient environmental interest in clean, unpolluted water. See

2014 WL 6983288, at *31.  The Court explained:

> Pacheco's interest in these activities and his environmental concern that the
> Ordinance's validity affects these activities create a sufficient interest under rule
> 24(a)(2).  See Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1253 (holding that
> environmental groups' "scientific, recreational, and aesthetic interests in the"
> Grand Staircase Escalante National Monument were sufficient rule 24(a)(2)
> interests); Coal. of Ariz./ N.M. Cntys. for Stable Econ. Growth v. Dep't of
> Interior, 100 F.3d at 841 (holding that photographer's interest in Mexican Spotted
> Owl is a sufficient interest).  Finally, Pacheco was active in supporting the
> Ordinance and assisted in drafting the Ordinance.  See WildEarth Guardians v.
> Nat'l Park Serv., 604 F.3d at 1200 (noting that intervenor's members were
> involved in the National Park Service's decision-making process and supported
> the park service's ultimate decision); Utah Ass'n of Cntys. v. Clinton, 255 F.3d at
> 1251 (noting that the intervenors were outspoken advocates for the creation of
> the Grand Staircase Escalante National Monument); Coal. of Ariz./N.M. Cntys. for
> Stable Econ. Growth v. Dep't of Interior, 100 F.3d at 841 (noting that intervenor
> was influential in forcing the Wildlife Service to designate the Mexican Spotted
> Owl as an endangered and threatened species).  Pacheco, thus, has protectable
> legal interests that are sufficient for rule 24(a)(2).

2014 WL 6983288, at *31 (footnotes omitted).

In American Association of People with Disabilities v. Herrera, 257 F.R.D. 236 (D.N.M.

2008)(Browning, J.), one of the intervenor-applicants -- Shannon Robinson -- asserted that he

had a protectable interest in the suit because he was a voter and a legislator who voted in favor of

the statute being challenged.  See 257 F.R.D. at 251.  The Court concluded that these interests

are not ones that can be recognized as the basis of a rule 24(a) intervention.  See 257 F.R.D. at

251.  The Court explained that registration fraud is a legitimate concern of any voter and of the

legislators who enacted the statute under attack.  See 257 F.R.D. at 251.  According to the Court, however, the intervenor-applicant shared his interest with almost everyone else, and had no particularized interest in the case.  See 257 F.R.D. at 251.  The Court concluded that the intervenor-applicant's interest "is a generalized one and not the sort of particularized interest that is required for intervention of right."  See 257 F.R.D. at 251 (citing Chiles v. Thornburgh, 865 F.3d 1197, 1212 (11th Cir. 1989)).

### 3.   **Impairment of Interest.**

 "To satisfy [the impairment] element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal."  WildEarth Guardians v. U.S. Forest Serv., 573, F.3d 992, 995 (10th Cir. 2009)("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene."). "Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation." San Juan Cty., Utah v. United States, 503 F.3d 1163, 1203 (10th Cir. 2007)(en banc).  A third-party's interest may be impaired "when the resolution of the legal questions in the case effectively foreclose [sic] the rights of the intervenor in later proceedings, whether through res judicata, collateral estoppel, or stare decisis."  Ute Distrib. Corp. v. Norton, 43 F. App'x 272, 279 (10th Cir. 2002)(unpublished).

### 4.   **Inadequate Representation.**

"Although an applicant for intervention as of right bears the burden of showing inadequate representation, that burden is the 'minimal' one of showing that representation 'may' be inadequate."  Forest Guardians v.  U.S. Dep't of Interior, 2004 WL 3426413, at *6.  "The

most common situation in which courts find representation adequate arise when the objective of the [movant] is identical to that of one of the parties." Bottoms v. Dresser Indus., Inc., 797 F.2d 869, 872-73 (10th Cir. 1986). The Tenth Circuit has found, however, that the "possibility of divergence of interest need not be great in order to satisfy the burden of the applicants." Coal. of Ariz./N.M. Ctys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d 837, 845 (10th Cir. 1996). This minimal burden is further reduced when it is the government that is supposed to adequately represent the potential intervenor's interest. See Utah Assoc. of Ctys. v. Clinton, 255 F.3d at 1254-1255. "[A] presumption of adequate representation arises when an applicant for intervention and an existing party have the same ultimate objective in the litigation," but the Tenth Circuit has "held this presumption rebutted by the fact that the public interest the government is obligated to represent may differ from the would-be-intervenor's particular interest." Utah Assoc. of Ctys. v. Clinton, 255 F.3d at 1255. The Tenth Circuit stated:

> [T]he government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a particular member of the public merely because both entities occupy the same posture in the litigation. In litigating on behalf of the general public, the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor.

Utah Assoc. of Ctys. v. Clinton, 255 F.3d at 1255-56. Thus, when a prospective intervenor shows that the "public interest the government is obligated to represent may differ from the would-be intervenor's particular interest," the burden of demonstrating inadequate representation is met. Utah Assoc. of Ctys. v. Clinton, 255 F.3d at 1255.

