IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WILLIAM D. PAYNE, NICOLE PAYNE,
LESLIE B. BENSON, KEITH BASTIAN,
JAQUELINE FERNANDEZ-QUEZADA,
CASON N. HEARD, GREGORY OLDHAM
AND SHERRY K. WELCH, on behalf of
themselves and all others similarly
situated,

        Plaintiffs,

vs.                                                                          No. CIV 14-1044 JB/KBM

TRI-STATE CAREFLIGHT, LLC,
and BLAKE A. STAMPER,
Individually,

        Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

      **THIS MATTER** comes before the Court on the Plaintiffs' David and Nicole Payne's

Opposed Motion for Award of Attorneys' Fees and Costs and Memorandum In Support, filed

December 10, 2015 (Doc. 72)("Motion").  The Court held a hearing on January 25, 2016.  The

primary issues are whether the Court should deny the Motion requesting that Defendants Tri-

State Careflight, LLC, and Blake A. Stamper, pay reasonable attorneys' fees to the extent that it

seeks fees or costs associated with: (i) the work on class certification, class communication, or

other class-related activities; and (ii) the unsuccessful "travel time" claim that Plaintiffs David

Payne and Nicole Payne (collectively, "the Paynes") abandoned.  The Court will grant in part

and deny in part the Motion.  The Court will award fees, as the Motion requests, but the

requested fees will be reduced with respect to: (i) fees incurred related to class-related work; and

(ii) fees or costs related to the Paynes' unsuccessful "travel time" claim.  Accordingly, the Court

will grant the Paynes' request that it award fees, but will exclude from the award $42,648.29 ($39,788.50 in fees and $2,859.79 in tax).

## FACTUAL BACKGROUND

This is an age-and-hour dispute.  Tri-State Careflight operates an air ambulance service in New Mexico.  In this case, the Plaintiffs,[1] D. Payne and N. Payne, seek recovery for themselves and all similarly situated individuals that Tri-State Careflight employed in New Mexico at any time since June 19, 2009 for: (i) unpaid premium overtime compensation under the New Mexico Minimum Wage Act, N.M. Stat. Ann. §§ 50-4-1 to -30 ("NMMWA"); and (ii) pay for time spent traveling to and from temporary duty locations for Tri-State Careflight's convenience on a theory of unjust enrichment.  Tri-State Careflight employed W. Payne as a flight paramedic, and it employed N. Payne as a flight nurse.

## PROCEDURAL BACKGROUND

The Paynes filed their case in state court on September 11, 2014.  See Payne v. Tri-State Careflight, LLC, D-101-CV-2014-02048 (1st Jud. Dist. Ct., Cnty. of Santa Fe, State of N.M.)(Montes, J.).  The Defendants removed the case to federal court on November 17, 2014.  See Notice of Removal, filed November 17, 2014 (Doc. 1)("Notice of Removal").  The Defendants invoked diversity jurisdiction, representing that there is complete diversity of citizenship between the Paynes and the Defendants.  See Notice of Removal ¶ 4, at 2.  In their Complaint, the Paynes asserted causes of action for: (i) NMMWA violations; and (ii) unjust

---

[1]When the Court uses the word "Plaintiffs" in this Memorandum Opinion and Order, it refers to all of the Plaintiffs in this case, including those who have recently intervened in this case.  Because the Motion was filed by D. Payne and N. Payne, however, the bulk of this Memorandum Opinion and Order will focus on the Paynes, and the Court will refer to them by their individual names, or as "the Paynes" collectively.

enrichment.  See Representative Action Complaint for Damages for Violation of New Mexico Minimum Wage Act and Unjust Enrichment at 4-5, filed November 17, 2014 (Doc. 1-1)("Complaint").  On September 4, 2015, the Paynes filed Plaintiffs' Motion for and Brief in Support of Class Certification.  See Plaintiffs' Motion for and Brief in Support of Class Certification, filed September 4, 2015 (Doc. 48)("Motion for Class Certification").  The Defendants responded on October 5, 2015, see Defendants' Response in Opposition to Plaintiffs' Motion for Class Certification, filed October 5, 2015 (Doc. 58), and the Paynes replied on October 14, 2015, see Plaintiffs' Reply in Support of Motion for Class Certification [Doc. 48], filed October 14, 2015 (Doc. 61).  In sum, by October 14, 2015, the parties had completed briefing on the Motion for Class Certification.  See Notice of Completion of Briefing, filed October 14, 2015 (Doc. 62).  On October 16, 2015, the Court set a hearing on the Motion for Class Certification for January 22, 2016.  See Order, filed October 16, 2015 (Doc. 65).

In late October 2015, the Paynes and the Defendants entered into settlement discussions, resulting in settlements with each of the Paynes reflected in agreements that the Paynes executed on November 19, 2015.  See Motion at 4.  In other words, the Defendants settled with the Paynes before the Court certified a class, but after the class certification work was complete.  The terms of the settlements and the settlements themselves are confidential.  See Motion at 4.  The Paynes are authorized to represent, however, that, through the settlements, they obtained all relief available to them on their NMMWA claims.  See Motion at 4.  The settlement agreements also provided that the Defendants would pay the Paynes' reasonable attorney's fees and costs.  See Motion at 4.  The parties agreed to attempt to negotiate fees and costs, but stipulated that the Paynes would apply to the Court for fees and costs should no agreement be reached.  See Motion

at 4.  On November 5, 2015, counsel provided the Defendants' counsel with a fee statement

including all of its fees incurred in representing the Paynes up through October 31, 2015.  See

Motion at 4.  On November 30, 2015, the Defendants' counsel indicated that they would not

agree to pay the fees reflected in the November 5, 2015 fee statement, because that statement

included fees incurred in prosecuting the case as a class action.  See Motion at 4.

      **1.**      **The Motion.**

Because the parties did not reach an agreement, the Paynes filed the Motion on December

10, 2015.  See Motion at 1-4.  The Paynes argue that, pursuant to N.M. Stat. Ann. § 50-4-26(E),

a successful claimant under the NMMWA is entitled to reasonable fees and costs.  See Motion at

4.  The Paynes assert that there is no dispute that they are entitled to fees and costs under this

provision, because the settlements into which they entered awarded them full relief on their

NMMWA claims.  See Motion at 4-5.  According to the Paynes, "[t]he only issue before the

Court is how much in fees and costs should be awarded."  Motion at 5.  The Paynes explain that

they seek $110,032.00 in fees, $1,659.33 in costs, and $8,027 in required gross receipts tax, for a

total of $119,719.14.  See Motion at 5.  The Paynes further write:

> Lead counsel Christopher M. Moody expended 224 hours on the litigation at a
> rate of $350.00 per hour. Repps D. Stanford, also a partner at the Moody &
> Warner law firm, devoted 45.5 hours on the litigation at a rate of $300.00 per
> hour.  Associate attorney Alice Kilborn spent 27 hours on the case at $175.00 per
> hour and paralegals Anne M. Chavez and Chelsea Buldain devoted 45.6 hours and
> 101.7 hours to the case respectively at $90.00 per hour.  The only costs sought are
> the filing fee ($297.00) and court reporter charges for the depositions of the
> Paynes and Tri-State ($1,362.33).