In American Association of People with Disabilities v. Herrera, 257 F.R.D. 236 (D.N.M. 2008)(Browning, J.), one of the intervenor-applicants -- Shannon Robinson -- asserted that he had a protectable interest in the suit because he was a voter and a legislator who voted in favor of the statute being challenged. See 257 F.R.D. at 251. The Court concluded that the existing

defendant -- the Secretary of State of New Mexico -- adequately represented his interests.  See 257 F.R.D. at 252-53.  The Court explained that even if Robinson's interests in preventing fraud and maintaining confidence in the election process are protectable under rule 24(a) and his ability to protect them would be impaired by his absence from the case, "the Defendant is vigorously asserting and adequately representing those interests."  257 F.R.D. at 252.  The Court explained:

> That the Defendant is the Secretary of State, a member of the government, does not change this conclusion.  In the right circumstances, the burden of demonstrating inadequate representation can be met by showing that "the party upon which the intervenor must rely is the government."  *Utah Assoc. of Counties v. Clinton*, 255 F.3d at 1254.  The Tenth Circuit noted that the government's obligation "is to represent not only the interest of the intervenor but the public interest generally."  *Id.* at 1255.  Thus, when a prospective intervenor shows that the "public interest the government is obligated to represent may differ from the would-be intervenor's particular interest," the burden of demonstrating inadequate representation is met.  *Id.* at 1255.  *Utah Assoc. of Counties v. Clinton* concerned a proclamation issued by President Clinton that reserved approximately 1.7 million acres of federal land in Utah from public entry, creating the Grand Staircase Escalante National Monument.  *See id.* at 1248.  The intervenors were environmental organizations asserting an interest in conservation and businesses asserting interests in tourism revenue from the creation of the Monument.  *See id.* at 1252.  The government was attempting "to protect not only the interest of the public but also the private interest of the petitioners in intervention, a task which is on its face impossible."  *Id.* at 1248.  The situation in this case is different from that in *Utah Assoc. of Counties v. Clinton*.  The Defendant here is representing the public interest in fair elections free of fraud.  Robinson is asserting the same public interest and not "an individual parochial interest" that might be hostile to the public interest represented by the government.  *Id.* at 1256.  As such the Defendant is adequately representing the interests Robinson has in this litigation and Robinson is precluded from intervening as a matter of right.

257 F.R.D. at 252-53.

## LAW REGARDING PERMISSIVE INTERVENTION

Rule 24(b) provides for permissive intervention:

(1)    **In General.**  On timely motion, the court may permit anyone to intervene who:

> (A)   is given a conditional right to intervene by a federal statute; or
>
> (B)   has a claim or defense that shares with the main action a common question of law or fact.
>
> (2)   **By a Government Officer or Agency.**  On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:
>
> (A)   a statute or executive order administered by the officer or agency; or
>
> (B)   any regulation, order, requirement, or agreement issued or made under the statute or executive order.
>
> (3)   **Delay or Prejudice.**  In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b).  The movant bears the burden of establishing its right to intervene.  See United States v. Tex. E. Transmission Corp., 923 F.2d at 414.   "Unlike Rule 24(a), which governs mandatory intervention, Rule 24(b) specifically vests discretion in district courts to consider whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties."  6 James W. Moore, Moore's Federal Practice § 24.10[1], at 24-63 (3d ed. 2012)(citation omitted).  Accord In re Sierra Club, 945 F.2d at 779 ("The district court, however, incorrectly bolstered its denial of intervention of right by referring to concerns of judicial economy and need for guidance.  Although those issues have a place in motions for permissive intervention, Rule 24(a) affords them no weight.").   "The district court possesses broad discretion in determining whether to grant permissive intervention and will rarely be reversed on appeal."  6 Moore, supra, § 24.10[1], at 24-63.   "[C]onsiderations of trial convenience dominate the question of whether to allow permissive intervention."  6 Moore, supra, § 24.10[1], at 24-63. Accord Garza v. Cty. of L.A., 918 F.2d 763, 777 (9th Cir. 1990)("The decision to grant or deny

- 30 -

[permissive] intervention is discretionary, subject to considerations of equity and judicial economy.").

"To permissively intervene, a party need not have a direct personal or pecuniary interest in the subject of the litigation." San Juan Cty., Utah v. United States, 503 F.3d at 1207. Permissive intervention lies in the court's sound discretion, and the appellate court will not disturb the district court's exercise of that discretion absent clear abuse. See United Nuclear Corp. v. Cranford Ins. Co., 905 F. 2d 1424, 1427 (10th Cir. 1990). The Court has previously stated:

> Rule 24(b) allows permissive intervention under the following conditions: (i) the application to intervene is timely; (ii) the applicant's claim or defense and the main action have a question of law or fact in common; and (iii) intervention will not unduly delay or prejudice the adjudication of the original parties' rights.

Forest Guardians v. U.S. Dep't of Interior, 2004 WL 3426413, at *10-11. Rule 24(b)(3) requires the court to consider whether intervention will cause undue delay or prejudice when considering whether to grant permissive intervention. See Fed. R. Civ. P. 24(b)(3); DeJulius v. New Eng. Health Care Emps. Pension Fund, 429 F.3d 935, 943 (10th Cir. 2005)(noting that district courts are required to consider undue prejudice or delay in deciding whether to grant permissive intervention); Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. at 259. While not a required part of the test for permissive intervention, a court's finding that existing parties adequately protect prospective intervenors' interests will support a denial of permissive intervention. See City of Stilwell v. Ozarks Rural Elec. Coop. Corp., 79 F.3d 1038, 1043 (10th Cir. 1996).