Motion at 5-6.  The Plaintiffs contend that counsel are entitled to reasonable hourly

compensation based upon prevailing market rates, which is "what lawyers of comparable skill

and experience practicing in the area in which the litigation occurs will charge for their time."

Motion at 6 (quoting <u>Ramos v. Lamm</u>, 713 F.2d 546, 555 (10th Cir. 1983)).  They attach Mr. Moody's and Mr. Stanford's declarations detailing their experience, billing rates, and the reasonableness of the fees incurred in this case.  <u>See</u> Motion at 6.  They also submit the Declaration of Bryan J. Davis, filed December 10, 2015 (Doc. 72-3)("Davis Decl."), an attorney in the community with knowledge of prevailing hourly rates and fees.  <u>See</u> Motion at 6.[2]

The Paynes next argue that they obtained full relief and the quality of counsels' performance in the case supports the requested hourly rates that they seek.  <u>See</u> Motion at 6.  They assert that the principal issue that the Court must address is "whether fees incurred in prosecuting this case as a class/representative action, as opposed to the Paynes solely pursuing individual claims, are recoverable."  Motion at 6.  The Paynes write:

> The Paynes initiated this case as a class/representative action and pursued it on that basis for well over one year before settling their claims on an individual basis.  As previously stated in Sections I & II, this case proceeded all along as a class/representative case.  After the completion of class discovery and the filing of a motion for class certification, only then did Defendants pursue, albeit belatedly, a strategy of "picking off" the Paynes prior to class certification in this case in an effort to put a stop to the case before it had to confront the inevitable reality of a certified class under the "lenient" standards articulated in *Armijo v. Wal-Mart Stores, Inc.*, 2007-NMCA-120, ¶¶ 48, 50.  The Paynes faced the reality that rejecting a settlement offer pre-class certification might still moot out their claims or that the Court might require them to accept the offer.  Of course, had

---

[2]Mr. Davis states that he has been licensed to practice law in the State of Georgia since 2002 and in New Mexico since 2004 and that he has practiced law continuously since that time. Davis Decl. ¶ 3, at 2.  Mr. Davis further describes his background:

> During my years in practice, I have handled scores of civil cases at the trial court level and numerous appeals in both the state and federal courts.  Over the years, my case load has included a significant amount of employment law cases.  Over the course of the last 13 years, I have become familiar with the prevailing market rates in this community for services similar to those rendered here by lawyers of reasonably comparable skill, experience, and reputation.

Davis Decl. ¶ 3, at 2.

Defendants waited until after class certification, no settlement would have been possible without the involvement of and approval by the Court.

Motion at 6-7 (citations omitted).  The Paynes argue that the Defendants waited for over a year while they were litigating this case as a class action before initiating settlement discussions with them.  See Motion at 7.  They assert that, as a result, they incurred fees prosecuting the case as a class action, but the Defendants hope to avoid paying those fees, "no matter how reasonably incurred and no matter that Defendants billed their client for the same legal services."  Motion at 7.

The Paynes insist that, when a plaintiff files a case as a class case and proceeds to litigate it on that basis, "it is well recognized that fees may be incurred that would not be incurred were the case solely an individual case[.]"  Motion at 7-8 (citing Johnson v. U.S. Bank Nat'l Ass'n, 276 F.R.D. 330, 332 (D. Minn. 2011)(Keyes, J.)).  They contend that the Defendants knew that the time before the certification of the class is the most expensive when they agreed to pay fees, and argue that the Defendants cannot now avoid paying those fees because they settled with the Paynes before the Court certified a class but after the class certification work was completed.  See Motion at 8.  The Plaintiffs therefore ask the Court to grant the Motion, and "award $110,032.00 in fees, $1,659.33 in costs and $8,027.81 in New Mexico gross receipts tax, for a total of $119,719.14, afford Plaintiffs the opportunity to submit a supplemental fee application on the time incurred briefing this matter, and afford any additional relief deemed just and proper."  Motion at 8.

2.    **The Defendants' Response.**

The Defendants responded to the Motion on December 28, 2015.  See Defendants' Response in Partial Opposition ot Plaintiffs David and Nicole Payne's Opposed Motion for

- 6 -

Award of Attorneys' Fees and Costs, filed December 28, 2015 (Doc. 76)("Response"). The Defendants "agree that the parties have fully settled the Paynes' claims and that the Court should award reasonable attorneys' fees pursuant to the parties' agreements, but the reasonable attorneys' fees necessarily must pertain *to the settlement of the Paynes' claims*." Response at 1 (emphasis in Response). The Defendants assert that, unlike the individual claims that the Paynes alleged, the class claims have not been settled or dismissed, and the Paynes have not prevailed on them. See Response at 1. The Defendants maintain that, "[f]ar from abandoning or dismissing their class claims, Plaintiffs' counsel recently filed a motion to intervene on behalf of four current and former employees of Tri-State." Response at 1-2. The Defendants therefore ask the Court to deny the Motion to the extent that it seeks "any fees or costs associated with work on class certification, class communications, or other class-related activities." Response at 2. The Defendants also ask the Court to deny the Motion to the extent that it seeks fees associated with the unsuccessful "travel time" claim that the Paynes abandoned. See Response at 2.

First, the Defendants argue that the Paynes are not entitled to attorneys' fees and costs related to class certification and other class-related activities. See Response at 4. They argue that the class claims have not been resolved, settled, or dismissed. See Response at 4. The Defendants contend that, at this stage, the Paynes' "class certification efforts have neither failed nor succeeded -- they simply have not been resolved one way or the other." Response at 5. The Defendants assert that the Paynes have not submitted the fee agreement between the Paynes and the Plaintiffs' counsel, and that any analysis whether a fee is "reasonable" begins "with the terms of the fee agreement." Response at 5. They maintain that the Court should defer the question whether the Court should award attorneys' fees for class-related work until such time that the

Plaintiffs prevail on the merits of their class claims or those claims are settled.  See Response at 5.  The Defendants insist that any delay in reaching a settlement with the Paynes "stems not from any failure on Defendants' part to 'initiate any settlement discussions with the Paynes' but from Plaintiffs' repeated communications that they had no interest in resolving their claims and their steadfast refusal to participate in settlement negotiations except 'on a class basis.'"  Response at 7.  Accordingly, the Defendants argue that the delay does not justify an award of fees for class certification and other class-related work.  See Response at 7.