**LAW REGARDING SUBJECT-MATTER JURISDICTION AND RULE 68 OFFERS OF JUDGMENT**

To sustain jurisdiction, "the parties must continue to have a personal stake in the outcome." Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990). A case will be rendered moot if the issues are "no longer live or the parties lack a legally cognizable interest in the outcome." Citizens for the Responsible Gov't State Political Action Comm. v. Davidson, 236 F.3d 1174, 1182 (10th Cir. 2000)(citations omitted). Article III of the Constitution limits the jurisdiction of federal courts to "actual ongoing cases or controversies." Lewis v. Cont'l Bank Corp., 494 U.S. at 477; Mink v. Suthers, 482 F.3d 1244, 1256 (10th Cir. 2007). The court "lack[s] power to hear moot claims, including those that have been 'fully satisfied' by a monetary judgment." Clark v. State Farm Mut. Auto Ins. Co., 590 F.3d 1134, 1138 (10th Cir. 2009)(citation omitted). The mootness of claims is a "threshold inquiry, because the existence of a live case or controversy is a constitutional prerequisite to the jurisdiction of the federal courts." Dais-Naid, Inc. v. Phoenix Resource Cos., 974 F.2d 1246, 1247 (10th Cir. 1992).

The Tenth Circuit has stated: "As a general rule, a suit brought as a class action must be dismissed for mootness when the personal claims of the named plaintiffs are satisfied and no class has been properly certified." Clark v. State Farm Mut. Auto Ins. Co., 590 F.3d at 1138 (quoting Reed v. Heckler, 756 F.2d 779, 785 (10th Cir. 1985)). See Brown v. Phila. Hous. Auth., 350 F.3d 338, 343 (3d Cir. 2003)("When claims of the named plaintiffs become moot before class certification, dismissal of the action is required."); Potter v. Norwest Mortgage, Inc., 329 F.3d 608, 611 (8th Cir. 2003)("[A] federal court should normally dismiss an action as moot when the named plaintiff settles its individual claim, and the district court has not certified a class."); D.R. v. Mitchell, 645 F.2d 852, 854 (10th Cir. 1981)("Because the class was never

properly identified by the district judge, there is no party before this court who can maintain the remaining constitutional challenge.").

According to rule 68, "[a]t any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or the effect specified in the offer, with costs then accrued."  Fed. R. Civ. P. 68.  Courts have held that "[a]n offer of complete relief will generally moot the plaintiff's claim, as at that point the plaintiff retains no personal interest in the outcome of the litigation."  Weiss v. Regal Collections, 385 F.3d at 340; Rand v. Monsanto Co., 926 F.2d 596, 598 (7th Cir. 1991)("Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate and a plaintiff who refuses to acknowledge this loses outright, under Fed. R. Civ. P. 12(b)(1), because he has no remaining stake.")(internal citation omitted); 13A C. Wright, A. Miller, & E. Cooper, Fed. Prac. & Proc. Juris. § 3533.2, at 236 (2d ed. 1984)("Even when one party wishes to persist to judgment, an offer to accord all of the relief demanded may moot the case.").

In Lomas v. Emergency Medical Billing, LLC, No. 2:07-CV-952, 2008 WL 4056789, 2008 U.S. Dis. LEXIS 65480 (D. Utah Aug. 25, 2008), the plaintiff alleged that the defendants violated various sections of FDCPA and Utah's Consumer Sales Practices Act.  See 2008 WL 4056789, at *1, 2008 U.S. Dis. LEXIS 65480, at *1-2.  The plaintiff brought the action on behalf of herself and a class of Utah debtors from whom each of the three defendants had attempted to collect fees.  One defendant collection company tendered an offer of judgment pursuant to rule 68, to which the plaintiff never responded.  Three months after the offer of judgment was made, the defendant filed a motion to dismiss pursuant to rule 12(b)(1).  The Honorable Dee Benson,

United States District Judge for the District of Utah, held that the rule 68 offer mooted the plaintiff's claims against that defendant, stating:

> The Court is persuaded by the general rule of this Circuit that a suit brought as a class action must be dismissed for mootness when the personal claims of the named plaintiffs are satisfied and no class has been properly certified.  *Reed v. Heckler*, 756 F.2d 779, 785 (10th Cir. 1985)(citations omitted); *In re Standard Metals Corp.*, 817 F.2d 625, 629 (10th Cir. 1987).  The Court is also persuaded by the Seventh Circuit's pronouncement in *Rand v. Monsanto Co.*, 926 F.2d 596 (7th Cir. 1991), wherein the court held that, "once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate . . . and a plaintiff who refuses to acknowledge this loses outright under Fed. R. Civ. P. 12(b)(1) because he has no remaining stake."  *Id.*, at 598.

2008 WL 4056789, at *2, 2008 U.S. Dist. LEXIS 65480, at *4-5.  The rule 68 offer of judgment offered the plaintiff $5,001.00 plus her reasonable costs and attorney's fees incurred in prosecuting the case against the defendant through the date of the offer.  Judge Benson found that the offer was "far in excess of the maximum Plaintiff can hope to recover at trial of the present action."  2008 WL 4056789, at *2, 2008 U.S. Dist. LEXIS, at *6.  She explained that damages under the FDCPA for a successful plaintiff are limited to actual damages, a maximum of $1,000.00 in statutory damages, and costs and reasonable attorney's fees, and because the plaintiff had set forth no pleading that establishes any actual damage, her claims were limited to statutory damages, costs, and reasonable attorney's fees.  See 2008 WL 4056789, at *2, 2008 U.S. Dist. LEXIS 65480, at *6.  Judge Benson determined that, because the defendant had offered to satisfy the plaintiff's entire claim, she no longer had a dispute over which to litigate, nor did she have a remaining stake in the present action.  See 2008 WL 4056789, at *2, 2008 U.S. Dist. LEXIS 65480, at *6 ("By offering Plaintiff $5,001.00 plus costs and reasonable attorney's fees, the Rule 68 Offer offered Plaintiff far in excess of what she can hope to recover at trial.").  Judge Benson found that the rule 68 offer put the plaintiff "in an untenable position and she would not be an appropriate putative class representative, because her interests at least

- 34 -

carry the perception of some degree of antagonism to the claims of the remaining putative class." See 2008 WL 4056789, at *3, 2008 U.S. Dist. LEXIS 65480, at *7.