Second, the Defendants argue that the Paynes "are not entitled to fees or costs related to the unsuccessful, abandoned 'travel time' claim."  Response at 7.  According to the Defendants, in their original complaint, the Paynes asserted a claim based on a theory that the Defendants should have paid for the Paynes' travel time.  See Response at 7.  The Defendants maintain that neither the Paynes nor the Defendants "have argued that the discovery conducted on travel, or of Plaintiff's 'legal research' on that issue, has any relevance to the remaining claims in the lawsuit."  Response at 7.  They contend that, when unsuccessful claims are separate from the core factual and legal issues in the remainder of the lawsuit, the Court should reduce the fee award for work on such claims.  See Response at 7 (citing Jane L. v. Bangerter, 61 F.3d 1505, 1513 (10th Cir. 1995)).  The Defendants therefore ask the Court to "exclude the time spent on the separate and abandoned 'travel time' claims."  Response at 7.

The Defendants then ask the Court to disallow $42,648.29 in fees and associated tax.  See Response at 7-8.  According to the Defendants, many of the entries that the Paynes identify in their counsels' billing statement describe work which applies or could apply to both individual and class claims.  See Response at 7.  They argue that, while the Defendants do not seek to

exclude those entries where it is difficult to identify the amount of time spent on individual versus class activities, a number of other entries clearly apply exclusively to class certification or other class-related work.  See Response at 8.  The Defendants ask the Court to not award attorneys' fees for this class-related work.  See Response at 8.  The Defendants explain that, under the Paynes' time-keeping practices, some entries describe multiple, separate activities ("block billing"), some of which apply to the Paynes' individual claims, and some of which apply only to the class claims.  See Response at 8.  They ask the Court to deny the fee application as to the block-billed entries with both allowable and unallowable activities on the basis that the record-keeping of the Plaintiffs' counsel does not provide adequate information to meet their burden of proving that a specific amount of time in the block should be included in the award.  See Response at 8.  In the alternative, the Defendants ask that the Court reduce those entries' value by half, "with the expectation that some work was primarily class-related (or travel time-related) and some work was primarily individual-related, and that an equal reduction of one-half for all entries will roughly balance out."  Response at 9.

The Defendants next argue that several of the entries on the billing statement warrant special attention.  See Response at 9.  They assert that, contrary to what courts disfavor, the Paynes called and contacted potential class members during the discovery process, using the class information that the Defendants were required to provide pursuant to the Paynes' motion to compel.  See Response at 10.  The Defendants maintain that the time records show that a paralegal spent hours calling and emailing "potential class members," and discussing the information from those communications with the Paynes' counsel.  Response at 10.  They insist that it would be unjust for the Paynes to recover fees for activities that the courts disfavor, and

that directly or indirectly results in more claims and litigation against the Defendants.  <u>See</u>

Response at 10.  In conclusion, the Defendants write:

> Defendants have identified the entries devoted to class-certification, class communications, and other class-related activities, along with the entries for time associated with the unsuccessful and abandoned "travel time" claim.  *See* Summary of Improper Time Entries[.]  As noted above, for those "block-billed" entries that describe multiple activities, only some of which pertain to allowable activities, Defendants have reduced the fees by one-half.  Other than the tax on the fees, Defendants do not ask the Court to reduce the costs that Plaintiffs seek. As set forth in [the Summary of Improper Time Entries, filed December 28, 2015 (Doc. 76-1)("Improper Time Entry Table")], the total amount that Defendants request the Court exclude from its award is $42,648.29 ($39,788.50 in fees and $2,859.79 in tax).

Response at 11.  The Defendants therefore maintain that the Paynes are entitled to an award of

reasonable attorneys' fees for the settlement of the Paynes' claims, but that they should not

receive fees for time spent on class-related claims which have not been settled or otherwise

resolved, or on the unsuccessful "travel time" claim that the Plaintiffs abandoned.  <u>See</u> Response

at 11.

As stated above, the Defendants attach to their Response the Improper Time Entry Table,

in which they itemize the entries on the Paynes' counsel's billing statement that they contend

describe work that applies or could apply to both individual claims and class claims.  <u>See</u>

Improper Time Entry Table at 1-10.  The Improper Time Entry Table lists each item from the

Paynes' counsel's billing statement that the Defendants contend covered activities related to

class certification or the Paynes' unsuccessful "travel time" claims.  For those block-billed

entries that describe multiple activities, only some of which pertain to allowable activities, the

Defendants reduce the fees by one-half.  <u>See</u> Improper Time Entry Table at 1-10; Response at

11.  In total, the Defendants ask the Court to reduce the Paynes' counsel' fees for their work on

the class or unsuccessful claims by $39,788.50.  Other than the tax on the fees, the Defendants do not ask the Court to reduce the costs that the Paynes seek.  <u>See</u> Response at 11.  The total amount that the Defendants ask that the Court exclude from its award is $42,648.29 ($39,788.50 in fees and $2,859.79 in tax).  <u>See</u> Response at 11.

    **3.**    <u>**The Paynes' Reply**</u>**.**

The Plaintiffs replied on June 1, 2015.  <u>See</u> Plaintiffs' Reply in Support of Motion to Compel Answers to Interrogatories 2 and 6, filed June 1, 2015 (Doc. 30)("Reply").  The Paynes emphasize that the Defendants "expend eleven (11) pages quibbling over $42,648.29 and some change in fees that Plaintiffs seek for the type of charges that Defendants undoubtedly billed their clients in the defense of this collective action lawsuit."  Reply at 1.  They maintain that it is undisputed that the Defendants included, in their October 21, 2015 offer, an agreement to pay "the reasonable attorneys; fees and costs incurred by counsel for Plaintiffs up to the date of this offer . . ."  Reply at 1.  The Defendants further assert that they "responded with a counteroffer of fees and costs incurred through October 30, 2015 and it is undisputed that this stipulation was accepted by Defendants."  Reply at 1-2.

The Paynes argue that, given that this action proceeded as a proposed collective action up to the time of the settlement offer, it should have been apparent that the fees incurred by their counsel would include the collective action work incurred "up to the date of this offer."  Reply at 2.  They contend that the Defendants are now experiencing buyers' remorse and are impermissibly attempting to alter the settlement terms.  <u>See</u> Reply at 2.  They assert that the Defendants' settlement offer never conditioned settlement "upon some articulated line of demarcation between 'fees incurred up to the date of this offer' and 'fees incurred only by the

Paynes on their individual claims up to the date of this offer.'"  Reply at 2.  Instead, the Paynes insist that the Defendants agreed to settle and provide all relief available to the Paynes, including reasonable fees incurred "up to the date of this offer."  Reply at 2.  They maintain that the Defendants "should be bound by the offer they made, a basic point of contracts law."  Reply at 2.

The Paynes next argue that the case law does not support the Defendants' request that the Court reduce the fees.  See Reply at 2-4.  They reject the Defendants' reliance on Cullens v. Ga. Department of Transportation, 29 F.3d 1489, 1494-95 (11th Cir. 1994), and Hill v. Astrue, 248 F. App'x 923, 928 (10th Cir. 2007).  See Reply at 2-4.  They contend, however, that there is persuasive law "providing that if the non-prevailing party chooses to cavil over the prevailing party's fees, then it should be forced to put its money where its mouth is and turn over its fees for an *in camera* review to assess reasonableness."  Reply at 4 (emphasis in original).  They conclude on this point by stating: "This is silly nonsense, of course, because Defendants know full well that they billed for the same reasonable services for which Plaintiffs seek compensation, but disclosure would highlight the hypocrisy."  Reply at 4.