In Weiss v. Regal Collections, the Third Circuit held that, when the defendant makes a full offer of judgment -- thereby mooting the named plaintiff's claims -- at so early a point in the litigation that the named plaintiff could not have been expected to file a class certification motion, the class' claims are not moot and the case may proceed. See 385 F.3d at 348. The Third Circuit concluded that "[a]bsent undue delay in filing a motion for class certification . . . where a defendant makes a Rule 68 offer to an individual claim that has the effect of mooting possible class relief asserted in the complaint, the appropriate course is to relate the certification motion back to the filing of the class complaint." 385 F.3d at 348. The Third Circuit found that allowing a defendant to moot a representative plaintiff's claim through a rule 68 offer of judgment would effectively nullify the possibility of obtaining class certification. See 385 F.3d at 349. The Third Circuit also distinguished a plaintiff who voluntarily settles a case from a plaintiff who refuses a defendant's offer of judgment that would fully satisfy the plaintiff's claim. See id. at 349-50. The Third Circuit stated that "relation back" is more appropriate in the latter setting, as it is the defendant's unilateral action that rendered the plaintiff's case moot. Id. at 350.

In Clark v. State Farm Mutual Automobile Insurance, Co., the plaintiff argued that the district court, sua sponte, decided his individual claims and entered judgment in his favor. He appealed the district court's decision that, because no class had yet been certified, the entire case was moot. See 590 F.3d at 1139. The plaintiff argued that the Tenth Circuit should adopt the Third Circuit's rule in Weiss Regal Collections. The Tenth Circuit declined the address the question whether it adopts the Third Circuit's rule and held "the posture of this case compels us

to apply the general rule that 'a suit brought as a class action must be dismissed for mootness when the personal claims of the named plaintiffs are satisfied and no class has been properly certified.'"  390 F.3d at 1139-41 (quoting Reed v. Heckler, 756 F.2d at 785).

In Lucero v. Bureau of Collection Recovery, Inc., the Tenth Circuit was asked to address the question whether an offer pursuant to Rule 68 made to a proposed class representative before the district court could reasonably be expected to rule on class certification moots the case.  See 639 F.3d at 1243.  The Tenth Circuit concluded that, in light of circuit and Supreme Court precedent, "a named plaintiff in a proposed class action need not accept an offer of judgment or risk having his or her case dismissed as moot before the court has had a reasonable time to consider the class certification motion."  639 F.3d at 1249.  The Tenth Circuit further explained:

> Instead we conclude that a nascent interest attaches to the proposed class upon the filing of a class complaint such that a rejected offer of judgment for statutory damages and costs made to a named plaintiff does not render the case moot under Article III. . . .  This is so because, notwithstanding the rejected offer of judgment, the proposed class action continues to involve "sharply presented issues in a concrete factual setting" and "self-interested parties vigorously advocating opposing positions."  [U.S. Parole Commission v.] Geraghty, 455 U.S. [388,] 403 [(1980)].

> . . . .

> Because Geraghty informs us that the personal stake of the class inheres prior to certification, we conclude that the federal court's Article III jurisdiction to hear the motion for class certification is not extinguished by the Rule 68 offer of judgment to an individual plaintiff.  This conclusion is also supported by Justice Rehnquist's observation in [Deposit Guaranty Nat. Bank, Jackson, Miss. v.] Roper[, 445 U.S. 326 (1980)] that an offer of judgment to an individual named plaintiff simply is not complete relief vis-à-vis the class.

> . . . .

> The Third, Fifth, and Seventh Circuits have concluded that offers of judgment will not render moot class actions for monetary relief in which a class certification motion is already pending.  See Lusardi v. Xerox Corp., 975 F.2d 964, 975 (3d Cir. 1992); Zeidman [v. J. Ray McDermott & Co., Inc.], 651 F.2d [1030,] 1051 [(5th Cir. 1981)]; Susman v. Lincoln Am. Corp., 587 F.2d 866, 870 (7th Cir.

1979).  We find no authority on which to distinguish the case in which a class certification motion is pending or filed within the duration of the offer of judgment from our case: any Article III interest a class may or may not have in a case is or is not present from its inception.  *See Susman*, 587 F.2d at 869 n.2 (noting that "[i]t would be arguable, on the same theory, that a complaint with class action allegations sufficiently brings the interests of the class members before the court, at least where the court proceeds with reasonable promptness to reach the issue of class action maintenance" but declining to reach the question). We need not and do not decide the impact of a Rule 68 offer of judgment made in a collective, or "opt-in" action.  *See, e.g., Sandoz* [*v. Cingular Wireless LLC*], 553 F.3d [913,] 920 [(5th Cir. 2008)]; *Darboe v. Goodwill Industries of Greater New York & Northern New Jersey, Inc.*, 485 F. Supp. 2d 221, 223-24 (E.D.N.Y. 2007).

In sum, we hold that a named plaintiff in a proposed class action for monetary relief may proceed to seek timely class certification where an unaccepted offer of judgment is tendered in satisfaction of the plaintiff's individual claim before the court can reasonably be expected to rule on the class certification motion. That certainly is the case here, given the parties' agreement to proceed according to a specific schedule to resolve the class certification issues and given the Plaintiff's indisputable compliance with that schedule.