The Plaintiffs next argue that reduction of fees on the travel time claim is unwarranted. See Reply at 4.  They contend that, in Hensley v. Eckerhart, 461 U.S. 424 (1983), the Supreme Court of the United States of America held that, "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."  Reply at 5 (quoting Hensley v. Eckerhart, 461 U.S. at 440).  They assert that, in this case, their travel time claims were intimately related to their overall, unifying claim of deprivation of wages for time worked.  See Reply at 5.  They also contend that they won, not only substantial relief, but full relief on their

related NMMWA claim.  See Reply at 5.  They therefore assert that Hensley v. Eckerhart do not support a fee reduction.  See Reply at 5.

The Plaintiffs next argue that the "Defendants' decision to tender a settlement offer only after the completion of class discovery and briefing on class certification does not justify a reduction in the fees that the Plaintiffs incurred up to the date of the settlement offer."  Reply at 5.  They maintain that it was the Defendants' choice to wait over one year into litigation until after the Motion for Class Certification was fully briefed to extend individual settlement offers to the Paynes, and that these offers included "a promise to pay all reasonable fees incurred 'up to the date of this offer.'"  Reply at 6.  The Plaintiffs also reject the Defendants' contention that block billing entries should be excluded.  See Reply at 6.  The Plaintiffs explain:

> The Tenth Circuit has not adopted a per se rule prohibiting fees due to block billing.  *Cadena v. Pacesetter Corp*., 224 F.3d 1203, 1215 (10th Cir. 2000). Plaintiffs will leave it to the Court to determine whether some limited amount of time should be excluded due to tasks that were billed in blocks.  In many cases, simple and limited time tasks such as emails or review of materials were included, and that time can be broken out with relative ease.  Other tasks do not normally have an appreciable time break, such as researching and writing, since those tasks are usually performed in conjunction with one another.  Importantly, all of the work performed by counsel and for which they seek recovery is specified in detail, contemporaneously recorded, meticulous and necessary.

Reply at 6.

Last, the Paynes assert that their counsel and staff did not engage in any improper, inappropriate or unethical behavior, and that the Paynes are entitled to the fees incurred communicating with putative class members.  See Reply at 6.  They state that the Paynes' counsel would be willing to provide a declaration with respect to any allegations of improper conduct on their part if the Court would desire them to do so.  See Reply at 7.  They state that they were well within their legal, professional, and ethical rights to communicate with proposed

class members, both before and after the Court determined that the Paynes were entitled to obtain

contact information in discovery.  See Reply at 7.  The Paynes further explain:

> Rule 16-402 NMRA specifically provides that "an attorney is **not** prohibited from
> communicating directly with employees of a corporation, partnership or other
> entity about the subject matter of the representation even though the corporation,
> partnership or entity itself is represented by counsel."  (emphasis added).  Given
> the time and expense of discovery issues in litigation, utilization of informal and
> cost-effective discovery avenues to obtain discoverable information are a positive
> factor and should be encouraged.  Communication with putative class members is
> a routine part of class action litigation and there is certainly nothing improper or
> nefarious about counsel's communications in this case.  No restriction has been
> placed on communications with class members by the Court and none is
> warranted.  *See Gulf Oil v. Bernard*, 452 U.S. 89, 100, 101-02 (1981)(judicial
> intervention is justified only with "a clear record and specific findings that reflect
> a weighing of the need for a limitation and the potential interference with the
> rights of the parties.").  It is therefore difficult to fathom how Defendants can
> imply that Plaintiffs did something improper, let alone contend that it mandates a
> fee reduction.

Reply at 7 (emphasis in Reply).  In conclusion, the Defendants maintain that they should be

commended, and not chided, for engaging in "reasonable and prudent efforts to buttress their

class claims," and that "the limited time spent communicating with putative class members was

routine, reasonable, entirely proper and necessary in the successful prosecution of this lawsuit."

Reply at 7-8.

**4.     The Hearing.**

The Court held a hearing on January 25, 2016.  See Transcript of Hearing (taken January

25, 2016)("Tr.").[3]  After addressing the Motion for Class Certification, the Court and the parties

took up the Motion.   See Tr. at 4:12-13 (Court).  The Court then explained how it was inclined

to rule on the Motion:

---

[3]The Court's citations to the transcript of the hearing refer to the court reporter's original,
unedited version.  Any final transcript may contain slightly different page and/or line numbers.

On a clean slate it would seem to me that the plaintiffs, and again I'll hear what anybody wants to say on this motion, it would seem to me on a clean slate that the plaintiffs shouldn't be entitled when individual defendants settle out to their work on the class case, and so the claims that were not successful it doesn't seem they should be able to recover on those, and as I went through the chart, I didn't go through . . . it all, but I only began to sort of scrutinize the -- I certainly went through all the billing. It seemed reasonable and there doesn't seem to be any argument about that. It just seems that some of it is going to have to be taken out because it's class related and is related to claims that were not successful, so when I went through [the] defendants' little chart[,] it seemed to me that they were probably getting it pretty close to right. I only went through a few pages to sort of make that determination. I would be liberal to the defendants here, because I think we probably all know that the threat of a class action is probably what motivated the defendant[s] to settle here, but I'm not sure that legally we can compensate the plaintiff for that.

The only thing that I had some concern about, and so what I was thinking we would do today is just look at [the Improper Time Entry Table attached] to the defendant's response. And the plaintiff[s,] tell me . . . assuming the two things that I've just said[:] that the [plaintiffs] can't be compensated for the class certification issues, and [can't be compensated] for claims that were not successful, tell me where on this chart they disagree with the defendants' reduction[?] It seemed to me that defendants were being fairly generous[.] [W]hen there w[ere] three or four issues in a block billing they seemed to be giving [the benefit of the doubt] to the plaintiff[s]. So the[y]r[']e seeming to be pretty fair[,] so . . . that seemed to be my focus. The one thing in the reply that I probably need a little bit of more discussion on, and I'll certainly . . . hear discussion on anything[,] but the thing I'm most concerned about is [that] the wording of [your agreement] sort of concerned me a little bit. So I'll be interested particularly to see what the defendants have to say, because I didn't see that issue so prom[inent] in the motion[.] [I]t seemed to be more raised in the reply about the wording of the agreement on attorneys['] fees. But on a clean slate that would be what I think I would be inclined to do [--] is to focus [on the Improper Time Entry Table.]

Tr. at 4:13-6:12 (Court).