Lucero v. Bureau of Collection Recovery, Inc., 639 F.3d at 1249 (citations omitted).  See Tanasi v. New Alliance Bank, 786 F.3d 195, 200-201 (10th Cir. 2015)(holding that a rejected settlement offer under Rule 58, by itself, cannot render moot a case); Diaz v. First American Home Buyers Protection Corp., 732 F.3d 948, 954-55 (9th Cir. 2013)(holding that unaccepted Rule 68 offer did not render plaintiff's claims moot).

## **ANALYSIS**

The Court will grant the Motion.  First, the Court concludes that although the Paynes have entered into a settlement and Benson has entered into a global release, there is a case or controversy sufficient to support the Court's Article III jurisdiction.  Second, the Court will allow the Intervenors to intervene pursuant to rule 24(b).  To intervene as of right, the Intervenors must show that: (i) their Motion is timely; (ii) they claim an interest relating to the property or transaction which is the subject of the action; (iii) their interest relating to the property may be impaired or impeded; and (iv) the existing parties do not adequately represent

their interest.  See Elliot Indus. Ltd P'ship v. Am. Prod. Co., 407 F.3d at 1103.  The Intervenors have not shown that they meet each of these requirements.  Although the Intervenors cannot demonstrate their ability to intervene as of right, the Court will allow permissive intervention under rule 24(b).

## I.     THERE IS A CASE OR CONTROVERSY SUFFICIENT TO SUPPORT THE COURT'S ARTICLE III JURISDICTION.

The parties did not focus their briefing or oral argument at the January 25, 2016, hearing, on whether the Court retains Article III jurisdiction over this lawsuit, even though: (i) the Paynes have entered into a settlement with the Defendants; and (ii) Benson recently signed a global release in an unrelated administrative proceeding before the OSHA, and his claims have been dismissed.  Nevertheless, the Court, as a federal court, must assure itself of its jurisdiction even if the parties do not raise the issue.  See, e.g., Gen. Protecht Grp., Inc. v. Leviton Mfg. Co., Inc., 2012 WL 1684573, at *12-13 (D.N.M. May 12, 2012)(Browning, J.).  In other words, the issue is whether the Intervenors can intervene to keep this action alive even though the original named plaintiffs have either settled or entered into a global release and this was never a properly certified class action.  At the time the Intervenors filed the Motion on December 15, 2015, the Plaintiffs' First Motion for Class Cert. was pending before the Court.  See First Motion for Class Cert. at 1.[4]

        "As a general rule, consideration of a motion for leave to intervene presupposes the

---

[4]The Plaintiffs subsequently withdrew their First Motion for Class Cert on January 26, 2016.  See Plaintiffs' Notice of Withdrawal of Motion for Class Certification at 1.  Later, on May 16, 2016, after the Court orally granted the Motion on January 25, 2016, the Plaintiffs again moved for class certification.   See Plaintiffs' Motion for and Brief in Support of Class Certification, filed May 16, 2016 (Doc. 126)("Second Motion for Class Cert.").  The Court has set oral argument on the Second Motion for Class Cert. for August 17, 2016.  See Notice of Motion Hearing, filed June 30, 2016 (Doc. 136).

existence of an action into which intervention can be accomplished."  Brown v. Bd. of Ed. Of Topeka, Shawnee Cty., Kansas, 84 F.R.D. 383, 392 (D. Kan. 1979).  The parties appear to agree that the original named plaintiffs in this action no longer have a stake in its continued litigation and that their claims are moot.[5]  "It is clear that mootness deprives a court of jurisdiction." Brown v. Bd. of Ed. Of Topeka, Shawnee Cty., Kansas, 84 F.R.D. at 392.  The Court concludes, however, that under Tenth Circuit case law, the Paynes' settlement and Benson's global release, entered into before the Court's class certification decision, did not render this action moot.  In Lucero v. Bureau of Collection Recovery, Inc., 639 F.3d 1239 (10th Cir. 2011), the Tenth Circuit was asked to address the question whether an offer pursuant to Rule 68 of the Federal Rules of Civil Procedure[6] made to a proposed class representative before the district court could reasonably be expected to rule on class certification moots the case.  See 639 F.3d at 1243.  The Tenth Circuit concluded that, in light of circuit and Supreme Court precedent, "a named plaintiff in a proposed class action need not accept an offer of judgment or risk having his or her case

---

[5]On December 22, 2015, the Defendants filed an unopposed motion asking the Court to "dismiss with prejudice all claims asserted by and on behalf of Leslie B. Benson[.]"  Defendants' Unopposed Motion to Dismiss All Claims of Leslie B. Benson with Prejudice, filed December 22, 2015 (Doc. 75)("Motion to Dismiss Benson's Claims").  The Court granted the Motion to Dismiss Benson's Claims on December 31, 2015.  See Order, filed December 31, 2015 (Doc. 81).  The parties have represented to the Court that W. Payne and N. Payne recently resolved their claims via a settlement with the Defendants on November 19, 2015, in which the Defendants agreed to provide them with full relief under the NMMWA.  See Motion at 1-2.  The Court notes, however, that no party has moved to dismiss the Paynes' claims and they therefore presently remain before the Court.

[6]Rule 68 states: "At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs, then accrued."  Fed. R. Civ. P. 68.  "An unaccepted offer is considered withdrawn, but it does not preclude a later offer."  Fed. R. Civ. P. 68.  "If a plaintiff rejects a Rule 68 offer, he must pay costs if the amount awarded at trial is less than the offer."  Fed. R. Civ. P. 68.  "As Rule 68 operates, if an offer is made for a plaintiff's maximum recovery, his action may be rendered moot."  Lucero v. Bureau of Collection Recovery, Inc., 639 F.3d at 1243 (citing 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3533.2, at 800 (3d ed. 2008)).

dismissed as moot before the court has had a reasonable time to consider the class certification

motion." 639 F.3d at 1249.  The Tenth Circuit further explained:

> Instead we conclude that a nascent interest attaches to the proposed class upon the filing of a class complaint such that a rejected offer of judgment for statutory damages and costs made to a named plaintiff does not render the case moot under Article III. . . .  This is so because, notwithstanding the rejected offer of judgment, the proposed class action continues to involve "sharply presented issues in a concrete factual setting" and "self-interested parties vigorously advocating opposing positions."  [*U.S. Parole Commission v.*] *Geraghty*, 455 U.S. [388,] 403 [(1980)].