The Court then asked the Plaintiffs whether, if they ultimately succeed in this class action, they would recover fees down the road. See Tr. at 6:16-19 (Court). The Plaintiffs responded that "the Court is right on that, yes." Tr. at 6:20-21 (Moody). The Defendants also agreed with the Court's statement. See Tr. at 6:22-24 (Court, Vigil). The Court observed that it

- 15 -

is therefore largely a timing issue, and the Defendants conceded that, if the Plaintiffs ultimately prevail at trial in the class action, they would not come back to the Court and argue that, because counsel represented different plaintiffs at the time they did all of the class work, they cannot seek to recover it.  See Tr. at 6:25-7:11 (Court, Vigil).  The Defendants emphasized that it is a timing issue and that they believe that it is premature for the Paynes to seek class based fees.  See Tr. at 7:11-13 (Court, Vigil).  The Court then asked the Paynes whether -- with that representation -- they can live with the Court's ruling.  See Tr. at 7:14-15(Court, Moody).  The Paynes responded:

> I can kind of live with your ruling, Your Honor.  And look at the exhibit that counsel put together on their response, you know, I haven't gone over it line by line, but certainly looking at it looks like it's fairly accurate in terms of taking out work done on the class issues.

Tr. at 7:16-21 (Court, Moody).

The Court then asked the Paynes to take another look at the Improper Time Entry Table to see if there is something to which they object.  See Tr. at 7:22-24 (Court).  The Court noted, however, that it appeared that the Defendants were being generous, and that, on the block billing, they were reducing the entry by one-half and giving the Paynes the benefit of the doubt on block billing.  See Tr. at 7:25-8:4 (Court).  The Court and the parties then had the following exchange:

> THE COURT:  If you can live with it[,] send me a letter say[ing] I can live wit[h it] and I'll put together an order ordering that amount of fees[;] then we'll put the representation of the defendants that kind of preserves your position down the road.  If there is something you disagree on, a particular one, talk to Mr. Vigil about it, Mr. Lowry, if y'all can't work it out, then just submit it to me and I'll take a special look at that when I put the order together[.]  [D]oes that work for you[?]
>
> MR. MOODY:  Yes, Your Honor.
>
> THE COURT:  Do you have anything else, Mr. Vigil?  Do you think you can live with that?

MR. VIGIL: Your Honor, that's fine with us. Thank you.

Tr. at 8:4-18 (Court).

**5.** **The January 25, 2016, Letter.**

On January 25, 2016, as the Court requested at the hearing, the Paynes' counsel filed a letter with the Court. See Letter from Christopher M. Moody to The Honorable James O. Browning, filed January 25, 2016 (Doc. 98)("Jan. 25thLetter"). In the Letter, the Paynes' counsel stated:

> At the motion hearing in the above case this morning, the Court indicated that it intends to award fees pursuant to our Motion for Award of Attorneys' Fees and Costs [doc. 72], but that our request will be reduced to reflect fees incurred in addressing the class action aspects of the case and in pursuing an unsuccessful travel time claim. With regard to the fees incurred pursuing the case as a class action, the Court expressed the view that those fees are more properly pursued at such time as the case concludes on a class basis. The Court asked me to review [the Improper Time Entry Table, attached to] Defendants' Response [doc. 76] and advise as to whether we believe the cuts suggested there fairly and accurately reflect the time spent on the class action and travel time claim.
>
> I have reviewed [the Improper Time Entry Table] and it appears to me that the cuts suggested there quite accurately reflect our time spent on the class action and travel time issues. Accordingly, I believe that cutting our fee request by the amounts reflected in [the Improper Time Entry Table, attached to] the Response will fairly implement the Court's decision not to award fees for the class action and travel time claim work at this time.

Jan. 25th Letter at 2.

## LAW REGARDING ATTORNEY'S FEES

The obligation to pay attorneys' fees can arise by statute or contractual agreement. See United States ex rel. Trustees of the Colo. Laborers Health & Welfare Trust Fund & Expert Env'l Control, Inc., 790 F. Supp. 250, 251-52 (D. Colo. 1992)(Kane, J.)(citing F.D. Rich, Inc. v. United States ex rel. Indus. Lumber Co., 417 U.S. 116 (1974)). Whether the obligation to pay

reasonable attorneys' fees arises from statute or contract, the Court's analysis of the reasonableness of the fees is similar.  See United States ex rel. Trustees of the Colo. Laborers Health & Welfare Trust Fund & Expert Env'l Control, Inc., 790 F. Supp. at 251-52 (citing United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc., 834 F.2d 1533 (10th Cir. 1987)).  The Tenth Circuit has explained that, in evaluating fees that a contract awards, the Court may consider "the familiar factors from the federal court cases awarding fees in the statutory context" as Ramos v. Lamm defines them.  United States ex rel. Trustees of the Colo. Laborers Health & Welfare Trust Fund & Expert Env'l Control, Inc., 790 F. Supp. at 251-52 (citing United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc., 834 F.2d 1550).

"To determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998).  The lodestar is "'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate,' which produces a presumptively reasonable fee that may in rare circumstances be adjusted to account for the presence of special circumstances." Anchondo v. Anderson, Crenshaw & Assoc., LLC, 616 F.3d 1098, 1102 (10th Cir. 2010)(quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983), and Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 543-44 (2010)).  "The party requesting attorney fees bears the burden of proving" the two components used to calculate the fee award: (i) "the amount of hours spent on the case;" and (ii) "the appropriate hourly rates." United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1233 (10th Cir. 2000).  See New Mexico v. Valley Meat Co., LLC, 2015

WL 9703255, at *22 (D.N.M. Dec. 14, 2015)(Browning, J.)(citing United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1233 (10th Cir. 2000)).  Once the Court makes these two determinations, the fee "claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee."  Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998).

"To determine what constitutes a reasonable rate, the district court considers the prevailing market rate in the relevant community."  New Mexico v. Valley Meat Co., LLC, 2015 WL 9703255, at *23 (quoting Lippoldt v. Cole, 468 F.3d 1204, 1224-25 (10th Cir. 2006)).  See Malloy v. Monahan, 73 F.3d 1012, 1018 (10th Cir. 1996).  The party entitled to fees must provide the district court with sufficient information to evaluate prevailing market rates.  See Lippoldt v. Cole, 468 F.3d at 1225.  Moreover, the party must also demonstrate that the rates are similar to rates for similar services by "lawyers of reasonably comparable skill, experience, and reputation" in the relevant community and for similar work.  Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).  See Case v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1255-56 (10th Cir. 1998); Ramos v. Lamm, 713 F.2d 546, 555 (10th Cir. 1983)("The hourly rate should be based on the lawyers' skill and experience in civil rights or analogous litigation."), overruled in part on other grounds, Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 483 U.S. 711, 725 (1987). Courts may also consider their own knowledge of market rates.  See Lippoldt v. Cole, 468 F.3d at 1225.  The party seeking fees "should submit evidence supporting the hours worked and rates claimed."  Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).  Although "[t]here is no precise rule or formula," district courts have discretion to make an "equitable judgment" as to "eliminate" or "reduce" requested fees "to reflect a plaintiff's overall success level."  Hensley v. Eckerhart, 461 U.S. at 436-37.  See General Protecht Grp., Inc. v. Leviton Manufacturing Co., 122 F. Supp. 3d