> . . . .

> Because Geraghty informs us that the personal stake of the class inheres prior to certification, we conclude that the federal court's Article III jurisdiction to hear the motion for class certification is not extinguished by the Rule 68 offer of judgment to an individual plaintiff.  This conclusion is also supported by Justice Rehnquist's observation in [*Deposit Guaranty Nat. Bank, Jackson, Miss. v.*] *Roper*[, 445 U.S. 326 (1980)] that an offer of judgment to an individual named plaintiff simply is not complete relief vis-à-vis the class.

> . . . .

> The Third, Fifth, and Seventh Circuits have concluded that offers of judgment will not render moot class actions for monetary relief in which a class certification motion is already pending.  *See Lusardi v. Xerox Corp.*, 975 F.2d 964, 975 (3d Cir. 1992); *Zeidman* [*v. J. Ray McDermott & Co., Inc.*], 651 F.2d [1030,] 1051 [(5th Cir. 1981)]; *Susman v. Lincoln Am. Corp.*, 587 F.2d 866, 870 (7th Cir. 1979).  We find no authority on which to distinguish the case in which a class certification motion is pending or filed within the duration of the offer of judgment from our case: any Article III interest a class may or may not have in a case is or is not present from its inception.  *See Susman*, 587 F.2d at 869 n.2 (noting that "[i]t would be arguable, on the same theory, that a complaint with class action allegations sufficiently brings the interests of the class members before the court, at least where the court proceeds with reasonable promptness to reach the issue of class action maintenance" but declining to reach the question).  We need not and do not decide the impact of a Rule 68 offer of judgment made in a collective, or "opt-in" action.  *See, e.g., Sandoz* [*v. Cingular Wireless LLC*], 553 F.3d [913,] 920 [(5th Cir. 2008)]; *Darboe v. Goodwill Industries of Greater New York & Northern New Jersey, Inc.*, 485 F. Supp. 2d 221, 223-24 (E.D.N.Y. 2007).

> In sum, we hold that a named plaintiff in a proposed class action for monetary relief may proceed to seek timely class certification where an unaccepted offer of judgment is tendered in satisfaction of the plaintiff's individual claim before the

> court can reasonably be expected to rule on the class certification motion. That certainly is the case here, given the parties' agreement to proceed according to a specific schedule to resolve the class certification issues and given the Plaintiff's indisputable compliance with that schedule.

Lucero v. Bureau of Collection Recovery, Inc., 639 F.3d at 1249 (citations omitted). See Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 669-71 (2016); Tanasi v. New Alliance Bank, 786 F.3d at 200-201 (holding that a rejected settlement offer under Rule 58, by itself, cannot render moot a case); Diaz v. First American Home Buyers Protection Corp., 732 F.3d at 954-55 (holding that unaccepted Rule 68 offer did not render plaintiff's claims moot).

The Court concludes that, in light of the Tenth Circuit's decision in Lucero v. Bureau of Collection Recovery, Inc., the Paynes' settlement and Benson's global release in an unrelated administrative proceeding before the OSHA, did not render this case moot under Article III because the personal stake of the indivisible class may inhere prior to a definitive ruling on class certification. See Lucero v. Bureau of Collection Recovery, Inc., 639 F.3d at 1244-47; Brown v. Bd. of Ed. Of Topeka, Shawnee Cty., Kansas, 84 F.R.D. at 392 ("The law is clear that where a class action exists, members of the class may intervene to keep an action alive after the claims of the named plaintiff are rendered moot."). The Court therefore turns its attention to whether the Intervenors satisfy rule 24(a) or (b)'s prerequisites for intervention.

## II.    THE INTERVENORS ARE NOT ENTITLED TO INTERVENTION AS OF RIGHT UNDER RULE 24(a)(2).

To intervene as of right, the Intervenors must show that: (i) their Motion is timely; (ii) they claim an interest relating to the property or transaction which is the subject of the action; (iii) their interest relating to the property may be impaired or impeded; and (iv) the existing parties do not adequately represent their interest. See Elliot Indus. Ltd P'ship v. Am. Prod. Co., 407 F.3d at 1103. The Court concludes that, although the Intervenors have demonstrated that

their Motion is timely and that the existing parties do not adequately represent their interest, they have not shown that they claim an interest relating to the property or transaction which is the subject of this action or that their interest relating to the property may be impaired or impeded.