1114, 1135 (D.N.M. 2015)(Browning, J.)("A district court may also make adjustments to the lodestar figure to reflect a plaintiff's overall success level."); Ysasi v. Brown, 2015 WL 403930, at *10 (D.N.M. Jan. 7, 2015)(Browning, J.).  The court may adjust the lodestar figure to reflect various factors, including the degree of success obtained, the significance of the legal issues involved, and the public interest advanced by the litigation.  See Farrar v. Hobby, 506 U.S. 503, 120-22 (1992).  The Court has discretion "to adjust or even deny a contractual award of fees if such an award would be inequitable or unreasonable."  United States ex rel. Trustees of the Colo. Laborers Health & Welfare Trust Fund & Expert Env'l Control, Inc., 790 F. Supp. at 251-52 (citing United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc., 834 F.2d 1548).  In awarding fees, the district court should "provide a concise but clear explanation of its reasons for [a] fee award."  Hensley v. Eckerhart, 461 U.S. at 438.

N.M. Stat. § 50-4-26(E), the statute at issue in this case, provides:

> The court in any action brought under Subsection D of this section shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow costs of the action and reasonable attorney fees to be paid by the defendant. In any proceedings brought pursuant to the provisions of this section, the employee shall not be required to pay any filing fee or other court costs necessarily incurred in such proceedings.

N.M. Stat. § 50-4-26(E).

## LAW REGARDING SETTLEMENTS

A district court has authority, while a case is pending before it, to enforce settlement agreements reached by litigants.  See United States v. Hardage, 982 F.2d 1491, 1496 (10th Cir. 1993).  The Tenth Circuit reviews the district courts' use of such authority only for abuse of discretion.  United States v. Hardage, 982 F.2d at 1495.

- 20 -

A settlement agreement is a contract.  See Republic Res. Corp. v. ISI Petroleum West Caddo Drilling Program 1981, 836 F.2d 462, 465 (10th Cir. 1987)("We construe a settlement stipulation in the same manner as a contract to determine how it should be enforced.")(citation omitted).  Thus, when determining whether a court will enforce a settlement agreement, a court applies state contract law.   See United States v. McCall, 235 F.3d 1211, 1215 (10th Cir. 2000)("Issues involving the formation, construction and enforceability of a settlement agreement are resolved by applying state contract law.")(citing Carr v. Runyan, 89 F.3d 327, 331 (7th Cir. 1996)).  New Mexico public policy favors settlement agreements.  See Navajo Tribe of Indians v. Hanosh Chevrolet-Buick, Inc., 106 N.M. 705, 707, 749 P.2d 90, 92 (1988).

New Mexico courts presume that, when parties have settled a dispute, they "intended a complete accord and satisfaction of their respective claims. . . ."  Bennett v. Kisluk, 112 N.M. 221, 223-24, 814 P.2d 89, 91-92 (1991).

In applying this strong public policy in favor of settlement, New Mexico courts are bound by unambiguous language in settlement agreements.  See Burden v. Colonial Homes, Inc., 79 N.M. 170, 173, 441 P.2d 210, 213 (1968)(citation omitted).  "[W]here material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing."  United States v. Hardage, 982 F.2d at 1496-97.  A court must have before it a sufficient factual development-consisting of sworn testimony subject to cross-examination, sworn affidavits, and legal memoranda-to enforce a settlement agreement.  See United States v. Hardage, 982 F.2d at 1496-97.

The United States Court of Appeals for the Sixth Circuit has held, however, that an evidentiary hearing is not required where an agreement is clear and unambiguous, and no issue

of fact is present.  See Aro Corp. v. Allied Witan Co., 531 F.2d 1368, 1372 (6th Cir. 1975).

Because settlement agreements are highly favored, a party seeking relief from a settlement has

the burden of persuasion.  See Marrujo v. Chavez, 77 N.M. 595, 599, 426 P.2d 199, 201 (1967);

Gonzales v. Atnip, 102 N.M. 194, 195, 692 P.2d 1343, 1344 (Ct. App. 1984).  An oral settlement

agreement is enforceable.  See Herrera v. Herrera, 126 N.M. 705, 708-10, 974 P.2d 675, 678-80

(Ct. App. 1999).

Mutual mistake is a ground for contract reformation in New Mexico.  See State ex re.

State Highway & Transp. Dep't v. Garley, 111 N.M. 383, 388, 806 P.2d 32, 37 (1991).  A court

is permitted to reform a contract upon finding "a mutual mistake; that is where there has been a

meeting of minds, an agreement actually entered into, but the contract, deed, settlement, or other

instrument, in its written form, does not express what was really intended by the parties thereto."

C.R. Anthony Co. v. Loretta Mall Partners, 112 N.M. 504, 511, 817 P.2d 238, 245 (1991)(citing

Cleveland v. Bateman, 21 N.M. 675, 158 P. 648 (1915)).  A court may also avoid a contract

upon finding mutual mistake:

> The legal grounds for reformation based upon mutual mistake are to be
> distinguished from those which entitle a party to avoid the contract based on
> mistake.  To avoid a contract based on mutual mistake, the party adversely
> affected by the mistake must show that: (1) The mistake goes to a basic
> assumption on which the contract was made; (2) the mistake has a material effect
> on the agreed exchange of performances; and (3) the mistake is not one for which
> that party bears the risk.

Restatement (Second) of Contracts § 152; State ex rel. State Highway & Transp. Dep't v. Garley,

111 N.M. 383, 806 P.2d 32 (1991)(discussing distinction).

<u>ANALYSIS</u>

The Court will grant in part and deny in part the Motion.  The Court will award fees, as the Motion requests, but will reduce the requested fees with respect to: (i) fees incurred related to class-related work; and (ii) fees or costs related to the Plaintiffs' unsuccessful "travel time" claim.  Accordingly, the Court will grant the Plaintiffs' request that it award fees, but will exclude from the award $42,648.29 ($39,788.50 in fees and $2,859.79 in tax).