### A.   THE INTERVENORS TIMELY FILED THE MOTION.

The Intervenors timely filed the Motion.  "The timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances." Am. Assoc. of People with Disabilities v. Herrera, 257 F.R.D. 236, 245 (D.N.M. 2008)(Browning, J.)(quoting Utah Ass'n of Ctys. v. Clinton, 255 F.3d 1246, 1250 (10th Cir. 2001)).  "Unusual circumstances" refers to those circumstances that would excuse the untimely filing of a motion to intervene. In re SEC, 296 F. App'x at 640.  In measuring timeliness by the length of time that the applicant knew of its interest, the Tenth Circuit looks to the time "when the movant was on notice that its interests may not be protected by a party already in the case." Okla. ex rel. Edmondson v. Tyson Foods, Inc., 619 F.3d 1223, 1232 (10th Cir. 2010).  Here, fifteen months have elapsed since this suit was first filed in state court.  As the Intervenors note, the Intervenors filed their Motion only one and one-half months after the Plaintiffs filed the First Amended Complaint on October 28, 2015 to include Benson as a named Plaintiff. See Motion at 5.  Moreover, the Intervenors filed the Motion within several weeks of the Paynes settling their lawsuit on November 19, 2015, and receiving notice that Benson had recently signed a global release in an unrelated administrative proceeding before the OSHA. See Motion at 5.  In sum, the Court agrees with the Intervenors that, once "the legal reality that none of the currently named Plaintiffs could continue to proceed with the prosecution of this lawsuit as a class representative became apparent, the Intervenors promptly and timely

filed the instant motion to vindicate their legal rights."   Motion at 5-6.   Accordingly, the Intervenors timely filed the Motion.

B.   **THE INTERVENORS HAVE NOT SHOWN THAT THEY CLAIM AN INTEREST RELATING TO THE PROPERTY OR TRANSACTION WHICH IS THE SUBJECT OF THE ACTION, OR THAT THEIR INTEREST RELATING TO THE PROPERTY MAY BE IMPAIRED OR IMPEDED.**

The Intervenors argue that they have exactly the same claims as those already asserted in this case and thus share the same, particularized interests.   See Motion at 6.   They maintain that their "claims differ only with regard to how many overtime hours each Intervenor worked for which he/she was not paid overtime compensation and how much overtime compensation each is owed."   Motion at 6.   The Tenth Circuit has interpreted rule 24(a) broadly.   See Utahns for Better Transp. v. U.S. Dep't of Transp., 295 F.3d at 1115 ("[O]ur court has tended to follow a somewhat liberal line in allowing intervention.").   In contrast with the Third Circuit, see Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d at 220 ("In general, a mere economic interest in the outcome of litigation is insufficient to support a motion to intervene."), "the Tenth Circuit has deemed the mere threat of economic injury to be sufficient for granting intervention," Utahns for Better Transp. v. U.S. Dep't of Transp., 295 F.3d at 1115.

As the Advisory Committee Notes to the 1966 Amendment state, "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene . . . ."   Fed. R. Civ. P. 24, advisory committee notes (1966 Amendment); *see* Comm. on Rules of Practice and Procedure, Report, Ex. B, *supra* ("The effect of the amendment [to Rule 24] is to provide that if a person who would be affected *in a practical sense* by the disposition of an action is not joined as a party, he has a right to intervene unless he is adequately represented by an existing party.") . . . .

As we understand Rule 24(a)(2), the factors mentioned in the Rule are intended to capture the circumstances in which the practical effect on the prospective intervenor justifies its participation in the litigation.   Those factors are not rigid, technical requirements.

San Juan Cty., Utah v. United States, 503 F.3d at 1195.   Here, the determination made in this action will not substantially affect the Intervenors' claims against the Defendants in a practical sense.   If the Intervenors were not joined, the Court would dismiss this lawsuit, there being no remaining plaintiffs before the Court.   The Intervenors maintain that absent intervention, the current lawsuit will impair or impede the Intervenors' interests because, thanks to the Paynes' settlement and Benson's recent global release, there will be no named Plaintiff to prosecute it.   See Motion at 6.   The Intervenors, however, can file a new lawsuit, and the Court's dismissal of this action would not impact the Intervenors' economic interest or their ability to ultimately prevail on their claims against the Defendants.   The only impact is on their convenience and ease in prosecuting their case, not on the property interest that they assert, which remains unaffected. It seems that "interest" should mean the Intervenors' claims and property interest, not on the Intervenors' interest in being in that particular case rather than one it can bring on its own, which dismissal would not affect.   Accordingly, the Court concludes that the Intervenors have not shown that they claim an interest relating to the property or transaction which is the subject of the action or that their interest relating to the property may be impaired or impeded if the Court denies intervention.

### C.   THE EXISTING PARTIES DO NOT ADEQUATELY REPRESENT THE INTERVENORS' INTERESTS.

The Court agrees with the Intervenors that the existing parties in this lawsuit  -- of which there are no Plaintiffs --  do not adequately represent their interests -- their claims and property interest.   "Although an applicant for intervention as of right bears the burden of showing inadequate representation, that burden is the 'minimal' one of showing that representation 'may' be inadequate."   Forest Guardians v.  U.S. Dep't of Interior, 2004 WL 3426413, at *6. "[A] presumption of adequate representation arises when an applicant for intervention and an existing

party have the same ultimate objective in the litigation," but the Tenth Circuit has "held this presumption rebutted by the fact that the public interest the government is obligated to represent may differ from the would-be-intervenor's particular interest." <u>Utah Assoc. of Ctys. v. Clinton</u>, 255 F.3d at 1255.  Here, because of the Paynes' settlement and of Benson's recent global release, there are no named plaintiffs in this lawsuit.[7]  <u>See</u> Motion at 6.  Because there are no existing parties in this lawsuit, the Court cannot soundly conclude that the Intervenors' interest is adequately represented.  The lawyers for the Plaintiffs and the Intervenors will be the same, and will adequately represent them both, but lawyers have to have clients.  Both the Plaintiffs and the attorneys must adequately represent others to represent a class action.  <u>See</u> <u>Bustillos v. Bd. of Cty. Com'rs of Hidalgo Cty.</u>, 310 F.R.D. 631, 652 (D.N.M. 2015)(Browning, J.).  The Court therefore concludes that the Intervenors have shown that the existing parties do not adequately represent their interest.