I.    **PURSUANT TO THE SETTLEMENT AGREEMENTS INTO WHICH THEY ENTERED WITH THE DEFENDANTS AND N.M. STAT. ANN. § 50-4-26(E), <u>THE PAYNES ARE ENTITLED TO REASONABLE ATTORNEYS' FEES.</u>**

The obligation to pay attorneys' fees can arise by statute or contractual agreement.  <u>See United States ex rel. Trustees of the Colo. Laborers Health & Welfare Trust Fund & Expert Env'l Control, Inc.</u>, 790 F. Supp. at 251-52 (citing <u>F.D. Rich, Inc. v. United States ex rel. Indus. Lumber Co.</u>, 417 U.S. at 116).  Here, the Defendants' obligation to pay reasonable attorneys' fees arises pursuant to both statute and contractual agreement.  First, the Paynes are entitled to attorneys' fees pursuant to their settlement agreements.[4]  The Defendants made an offer of settlement to the Paynes that they accepted on approximately October 30, 2015.  <u>See</u> Response at 3.  The Paynes executed the settlement agreements and releases on November 19, 2015.  <u>See</u> Motion at 4; Response at 3.  The settlement agreements' terms are confidential, but the parties agreed that the Defendants would pay the Paynes' reasonable attorneys' fees and costs.  <u>See</u>

_____

[4]As the Defendants correctly note, <u>see</u> Response at 1 n.1, the district court generally has the authority to enforce settlement agreements between plaintiffs and defendants as long as the district court has not entered final judgment and the case is still pending before it, <u>see</u> <u>United States v. Hardage</u>, 982 F.2d 1491, 1496 (10th Cir. 1993)(a district court has the authority to "enforce a settlement agreement entered into by the litigants while the litigation is pending before it").  <u>See Spraggins v. Reed</u>, CV 04-1384, 2006 WL 1304958, at *5 (D.N.M. Jan. 30, 2006)(Browning, J.).

Motion at 4.  They further agreed that, if they could not reach an agreement on an amount of reasonable attorneys' fees, the Paynes could apply to the Court for a determination.  <u>See</u> Motion at 4; Response a 3.  Second, the Paynes are entitled to reasonable attorneys' fees pursuant to statute -- N.M. Stat. § 50-4-26(E) -- because the settlement agreements into which the Paynes entered awarded them full relief on their NMMWA claims.  N.M. Stat. § 50-4-26(E) provides:

> E.  The court in any action brought under Subsection D of this section shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow costs of the action and reasonable attorney fees to be paid by the defendant. In any proceedings brought pursuant to the provisions of this section, the employee shall not be required to pay any filing fee or other court costs necessarily incurred in such proceedings.

N.M. Stat. § 50-4-26(E).  Moreover, the parties do not dispute that the Paynes are entitled to attorneys' fees and costs.  <u>See</u> Motion at 4-5; Response at 11.[5]  Accordingly, the Court must determine whether the Plaintiffs' attorneys' fee request is reasonable.

---

[5]The Tenth Circuit has indicated that, even in the absence of an attorneys' fees provision in a settlement agreement, a plaintiff can nonetheless be entitled to fees pursuant to a statute. <u>See</u> <u>Chicano Police Officer's Ass'n v. Stover</u>, 624 F.2d 127, 132 (10th Cir. 1980).  In <u>Chicano Police Officer's Ass'n v. Stover</u>, the Tenth Circuit explained:

> In the absence of a statutory entitlement to fees, it seems clear that a settlement agreement which does not provide for their payment should foreclose a party's claim for additional recovery; such fees are not recoverable anyway under the usual American rule.  <u>Alyeska Pipeline Serv. Co. v. Wilderness Society</u>, 421 U.S. 240 (1975).  The instant case is different, however; there is a statutory provision for awarding fees, and the importance of awarding attorneys' fees in making private enforcement of the Civil Rights Act possible has been consistently emphasized.  Nevertheless, this is not one of those situations in which Congress has prohibited settlements covering payment of attorneys' fees.  Therefore, plaintiffs can give up their statutory entitlement to fees as part of the settlement arrangement.

> The settlement agreement here is at best ambiguous; the $16,000 payment could be construed as a settlement of all that is to be paid to plaintiffs and their attorneys.  That is one of the questions to be determined on remand.  The trial

## II.   THE COURT WILL AWARD ATTORNEYS' FEES, BUT IT WILL REDUCE THE REQUESTED FEES WITH RESPECT TO: (i) FEES INCURRED RELATED TO CLASS-RELATED WORK; AND (ii) FEES OR COSTS RELATED TO THE PAYNES' UNSUCCESSFUL "TRAVEL TIME" CLAIM.

Here, the Defendants' obligation to pay reasonable attorneys' fees arises from both the settlement agreement and N.M. Stat. § 50-4-26(E).   Whether the obligation to pay reasonable attorneys' fees arises from statute or contract, the Court's analysis of the reasonableness of the fees is similar.   See United States ex rel. Trustees of the Colo. Laborers Health & Welfare Trust Fund & Expert Env'l Control, Inc., 790 F. Supp. at 251-52 (citing United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc., 834 F.2d 1533 (10th Cir. 1987)).   The Tenth Circuit has explained that, in evaluating fees that a contract awards, the Court may consider "the familiar factors from the federal court cases awarding fees in the statutory context" as Ramos v. Lamm defines them.   United States ex rel. Trustees of the Colo. Laborers Health & Welfare Trust Fund & Expert Env'l Control, Inc., 790 F. Supp. at 251-52 (citing United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc., 834 F.2d 1550).   In determining appropriate attorneys' fees, courts generally begin by calculating the lodestar -- the attorneys' reasonable hourly rate multiplied by the number of hours reasonably expended.   See Two Old

---

judge should conduct an evidentiary hearing on whether attorneys' fees were discussed and intended to be covered by the cash settlement.  If not, the court should consider whether plaintiffs took actions to mislead defendant or otherwise were responsible for "special circumstances" which would make an attorneys' fees award in their favor inequitable under the Piggie Park standard.  If there was no agreement and no such conduct by plaintiffs, the court, without setting aside the settlement, should award attorneys' fees to plaintiffs, assuming it finds they prevailed under the standards above discussed, in order to carry out the congressional policy expressed in the Civil Rights Act.

624 F.2d at 132.

- 25 -

Hippies, LLC v. Catch the Bus, LLC, 277 F.R.D. 448, 464-65 (D.N.M. 2011)(Browning, J.)(citing Hensley v. Eckerhart, 461 U.S. at 433-37).

The court may then adjust that figure to reflect various factors, including the degree of success obtained, the significance of the legal issues involved, and the public interest advanced by the litigation.  See Farrar v. Hobby, 506 U.S. 503, 120-22 (1992).  The Court has discretion "to adjust or even deny a contractual award of fees if such an award would be inequitable or unreasonable."  United States ex rel. Trustees of the Colo. Laborers Health & Welfare Trust Fund & Expert Env'l Control, Inc., 790 F. Supp. at 251-52 (citing United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc., 834 F.2d 1548).  While the parties do not dispute the reasonableness and rate of the hours expended, the Defendants take issue with the Paynes' contention that they are entitled to: (i) fees incurred related to class-related work; and (ii) fees or costs related to the Paynes' unsuccessful "travel time" claim.  The Court agrees with the Defendants, and will grant the Paynes' request that it award fees, but exclude from the award $42,648.29 ($39,788.50 in fees and $2,859.79 in tax).