## III.   EVEN IF THE INTERVENORS CANNOT INTERVENE AS OF RIGHT, THEY ARE ENTITLED TO INTERVENE PURSUANT TO RULE 24(b).

Although the Court concludes that the Intervenors cannot intervene in this lawsuit as of right, it finds that they are entitled to permissive intervention under rule 24(b).  Rule 24(b) provides that, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b).  Rule 24(b) also states: "In exercising its discretion, the court must consider whether the

---

[7]The Court granted the Defendants' Unopposed Motion to Dismiss All Claims of Leslie B. Benson with Prejudice, filed December 22, 2015 (Doc. 75)("Motion to Dismiss Benson's Claim"), asking the Court to "dismiss with prejudice all claims asserted by and on behalf of Leslie B. Bensons").  The parties have represented to the Court that W. Payne and N. Payne recently resolved their claims via a settlement with the Defendants on November 19, 2015, in which the Defendants agreed to provide them with full relief under the NMMWA.  <u>See</u> Motion at 1-2.  No party, however, has moved to dismiss the Payne's claims and they therefore presently remain before the Court.  For the purpose of the Court's analysis under rule 24(a), however, the Court will assume that there are no existing parties in this lawsuit.

intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b).  In other words, an intervenor bears the burden of establishing, see United States v. Tex. E. Transmission Corp., 923 F.2d at 414, that: (i) its motion is timely; (ii) its claim or defense and the main action have a question of law or fact in common; and (iii) intervention will not unduly delay or prejudice the adjudication of the original parties' rights, see Forest Guardians v. U.S. Dep't of Interior, 2004 WL 3426413 at *10.

Here, the Court has already concluded that the Motion is timely.  On the second element, the Court agrees with the Intervenors that they "share not only common questions of law and fact, but also identical questions of law on their NMMWA claims and their unjust enrichment claims."  Motion at 7.  It is true that the Plaintiffs' claims are no longer in the "main action."  They have been resolved.  But the drafters of rule 24 did not say that the intervenor's claims have to share common questions with the plaintiff's claims.  Rule 24(b)(1)(B) says that the intervenors have to have a claim or defense that shares with the "main action a common question of law or fact."  The Court has already determined that there is still a "main action."  It is a vessel that may or may not contain other people's claims.  Given that possibility, which has yet to be determined, there are potential claims and potential questions of law and fact.  The intervenors share those.  As the Court has already explained, the parties have not actually dismissed the Paynes or their claims, so they are still in the case.  On December 22, 2015, the Defendants filed an unopposed motion asking the Court to "dismiss with prejudice all claims asserted by and on behalf of Leslie B. Benson[.]"  Defendants' Unopposed Motion to Dismiss All Claims of Leslie B. Benson with Prejudice, filed December 22, 2015 (Doc. 75)("Motion to Dismiss Benson's Claims").  The Court granted the Motion to Dismiss Benson's Claims on December 31, 2015.  See Order, filed December 31, 2015 (Doc. 81).  The parties have

—

represented to the Court that W. Payne and N. Payne recently resolved their claims via a settlement with the Defendants on November 19, 2015, in which the Defendants agreed to provide them with full relief under the NMMWA.  See Motion at 1-2.  The Court notes, however, that no party has moved to dismiss the Paynes' claims and they therefore presently remain before the Court.  The Court would still conclude that the Intervenors share common questions of law and fact with the "main action" even if the Paynes had been dismissed as parties, but it is true that the Paynes are still Plaintiffs in this action with claims before the Court.

Finally, on the third element, the Court concludes that permitting intervention in this case will not unduly delay or prejudice the adjudication of the original parties' rights.  The Court cannot identify how intervention could unduly delay or prejudice the adjudication of the original plaintiffs' rights, given that they have been dismissed as parties.  With respect to the Defendants, the Court agrees with the Intervenors that allowing intervention will prejudice the Defendants only in that this lawsuit will continue.  See Motion at 8.  The Defendants have already been defending against the Plaintiffs' claims, and granting the Motion would only add new class representatives whom are already members of the proposed class or classes.  The Court agrees with the Intervenors that "[t]he claims to be litigated and the company's policies upon which Plaintiffs are suing will not change in any respect" and that "[t]he only thing that will change is the identities of the class representatives."  Motion at 7-8.  In sum, permitting intervention here will not impact the issues that the Court will need to address in ruling on the First Motion for Class Cert.[8] or Second Motion for Class Cert., and the Court agrees with the Intervenors that it is not uncommon in class litigation to substitute class representatives, which can happen for a variety of reasons.  See Motion at 9-11.

_____

[8]The Plaintiffs subsequently withdrew their First Motion for Class Cert on January 26, 2016.  See Plaintiffs' Notice of Withdrawal of Motion for Class Certification at 1.

**IT IS ORDERED** that the Opposed Motion to Intervene as Parties Plaintiff and Class Representatives, filed December 15, 2015 (Doc. 73), is granted.  The down side of not granting the Motion would be that a new judge would have to come in and set the case on a new schedule and get caught up to speed.  This would be a significant delay.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Christopher M. Moody
Repps D. Stanford
Alice Kilborn
Moody & Warner, PC
Albuquerque, New Mexico

    *Attorneys for the Plaintiffs and the Intervenors*

Charles J. Vigil
Melanie B. Stambaugh
Jeffrey L. Lowry
Rodey, Dickason, Sloan, Akin & Robb PA
Albuquerque, New Mexico

    *Attorneys for the Defendants*