### A.   THE RATE AND HOURS EXPENDED ARE REASONABLE, BUT THE COURT WILL NOT -- AT THIS TIME -- AWARD ATTORNEYS' FEES INCURRED RELATED TO CLASS-RELATED WORK.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended . . . multiplied by a reasonable hourly rate.  This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services."  Hensley v. Eckerhart, 461 U.S. at 433.  "There is a strong presumption that the lodestar represents the reasonable fee to which counsel is entitled."  Utah Int'l, Inc. v. Dep't of the Interior, 643 F. Supp. 810, 828 (D. Utah 1986)(Widner, J.).  Here, the Defendants do not

object to the hourly rates that the Paynes' counsel requests.  The Court therefore will use the hourly rates that the Motion uses: (i) $350.00 per hour for lead counsel Mr. Moody; (ii) $300.00 per hour for partner Mr. Stanford; (iii) $175.00 per hour for associate attorney Alice Kilborn; and (iv) $90.00 per hour for paralegals Anne M. Chavez and Chelsea Buldain.  See Motion at 5-6. The Court also concludes that these rates are reasonable for federal court practice in the District of New Mexico.  See Two Old Hippies, LLC v. Catch the Bus, LLC, 277 F.R.D. at 65 (approving hourly rate of $275.00 per hour); Mountain Highlands, LLC v. Hendricks, No. CV 08-0239 JB/ACT, 2010 WL 1631856, at * 9-10 (D.N.M. Apr. 2, 2010)(Browning, J.)(approving an hourly rate of $170.00 to $210.00 for commercial litigation); Wiatt v. State Farm Ins. Cos., No. CV 07-0526 JB/KBM, 2008 WL 2229630, at *4-5 (D.N.M. Mar. 24, 2008)(Browning, J.)(holding that a fee of $200.00 per hour for insurance defense work was reasonable); Kelley v. City of Albuquerque, No. CV 03-507 JB/ACT, 2005 WL 3663515, at *15-17 (Doc. 117)(D.N.M. Oct. 24, 2005)(Browning, J.)(finding $250.00 per hour to be a reasonable rate).

With respect to the hours worked, the district court must exclude from the lodestar calculation "hours that were not reasonably 'expended''' on the litigation.  David C. V. Leavitt, 900 F. Supp. 1547, 1556 (D. Utah 1995)(Winder)(quoting Hensley v. Eckerhart, 461 U.S. at 434).  The Defendants ask the Court to deny compensation for the time spent on the fees incurred related to class-related work.  See Response at 4-7.  The Court agrees with the Defendants that the Paynes' counsel are not -- at this time -- entitled to fees incurred related to class-related work. The class claims have not been settled, dismissed, or resolved.  The Court agrees with the Defendants that it should defer the issue whether it should award attorneys' fees for class-related work until such time, if ever, that the Plaintiffs prevail on the merits of their class claims, or

those claims are fully and finally settled.  Accordingly, the Court will reduce the entries devoted to class communications, and other class-related activities, from the award of attorneys' fees at this time.  The Paynes and Plaintiffs have not prevailed on class issues.  The Court also notes that, at the hearing on the Motion, the Defendants represented that, if the Paynes ultimately prevail at trial or otherwise in the class action, they will not come to the Court and argue that, because counsel had different Plaintiffs at the time they did all of the class work, they cannot seek to recover it.  See Tr. at 6:25-7:11 (Court, Vigil).  The Defendants emphasized that it is a timing issue and that they maintain that it is premature for the Paynes to seek class based fees. See Tr. at 7:11-13 (Court, Vigil).

### B.    THE COURT WILL REDUCE THE FEE AWARD FOR WORK ON THE PAYNES' UNSUCCESSFUL "TRAVEL TIME" CLAIM.

The Defendants also ask the Court to deny compensation for the fees or costs related to the Paynes' unsuccessful "travel time" claim.[6]  See Response at 7.  While the Paynes' settlement agreements provide them with complete relief on their NMMWA claims, they did not succeed on all of their claims.  Specifically, the Paynes voluntarily agreed to drop their "travel time" claim. Reply at 4; Response at 7.  The Tenth Circuit has noted that an attorneys' fees award may be reduced if the party achieved only limited success.  See Jane L. v. Bangerter, 61 F.3d at 1510-11. The Supreme Court and the Tenth Circuit, however, have held that an attorneys' fees award should not be reduced merely because a party did not succeed on some claims if those claims are related to the claims on which the party succeeded.  See Hensley v. Eckerhart, 461 U.S. at 440; Jane L. v. Bangerter, 61 F.3d at 1512.  Both the Supreme Court and the Tenth Circuit have held

---

[6]Because this argument is more properly an "adjustment to the lodestar" argument, the Court will treat it as such.  See David C. V. Leavitt, 900 F. Supp. at 1562.

that claims are related if they involve a common core of facts.  See Hensley v. Eckerhart, 461 U.S. at 435; Jane L. v. Bangerter, 61 F.3d at 1512 ("We have refused to permit the reduction of an attorneys fee request if successful and unsuccessful claims are based on a 'common core of facts.'").  The Court agrees with the Defendants that the Paynes' successful and unsuccessful claims do not share a common core of facts.  The facts underlying the Paynes' "travel time" theory of recovery -- the amount of time employees spent traveling and other issues regarding the circumstances and justifications for their travel -- are not related to the Paynes' general overtime theory of recovery.  Neither the Paynes nor the Defendants have argued that the discovery conducted on travel time, or the Paynes' research on that issue, is relevant to the remaining claims in the lawsuit.  Because the Paynes' unsuccessful "travel time" claim is separate from the core factual issues involved in the overtime claims, the Court will reduce the fee award.  See Jane L. v. Bangerter, 61 F.3d at 1513.  Accordingly, the Court will reduce the Paynes' requests for attorneys' fees for work on the Plaintiffs' unsuccessful "travel time" claim.

In the Jan. 25th Letter, the Paynes agree that the cuts in the Improper Time Entry Table, attached to the Defendants' Response, fairly and accurately reflect the time spent on the class action and "travel time" claim.  Jan. 25th Letter at 2.  The Improper Time Entry Table reduces the fees by a total of $39,788.50.  See Improper Time Entry Table at 1-11.  The Court will therefore reduce grant the Paynes' request that it award fees, but will exclude from the award $42,648.29 ($39,788.50 in fees and $2,859.79 in tax).

**IT IS ORDERED** that Plaintiffs' David and Nicole Payne's Opposed Motion for Award of Attorneys' Fees and Costs and Memorandum In Support, filed December 10, 2015 (Doc. 72), is granted in part and denied in part.  The Court will grant Plaintiffs' D. Payne and N. Payne's

request that it award fees, but will exclude from the award $42,648.29 ($39,788.50 in fees and

$2,859.79 in tax).

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Christopher M. Moody
Repps D. Stanford
Alice Kilborn
Moody & Warner, P.C.
Albuquerque, New Mexico

　　　*Attorneys for the Plaintiffs*

Charles J. Vigil
Jeffrey L. Lowry
Melanie B. Stambaugh
Rodey, Dickason, Sloan, Akin & Robb P.A.
Albuquerque, New Mexico

　　　*Attorneys for the Defendants*