# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

WILLIAM D. PAYNE; NICOLE PAYNE;
LESLIE B. BENSON; KEITH BASTIAN;
JACQUELINE FERNANDEZ-QUEZADA;
CASON N. HEARD; GREGORY
OLDHAM and SHERRY K. WELCH, on
behalf of themselves and all others similarly
situated,

        Plaintiffs,

vs.                                                                              No. CIV 14-1044 JB/KBM

TRI-STATE CAREFLIGHT, LLC, and
BLAKE A. STAMPER, individually,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) the Opposed Fed. R. Civ. P. 24(b)

Motion and Supporting Memorandum to Intervene as Parties Plaintiff and Class Representatives,

filed November 29, 2016 (Doc. 151)("Motion to Intervene"); and (ii) the Opposed Fed. R. Civ.

P. 24(B) Supplemental Motion and Supporting Memorandum to Intervene as Parties Plaintiffs

and Class Representatives, filed June 27, 2017 (Doc. 166)("Supp. Motion to Intervene"). The

Court held a hearing on August 2, 2017. The primary issues are: (i) whether the Court has

jurisdiction over the Proposed Intervenors'[1] claims given that all of the Named Plaintiffs[2] have

---

[1]The Proposed Intervenors are Shailendra Basnet, Kristy Bell, Deborah Berest, Daniel
Bergman, William Dallas Bundrant, Jr., Rocky H. Burrows, II, Chase Carter, Brenda Casarez,
Michael Castro, Kara Cervantes, Thomas Cislo, David Daniels, Adam Doyle, Darren Een, Toby
Eicher, Walter Fabian, Harold Joseph Fisher, Christina Fleeman, Luke Forslund, Salustiano
Fragoso, Rehannon Gonzales, Kristen Grado, Courtney Guerra, Darrin Hamilton, Shane Herron,
Alexander Howell, Danielle Irvin, Allen Jacobs, Erin Johnson, Alex Jones, Donald Luke
Keenan, Daniel Kuhler, Simon Lucero, Raphael Mahaim, Nathan Maplesden, Cindy D.

settled and the Court has entered Final Judgment in the case; (ii) whether the Proposed Intervenors claims are moot in light of the Named Plaintiffs' settlement agreement; (iii) whether the Court's Final Judgment Order dismissing the Named Plaintiffs' claims a few days before the Proposed Intervenors filed their Motion to Intervene means that the Named Plaintiffs and/or the Proposed Intervenors must now seek relief from judgment pursuant to rule 60(b) of the Federal Rules of Civil Procedure; and (iv) whether the Motion to Intervene is timely pursuant to rule 24(b) of the Federal Rules of Civil Procedure despite being filed after the Court entered a Final Judgment. The Court will grant the Motion to Intervene and the Supp. Motion to Intervene.

First, the Court concludes that it has jurisdiction over the sixty-nine Proposed Intervenors pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(4)(A) ("CAFA"). Second, the Named Plaintiffs' settlement agreement did not render the Proposed Intervenors claims moot, because their personal stake in the class -- and, therefore, an Article III case or

---

Maxwell, Jennifer Mazzanti, Bethany McCandless, William J. McConnell, Ron McDearmid, Dan Meehan, Kevin Napp, James O'Connor, Kathy Onsurez-Wilson, Eric Parker, Jason Perry, Amanda Petersen, Brent Place, Jimmy Ronald Primm, Jr., Philip Qubain, Paul Ratigan, Joseph Root, Daron Ruckman, Frederic Ruebush, Jennifer Salaverry, Paul Serino, Christian Speakman, Ian Stephens, Daniel St. Peters, Usvaldo R. Trujillo, Paul Vacula, Jennifer Valdez, Graciela Villalobos, Eric Vogt, Greg Walsh, Tyler Wilkins, Virginia Williams, Terry Zacharias, and Michael Zulaski. See Supp. Motion to Intervene at 3-8.

[2]The Named Plaintiffs comprise five individuals -- Keith Bastian, Jaqueline Fernandez-Quezada, Cason N. Heard, Gregory Oldham, and Sherry K. Welch -- who previously intervened into this case after the putative class action's first three named Plaintiffs ("Original Plaintiffs") -- Leslie B. Benson, Nicole Payne, and William D. Payne -- resolved their respective individual claims. See Memorandum Opinion and Order at 1-2, filed July 12, 2016 (Doc. 138) ("Intervenor MOO")(allowing the Named Plaintiffs to intervene in light of the Original Plaintiffs' claims becoming moot). In other words, this putative class action, helmed by attorneys Christopher M. Moody and Repps D. Stanford, has already seen two discrete sets of individually-named Plaintiffs: first, the Original Plaintiffs, whose claims became moot in November, 2015; and second, the Named Plaintiffs, who intervened into the case shortly thereafter to keep the class action going. See Intervenor MOO at 1. Now that the Named Plaintiffs' claims have been settled, the Purported Intervenors -- who Mr. Moody and Mr. Stanford also represent -- seek to become the third set.

controversy -- inhered at the action's beginning. Third, relief from the Final Judgment is not necessary for the Proposed Intervenors to intervene. Fourth, the Motion to Intervene was timely, even though the Court had already entered a Final Judgment, because intervention will not unduly prejudice the Defendants.

## FACTUAL BACKGROUND

Defendant Tri-State Careflight, LLC operates an air ambulance service in New Mexico, Arizona, Colorado, and Nevada. See Proposed Third Amended Complaint Representative and Class Action Complaint for Damages for Violations of New Mexico Minimum Wage Act and New Mexico Common Law ¶ 11, at 4, filed July 19, 2017 (Doc. 169-1)("Proposed Complaint"). Tri-State CareFlight operates a fleet of aircraft, which it staffs with pilots and trained medical personnel. See Proposed Complaint ¶ 9 at 3. Tri-State CareFlight and Defendant Blake Stamper are or were the employers of all of the Proposed Intervenors within the definition of the New Mexico Minimum Wage Act, N.M. Stat. Ann. §§ 50-4-1 through 50-4-33 ("NMMWA"). Proposed Complaint ¶ 7, at 3. Tri-State CareFlight employs or employed the following people -- now seeking to intervene -- as pilots, nurses, or paramedics: Shailendra Basnet, Kristy Bell, Deborah Berest, Daniel Bergman, William Dallas Bundrant, Jr., Rocky H. Burrows, II, Chase Carter, Brenda Casarez, Michael Castro, Kara Cervantes, Thomas Cislo, David Daniels, Adam Doyle, Darren Een, Toby Eicher, Walter Fabian, Harold Joseph Fisher, Christina Fleeman, Luke Forslund, Salustiano Fragoso, Rehannon Gonzales, Kristen Grado, Courtney Guerra, Darrin Hamilton, Shane Herron, Alexander Howell, Danielle Irvin, Allen Jacobs, Erin Johnson, Alex Jones, Donald Luke Keenan, Daniel Kuhler, Simon Lucero, Raphael Mahaim, Nathan Maplesden, Cindy D. Maxwell, Jennifer Mazzanti, Bethany McCandless, Ron McDearmid, Dan Meehan, Kevin Napp, James O'Connor, Kathy Onsurez-Wilson, Eric Parker, Jason Perry,

Amanda Petersen, Brent Place, Jimmy Ronald Primm, Jr., Philip Qubain, Paul Ratigan, Joseph Root, Daron Ruckman, Frederic Ruebush, Jennifer Salaverry, Paul Serino, Christian Speakman, Ian Stephens, Daniel St. Peters, Usvaldo R. Trujillo, Paul Vacula, Jennifer Valdez, Graciela Villalobos, Eric Vogt, Greg Walsh, Tyler Wilkins, Virginia Williams, Terry Zacharias, and Michael Zulaski. See Supp. Motion to Intervene at 3-8 (listing the names and professional titles of each Proposed Intervenor).

## PROCEDURAL BACKGROUND

This case is a wage-and-hour dispute. See Proposed Complaint ¶ 1, at 2. The Proposed Intervenors seek to recover: (i) unpaid overtime compensation under the NMMWA; and (ii) other unpaid compensation on a theory of unjust enrichment. See Proposed Complaint ¶¶ 95-128, at 12-18.

The Original Plaintiffs, William D. Payne and Nicole Payne, filed their case in state court on September 11, 2014. See Payne v. Tri-State Careflight, LLC, D-101-CV-2014-02048, 1st Jud. Dist. Ct., Cty. of Santa Fe, State of N.M., filed September 11, 2014 (Montes, J.). Tri-State CareFlight and Stamper removed the case to federal court on November 17, 2014. See Notice of Removal, filed November 17, 2014 (Doc. 1)("Notice of Removal"). The Defendants invoked diversity jurisdiction, representing that there is complete diversity of citizenship between the Original Plaintiffs and the Defendants. See Notice of Removal ¶ 4, at 2.

On August 24, 2015, W. Payne and N. Payne moved to amend their complaint to: (i) eliminate a claim asserted for compensation for certain travel time; and (ii) add an additional Plaintiff -- Leslie B. Benson. See Plaintiffs' Amended Opposed Motion for Leave to File First Amended Complaint, filed August 24, 2015 (Doc. 44)("First Motion to Amend"). On September 4, 2015, W. Payne and N. Payne filed Plaintiffs' Motion for and Brief in Support of Class

Certification, filed September 4, 2015 (Doc. 48)("First Motion for Class Cert.").[3]  The Court

held a hearing on the First Motion to Amend on October 28, 2015.  See Clerk's Minutes, filed

October 28, 2015 (Doc. 67)("Oct. 28th Clerk's Minutes"); Notice of Motion Hearing, filed

October 16, 2015 (Doc. 64).  At the October 28, 2015, hearing, the Court granted the First

Motion to Amend.  See Oct. 28th Clerk's Minutes at 1; Order at 1, filed March 14, 2016

(Doc. 112).  The same day as the hearing, W. Payne and N. Payne filed their Amended

Complaint, in which W. Payne, N. Payne, and Benson asserted one count against the Defendants

for their violation of the NMMWA.[4]  See Amended Complaint ¶ 9-36, at 1-5.

In November, 2015, the three Original Plaintiffs -- W. Payne, N. Payne, and Benson --

reached resolutions on their respective claims.  See Intervenor MOO at 47.  On November 19,

2015, the Paynes reached a settlement with the Defendants in which the Defendants agreed to

provide them with full relief under the NMMWA.  See Intervenor MOO at 47.  Benson,

meanwhile, signed a global release in an administrative proceeding before the Occupational

Safety and Health Administration ("OSHA") on or around November 19, 2015.  Intervenor

MOO at 42.

With W. Payne, N. Payne, and Benson's claims resolved, the Named Plaintiffs -- a new

---

[3]W. Payne and N. Payne subsequently withdrew their First Motion for Class Cert on January 26, 2016.  See Plaintiffs' Notice of Withdrawal of Motion for Class Certification, filed January 26, 2016 (Doc. 96).

[4]The Amended Complaint did not reassert a count against the Defendants for unjust enrichment.  See Amended Complaint ¶ 25-36, at 4-5.  Asserting honest mistake, the Original Plaintiffs sought leave to file, and filed, their Second Amended Representative and Class Action Complaint for Damages for Violation of NMMWA and New Mexico Common Law, filed January 28, 2016 (Doc. 100)("Second Amended Complaint"), which also added as Plaintiffs the intervenors Bastian, Heard, Oldham, Welch, and Fernandez-Quezada.  See Memorandum Opinion and Order at 16-18, filed August 12, 2016 (Doc. 138)("Intervenor MOO"); Order, filed January 28, 2016 (Doc. 99)(granting leave to file the Second Amended Complaint with a count of unjust enrichment).

set of Plaintiffs comprising Bastian, Heard, Oldham, Welch, and Fernandez-Quezada -- sought to replace the Original Plaintiffs, by intervening pursuant to rule 24 of the Federal Rules of Civil Procedure, bearing similar wage grievances against the Defendants. See Opposed Motion to Intervene as Parties Plaintiff and Class Representatives, filed December 15, 2015 (Doc. 73) ("First Intervention Motion"). The Named Plaintiffs asserted:

> [N]one of the currently named Plaintiffs will be able to pursue this matter either individually or on behalf of the putative class members who were deprived of overtime pay pursuant to Defendants' uniform and unlawful overtime policies applicable to flight nurses, flight paramedics and pilots. Intervenors seek to pick up the prosecution of this lawsuit where the current Plaintiffs are soon to depart.

First Intervention Motion at 2.

As the motion to intervene was pending, the Defendants moved the Court, pursuant to rule 56 of the Federal Rules of Civil Procedure, to enter summary judgment in their favor and dismiss all claims in the Second Amended Complaint in their entirety and with prejudice. See Defendants Tri-State Careflight, LLC, and Blake A. Samper's Motion for Summary Judgment and Memorandum Brief in Support at 1, filed March 1, 2016 (Doc. 110)("MSJ"). The Defendants argued that federal law preempts the Named Plaintiffs' state-law claim for the alleged NMMWA violation and the state-law claim for unjust enrichment. See MSJ at 1. The Named Plaintiffs opposed the Defendants Motion for Summary Judgment, and also filed their Motion to Exclude Consideration of New Law or New Argument Raised in Defendants' Reply to the Motion for Summary Judgment or, in the Alternative, to Permit Plaintiff to File a Surreply, filed on May 2, 2016 (Doc. 123)("Motion to Exclude"), as a result of the Defendants' MSJ.

On August 12, 2016, the Court, pursuant to rule 24(b) of the Federal Rules of Civil Procedure, granted the Named Plaintiffs' First Intervention Motion, permitting Bastian, Heard, Oldham, Welch, and Fernandez-Quezada to intervene as Plaintiffs. See Intervenor MOO at 1-2.

The Court determined, among other things, that the apparent resolution of W. Payne, N. Payne, and Benson's claims "did not render this case moot under Article III because the personal stake of the indivisible class may inhere prior to a definitive ruling on class certification." Intervenor MOO at 41 (citing Lucero v. Bureau of Collection Recovery, Inc., 639 F.3d 1239, 1244-47 (10th Cir. 2011)).

In October, 2016, the Court denied the Defendants' MSJ, concluding that Congress "has not preempted the field of labor regulation for railroad and airline workers, and the present dispute does not involve the interpretation of a collective bargaining agreement." Memorandum Opinion and Order at 2, filed October 25, 2016 (Doc. 147)("MSJ MOO"). In the same ruling, the Court also determined that "the Defendants raised a new issue of law in their reply in support of their Motion for Summary Judgment, to which the Named Plaintiffs may reply with a surreply should they deem it appropriate." MSJ MOO at 2.

On November 17, 2016, the Defendants informed the Court that all five Named Plaintiffs -- Bastian, Heard, Oldham, Welch, and Fernandez-Quezada -- had accepted the Defendants' Offer of Judgment pursuant to rule 68 of the Federal Rules of Civil Procedure. See Notice of Acceptance of Rule 68 Offer of Judgment, filed November 17, 2016 (Doc. 149) ("Acceptance Notice"). According to the Defendants' filings, the Defendants made an Offer of Judgment to the Named Plaintiffs on November 2, 2016. See Certificate of Service, filed November 2, 2016 (Doc. 148)(stating that the Defendants "e-mailed to Christopher M. Moody and Repps D. Stanford," the Named Plaintiffs' attorneys, an Offer of Judgment on November 2, 2016). In the Offer of Judgment, the Defendants offered to pay each Named Plaintiff a certain amount of money, and to pay attorneys' fees and costs "actually and reasonably incurred . . . up to the date of this offer." Offer of Judgment, filed November 17, 2016 (Doc. 149-1). The Offer

of Judgment concluded by stating, "By accepting this Offer of Judgment, Plaintiffs agree to the entry of the attached form of final judgment." Offer of Judgment. On November 16, 2016, the Plaintiffs' counsel Mr. Moody sent an email to the Defendants' counsel, Jeffrey Lowry and Charles Vigil, stating that "Plaintiffs accept your offer of judgment." Email from Mr. Moody to Mr. Vigil and Mr. Lowry (sent November 16, 2016), filed November 17, 2016 (Doc. 149-1). The next day, on November 17, 2016, the Defendants filed their Acceptance Notice to the Court; the Acceptance Notice stated:

> Defendants hereby notify the Court that Plaintiffs have accepted Defendants' Rule 68 Offer of Judgment. A copy of the accepted Offer of Judgment is attached as Exhibit A, a copy of the Form of Judgment incorporated by reference into the Offer is attached as Exhibit B, and Plaintiff's [sic] acceptance of the offer is attached as Exhibit C.

Acceptance Notice at 1. Six days later, the Court took the Defendants' proposed final judgment and entered it with no changes. See Final Judgment, passim, filed November 23, 2016 (Doc. 150).

## 1. __The Motion to Intervene__.

Despite the Final Judgment, the Proposed Intervenors, just six days later, filed a motion to replenish the Plaintiffs' roster once again by way of another rule 24(b) intervention. See Opposed Fed. R. Civ. P. 24(B) Motion and Supporting Memorandum to Intervene as Parties Plaintiff and Class Representatives, filed on Nov. 29, 2016 (Doc. 151)("Motion to Intervene"). The Proposed Intervenors first assert that the motion is timely, arguing that whether an intervention is timely depends on the full context of the case; the analysis does not depend on any "'absolute measure of timeliness,'" nor is the timeliness requirement a "'tool of retribution to punish the tardy would-be intervenor.'" See Motion to Intervene at 5 (quoting Utah Ass'n of Ctys. v. Clinton, 255 F.3d 1249, 1250 (10th Cir. 2001)). An intervention is untimely, the

Proposed Intervenors contend, when it comes near the end of litigation, and when "allowing a party to intervene would cause undue prejudice and delay in the proceeding." Motion to Intervene at 5 (citing United States v. Washington, 86 F.3d 1499, 1505 (9th Cir. 1996); Associated Builders v. Herman, 166 F.3d 1248, 1257 (D.C. Cir. 1999)). The Proposed Intervenors argue that, although two years have elapsed in this litigation, "the instant motion arrives within two weeks after the currently named Plaintiffs accepted Defendants' Rule 68 Offers of Judgment. Prior to that time, there was no need for putative class members to intervene because their interests were already adequately protected." Motion to Intervene at 6.

The Proposed Intervenors also argue that their motion to intervene meets rule 24(b)'s other requirements, i.e., the Proposed Intervenors share identical legal and factual questions as the Named Plaintiffs, and intervention "will not result in undue delay or prejudice," nor "adversely affect the rights of Defendants in any respect." Motion to Intervene at 6. The Proposed Intervenors assert:

> Representative/class claims are already asserted against Defendants, and have been since this lawsuit was first filed. The requested intervention serves only to add new class representatives, all of whom are already members of the putative collective action and/or Rule 23 classes. The claims to be litigated and the company's policies upon which Plaintiffs are suing remain the same. The only material element that will change is the identities of the class representatives.

Motion to Intervene at 6-7.

The Proposed Intervenors also note that the Court previously concluded in this case that intervention would not cause prejudice or undue delay,[5] and assert that the same reasoning

---

[5]In its Intervenor MOO, the Court wrote:

[T]he Court concludes that permitting intervention in this case will not unduly delay or prejudice the adjudication of the original parties' rights. The Court cannot identify how intervention could unduly delay or prejudice the adjudication of the original plaintiffs' rights, given that they have been dismissed as parties.

should apply here, too.  See Motion to Intervene at 7 (citing Intervenor MOO at 47-48).

The Proposed Intervenors next assert that when class representatives' individual claims become moot, it may be appropriate to allow the class' attorneys to replace the mooted representative with a new one, either through formal intervention or simply identifying the new representative in a class certification order.  See Motion to Intervene at 7 (citing Manual for Complex Litigation § 21.26 Appointment of the Class Representatives at 277 (4th ed. 2004)). The Proposed Intervenors also quote a district court in Mississippi that summarizes the United States Court of Appeals for the Fifth Circuit's view that allowing mooted class members to be replaced may be in the best interest of justice and judicial economy.   See Motion to Intervene at 8 (quoting Larry James Oldsmobile-Pontiac-GMC Truck Co. v. Gen. Motors Corp., 175 F.R.D. 234, 239-40 (N.D. Miss. 1997)(Davidson, J.)("[T]he Fifth Circuit has noted that the trial court should consider whether it serves the interests of justice or judicial economy to postpone dismissal of the action for a specified period in which members of that subclass could become plaintiffs by amendment to the Complaint or by intervention and thereby save the subclass action.")).

2.     **The Response to the Motion to Intervene.**

A few weeks later, the Defendants filed Defendants' Response to Fed. R. Civ. P. 24(b) Motion and Supporting Memorandum to Intervene as Parties Plaintiff and Class Representatives,

With respect to the Defendants, the Court agrees with the Intervenors that allowing intervention will prejudice the Defendants only in that this lawsuit will continue.  The Defendants have already been defending against the Plaintiffs' claims, and granting the Motion would only add new class representatives whom are already members of the proposed class or classes.  The Court agrees with the Intervenors that "[t]he claims to be litigated and the company's policies upon which Plaintiffs are suing will not change in any respect" and that "[t]he only thing that will change is the identities of the class representatives."

Intervenor MOO at 47 (citations and footnote omitted).

filed December 16, 2016 (Doc. 153)("Intervene Response").  The Defendants argue that, once a court enters a final judgment, a "very strict standard" applies to determining whether a permissive intervention attempt is timely, Intervene Response at 2, and that a "strong showing" must be made to overcome a court's "considerable reluctance" to allow post-judgment intervention, Intervene Response at 2 (quoting <u>Meredith v. Schreiner Transp., Inc.</u>, 814 F. Supp. 1001, 1003 (D. Kan. 1993)(Belot, J.)(quoting 7C C. Wright & A. Miller, Federal Practice and Procedure § 1916, at 561 (3d ed. 2007))).

The Defendants then argue that the Proposed Intervenors' Motion to Intervene is untimely, because, for one, "there is no longer any lawsuit pending in which to intervene" given that "named Plaintiffs have not merely accepted a settlement offer; they agreed to the entry of a final judgment."  Intervene Response at 3.  Additionally, the Defendants argue that even if the lawsuit cannot be said to have concluded, it certainly must be close to a conclusion, and "all parties including the movants agree that intervention is properly denied when a lawsuit is near its end stage." Intervene Response at 4 (citing Motion to Intervene at 5).  The Defendants also note that the lawsuit has been pending for more than two years.  <u>See</u> Intervene Response at 4.

Finally, the Defendants argue that it does not matter that the Proposed Intervenors seek to intervene, not just as party Plaintiffs, but as class members, because the Court never certified a class.  <u>See</u> Intervene Response at 4.  The Defendants assert that, "[i]n fact, the possibility that the Court would *deny* class certification almost certainly prompted the named class members to accept Defendants' Rule 68 Offer of Judgment."  Intervene Response at 4 (emphasis in original).  In any case, the Defendants assert, "none of the procedural requirements or substantive concerns that apply to certified class actions applies here."  Intervene Response at 4.  In a footnote, the Defendants also question how the Court could maintain supplemental diversity jurisdiction over

two proposed intervenors who, like both Defendants, are Arizona citizens. See Intervene Response at 4 n.1 (citing Motion to Intervene at 2-3). The Defendants acknowledge that the Class Action Fairness Act, 28 U.S.C. § 1332(d)(4)(A) ("CAFA"), may allow for such jurisdiction, but note that Proposed Intervenors have not made that argument. Intervene Response at 4 n.1.

### 3. **The Reply to the Defendants' Response.**

Two weeks later, the Proposed Intervenors responded with their Reply to Motion to Intervene as Parties Plaintiff and Class Representatives, filed on December 28, 2016 (Doc. 154) ("Intervene Reply"). The Proposed Intervenors first argue that the case is not moot. See Intervene Reply at 2-5. The Proposed Intervenors contend that any heightened standards for post-judgment interventions are not applicable here, because Proposed Intervenors accepted a rule 68 offer while a motion for class certification was pending. See Intervene Reply at 3. The appropriate question to ask in this situation, the Proposed Intervenors contend, is whether "acceptance of the Rule 68 offers that dispose of all of the representatives' claims moot out the interests of the putative class members in the case such that intervention is not permissible." Intervene Reply at 3. The Proposed Intervenors assert that, in the United States Court of Appeals for the Tenth Circuit, a judgment offer to one class member does not moot the claims of the class. See Intervene Reply at 4 (citing Lucero v. Bureau of Collection Recovery, Inc., 639 F.3d 1239, 1240 (10th Cir. 2011)("Lucero"). The Proposed Intervenors additionally assert that the United States Courts of Appeals for the Third, Fifth, Sixth, and Seventh Circuits have similarly concluded that judgment offers do not moot class actions when a certification motion is pending. Intervene Reply at 4-5 (citing Lucero (referencing cases from the Third, Fifth, and Seventh Circuits), and Carroll v. United Compucred Collections, Inc. 399 F.3d 620, 625 (6th Cir. 2005)).

Moreover, the Tenth Circuit recognized a "'nascent interest' that attaches to the proposed class upon the filing of a class action complaint." Intervene Reply at 4 (quoting <u>Lucero</u> at 1249). The Proposed Intervenors also note that when class action plaintiffs have their claims dismissed before class certification, courts will typically "disregard the jurisdictional void" that is subsequently created and allow new plaintiffs to replace the dismissed ones rather than dismiss the entire action. Intervene Reply at 5 (quoting <u>Phillips v. Ford Motor Co.</u>, 435 F.3d 785, 787 (7th Cir. 2006)). The Proposed Intervenors assert that they are likewise seeking only to "fill the void." Intervene Reply at 5.

Next, the Proposed Intervenors dispute that their motion is untimely. <u>See</u> Intervene Reply at 5-6. They contend that although the proceeding is a few years old, it is not near its final stages; there has not been, for example, a class certification ruling or any pre-trial motions on liability. <u>See</u> Intervene Reply at 6. Judging timeliness by the mere passage of time, the Proposed Intervenors assert, is inappropriate, and that by the Defendants' line of reasoning, "if a defendant tendered a settlement offer one (1) day after the filing of a complaint and the plaintiff then accepted it, the case would be at the 'over and done' stage and intervention could never occur." Intervene Reply at 6.

In any case, the Proposed Intervenors contend that "the only reason the case has been pending for over two (2) years is because every time the existing plaintiffs move for class certification, Defendants tender settlement offers . . . and the next wave of Intervenors must pick up the lawsuit." Intervene Reply at 6. The Original Plaintiffs and the Named Plaintiffs, meanwhile, "have acted timely at all times material." Intervene Reply at 6.

In a footnote, the Proposed Intervenors also dispute the Defendants' contention that the possibility that the Court would deny class certification led the Named Plaintiffs to accept the

Defendants' judgment offer, arguing that "any denial of class certification would have no impact whatsoever on either the viability or the merits of Plaintiffs' *individual* claims." Intervene Reply at 3 n.2 (emphasis in original). Rather, the Proposed Intervenors assert that the Named Plaintiffs settled because the "Defendants' Rule 68 offers provided 100% of the recovery that Plaintiffs sought and that they ever could be awarded at trial." Intervene Reply at 3 n.2.

The Proposed Intervenors also assert that they did not address the Court's jurisdiction over the two Arizona citizens among the proposed intervenors in their Motion to Intervene or proposed Third Amended Complaint, because the Proposed Intervenors thought that the Court's jurisdiction under CAFA would be clear enough that "there would be no need for the parties to duel over [this] jurisdictional windmill." Intervene Reply at 7. With the topic now raised, however, the Proposed Intervenors dutifully proffer their reasons for CAFA-based jurisdiction. See Intervene Reply at 7-9. First, the Proposed Intervenors assert that their proposed Third Amended Complaint, "as well as the history of this lawsuit, should satisfy the Court . . . that this is a class action lawsuit and at least one member of the proposed class is a citizen of a state (i.e. New Mexico) different from any defendant (i.e. Arizona)." Intervene Reply at 8.

Second, the Proposed Intervenors assert that the class members' claims, once aggregated, will exceed the requisite five million dollars by multiplying the total number of proposed class -- "approximately 279" -- by a reasonable estimate of an average award. Intervene Reply at 9. The Proposed Intervenors note that the Defendants have already agreed to pay -- pursuant to their rule 68 judgment offer -- the five Named Plaintiffs a total of $229,552.19, plus reasonable attorneys' fees, which the Proposed Intervenors conservatively peg at $150,000.00. See Intervene Reply at 9. Altogether, that amount comes to $379,552.20 for five individuals, or $75,910.44 each. See Intervene Reply at 9. If each class member is awarded that amount, the

total award would be more than twenty million dollars; if each class members wins only $25,000 on average, the total would come to almost seven million dollars. See Intervene Reply at 9. In any case, the Proposed Intervenors add that "[t]he common fund theory on fees increases the sought after amount even more." Intervene Reply at 9.

Third, the Proposed Intervenors note that the Court has discretion to decline CAFA jurisdiction when greater than one-third but less than two-thirds of proposed class members and defendants are citizens of the state in which the action was originally filed. Intervene Reply at 9 (citing 28 U.S.C. § 1332(d)(3)). The Proposed Intervenors assert that "[g]iven that the class members largely lived and worked in New Mexico and based on the contact information provided by Defendants in discovery, Plaintiffs are unlikely to satisfy even the first condition." Intervene reply at 9-10. The Proposed Intervenors add that the Court "should trust that counsel scoured CAFA and the interpretive case law to locate any legitimate basis to invoke one of the exceptions to return to state court." Intervene Reply at 10.

### 4.    The Supplemental Motion to Intervene.

Six months later, the Proposed Intervenors submitted an Opposed Fed. R. Civ. P. 24(b) the Supp. Motion to Intervene, intending to add fifty-two more names to the list of individuals seeking to intervene.[6] Supp. Motion to Intervene at 2-9. The Proposed Intervenors assure the Court that the Supplemental Motion to Intervene seeks only to add names and not offer additional arguments, and so opts to "not recapitulate in detail the arguments that were set forth" in earlier briefings. Supp. Motion to Intervene at 9. Instead, the Proposed Intervenors briefly summarize their earlier arguments, asserting once again that the intervention request is not

---

[6]The Proposed Intervenors note that one of the original 17 Proposed Intervenors, Julie Etchegaray, "has elected not to pursue suit at this time" and has been removed from the list. Supp. Motion to Intervene at 2 n.1. Consequently, the number of Proposed Intervenors comes to 68. See Supp. Motion to Intervene at 2.

untimely; the proceeding is not near its end stages; these new Proposed Intervenors face the same questions of fact and law as the Named Plaintiffs and proposed intervenors; intervention "will not serve to delay or prejudice the adjudication of the original parties' rights"; the "substantial weight of authority holds that the doctrine of mootness does not, and should not, serve as a legal obstacle to the Intervenors' efforts to join this lawsuit"; and that there is "no reason to force intervenors to start over from scratch." Supp. Motion to Intervene at 9-10.

5.    **The Response to the Supplemental Motion to Intervene.**

The Defendants then submitted the Defendants' Response to Plaintiffs' Opposed Fed. R. Civ. P. 24(b) Supplemental Motion and Supporting Memorandum to Intervene as Parties Plaintiffs and Class Representatives, filed July 17, 2017 (Doc. 168)("Supp. Intervene Response"). The Defendants begin by arguing that there is "no provision in the Federal Rules of Civil Procedure for filing 'supplemental' motions" and that the supplemental motion is a "new motion, filed months after final judgment was entered." Supp. Intervene Response at 1. Next, the Defendants assert that Proposed Intervenors' Supplemental Motion to Intervene "fails for the same . . . reasons that Defendants noted in their response" to the Proposed Intervenors' earlier Motion to Intervene, namely that courts are generally reluctant to allow interventions after a final judgment and that the Proposed Intervenors have failed to establish that the motion to intervene is timely. Supp. Intervene Response at 2. The Defendants then contend that the Proposed Intervenors have cited authorities that do not support granting the Proposed Intervenors' post-Final Judgment intervention request: in the Defendants' view, Lucero merely considers whether an *unaccepted* judgment offer moots other class members' claims, and Lusardi v. Xerox Corp., 975 F.2d 964 (3rd Cir. 1992)("Lusardi") affirmed a *denial* of intervention. See Supp. Intervene Response at 3-4. The Defendants also argue that a closed case can only be reopened through

rule 60, and point out that the Proposed Intervenors have not attempted a rule 60-based argument. See Supp. Intervene Response at 3.

The Defendants further assert that "it is now abundantly clear that this lawsuit is not appropriate to proceed as a class action," because the "sheer number of proposed intervenors disproves Plaintiffs' contention, advanced in an earlier motion to certify a class, that a class action lawsuit would be 'superior' to other . . . methods . . . as required by Rule 23(b)(3)." Supp. Intervene Response at 4. Additionally, the Defendants contend that "it is neither feasible nor reasonable for dozens of individuals to serve as class 'representatives'" given the requirements for class representatives to be, for example, sufficiently informed about the litigation to be directing it. Supp. Intervene Response at 5. The Defendants conclude by arguing that "[t]he reality . . . is that the would-be plaintiffs have abandoned the class action procedure in all but name" and that "it is clear that interested individuals can should pursue their claims in an ordinary, non-class action lawsuit." Supp. Intervene Response at 5-6.

6.      **The Reply to the Defendants' Response.**

In their Reply to Fed. R. Civ. P. 24(b) Supplemental Motion, filed July 19, 2017 (Doc. 169)("Supp. Intervene Reply"), the Proposed Intervenors address the Defendants' arguments and also submit one more intervenor for good measure.[7]  Supp. Intervene Reply at 1 n.1. The Proposed Intervenors first address whether their  "supplemental" motion is permitted by the Federal Rules of Civil Procedure, arguing that there is no rule prohibiting such a filing, and, in any case, states that they are "more than amenable to substitut[e] the word 'second' for 'supplemental'" if need be. Supp. Intervene Reply at 1-2. The Proposed Intervenors then assert,

---

[7]The addition of this new individual -- William J. McConnell -- brings the total number of proposed intervenors to 69. See Supp. Motion Reply at 1 n.1.

once again, that the mere passage of time should not itself determine whether a motion is timely. See Supp. Intervene Reply at 2-3.

Next, the Proposed Intervenors touch upon the rule 60 issue, characterizing the Defendants' invocation of rule 60 as "inexplicable." Supp. Motion Reply. The Proposed Intervenors assert that rule 60 is "entirely irrelevant," because: (i) the "[i]ntervenors are not seeking, and do not need to seek, relief from any final judgment"; and (ii) they lack standing, in any case, to seek such relief from a final judgment arising from the judgment offer's "knowing and voluntary acceptance . . . by the recent plaintiffs on their individual legal claims." Supp. Intervene Reply at 3.

The Proposed Intervenors again argue that the final judgment has not rendered the lawsuit moot, pointing to the Court's first -- and pre-Final Judgment -- intervention ruling wherein the Court determined that one party plaintiff's settlement "did not render this case moot under Article III because the personal stake of the indivisible class may inhere prior to a definitive ruling on class certification." Supp. Motion Reply at 4 (quoting Intervenor MOO at 41). The Proposed Intervenors contend that the "same rationale applies in the present situation, as the 'nascent interest' of the class members/Intervenors . . . remains." Supp. Intervene Reply at 4.

The Proposed Intervenors dispute the Defendants' assertion that Lusardi supports denying intervention in this case, noting, for instance, that the Tenth Circuit cited Lusardi as standing for the proposition that a judgment offer will not moot a class-action claim. Supp. Intervene Reply at 5 (citing Lucero, 639 F.3d at 1250). The Proposed Intervenors assert that Lusardi demonstrates how the usual mootness rules may not apply in class actions when a class-certification motion is pending, i.e., that

> while a plaintiff may settle his individual claim with a defendant, that would not deprive the Court of subject matter jurisdiction or render moot a plaintiff's right, for example, "to argue a certification motion that was filed before his claims expired and which the district court did not have a reasonable opportunity to decide."

Supp. Intervene Reply at 5 (quoting <u>Lusardi</u>, 975 F.2d at 975). In this case, the Proposed Intervenors contend that, "[w]hen the Plaintiffs . . . recently settled, there existed a pending, and undecided, motion for class certification/collective action filed at a time when the Plaintiffs had claims 'in issue' and prior to their acceptance of the Rule 68 offers." Supp. Intervene Reply at 7. Consequently, the Proposed Intervenors conclude, "[t]here remains a live case or controversy in this matter into which the Intervenors may intervene." Supp. Intervene Reply at 7.

The Proposed Intervenors also dispute the Defendants' contention that the large number of intervenors demonstrates that a class-action lawsuit is not appropriate. <u>See</u> Supp. Intervene Reply at 8. The Proposed Intervenors argue that the elements required for permissive interventions "are separate from, and do not implicate, the adequacy and superiority elements" required for class certification. Supp. Intervene Reply at 8. The Proposed Intervenors also insist that they have "no intention of moving to certify all 69 Intervenors as class representatives," and instead will "designate a fixed and manageable number of proposed class representatives to carry the Rule 23 torch." Supp. Intervene Reply at 9.

### 7. **The Hearing.**

The Court held a hearing on August 2, 2017. <u>See</u> Transcript of Hearing (taken August 2, 2017)("Tr.").[8] The Court began by asking the Proposed Intervenors whether a rule 59 or rule 60 motion would be necessary before the Court could consider the intervention question. <u>See</u> Tr. at 4:2-5 (Court). The Proposed Intervenors replied that in the cases from the Third, Fifth, Sixth,

---

[8]The Court's citations to this hearing's transcript refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

and Seventh Circuits cited in the Proposed Intervenors' briefings do indicate that a rule 59 or 60 motion is needed to "resurrect the class action lawsuit" following a dismissal "which would, presumably, have led to some kind of judgment or closing of the case." Tr. at 4:24-5:11 (Stanford). The Proposed Intervenors added that "I didn't see in any of the cases any discussion where there was any distinction between a final judgment or a stipulation and dismissal for purposes of resurrecting the case and getting around the mootness doctrine." Tr. at 5:11-12 (Stanford). The Court asked the Proposed Intervenors whether they had "found any case in which there was a final judgment and they then allowed intervention without discussing what to do with that final judgment," and the Proposed Intervenors replied that they had not, but that <u>Lusardi</u> -- which, according to Proposed Intervenors, featured a stipulation and a dismissal of claims -- "is probably the closest." Tr. at 5:15-6:10 (Court, Stanford). The Court stated that it seems there's "nothing unique about a class action or a collective action of some sort that doesn't require use to look at 59 and 60," and the Proposed Intervenors responded that "all I can do is reiterate [that] I haven't seen any discussion in the context of the special rules that exist in the doctrine of mootness with regard to dismissal and final judgment in that context." Tr. at 7:16-22 (Court, Stanford).

The Court then addressed the fact that the Proposed Intervenors' attorneys were also the Named Plaintiffs' attorneys, and asked why counsel would facilitate a Final Judgment entry if they knew they "were about to have an intervention with a larger group of Plaintiffs." Tr. at 8:8-10 (Court). The Proposed Intervenors replied that, after considering the Court's previous intervention ruling as well as cases from other circuits, they "didn't see any . . . meaningful distinction between [an] entry of final judgment and [a] stipulation and dismissal in a situation where there was a pending motion for class certification." Tr. at 8:11-19 (Stanford). The

Proposed Intervenors then stated that "the intervenors are going to have a hard time getting through the doors of a rule 59 and rule 60." Tr. at 9:1-3 (Stanford). The Proposed Intervenors added that, should the Court insist on requiring a rule 59 or 60 motion before getting to the motion to intervene, "we'll probably just go another path and avoid that issue altogether, if that's the principal concern for the court." Tr. at 10:13-15 (Stanford).

The Court then asked the Defendants whether the Proposed Intervenors may intervene despite the final judgment, and the Defendants responded that "we think . . . the Court should not allow intervention even without respect to the rule 59 or rule 60 issue." Tr. at 13:2-9 (Court, Lowry). The Defendants added that in Lusardi, "the District Court denied a Motion to Intervene and the Third Circuit affirmed that denial, so we think that [the case] stands for the proposition that post-judgment intervention should not be allowed." Tr. at 13:9-14 (Lowry). The Court then asked why the Defendants would not "just stipulate to setting aside the judgment and allowing the motion to intervene" given that the proposed intervenors would likely commence separate litigation against Defendants if they are not permitted to intervene, and the Defendants replied that "we think when the final judgment is entered in a case, regardless of whether the class certification issue has been decided, the tolling stops [and] the statute starts running again." Tr. at 14:14-22 (Court, Lowry). The Defendants stated, however, that, "[a]s a practical matter, it's not going to make a big difference." Tr. at 14:23-24 (Lowry).

The Proposed Intervenors then returned to its arguments based on Lusardi, asserting that neither the District Court nor the Third Circuit in that case got "wrapped up with the fact that there was dismissal of the lawsuit" because, in the Proposed Intervenors' view, a "dismissal is [a] dismissal if it's done under the auspices of rule 41 or 42 or a final judgement -- the case is effectively over." Tr. at 15:21-16:2 (Stanford). What mattered in Lusardi, the Proposed

Intervenors insisted, was that, "at the time that the plaintiffs settled their case, there was no pending motion for class certification." Tr. at 16:4-6 (Stanford). Summarizing the cases cited in their various briefings, the Proposed Intervenors stated:

> They were all predicated on the idea from <u>Lucero</u> that there is a nascent interest, that there is a life that still exists in the case with regard to the putative class members. . . . [T]here wasn't any discussion or difference of opinion over whether or not the plaintiffs in each of these cases had their individual claims mooted out either by dismissal. And, in this case, why would final judgment be any different? There was still a life that existed over and above the activities . . . between the plaintiffs and the defendants.

Tr. at 16:16-25 (Stanford).

### LAW REGARDING PERMISSIVE INTERVENTION

Rule 24(b) provides for permissive intervention:

(1) **In General.** On timely motion, the court may permit anyone to intervene who:

    (A)    is given a conditional right to intervene by a federal statute; or

    (B)    has a claim or defense that shares with the main action a common question of law or fact.

(2) **By a Government Officer or Agency.** On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:

    (A)    a statute or executive order administered by the officer or agency; or

    (B)    any regulation, order, requirement, or agreement issued or made under the statute or executive order.

(3) **Delay or Prejudice.** In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b). The movant bears the burden of establishing its right to intervene. <u>See</u> <u>United States v. Tex. E. Transmission Corp.</u>, 923 F.2d 410, 414 (5th Cir. 1991). "Unlike Rule

24(a), which governs mandatory intervention, Rule 24(b) specifically vests discretion in district courts to consider whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties." 6 James W. Moore, <u>Moore's Federal Practice</u> § 24.10[1], at 24-63 (3d ed. 2012)(citation omitted). <u>Accord</u> <u>In re Sierra Club</u>, 945 F.2d 776, 779 (4th Cir. 1991) ("The district court, however, incorrectly bolstered its denial of intervention of right by referring to concerns of judicial economy and need for guidance. Although those issues have a place in motions for permissive intervention, Rule 24(a) affords them no weight."). "The district court possesses broad discretion in determining whether to grant permissive intervention and will rarely be reversed on appeal." 6 Moore, <u>supra</u>, § 24.10[1], at 24-63. "[C]onsiderations of trial convenience dominate the question of whether to allow permissive intervention." 6 Moore, <u>supra</u>, § 24.10[1], at 24-63. <u>Accord</u> <u>Garza v. Cty. of L.A.</u>, 918 F.2d 763, 777 (9th Cir. 1990)("The decision to grant or deny [permissive] intervention is discretionary, subject to considerations of equity and judicial economy.").

"To permissively intervene, a party need not have a direct personal or pecuniary interest in the subject of the litigation." <u>San Juan Cty., Utah v. United States</u>, 503 F.3d 1163, 1207 (10th Cir. 2007). Permissive intervention lies in the court's sound discretion, and the appellate court will not disturb the district court's exercise of that discretion absent clear abuse. <u>See</u> <u>United Nuclear Corp. v. Cranford Ins. Co.</u>, 905 F. 2d 1424, 1427 (10th Cir. 1990). The Court has previously stated:

> Rule 24(b) allows permissive intervention under the following conditions: (i) the application to intervene is timely; (ii) the applicant's claim or defense and the main action have a question of law or fact in common; and (iii) intervention will not unduly delay or prejudice the adjudication of the original parties' rights.

<u>Forest Guardians v. U.S. Dep't of Interior</u>, No. CIV-02-1003 JB/WDS, 2004 WL 3426413, at *10-11 (D.N.M. Jan. 12, 2004)(Browning, J.). Rule 24(b)(3) requires the court to consider

whether intervention will cause undue delay or prejudice when considering whether to grant permissive intervention. See FED. R. CIV. P. 24(b)(3); DeJulius v. New Eng. Health Care Emps. Pension Fund, 429 F.3d 935, 943 (10th Cir. 2005)(noting that district courts are required to consider undue prejudice or delay in deciding whether to grant permissive intervention); Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. 236, 259 (D.N.M. 2008)(Browning, J.). While not a required part of the test for permissive intervention, a court's finding that existing parties adequately protect prospective intervenors' interests will support a denial of permissive intervention. See City of Stilwell v. Ozarks Rural Elec. Coop. Corp., 79 F.3d 1038, 1043 (10th Cir. 1996).

"The timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances." Am. Assoc. of People with Disabilities v. Herrera, 257 F.R.D. at 245 (quoting Utah Ass'n of Ctys. v. Clinton, 255 F.3d at 1250). "Unusual circumstances" refers to those circumstances that would excuse the untimely filing of a motion to intervene. In re SEC, 296 F. App'x 637, 640 (10th Cir. 2008)(unpublished).[9] In measuring timeliness by the length of time that the applicant

_____

[9]In re SEC is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court finds that In re SEC has persuasive value with respect to material issues, and will assist the Court in its disposition of

knew of its interest, the Tenth Circuit looks to the time "when the movant was on notice that its interests may not be protected by a party already in the case." <u>Okla. ex rel. Edmondson v. Tyson Foods, Inc.</u>, 619 F.3d 1223, 1232 (10th Cir. 2010). Generally speaking, the timeliness requirement for permissive interventions is stricter than for intervention as of right. <u>See</u> 7C C. Wright & A. Miller, Federal Practice and Procedure § 1916, at 531 (3d ed. 2007)("Since in situations in which intervention is of right the would-be intervenor may be seriously harmed if intervention is denied, courts should be reluctant to dismiss such a request for intervention as untimely, even though they might deny the request if the intervention were merely permissive.").

## LAW REGARDING FINAL JUDGMENTS

With few exceptions, "federal appellate courts have jurisdiction solely over appeals from *'final decisions* of the district courts of the United States.'" <u>Rekstad v. First Bank Sys.</u>, 238 F.3d 1259, 1261 (10th Cir. 2001)(quoting 28 U.S.C. § 1291)(emphasis in original). "A final decision is one that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" <u>Rekstad v. First Bank Sys.</u>, 238 F.3d at 1261 (quoting <u>Catlin v. United States</u>, 324 U.S. 229, 233 (1945)). Where a suit involves multiple claims, the district court must, pursuant to rule 54(b) of the Federal Rules of Civil Procedure, "adjudicate every claim before the court's decision can be considered final and appealable." <u>Rekstad v. First Bank Sys.</u>, 238 F.3d at 1261. In certain, limited circumstances, however, the district court "may direct the entry of final judgment as to one or more but fewer than all the claims" to secure immediate appellate review of certified final orders. Fed. R. Civ. P. 54(b). Otherwise, appellate review is foreclosed until all claims have been terminated on the merits. <u>See</u> <u>Rekstad v. First Bank Sys.</u>, 238 F.3d at 1261.

Under rule 58(a) of the Federal Rules of Civil Procedure, "[e]very judgment and

---

this Memorandum Opinion and Order.

amended judgment must be set out in a separate document," save for orders disposing of certain motions. The Supreme Court of the United States of America has stated that the separate-document rule must be "'mechanically applied'" in determining whether an appeal is timely. Allison v. Bank One-Denver, 289 F.3d 1223, 1232-33 (10th Cir. 2002)(quoting Bankers Trust Co. v. Mallis, 435 U.S. 381, 386 (1978)(internal citation omitted)). Furthermore, "'absent a formal judgment,' a district court's order remains appealable." Allison v. Bank One-Denver, 289 F.3d at 1232-33 (quoting Shalala v. Schaefer, 509 U.S. 292, 303 (1993)). "Although parties may waive Rule 58's separate-document requirement by allowing an appeal to go forward, see Bankers Trust, 435 U.S. at 384, such waiver cannot be used to defeat appellate jurisdiction." Allison v. Bank One-Denver, 289 F.3d at 1232-33 (citing Clough v. Rush, 959 F.2d 182, 186 (10th Cir. 1992)).

Accordingly, under the separate-document rule, a final judgment "must be a self-contained document, saying who has won and what relief has been awarded, but omitting the reasons for this disposition, which should appear in the court's opinion." In re Taumoepeau, 523 F.3d at 1217 (internal quotation marks omitted). Besides its importance in determining when the time clock starts ticking for purposes of an appeal, "[s]trict application of Rule 58 eliminates any question as to when the clock for filing post judgment motions . . . begins to tick. Orders disposing of certain enumerated motions, including post judgment motions under Fed. R. Civ. P. 59 and 60, are excepted from Rule 58's separate judgment requirement." Warren v. Am. Bankers Ins. of Fla., 507 F.3d 1239, 1242 (10th Cir. 2007). Thus, the Tenth Circuit "strictly adhere[s] to the Supreme Court's directive to apply Rule 58 'mechanically.'" Warren v. Am. Bankers Ins. of Fla., 507 F.3d at 1243.

## LAW REGARDING POST-FINAL JUDGMENT INTERVENTION

Courts have allowed interventions even after they have entered a final judgment.  See, e.g., McDonald v. E. J. Lavino Co., 430 F.2d 1065, 1072 (5th Cir. 1970)("[W]e cannot conclude that the motion to intervene was untimely merely because it came a few hours after the entry of judgment."); McClain v. Wagner Elec. Corp., 550 F.2d 1115, 1120 (8th Cir. 1977)("[T]he fact that a judgment has been entered in the case does not necessarily preclude later intervention."). Intervention after final judgment is, however, disfavored.  See 7C C. Wright & A. Miller, Federal Practice and Procedure § 1916, at 561 (3d ed. 2007)("There is considerable reluctance on the part of the courts to allow intervention after the action has gone to judgment and a strong showing will be required of the applicant.").  See e.g., McDonald v. E. J. Lavino Co., 430 F.2d at 1072 ("It is true, as we have noted, that an attempt to intervene after final judgment is ordinarily looked upon with a jaundiced eye.").

Courts have stated that, once a court has entered a final judgment, a proposed intervenor must make a "strong showing."  Meredith v. Schreiner Transp., Inc., 814 F. Supp. 1001, 1003 (D. Kan. 1993)(Belot, J.)(quoting Wright et al supra, § 1916, at 561).  See McClain v. Wagner Elec. Corp., 550 F.2d 1115, 1120 (8th Cir. 1977); United States v. Associated Milk Producers, Inc., 534 F.2d 113, 116 (8th Cir. 1976)("The general rule is that motions for intervention made after entry of final judgment will be granted only upon a strong showing of entitlement and of justification for failure to request intervention sooner."); Com. of Pennsylvania v. Rizzo, 66 F.R.D. 598, 600 (E.D. Pa. 1975)(Bechtle, J.)(requiring a "strong showing" to justify a post-judgment intervention motion).  "Motions for intervention after judgment ordinarily fail to meet this exacting standard[.]"  Meredith v. Schreiner Transp., Inc., 814 F. Supp. at 1003 (quoting Wright et al. supra, § 1916, at 561).  The Tenth Circuit, for instance, denied an intervention

motion filed after civil contempt proceedings began for a party's order violation, explaining that, "[a]bsent extraordinary and unusual circumstances, intervention by a party who did not participate in the litigation giving rise to the judgment should not be permitted." NLRB v. Shurtenda Steaks, Inc., 424 F.2d 192, 194 (10th Cir.1970).

The extra scrutiny is meant to protect the parties and help the courts. A Kansas District Court explained: "Post-judgment interventions are generally disfavored because of the assumption that they will (1) prejudice the rights of existing parties, and (2) interfere with the orderly processes of the court." Brown v. Bd. of Ed. of Topeka, Shawnee Cty., Kansas, 84 F.R.D. 383, 399 (D. Kan. 1979). See McDonald v. E. J. Lavino Co., 430 F.2d at 1072 (5th Cir. 1970). Courts have stated that, absent a risk of prejudicing the parties or burdening the court, "there is no strong reason to deny the motion to intervene merely because it is made after judgment has been rendered." Brown v. Bd. of Ed. of Topeka, Shawnee Cty., Kansas, 84 F.R.D. at 399. See McDonald v. E. J. Lavino Co., 430 F.2d at 1072 (noting that "it has been the traditional attitude of the federal courts to allow intervention where no one would be hurt and greater justice would be attained").

When it comes to post-judgment class action intervention motions, courts have denied post-judgment intervention when doing so would, e.g., destroy a settlement, see e.g., In re Holocaust Victim Assets Litig., 225 F.3d 191, 199 (2d Cir. 2000), or prejudice a party by delaying proceedings, see e.g., In re Wellbutrin XL 268 F.R.D. 539, 545 (E.D. Pa. 2010) (McLaughlin). Courts also consider whether the proposed intervenors acted promptly upon learning that his or her interests would not be adequately represented. See, e.g., Hill v. W. Elec. Co., 672 F.2d 381, 386 (4th Cir. 1982).

## LAW REGARDING RULE 59(e) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Rule 59(e) of the Federal Rules of Civil Procedure states: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). "A motion under Rule 59(e) is warranted when: (1) there has been an intervening change in the controlling law; (2) there is newly discovered evidence which was previously unavailable; or (3) it is necessary to correct clear error or prevent manifest injustice." Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000). "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." Servants of Paraclete v. Does, 204 F.3d at 1012 (citation omitted). A district court has considerable discretion in ruling on a motion to reconsider. See Phelps v. Hamilton, 122 F.3d 1309, 1324 (10th Cir. 1997). A rule 59(e) motion is not an opportunity to rehash arguments previously addressed or to advance new arguments that could have been raised in prior briefing. See Servants of Paraclete v. Does, 204 F.3d at 1012 ("It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." (citation omitted)).

## LAW REGARDING RULE 59(a) MOTION FOR A NEW TRIAL

"As a general rule, motions for a new trial should be granted when the trial court is firmly convinced that the jury has reached a plainly erroneous result or the verdict is a miscarriage of justice." 9 Moore's Federal Practice ¶ 50.06[6][a], at 50-37 (3d ed. 2016). Regarding motions for a new trial, rule 59(a) provides:

**(a) In General.**

    **(1) *Grounds for New Trial.*** The court may, on motion, grant a new trial on all or some of the issues -- and to any party -- as follows:

> **(A)** after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or
>
> **(B)** after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

Fed. R. Civ. P. 59(a)(1). "A motion for a new trial must be filed no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(b).

"The applicable standard applied by the trial court in its exercise of discretion [in granting or denying a rule 59 motion] varies with the grounds for which relief is sought." 12 Moore's Federal Practice ¶ 59.13[1], at 59-39 (3d ed. 2016). In Montgomery Ward & Co. v. Duncan, 311 U.S. 243 (1940), the Supreme Court provided a list of grounds for which party may move for a new trial:

> The motion for a new trial may invoke the discretion of the court in so far as it is bottomed on the claim that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury.

311 U.S. at 251. See United States v. Hess, 341 F.2d 444, 448 (10th Cir. 1965)("Insufficiency of the evidence is one of the common law grounds for directing a verdict or granting a motion for a new trial . . . .")(citing Montgomery Ward & Co. v. Duncan, 311 U.S. at 251).

"A Rule 59(a) motion for a new trial 'normally involves a review of the facts presented at trial, and thus involves the discretion of the trial court.'" Elm Ridge Expl. Co., LLC v. Engle, 721 F.3d 1199, 1216 (10th Cir. 2013)(quoting Escue v. OK Coll., 450 F.3d 1146, 1157 (10th Cir. 2006)). See 9 Moore's Federal Practice ¶ 50.06[6][b], at 50-38 (3d ed. 2016)("Trial courts have broad discretion to grant motions for new trial . . . ."). "In deciding a new trial motion based on insufficiency of the evidence, a district court must analyze whether the verdict 'is clearly, decidedly or overwhelmingly against the weight of the evidence.'" Elm Ridge Expl. Co., LLC v.

Engle, 721 F.3d at 1216 (quoting M.D. Mark, Inc. v. Kerr-McGee Corp., 565 F.3d at 762).  The

Tenth Circuit has stated that, when reviewing a rule 59 motion, "[t]he court considers the

evidence in the light most favorable to the prevailing party."  Snyder v. City of Moab, 354 F.3d

1179, 1188 (10th Cir. 2003)(citing United Int'l Holdings, Inc., v. The Wharf (Holdings) Ltd.,

210 F.3d 1207, 1227 (10th Cir. 2000)).  See Escue v. OK Coll., 450 F.3d at 1156.[10]

---

[10] The Court notes that the Tenth Circuit's position regarding the standard for viewing the evidence when determining a rule 59 motion for new trial is in tension with the weight of modern authority.  See Rivera v. Rivera, 262 F. Supp. 2d 1217, 1230 (D. Kan. 2003)(O'Hara, M.J.)(citing Manus v. Am. Airlines, Inc., 314 F.3d 968, 973 (8th Cir. 2003)(concluding that trial court is entitled to interpret the evidence and judge the credibility of witnesses on a motion for a new trial); Farrior v. Waterford Bd. of Educ., 277 F.3d 633, 634-35 (2d Cir. 2002)(concluding that district court is free to weigh the evidence on a motion for new trial and need not view the evidence in the light most favorable to the verdict winner), cert. denied, 536 U.S. 958 (2002); Mentor H/S, Inc. v. Med. Device Alliance, Inc., 244 F.3d 1365, 1374 (Fed. Cir. 2001)(concluding that district court may weigh the evidence and credibility of the witnesses on a motion for a new trial); Conner v. Schrader-Bridgeport Int'l, Inc., 227 F.3d 179, 200 (4th Cir. 2000)(concluding that district court may weigh the evidence and consider the credibility of the witnesses on a motion for a new trial); Clay v. Ford Motor Co., 215 F.3d 663, 672 (6th Cir. 2000)(concluding that district court must compare and weigh evidence on a motion for a new trial); Whitehead v. Food Max of Miss., Inc., 163 F.3d 265, 270 (5th Cir. 1998)(concluding that district court may weigh the evidence in ruling on a motion for a new trial, and it need not view the evidence in the light most favorable to the verdict winner, as is required in passing on motions for judgment as a matter of law); Thomas v. Stalter, 20 F.3d 298, 304 (7th Cir. 1994)(concluding that district court may weigh the evidence and assess the witnesses' credibility in ruling on a motion for a new trial); Landes Constr. Co. v. Royal Bank of Canada, 833 F.2d 1365, 1371 (9th Cir. 1987)(concluding that trial court may weigh the evidence and assess the credibility of witnesses on a motion for a new trial, and it need not view the evidence in the light most favorable to the prevailing party); Mayo v. Schooner Capital Corp., 825 F.2d 566, 569 (1st Cir. 1987)(concluding that district court may consider witnesses' credibility in ruling on a motion for a new trial)).  Moreover, a leading treatise explains that "a trial judge hearing a motion for a new trial is free to weigh the evidence and need not view it in the light most favorable to the verdict winner."  12 Moore's Federal Practice ¶ 50.06[6][b], at 50-38 (3d ed. 2016).  This rule is in contrast to rule 50, under which "courts may grant judgment as a matter of law only if there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmovant under controlling law and may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence."  12 Moore's Federal Practice ¶ 50.06[6][b], at 50-39 (3d ed. 2016).  Because rule 50 motions are often made in conjunction with rule 59 motions, it is significant to emphasize that the standards that a trial court applies to a renewed motion for judgment as a matter of law under rule 50 and a new trial motion differ.  See 12 Moore's Federal Practice ¶ 59.05[5], at 59-16.1 (3d ed. 2016).

## LAW REGARDING RULE 60 OF THE FEDERAL RULES OF CIVIL PROCEDURE

Rule 60(b) of the Federal Rules of Civil Procedure allows a court to relieve a party from a judgment or order for "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), or "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6). "Rule 60(b) is an extraordinary procedure permitting the court that entered judgment to grant relief therefrom upon a showing of good cause within the rule." Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d 1442, 1444 (10th Cir. 1983). Rule 60(b) "is not a substitute for appeal, and must be considered with the need for finality of judgment." Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d at 1444 (citing Brown v. McCormick, 608 F.2d 410, 413 (10th Cir. 1979)). The rule was designed to strike a "delicate balance" between respecting the finality of judgment and, at the same time, recognizing the court's principal interest of executing justice. Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d at 1444. Once a case is "unconditionally dismiss[ed],"[11] the court loses all jurisdiction over the case other than the

---

[11]Rule 41(a)(2), which governs all dismissals undertaken by way of a court order, grants courts discretion to condition dismissal "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Such conditions "could include retention of some jurisdiction by the court." Smith v. Phillips, 881 F.2d 902, 905 (10th Cir. 1989)(citing McCall-Bey v. Franzen, 777 F.2d 1178, 1188-90 (7th Cir. 1985)). The Tenth Circuit has stated that, if the dismissal is pursuant to rule 40(a)(1)(A)(ii), undertaken without a court order, then the court "is powerless to condition [the] dismissal . . . upon a retention of jurisdiction." Smith v. Phillips, 881 F.2d at 905. This rule is likely no longer true; the district court can probably attach a condition retaining jurisdiction, but only if the parties agree.

> Even when . . . the dismissal is pursuant to Rule 41(a)(1)(ii) [now rule 41(a)(1)(A)(ii)] (which does not by its terms empower a district court to attach conditions to the parties' stipulation of dismissal) we think the court is authorized to embody the settlement contract in its dismissal order or, what has the same effect, retain jurisdiction over the settlement contract) [sic] if the parties agree.

Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381-82 (1994).

The only factors counseling hesitation in endorsing the view that a court may retain

ability to hear motions under rule 60(b).  Smith v. Phillips, 881 F.2d at 904 ("We agree with the Seventh Circuit that '[a]n unconditional dismissal terminates federal jurisdiction except for the limited purpose of reopening and setting aside the judgment of dismissal within the scope allowed by [rule] 60(b).'" (alterations in original)).

Motions to obtain relief from a judgment or order based on "mistake, inadvertence, surprise, or excusable neglect" must be brought "within a reasonable time . . . no more than a year after the entry of the judgment or order or the date of the proceeding."  Fed. R. Civ. P. 60(c)(1).  See Blanchard v. Cortes-Molina, 453 F.3d 40, 44 (1st Cir. 2006)("[R]elief from judgment for reasons of 'mistake, inadvertence, surprise, or excusable neglect,' must be sought within one year of the judgment.").  This deadline may not be extended and is not subject to the court's discretion.  See Fed. R. Civ. P. 6(b)(2) ("A court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b).").  An appeal's pendency does not toll the time requirement for pursuing a motion under rule 60(b).  See Fed. R. Civ. P. 60(c)(1); Griffin v. Reid, 259 F. App'x 121, 123 (10th Cir. 2007)(unpublished); Tool Box, Inc. v. Ogden

_____

jurisdiction of a case dismissed pursuant to rule 41(a)(1)(A) are: (i) the proclamation in Kokkonen v. Guardian Life Insurance Co. of America was dicta, and "[i]t is to the holdings of [the Supreme Court's] cases, rather than their dicta, that we must attend," 511 U.S. 375, 379; and (ii) the Supreme Court refers to "embody[ing] the settlement contract in its dismissal order," but rule 41(a)(1)(A) provides -- in its very title -- that it pertains to dismissals effectuated "Without a Court Order," Fed. R. Civ. P. 41(a)(1)(A) (emphasis in original).

      Smith v. Phillips must, however, be interpreted in light of the Supreme Court's subsequent decision in Kokkonen v. Guardian Life Insurance Co. of America, in which the Supreme Court held that a district court's ancillary jurisdiction does not extend to the post-dismissal enforcement of federal case settlement agreements, unless: (i) there is an independent basis of federal subject-matter jurisdiction to hear the claims; (ii) the court incorporated the settlement agreement's terms into its order of dismissal; or (iii) the court includes a term "'retaining jurisdiction'" in its order of dismissal.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. at 381.  That decision continues to permit district courts to condition dismissals under rule 41(a)(2), see 511 U.S. at 381, and appears to have no bearing on the courts' power to reopen cases pursuant to rule 60(b), see 511 U.S. at 378 (noting, without opining on, the practice of "[s]ome Courts of Appeals" to "reopen[] . . . dismissed suit[s] by reason of breach of the agreement that was the basis for dismissal").

City Corp., 419 F.3d 1084, 1088 (10th Cir. 2005)("[A]n appeal does not toll or extend the one-year time limit of Rule 60(b)."). No time limit applies to rule 60(b)(6), other than that the motion be made within a reasonable time. See Fed. R. Civ. P. 60(c)(1).

1. **Rule 60(b)(1).**

The Tenth Circuit uses three factors in determining whether a judgment may be set aside in accordance with rule 60(b)(1): (i) whether the moving party's culpable conduct caused the default; (ii) whether the moving party has a meritorious defense; and (iii) whether the nonmoving party will be prejudiced by setting aside the judgment. See United States v. Timers Preserve, 999 F.2d 452, 454 (10th Cir. 1993).

Under some circumstances, a party can rely on rule 60(b)(1) for a mistake by their attorney or when their attorney acted without their authority. See Yapp v. Excel Corp., 186 F.3d 1222, 1231 (10th Cir. 1999)("Rule 60(b)(1) motions premised upon mistake are intended to provide relief to a party . . . when the party has made an excusable litigation mistake or an attorney has acted without authority . . . ."). Mistake in this context entails either acting without the client's consent or making a litigation mistake, such as failing to file or comply with deadlines. See Yapp v. Excel Corp., 186 F.3d at 1231. If the alleged incident entails a mistake, then it must be excusable, meaning that the party was not at fault. See Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 394 (1993)("This leaves, of course, the Rule's requirement that the party's neglect be 'excusable.'"); Cashner v. Freedom Stores, Inc., 98 F.3d 572, 577 (10th Cir. 1996)("If the mistake alleged is a party's litigation mistake, we have declined to grant relief under Rule 60(b)(1) when the mistake was the result of a deliberate and counseled decision by the party."); Pelican Prod. Corp. v. Marino, 893 F.2d 1143, 1146 (10th Cir. 1990)(holding that attorney carelessness is not a basis for relief under rule 60(b)(1)).

Courts will not grant relief when the mistake of which the movant complains is the result of an attorney's deliberate litigation tactics. See Cashner v. Freedom Stores, Inc., 98 F.3d at 577. This rule exists because a party

> voluntarily chose [the] attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. at 397 (quoting Link v. Wabash R.R. Co., 370 U.S. at 633-34)(internal quotation marks omitted). The Tenth Circuit has held that there is nothing "novel" about "the harshness of penalizing [a client] for his attorney's conduct" and has noted that those "who act through agents are customarily bound," even though, when "an attorney is poorly prepared to cross-examine an expert witness, the client suffers the consequences." Gripe v. City of Enid, Okla., 312 F.3d 1184, 1189 (10th Cir. 2002). The Court has previously stated:

> There is a tension between how the law treats attorney actions that are without authority, thus permitting relief under rule 60(b), and how the law treats those attorney actions which are inexcusable litigation decisions, thus failing to qualify for relief; although the distinction between those actions may not always be logical, it is well established.

Wilson v. Jara, No. CIV 10-0797 JB/WPL, 2012 WL 1684595, at *7 (D.N.M. May 10, 2012)(Browning, J.).[12]

---

[12]The Supreme Court has recognized that individuals must be "held accountable for the acts and omissions of their chosen counsel," and that the "proper focus is upon whether the neglect of respondents and their counsel was excusable." Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship, 507 U.S. 380 (1993)(emphasis in original). At the same time, the Tenth Circuit has held that, when counsel acts without authority, rule 60(b)(1) provides relief from judgment. See Cashner v. Freedom Stores, Inc., 98 F.3d at 576 ("[A]s a general proposition, the 'mistake' provision in Rule 60(b)(1) provides for the reconsideration of judgment only where . . . an attorney in the litigation has acted without authority from a party . . . ."). "There is a tension

between these decisions, because, ordinarily, a client will not authorize his or her attorney to act in a negligent manner or to make a mistake." Wilson v. Jara, No. CIV 10-0797 JB/WPL, 2012 WL 1684595, at *7 n.7. When the client acknowledges that he or she has hired the attorney, there is a difference between decisions which terminate the litigation, such as settlement or a stipulation of dismissal, and other litigation decisions, because decisions to terminate the litigation are ordinarily left to the client. See Chavez v. Primus Auto. Fin. Servs., 125 F.3d 861, 1997 WL 634090, at *4-5 (10th Cir. 1997)(unpublished table decision)(citing Navajo Tribe of Indians v. Hanosh Chevrolet-Buick, Inc., 1988-NMSC-010, ¶¶ 3-5, 749 P.2d 90, 92; Bolles v. Smith, 1979-NMSC-019, ¶¶ 10-11, 591 P.2d 278, 280). "Otherwise the Court has difficulty explaining attorney decisions which are made without authority and attorney decisions for which it is acceptable that the client suffer the consequences." Wilson v. Jara, No. CIV 10-0797 JB/WPL, 2012 WL 1684595, at *7 n.7.

In Chavez v. Primus Automotive Financial Services, the Tenth Circuit recognized that "the mere employment of an attorney does not give him the actual, implied or apparent authority to compromise his client's case." 1997 WL 634090, at *4. Few Tenth Circuit cases analyze whether an attorney has acted without authority. The cases in which the Tenth Circuit has found a lack of authority appear to fall into two categories: (i) cases in which the attorney entered an appearance without the client's knowledge, see FDIC v. Oaklawn Apts., 959 F.2d 170, 175-76 (10th Cir. 1992)(finding that there were factual issues which the district court needed to resolve where "[t]here is nothing in the record indicating when Appellants became aware of the lawsuit and of Newcombe's purported representation"); and (ii) cases in which the attorney's actions terminate the litigation, see Thomas v. Colo. Trust Deed Funds, Inc., 366 F.2d 136, 139-40 (10th Cir. 1966)(finding that, as to one of the plaintiffs, "the record shows that he did not participate in the transactions and negotiations with the S.E.C. and did not consent to the execution of the stipulation of the judgment"). Because decisions that terminate the litigation are ordinarily the client's prerogative, those decisions fit more squarely within rule 60(b)(1)'s "lack of consent" prong.

Decisions where the purported client is unaware of the litigation, or of the attorney's attempt to act on his or her behalf, would also fit within rule 60(b)(1)'s "lack of consent" prong, because an individual has the right to choose his or her own attorney, or to decide whether he or she wishes to have any attorney. Other litigation decisions are made jointly or are within the attorney's control, see Model Code of Prof'l Conduct R. 1.2 cmt. 1 (2011)("With respect to the means by which the client's objectives are to be pursued, the lawyer shall consult with the client . . . and may take such action as is impliedly authorized to carry out the representation."); Pittman ex rel. Sykes v. Franklin, 282 F. App'x 418, 427 n.6 (6th Cir. 2008)(unpublished)("[T]he decision to allege comparative fault as an affirmative defense falls within a narrow band of circumstances in which an attorney may act without consulting his or her client."), and, thus, to give final judgments meaning and allow cases to terminate, it is logical that those decisions must fall within the "excusable litigation mistake" prong, or be based on a substantive mistake of law or fact.

Although the Tenth Circuit does not appear to have expressed its views on where the line is drawn between attorneys acting without consent and litigation mistakes, or acknowledged the tension between these two categories, the Court concluded that the appropriate division is, when the client is aware that the attorney is acting on his or her behalf, between decisions which dispose of the case and ordinarily require client consent, and other routine attorney decisions

2.      **Rule 60(b)(6).**

Rule 60(b)(6) provides that a court may relieve a party from final judgment, order, or proceeding for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). No time limit applies to rule 60(b)(6), save that the motion be made within a reasonable time. See Fed. R. Civ. P. 60(c)(1). "Thus, to the extent it is applicable, clause (6) appears to offer a means of escape from the one-year limit that applies to motions under clauses (1), (2), and (3)." 11 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2864, at 490 (2d ed. 2012). In Pioneer Investment Services Co. v. Brunswick Associates Ltd., the Supreme Court reasoned that, to avoid abrogating the one-year time limit for rule 60(b)(1) to (3), rule 60(b)'s "provisions are mutually exclusive, and thus a party who failed to take timely action due to 'excusable neglect' may not seek relief more than a year after the judgment by resorting to subsection (6)." 507 U.S. at 393 (citing Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 863 & n.11 (1988)). "If the reasons offered for relief from judgment could be considered under one of the more specific clauses of Rule 60(b)(1)-(5), those reasons will not justify relief under Rule 60(b)(6)." 12 J. Moore et al., Moore's Federal Practice, Civil § 60.48[2], at 60-182 (3d ed. 2013). Accord Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863 n.11 ("This logic, of course, extends beyond clause (1) and suggests that clause (6) and clauses (1) through (5) are mutually

---

which take place over the course of the case. The Court also notes that rules of professional conduct require, "[i]n a criminal case," for a lawyer to "abide by the client's decision, after consultation with the lawyer, as to the plea to be entered, whether to waive a jury trial and whether the client will testify." Model Rules of Prof'l Conduct R. 1.2(a). While a decision on the plea to be entered in a criminal case is comparable to whether to settle a civil case, the Court has not located any decisions permitting rule 60(b) relief when a civil attorney waives his or her client's right to jury trial. One unpublished decision from the United States Court of Appeals for the Fourth Circuit discusses briefly a scenario where, without resolving the merits of the issue, a criminal defendant raised through a rule 60(b) motion in a habeas preceding that "his trial counsel had prevented him from testifying in his defense." United States v. McMahan, 8 F. App'x 272, 274 (4th Cir. 2001)(unpublished).

exclusive.").

Rule 60(b)(6) is a "grand reservoir of equitable power to do justice in a particular case." Van Skiver v. United States, 952 F.2d 1241, 1244 (10th Cir. 1991)(internal quotation marks omitted). "The Rule does not particularize the factors that justify relief, but we have previously noted that it provides courts with authority 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice,' while also cautioning that it should only be applied in 'extraordinary circumstances.'" Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863. Generally, the situation must be one beyond the control of the party requesting relief under rule 60(b)(6) to warrant relief. See Ackermann v. United States, 340 U.S. 193, 202 (1950)("The comparison [of prior precedent] strikingly points up the difference between no choice and choice; imprisonment and freedom of action; no trial and trial; no counsel and counsel; no chance for negligence and inexcusable negligence. Subsection 6 of Rule 60(b) has no application to the situation of petitioner."). Legal error that provides a basis for relief under rule 60(b)(6) must be extraordinary, as the Tenth Circuit discussed in Van Skiver v. United States:

> The kind of legal error that provides the extraordinary circumstances justifying relief under Rule 60(b)(6) is illustrated by Pierce [v. Cook & Co., 518 F.2d 720, 722 (10th Cir. 1975)(en banc)]. In that case, this court granted relief under 60(b)(6) when there had been a post-judgment change in the law "arising out of the same accident as that in which the plaintiffs . . . were injured." Pierce, 518 F.2d at 723. However, when the post-judgment change in the law did not arise in a related case, we have held that "[a] change in the law or in the judicial view of an established rule of law" does not justify relief under Rule 60(b)(6). Collins v. City of Wichita, 254 F.2d 837, 839 (10th Cir. 1958).

Van Skiver v. United States, 952 F.2d at 1244-45.

"Courts have found few narrowly-defined situations that clearly present other reasons justifying relief." Wright et al., supra, § 2864, at 483. The Supreme Court expounded:

To justify relief under subsection (6), a party must show "extraordinary circumstances" suggesting that the party is faultless in the delay. If a party is partly to blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable. In Klapprott, for example, the petitioner had been effectively prevented from taking a timely appeal of a judgment by incarceration, ill health, and other factors beyond his reasonable control. Four years after a default judgment had been entered against him, he sought to reopen the matter under Rule 60(b) and was permitted to do so.

Pioneer Inv. Services Co. v. Brunswick Associates Ltd., 507 U.S. at 393 (citing Liljeberg v. Health Services Acquisition Corp., 486 U.S. at 863 & n.11; Ackermann v. United States, 340 U.S. at 197-200; Klapprott v. United States, 335 U.S. 601, 613-614 (1949)). See Gonzalez v. Crosby, 545 U.S. 524, 535 (2005)("[O]ur cases have required a movant seeking relief under Rule 60(b)(6) to show 'extraordinary circumstances' justifying the reopening of a final judgment." (quoting Ackermann v. United States, 340 U.S. 193, 199 (1950))). In Gonzalez v. Crosby, the Supreme Court concluded a change in the law during a habeas petition's pendency was not an extraordinary circumstance. See 545 U.S. at 537.

When the Supreme Court first addressed rule 60(b)(6) a year after it was introduced to the federal rules, while the Justices were sharply divided on other issues, no dispute arose from Justice Black's statement: "[O]f course, the one year limitation would control if no more than 'neglect' was disclosed by the petition. In that event the petitioner could not avail himself of the broad 'any other reason' clause of 60(b)." Klapprott v. United States, 335 U.S. at 613. See Wright et al., supra, § 2864, at 493.

Examples where courts apply rule 60(b)(6) include "settlement agreements when one party fails to comply" and courts use the rule "to return the parties to the status quo," or in cases involving fraud by a "party's own counsel, by a codefendant, or by a third-party witness," which does not fit within rule 60(b)(3)'s provision for fraud by an adverse party. Wright et al., supra, § 2864, at 485, 487. The most common application is to grant relief "when the losing party fails to

receive notice of the entry of judgment in time to file an appeal."[13]  Wright et al., supra, § 2864, at 488.  When moving for relief pursuant to rule 60(b)(6), it is not enough to argue the same issues that a court has already addressed.  See Pyeatt v. Does, 19 F. App'x 785, 788 (10th Cir. 2001)(unpublished)("[A] motion to reconsider [that] simply reasserts information considered by the district court in its initial determination . . . does not meet the extraordinary circumstances standard required for Rule 60(b)(6) relief.").

## LAW REGARDING SUBJECT-MATTER JURISDICTION AND RULE 68 OFFERS OF JUDGMENT

To sustain jurisdiction, "the parties must continue to have a personal stake in the outcome."  Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990).  A case will be rendered moot if the issues are "no longer live or the parties lack a legally cognizable interest in the outcome."  Citizens for the Responsible Gov't State Political Action Comm. v. Davidson, 236 F.3d 1174, 1182 (10th Cir. 2000)(citations omitted).  Article III of the Constitution limits the federal courts' jurisdiction to "actual ongoing cases or controversies."  Lewis v. Cont'l Bank Corp., 494 U.S. at 477; Mink v. Suthers, 482 F.3d 1244, 1256 (10th Cir. 2007).  The court "lack[s] power to hear moot claims, including those that have been 'fully satisfied' by a monetary judgment."  Clark v. State Farm Mut. Auto Ins. Co., 590 F.3d 1134, 1138 (10th Cir. 2009)(citing Donald D. Forsht

---

[13]Professors Charles Wright and Arthur Miller note that

[m]ost of those cases, however, predate the 1991 amendment to Appellate Rule 4(a)(6), which now provides relief from the strict appellate filing rule if the party did not receive notice of the entry of the judgment.  In light of that change, most courts have held that resort to Rule 60(b) as a means of extending the appeal time no longer is appropriate, although the Rule 60(b) approach is still utilized in some courts, primarily in the Sixth Circuit.

Wright et al., supra, § 2864, at 489-90 (citations omitted).  See Clark v. Lavallie, 204 F.3d 1038, 1041 (10th Cir. 2000)("Rules 4(a)(6) and 77(d) 'precludes the use of Fed. R. Civ. P. 60(b)(6) to cure problems of lack of notice.'" (citations omitted)).

Assocs., Inc. v. Transamerica ICS, Inc., 821 F.2d 1556, 1559 (11th Cir. 1987)).  The mootness of

claims is a "threshold inquiry, because the existence of a live case or controversy is a

constitutional prerequisite to the jurisdiction of the federal courts."  Dais-Naid, Inc. v. Phoenix

Resource Cos., 974 F.2d 1246, 1247 (10th Cir. 1992).

The Tenth Circuit has stated: "As a general rule, a suit brought as a class action must be

dismissed for mootness when the personal claims of the named plaintiffs are satisfied and no

class has been properly certified."  Clark v. State Farm Mut. Auto Ins. Co., 590 F.3d at 1138

(quoting Reed v. Heckler, 756 F.2d 779, 785 (10th Cir. 1985)).  See Brown v. Phila. Hous.

Auth., 350 F.3d 338, 343 (3d Cir. 2003)("When claims of the named plaintiffs become moot

before class certification, dismissal of the action is required."); Potter v. Norwest Mortgage, Inc.,

329 F.3d 608, 611 (8th Cir. 2003)("[A] federal court should normally dismiss an action as moot

when the named plaintiff settles its individual claim, and the district court has not certified a

class."); D.R. v. Mitchell, 645 F.2d 852, 854 (10th Cir. 1981)("Because the class was never

properly identified by the district judge, there is no party before this court who can maintain the

remaining constitutional challenge.").

According to rule 68,

"[a]t any time more than 10 days before the trial begins, a party defending against
a claim may serve upon the adverse party an offer to allow judgment to be taken
against the defending party for the money or property or the effect specified in the
offer, with costs then accrued.

Fed. R. Civ. P. 68.  While many courts previously held that a rule 68 offer of complete relief

necessarily moots a plaintiff's claims, see e.g., Weiss v. Regal Collections, 385 F.3d 337 (3rd

Cir. 2004), the Supreme Court determined, in Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663

(2016)("Gomez")(Ginsburg, J.), that such an offer cannot moot a plaintiff's claims if it is

rejected or goes unaccepted: "We hold today that an unaccepted settlement offer has no force.

Like other unaccepted contract offers, it creates no lasting right or obligation. With the offer off the table, and the defendant's continuing denial of liability, adversity between the parties persists." 136 S. Ct. 663, 666.

In Lomas v. Emergency Medical Billing, LLC, No. 2:07-CV-952, 2008 WL 4056789, 2008 U.S. Dis. LEXIS 65480 (D. Utah Aug. 25, 2008)(Benson, J.), the plaintiff alleged that the defendants violated various sections of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, ("FDCPA"), and Utah's Consumer Sales Practices Act, Utah Admin. Code r.152-11. See 2008 WL 4056789, at *1, 2008 U.S. Dis. LEXIS 65480, at *1-2. The plaintiff brought the action on behalf of herself and a class of Utah debtors from whom each of the three defendants had attempted to collect fees. See 2008 WL 4056789, at *1. One defendant collection company tendered an offer of judgment pursuant to rule 68, to which the plaintiff never responded. See 2008 WL 4056789, at *1. Three months after the offer of judgment was made, the defendant filed a motion to dismiss pursuant to rule 12(b)(1). The Honorable Dee Benson, United States District Judge for the District of Utah, held that the rule 68 offer mooted the plaintiff's claims against that defendant, stating:

> The Court is persuaded by the general rule of this Circuit that a suit brought as a class action must be dismissed for mootness when the personal claims of the named plaintiffs are satisfied and no class has been properly certified. *Reed v. Heckler*, 756 F.2d 779, 785 (10th Cir. 1985)(citations omitted); *In re Standard Metals Corp.*, 817 F.2d 625, 629 (10th Cir. 1987). The Court is also persuaded by the Seventh Circuit's pronouncement in *Rand v. Monsanto Co.*, 926 F.2d 596 (7th Cir. 1991), wherein the court held that, "once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate . . . and a plaintiff who refuses to acknowledge this loses outright under Fed. R. Civ. P. 12(b)(1) because he has no remaining stake." *Id.*, at 598.

2008 WL 4056789, at *2, 2008 U.S. Dist. LEXIS 65480, at *4-5. The rule 68 offer of judgment offered the plaintiff $5,001.00 plus her reasonable costs and attorney's fees incurred in prosecuting the case against the defendant through the date of the offer. See 2008 WL 4056789,

at *1.  Judge Benson found that the offer was "far in excess of the maximum Plaintiff can hope to recover at trial of the present action."  2008 WL 4056789, at *2, 2008 U.S. Dist. LEXIS, at *6.  She explained that damages under the FDCPA for a successful plaintiff are limited to actual damages, a maximum of $1,000.00 in statutory damages, and costs and reasonable attorney's fees, and because the plaintiff had set forth no pleading that establishes any actual damage, her claims were limited to statutory damages, costs, and reasonable attorney's fees.  See 2008 WL 4056789, at *2, 2008 U.S. Dist. LEXIS 65480, at *6.  Judge Benson determined that, because the defendant had offered to satisfy the plaintiff's entire claim, she no longer had a dispute over which to litigate, nor did she have a remaining stake in the present action.  See 2008 WL 4056789, at *2, 2008 U.S. Dist. LEXIS 65480, at *6 ("By offering Plaintiff $5,001.00 plus costs and reasonable attorney's fees, the Rule 68 Offer offered Plaintiff far in excess of what she can hope to recover at trial.").  Judge Benson found that the rule 68 offer put the plaintiff "in an untenable position and she would not be an appropriate putative class representative, because her interests at least carry the perception of some degree of antagonism to the claims of the remaining putative class."  See 2008 WL 4056789, at *3, 2008 U.S. Dist. LEXIS 65480, at *7.

In Weiss v. Regal Collections, the Third Circuit held that, when the defendant makes a full offer of judgment -- thereby mooting the named plaintiff's claims[14] -- at so early a point in the litigation that the named plaintiff could not have been expected to file a class certification motion, the class' claims are not moot and the case may proceed.  See 385 F.3d at 348.  The Third Circuit concluded that

> [a]bsent undue delay in filing a motion for class certification . . . where a
> defendant makes a Rule 68 offer to an individual claim that has the effect of

---

[14]The Supreme Court, in Campbell-Ewald Co. v. Gomez, abrogated Weiss v. Regal Collections insofar as it held that an unaccepted rule 68 offer moots a plaintiff's individual claim.  See Campbell-Ewald Co. v. Gomez 136 S. Ct. at 669.

> mooting possible class relief asserted in the complaint, the appropriate course is to relate the certification motion back to the filing of the class complaint.

385 F.3d at 348. The Third Circuit concluded that allowing a defendant to moot a representative plaintiff's claim through a rule 68 offer of judgment would effectively nullify the possibility of obtaining class certification. See 385 F.3d at 349. The Third Circuit also distinguished a plaintiff who voluntarily settles a case from a plaintiff who refuses a defendant's offer of judgment that would fully satisfy the plaintiff's claim. See 385 F.3d at 349-50. The Third Circuit stated that "relation back" is more appropriate in the latter setting, as it is the defendant's unilateral action that rendered the plaintiff's case moot. 385 F.3d at 350.

In Clark v. State Farm Mutual Automobile Insurance, Co., the plaintiff argued that the district court, sua sponte, decided his individual claims and entered judgment in his favor. See 590 F.3d at 1139. He appealed the district court's decision that, because no class had yet been certified, the entire case was moot. See 590 F.3d at 1139. The plaintiff argued that the Tenth Circuit should adopt the Third Circuit's rule in Weiss v. Regal Collections. See 590 F.3d at 1139. The Tenth Circuit declined the address the question whether it adopts the Third Circuit's rule, and held that "the posture of this case compels us to apply the general rule that 'a suit brought as a class action must be dismissed for mootness when the personal claims of the named plaintiffs are satisfied and no class has been properly certified.'" 390 F.3d at 1139-41 (quoting Reed v. Heckler, 756 F.2d at 785).

In Lucero v. Bureau of Collection Recovery, Inc., the Tenth Circuit was asked whether an offer pursuant to rule 68 made to a proposed class representative before the district court could reasonably be expected to rule on class certification moots the case. See 639 F.3d at 1243. The Tenth Circuit concluded that, in light of Supreme Court precedent, "a named plaintiff in a proposed class action need not accept an offer of judgment or risk having his or her case

dismissed as moot before the court has had a reasonable time to consider the class certification motion." 639 F.3d at 1249. The Tenth Circuit further explained:

> Instead we conclude that a nascent interest attaches to the proposed class upon the filing of a class complaint such that a rejected offer of judgment for statutory damages and costs made to a named plaintiff does not render the case moot under Article III. . . . This is so because, notwithstanding the rejected offer of judgment, the proposed class action continues to involve "sharply presented issues in a concrete factual setting" and "self-interested parties vigorously advocating opposing positions." [*U.S. Parole Commission v.*] *Geraghty*, 455 U.S. [388,] 403 [(1980)].
>
> . . . .
>
> Because Geraghty informs us that the personal stake of the class inheres prior to certification, we conclude that the federal court's Article III jurisdiction to hear the motion for class certification is not extinguished by the Rule 68 offer of judgment to an individual plaintiff. This conclusion is also supported by Justice Rehnquist's observation in [*Deposit Guaranty Nat. Bank, Jackson, Miss. v.*] *Roper*[, 445 U.S. 326 (1980)] that an offer of judgment to an individual named plaintiff simply is not complete relief vis-à-vis the class.
>
> . . . .
>
> The Third, Fifth, and Seventh Circuits have concluded that offers of judgment will not render moot class actions for monetary relief in which a class certification motion is already pending. *See Lusardi v. Xerox Corp.*, 975 F.2d 964, 975 (3d Cir. 1992); *Zeidman* [*v. J. Ray McDermott & Co., Inc.*], 651 F.2d [1030,] 1051 [(5th Cir. 1981)]; *Susman v. Lincoln Am. Corp.*, 587 F.2d 866, 870 (7th Cir. 1979). We find no authority on which to distinguish the case in which a class certification motion is pending or filed within the duration of the offer of judgment from our case: any Article III interest a class may or may not have in a case is or is not present from its inception. *See Susman*, 587 F.2d at 869 n.2 (noting that "[i]t would be arguable, on the same theory, that a complaint with class action allegations sufficiently brings the interests of the class members before the court, at least where the court proceeds with reasonable promptness to reach the issue of class action maintenance" but declining to reach the question). We need not and do not decide the impact of a Rule 68 offer of judgment made in a collective, or "opt-in" action. *See, e.g., Sandoz* [*v. Cingular Wireless LLC*], 553 F.3d [913,] 920 [(5th Cir. 2008)]; *Darboe v. Goodwill Industries of Greater New York & Northern New Jersey, Inc.*, 485 F. Supp. 2d 221, 223-24 (E.D.N.Y. 2007).

> In sum, we hold that a named plaintiff in a proposed class action for monetary relief may proceed to seek timely class certification where an unaccepted offer of judgment is tendered in satisfaction of the plaintiff's individual claim before the court can reasonably be expected to rule on the class certification motion. That certainly is the case here, given the parties' agreement to proceed according to a specific schedule to resolve the class certification issues and given the Plaintiff's indisputable compliance with that schedule.

Lucero v. Bureau of Collection Recovery, Inc., 639 F.3d at 1249 (citations omitted). See Tanasi v. New Alliance Bank, 786 F.3d 195, 200-201 (10th Cir. 2015)(holding that a rejected settlement offer under rule 68, by itself, cannot moot a case); Diaz v. First American Home Buyers Protection Corp., 732 F.3d 948, 954-55 (9th Cir. 2013)(holding that an unaccepted rule 68 offer did not moot the plaintiff's claims).

## LAW REGARDING CAFA

CAFA jurisdiction exists when a proposed class contains at least one-hundred persons, the amount in controversy exceeds $5,000,000.00, and the parties are minimally diverse. See Valdez v. Metro. Prop. & Cas. Ins. Co., 867 F. Supp. 2d 1143, 1163 (D.N.M. 2012)(Browning, J.)(citing 28 U.S.C. § 1332(d)(2) and (5)). "CAFA was enacted to respond to perceived abusive practices by plaintiffs and their attorneys in litigating major class actions with interstate features in state courts." Coffey v. Freeport McMoran Copper & Gold, 581 F.3d 1240, 1243 (10th Cir. 2009).

### 1.    Diversity.

For diversity jurisdiction purposes, citizenship is determined by a person's domicile. See Crowley v. Glaze, 710 F.2d 676, 678 (10th Cir. 1983). "A person's domicile is defined as the place in which the party has a residence in fact and an intent to remain indefinitely, as of the time of the filing of the lawsuit." McEntire v. Kmart Corp., No. 09-0567, 2010 WL 553443, at *3 (D.N.M. Feb. 9, 2010)(Browning, J.)(citing Crowley v. Glaze, 710 F.2d at 678). See Freeport-

McMoRan, Inc. v. KN Energy, Inc., 498 U.S. 426, 428 (1991)(holding that diversity jurisdiction is assessed as of the time at which the suit is filed). If neither a person's residence nor the location where the person has an intent to remain can be established, the person's domicile is that of his or her parents at the time of the person's birth. See Gates v. C.I.R., 199 F.2d 291, 294 (10th Cir. 1952)("[T]he law assigns to every child at its birth a domicile of origin. The domicile of origin which the law attributes to an individual is the domicile of his parents. It continues until another domicile is lawfully acquired."). Additionally, "while residence and citizenship are not the same, a person's place of residence is prima facie evidence of his or her citizenship." McEntire v. Kmart Corp., 2010 WL 553443, at *3 (citing State Farm Mut. Auto. Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994)).

In determining a corporation's citizenship for diversity purposes, Congress has stated that "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). While determining where a corporation is incorporated may be accomplished by looking to the corporation's incorporating documents, a corporation's "principal place of business" is a more amorphous criteria, and, until recently, the United States' Courts of Appeals had adopted "divergent and increasingly complex interpretations" of the term. Hertz Corp. v. Friend, 130 S.Ct. 1181, 1192 (2010). In Hertz Corp. v. Friend, the Supreme Court clarified the test for determining the location of a corporation's principal place of business, holding that, "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." 130 S.Ct. at 1192. The Supreme Court related that this location "is the place that Courts of Appeals have called the corporation's 'nerve center.'" 130 S.Ct. at 1192. The Supreme Court clarified that,

"in practice," this location "should normally be the place where the corporation maintains its headquarters -- provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings." 130 S.Ct. at 1192. The Supreme Court stated that "[a] corporation's 'nerve center,' usually its main headquarters, is a single place." 130 S.Ct. at 1193. The Supreme Court adopted this rule over a different approach that some courts had followed which focused on "the total amount of business activities that the corporation conducts" in a state, because: (i) focusing on the total amount of business activities in a state "invites greater litigation and can lead to strange results"; and (ii) "administrative simplicity is a major virtue in a jurisdictional statute." 130 S.Ct. at 1193.

    **2.**       <u>**Amount in Controversy.**</u>

The amount-in-controversy requirement is "an estimate of the amount that will be put at issue in the course of the litigation." <u>McPhail v. Deere & Co.</u>, 529 F.3d 947, 956 (10th Cir. 2008).[15] "In actions seeking declaratory or injunctive relief, it is well established that the amount

---

[15]The Court relies upon several cases discussing the amount-in-controversy requirement in the context of a traditional diversity jurisdiction analysis. The Court found no cases suggesting that these cases would be inapplicable to CAFA, but found several cases, from other circuits and from within the Tenth Circuit, where a federal court cited a traditional diversity case to determine whether CAFA's amount-in-controversy requirement was met. <u>See</u> <u>Rolwing v. Nestle Holdings, Inc.</u>, 666 F.3d 1069, 1072 (8th Cir. 2012)(citing traditional diversity cases to inform whether the CAFA amount-in-controversy requirement was met), <u>abrogated on other grounds by</u> <u>Standard Fire Ins. Co. v. Knowles</u>, 133 S. Ct. 1345 (2013); <u>Armur v. Transamerica Life Ins. Co.</u>, No. 11-2034, 2011 WL 1699281, at *1 (D. Kan. May 4, 2011)(Vratil, J.)(citing <u>McPhail v. Deere & Co.</u> and other traditional diversity cases from the Tenth Circuit); <u>In Re Gen. Motors Corp., "Piston Slap" Prods. Liab. Litig.</u>, No. MDL-04-1600, 2005 WL 1606445, at *4 (W.D. Okla. July 6, 2005)(Heaton, J.)(citing <u>Hunt v. Wash. State Apply Adver. Comm'n</u>, 432 U.S. 333, 347 (1977), and other traditional diversity cases on the amount-in-controversy requirement). The Court agrees that applying case law from traditional diversity cases to determine the amount in controversy is appropriate, because CAFA "operates as an expansion of diversity jurisdiction" and is found in 28 U.S.C. § 1332 with the traditional diversity jurisdiction requirements. <u>Farina v. Nokia Inc.</u>, 625 F.3d 97, 110 (3d Cir. 2010). Moreover, the way federal

in controversy is measured by the value of the object of the litigation." Hunt v. Wash. State

Apple Adver. Comm'n, 432 U.S. 333, 347 (1977). The Tenth Circuit recognizes "several basic

principles" about establishing the amount in controversy:

> First, the amount in controversy is not "'the amount the plaintiff will recover,' but rather 'an estimate of the amount that will be put at issue in the course of the litigation.'" Frederick v. Hartford Underwriters Ins. Co., 683 F.3d 1242, 1245 (10th Cir. 2012)(quoting McPhail v. Deere & Co., 529 F.3d 947, 956 (10th Cir. 2008)). Second, the Court must accept plaintiff's allegation that the amount in controversy is satisfied if plaintiff alleges in good faith that it is. Third, the Court looks to the amount in controversy alleged in the original Complaint and does not consider any reductions in the amount in controversy that may occur after the lawsuit is commenced. Fourth, the Court assesses all of the damages alleged, as well as the value of any injunctive relief and statutorily permitted attorneys' fees. And last, in the class action setting, the Court considers whether the amount in controversy exceeds the jurisdictional threshold by aggregating the claims of the individual class members.

Nieberding v. Barrette Outdoor Living, Inc., 129 F. Supp. 3d 1236, 1242 (D. Kan. 2015)

(Crabtree, J.)(citations omitted). CAFA also allows for aggregating attorneys' fees when

determining the amount in controversy when a statute authorizing the cause of action allows for

attorneys' fees. See 14A C. Wright & A. Miller, Federal Practice and Procedure § 3704.2, at

648 (4th ed. 2011).

## ANALYSIS

The Court will grant the Proposed Intervenors' Motion to Intervene and Supp. Motion to

Intervene. First, the Court concludes that it has jurisdiction over the sixty-nine Proposed

Intervenors pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(4)(A) ("CAFA").

Second, the Named Plaintiffs' settlement agreement did not render moot the Proposed

Intervenors claims, because their personal stake in the class -- and, therefore, the Article III case

---

courts calculate the amount-in-controversy should not vary between CAFA and traditional diversity jurisdiction, because both provisions of § 1332 seek to determine the amount-in-controversy in the litigation and the litigation's value to the parties.

or controversy -- inhered at the action's beginning.  Third, granting relief the Final Judgment is not necessary to for the Proposed Intervenors to intervene.  Fourth, the Motion to Intervene was timely even though the Court had already entered a Final Judgment, because intervention will not unduly prejudice the Defendants.

## I.     THE COURT HAS JURISDICTION OVER THIS CLASS ACTION UNDER CAFA.

The Court concludes that the Proposed Intervenors have sufficiently asserted the elements required for CAFA-based jurisdiction.  The first requirement is minimal diversity among the parties -- i.e., that at least one defendant and one class member are not co-citizens. See 28 U.S.C. § 1332(d)(2)(A).  A person's domicile determines his or her citizenship, see Crowley v. Glaze, 710 F.2d at 678, and a "person's domicile is defined as the place in which the party has a residence in fact and an intent to remain indefinitely, as of the time of the filing of the lawsuit," McEntire v. Kmart Corp., No. 09-0567, 2010 WL 553443, at *3 (citing Crowley v. Glaze, 710 F.2d at 678).  Although one's "residence and citizenship are not the same, a person's place of residence is prima facie evidence of his or her citizenship." McEntire v. Kmart Corp., No. 09-0567, 2010 WL 553443, at *3.

The Defendants established that both Defendants are Arizona citizens.  See Declaration of Dayna Blake ¶¶ 3-5, at 1 (dated November 17, 2014), filed November 17, 2014 (Doc. 1-2) (declaring under penalty of perjury that Defendants are all citizens of Arizona).  The Proposed Intervenors submitted signed declarations from four Proposed Intervenors -- Valdez, Herro, John, and McDearmid -- evidencing their New Mexico citizenship.  See Notice Regarding Subject Matter Jurisdiction at 2, filed September 22, 2017 (Doc. 173).  See, e.g., Declaration of Jennifer Valdez ¶¶ 4-6, at 1 (dated September 19, 2017), filed September 22, 2017 (Doc. 173-1) (declaring that she is a citizen of New Mexico, has lived in New Mexico since 2011, is registered

to vote in New Mexico, holds a New Mexico drivers' license, and pays New Mexico income taxes). Consequently, the Proposed Intervenors have established minimal diversity pursuant to 28 U.S.C. § 1332(d)(2)(A).

The Proposed Intervenors have also established that more than five million dollars is at stake in their proposed class action suit. In their Intervene Reply, the Proposed Intervenors assert that their proposed class comprises approximately 279 people and that their claims for damages and attorneys' fees, pursuant to N.M. Stat. Ann. § 50-4-26(E) (allowing for attorneys' fees for NMMWA violations), will exceed five million dollars. <u>See</u> Intervene Reply at 9. The Proposed Intervenors' arrive at this conclusion by looking at the Defendants rule 68 Offer of Judgment, noting that the Defendants offered five Named Plaintiffs a total of $229,552.19, plus reasonable attorneys' fees which the Proposed Intervenors estimate could be about $150,000.00. <u>See</u> Intervene Reply at 9. That amount comes to $379,552.20 for five individuals, or $75,910.44 each. <u>See</u> Intervene Reply at 9. Multiplied by the 279 or so proposed class members, that product far exceeds the necessary five million dollars. <u>See</u> Intervene Reply at 9. The Proposed Intervenors assert that, even if the class members have, on average, only $25,000.00 at issue, that amount would still add up to almost $7 million. <u>See</u> Intervene Reply at 9.

These are rough, back-of-the-envelope calculations, but, the Court concludes that they are sufficient, given that the "test to determine amount in controversy is not the sum ultimately found to be due, but the sum demanded in good faith." <u>Gibson v. Jeffers</u>, 478 F.2d 216, 220 (10th Cir. 1973). <u>See</u> <u>Frederick v. Hartford Underwriters Ins. Co.</u>, 683 F.3d 1242, 1244 (10th Cir. 2012)("The amount in controversy . . . is not 'the amount the plaintiff will recover,' but rather 'an estimate of the amount that will be put at issue in the course of the litigation.'" (quoting <u>McPhail v. Deere & Co.</u>, 529 F.3d 947, 956 (10th Cir.2008))). The Court concludes

that the Proposed Intervenors have asserted in good faith that the amount in controversy, once

aggregated, exceeds the five million dollars necessary to satisfy CAFA.

## II. THE COURT WILL ALLOW THE PROPOSED INTERVENORS TO INTERVENE, BECAUSE THEY HAVE A NASCENT INTEREST IN THE CLASS CLAIMS, DO NOT NEED RELIEF FROM THE FINAL JUDGMENT VIA A RULE 60(B), AND HAVE MET THE PERMISSIVE INTERVENTION <u>REQUIREMENTS</u>.

The Court concludes that the Proposed Intervenors have a nascent interest in the class

claims pursuant to <u>Lucero</u>, 639 F.3d at 1249. Also, they do not need to make a rule 60(b) motion

for relief from the Named Plaintiffs' Final Judgment before the Court can consider their Motion

to Intervene. Finally, they have satisfied the permissive intervention requirements.

### A. THE PROPOSED INTERVENORS' CLAIMS ARE NOT MOOT BECAUSE THEY HAVE A NASCENT INTEREST IN THE CLASS' CLAIMS.

The Proposed Intervenors' defined their two proposed classes as follows:

1. Pursuant to the NMMWA, a class consisting of all persons employed as flight crew members (Flight Paramedics, Flight Nurses and Pilots) by Tri-State in New Mexico who: (a) worked more than forty (40) hours per week at any time from June 16, 2009 to the present; and (b) did not receive compensation at one and one half times his/her regular hourly rate for the hours worked over forty (40) per week; and

2. Pursuant to Fed. R. Civ. P. 23, a class consisting of all persons employed as Pilots in New Mexico at any time since September 11, 2010 who: (a) were paid a fixed daily rate regardless of how many hours they worked; (b) worked more than twelve (12) hours in a day; and (c) did not receive compensation for the additional time worked.

In the alternative, should the Court determine that Pilots are not sufficiently "similarly situated" to Flight Paramedics and Flight Nurses for purposes of the NMMWA overtime claim, class one should be split into two "similarly situated" classes as follows: one consisting of Flight Paramedics and Flight Nurses and the other consisting only of Pilots.

Plaintiffs Motion for and Brief in Support of Class Certification at 5-6, filed May 16, 2016

(Doc. 126)("Cert. Motion"). According to the Proposed Intervenors, each Proposed Intervenor

worked for Tri-State Careflight as pilots, paramedics, or nurses after June 16, 2009.  See Supp.

Motion to Intervene at 3-8.  Several Proposed Intervenors have asserted that they have not been

paid for all their overtime hours.  See, e.g., Declaration of Kara Cervantes ¶ 5-6, at 1-2 (dated

May 5, 2016), filed May 16, 2016 (Doc. 126-14).

Lucero holds that, when a class certification is pending, "any Article III interest a class

may or may not have in a case is or is not present from its inception" and that "the personal stake

of the class inheres prior to certification."  639 F.3d at 1249.  The Proposed Intervenors'

assertions, taken at face value, demonstrate that they have wage claims for which the proposed

classes were designed.  Although the Proposed Intervenors are new to this putative class action,

their interest in it is not, having effectively "attached" at this litigation's beginning.

Accordingly, the Proposed Intervenors claims are not moot.

**B.    THE NAMED PLAINTIFFS' FINAL JUDGMENT PRESENTS NO PROCEDURAL OBSTACLE TO THE PROPOSED INTERVENORS' MOTION TO INTERVENE.**

The Proposed Intervenors seek entry into this case even after all the Named Plaintiffs

have settled their claims and the Court entered a Final Judgment.  The Defendants argued that

they did not believe the Proposed Intervenors could intervene without first undoing the Final

Judgment through a rule 60(b) motion, see Supp. Intervene Response at 3; the Court expressed a

similar concern at the hearing, see Tr. at 4:2-5 (Court).  The Proposed Intervenors disagreed,

stating that they did not seek relief from judgment, did not see a rule 60(b) motion as necessary,

nor did they believe that they had standing to bring a rule 60(b) motion.  See Supp. Intervene

Reply at 3.

The Court agrees with the Proposed Intervenors that they do not have standing to bring a

rule 60(b) challenge to the Named Plaintiffs' Final Judgment, because rule 60(b) requires that the

movant be a party in the matter. Rule 60(b) states that, "on motion and just terms, the court may relieve a party or its legal representative from a final judgment . . . ." Fed. R. Civ. Proc. 60(b). Thus, the general rule is that only a party to a final judgment, or someone in privity to such a party, may seek relief from that judgment under 60(b). See 11C. Wright & A. Miller, Federal Practice and Procedure § 2865, at 531 (3d ed. 2007)("[O]ne who is in privity with a party [may] move under the rule."); W. Steel Erection Co. v. United States, 424 F.2d 737, 739 (10th Cir. 1970)(stating that, under rule 60(b), a "legal representative" must be someone "who by operation of law is tantamount to a party in relationship to the matter"). The Proposed Intervenors are not parties to the Final Judgment, which concern only the five Named Plaintiffs. See Final Judgment at 1-2.

The Proposed Intervenors' lack of standing for making a rule 60(b) motion is not, however, the end of the story, because courts recognize that intervention is the method by which a nonparty achieves standing to make a rule 60(b) motion. See, e.g., Roeder v. Islamic Republic of Iran, 195 F. Supp. 2d 140, 159 (D.D.C. 2002)(Sullivan, J.)("Rule 60 provides the proper procedural tool for an intervener to request relief from a prior judgment."), aff'd, 333 F.3d 228 (D.C. Cir. 2003); United States v. Kentucky Utilities Co., 927 F.2d 252, 255 (6th Cir. 1991)("If Wagar qualifies as an intervenor, she must then satisfy the district court that there are extraordinary circumstances entitling her to relief from judgment under Fed.R.Civ.P. 60(b)(6)."). Cf. Katz v. Berisford Int'l PLC, No. 96 CIV. 8695 (JGK), 2000 WL 1760965, at *2 (S.D.N.Y. Nov. 30, 2000)(Koeltl, J.)("For the Intervenors to file a Rule 59 motion, this Court would have to grant their Rule 24(a) motion, which it cannot do because it does not have jurisdiction to decide that motion."). In other words, the Proposed Intervenors need not disturb the Named Plaintiffs' Final Judgment in order to intervene; rather, they must first intervene before they can seek relief

from the judgment.

Because intervention is a precondition for a nonparty to make a rule 60(b) motion, not the other way around, the Court concludes that the Named Plaintiffs' Final Judgment presents no insurmountable obstacle to the Proposed Intervenors' Motion to Intervene.

Such a view is consistent with courts that have allowed a nonparty to intervene after a final judgment without first requiring that they undo the final judgment. In United Airlines, Inc. v. McDonald, 432 U.S. 385 (1977), for instance, the Supreme Court ruled that a nonparty could intervene after a final judgment to appeal the denial of class certification when the intervenor acted promptly upon learning that the named plaintiffs -- who settled their individual claims -- did not intend to appeal. See 432 U.S. at 934.[16] Post-final judgment intervention is disfavored, however, and courts typically apply a heightened standard when determining a nonparty's motion to intervene. See McDonald v. E. J. Lavino Co., 430 F.2d at 1072 ("It is true, as we have noted, that an attempt to intervene after final judgment is ordinarily looked upon with a jaundiced eye."); Meredith v. Schreiner Transp., Inc., 814 F. Supp. at 1003 (stating that, once a court has entered a final judgment, a proposed intervenor must make a "strong showing"); 7C C. Wright & A. Miller, Federal Practice and Procedure § 1916, at 561 (3d ed. 2007)("There is considerable reluctance on the part of the courts to allow intervention after the action has gone to

---

[16]The majority reasoned that holding otherwise would mean that unnamed putative class members would have to "file protective motions to intervene to guard against the possibility that the named representatives might not appeal from the adverse class determination," which would result in "the very 'multiplicity of activity which Rule 23 was designed to avoid.'" 432 U.S. at 402 n.15 (quoting Am. Pipe & Const. Co. v. Utah, 414 U.S. 538, 551 (1974)). The dissent, meanwhile, warned that the majority's holding had the inappropriate effect of creating a new rule in which the claims are "tolled from the filing of the class action complaint until such time after final judgment as the intervenor can determine that 'the interests of the unnamed class members (will) no longer be protected by the named class representatives.' I find no justification for this extension, either in precedent or policy." 432 U.S. 385 (Powell, dissenting)(citations omitted) (quoting the majority, 432 U.S. at 394).

judgment and a strong showing will be required of the applicant."). The Court will apply this heightened standard when considering the Proposed Intervenors' Motion to Intervene pursuant to rule 24(b) to avoid "prejudice[ing] the rights of existing parties, and . . . interfer[ing] with the orderly processes of the court." Brown v. Bd. of Ed. of Topeka, Shawnee Cty., Kansas, 84 F.R.D. 383, 399 (D. Kan. 1979).

### C. THE PROPOSED INTERVENORS HAVE SATISFIED THE PERMISSIVE INTERVENTION STANDARDS UNDER RULE 24(B).

The Court will grant the Motion to Intervene. Rule 24(b) provides that a court may allow a permissive intervention when: "(i) the application to intervene is timely; (ii) the applicant's claim or defense and the main action have a question of law or fact in common; and (iii) intervention will not unduly delay or prejudice the adjudication of the original parties' rights." Forest Guardians v. U.S. Dep't of Interior, 2004 WL 3426413, at *10-11. When a court has already entered a final judgment, however, intervention is disfavored, and the movant must make a "strong showing." 7C C. Wright & A. supra § 1916, at 561 ("There is considerable reluctance on the part of the courts to allow intervention after the action has gone to judgment and a strong showing will be required of the applicant."); Meredith v. Schreiner Transp., Inc., 814 F. Supp. at 1003 (stating that once a court has entered a final judgment, a proposed intervenor must make a "strong showing"). The Court concludes that the Proposed Intervenors' claims share factual and legal questions with the main action and that their motion is timely.

### 1. The Proposed Intervenors' Claims Share Questions of Law and Fact in Common with the Main Action.

The Proposed Intervenors' claims share the same factual and legal questions as the main action. The Proposed Intervenors have stated:

> The requested intervention serves only to add new class representatives, all of whom are already members of the putative collective action and/or Rule 23

classes. The claims to be litigated and the company's policies upon which Plaintiffs are suing remain the same. The only material element that will change is the identities of the class representatives.

Motion to Intervene at 6-7. In other words, the Proposed Intervenors bring the same claims based on the same legal theories as the Named Plaintiffs and the putative class. Consequently, the Court determines, as it did with the Named Plaintiffs' First Intervention Motion, see Intervenor MOO at 46-47, that the Proposed Intervenors bring claims implicating the same laws and facts as the main action did.

### 2. The Proposed Intervenors' Motion is Timely.

"The timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances." Am. Assoc. of People with Disabilities v. Herrera, 257 F.R.D. at 245 (quoting Utah Ass'n of Ctys. v. Clinton, 255 F.3d at 1250). In measuring timeliness by the length of time that the applicant knew of its interest, the Tenth Circuit looks to the time "when the movant was on notice that its interests may not be protected by a party already in the case." Okla. ex rel. Edmondson v. Tyson Foods, Inc., 619 F.3d at 1232. "The most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case." 7C C. Wright & A. Miller, supra § 1916, at 561.

Here, the Proposed Intervenors filed their Motion to Intervene thirteen days after the five Named Plaintiffs accepted the Defendants' rule 68 Offer of Judgment and six days after the Court entered its Final Judgment.[17] When the Court previously allowed the Named Plaintiffs to

---

[17]The Named Plaintiffs' agreed to the rule 68 offer on November 16, 2016, see Email

intervene, it concluded that the intervention motion was timely, because: (i) they filed the motion just "several weeks" after the Original Plaintiffs' claims were rendered moot; and (ii) intervention would not unduly prejudice the Defendants, because the only result is that the lawsuit would continue. See Intervenor MOO at 47. The Court reasoned that the Defendants "have already been defending against the Plaintiffs' claims, and granting the Motion would only add new class representatives whom are already members of the proposed class or classes," all of whom would bring the same claims and questioning the same company policies. Intervenor MOO at 47.

Although the Final Judgment complicates the timeliness calculus, the Supreme Court's decision in United Airlines v. McDonald, 43 U.S. 385 (1977), counsels for finding the motion to be timely anyway. In United Airlines v. McDonald, the Supreme Court concluded that an unnamed putative class member's rule 24(b) permissive intervention motion was timely even though the named plaintiffs had already settled and the court had entered a final judgment. See 432 U.S. at 396. In the majority's view, the final judgment was relevant only to the extent that it started the clock for a timely appeal. See 432 U.S. at 392 ("[T]he motion complied with, as it was required to, the time limitation for lodging an appeal prescribed by Fed.Rule App.Proc. 4(a)."). The final judgment did not, on its own, suggest that the intervenor's motion was untimely by, e.g., indicating that the intervenor had slept on her rights, or that intervention might disturb some interest or advantage the defendants achieved by settling and reaching a final judgment. Accordingly, the Court must also find that the Proposed Intervenor's Motion to Intervene is timely, despite coming in after the Defendants settled with the Named Plaintiffs and

from Mr. Moody to Charles J. Vigil and Jeffrey L. Lowry (sent November 16, 2016), filed November 17, 2016 (Doc. 149-1); the Court entered its Final Judgment on November 23, see Final Judgment; and the Proposed Plaintiffs made their Motion to Intervene on November 29, 2016, see Motion to Intervene at 1.

the Court entered a Final Judgment.[18]

---

[18]The Court arrives at this conclusion with reservations. First, the Court is skeptical that most motions to intervene after final judgment are timely, particularly here given that the Proposed Intervenors' attorneys also represent the Named Plaintiffs and therefore had a direct hand in reaching the settlement and entering the Final Judgment. The Proposed Intervenors, therefore, could not have been taken by surprise and presumably were capable of making their motion before the Final Judgment was entered. Second, the Court is not eager to deprive the Defendants of the benefit of that bargain: unlike the first settlements with the Original Plaintiffs, the Defendants took the rule 68 route with the Named Plaintiffs and deliberately negotiated for the Final Judgment. See Offer of Judgment at 2 ("By accepting this Offer of Judgment, Plaintiffs agree to the entry of the attached form of final judgment."). The Defendants have not expressly stated why they bargained for the Final Judgment, but it could be precisely for this moment. One possibility is that, having unsuccessfully opposed the first motion to intervene, they figured a Final Judgment might make it harder for future intervenors. Another possibility is that the Defendants may want to do some judge-shopping: they may prefer to shut the case down before the Court and defend against the remaining claims that are undoubtedly on the way before another judge in a separate case. A third possibility is that they may want to force their opponents to file another case and pay another filing fee. Finally, and most likely, the Defendants may want to take advantage of any applicable statute of limitations and cut down on damages. See Tr. at 15:8-10 (Lowry)("[W]e believe there are some people in the proposed class, assuming this proceeds as a class action, whose claims would be barred."). By treating the Final Judgment like any other judgment -- i.e., not presuming that a post-final judgment intervention motion is untimely, or not requiring intervenors undo the final judgment via rule 60(b) before seeking intervention -- the Defendants may be deprived of the benefit of their bargain. That outcome looks a lot like prejudice. Also, simply ignoring rule 60(b)'s plain language, as the court does in United Airlines v. McDonald, seems misguided; rules should be construed like statutes, and under the rules of statutory construction, a statute's plain language should not be overlooked. See Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004)("It is well established that when the statute's language is plain, the sole function of the courts -- at least where the disposition required by the text is not absurd -- is to enforce it according to its terms.").

With respect to prejudice, the Court shares Justice Powell's misgivings expressed in his dissent in United Airlines v. McDonald, 432 U.S. 385, 399-400 (Powell, J., dissenting). The dissent asserted that allowing post-final judgment intervention in that case unduly prejudices the defendant, arguing that, because only named plaintiffs may appeal a certification denial, and the settlement ended the named plaintiffs' ability to appeal the denial, then no one remained to make the appeal -- not even an unnamed member of the putative class. See 432 U.S at 399-400 (Powell, J., dissenting). Thus, the dissent asserts, "[h]aving achieved a settlement of the case, [the defendant] was prejudiced by [the intervenor's] attempt to reopen the case." 432 U.S. at 399 (Powell, J., dissenting). . The majority, meanwhile, stated that the defendant "can hardly contend that its ability to litigate the issue was unfairly prejudiced simply because an appeal on behalf of putative class members was brought by one of their own, rather than by one of the original named plaintiffs." 432 U.S. at 394-95 (Powell, J., dissenting). .

The Court also shares the dissent's skepticism of the majority's "casual treatment of the prejudice" to a putative class action defendant who settles with all named plaintiffs. 432 U.S. at

**IT IS ORDERED** that: (i) the requests in the Opposed Fed. R. Civ. P. 24(B) Motion and Supporting Memorandum to Intervene as Parties Plaintiff and Class Representatives, filed Nov. 29, 2016 (Doc. 151), are granted; (ii) and the requests in the Opposed Fed. R. Civ. P. 24(B) Supplemental Motion and Supporting Memorandum to Intervene as Parties Plaintiffs and Class Representatives, filed June 27, 2017 (Doc. 166), are granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Christopher M. Moody
Repps D. Stanford
Alice Kilborn
Moody & Warner, P.C.
Albuquerque, New Mexico

     *Attorneys for the Proposed Intervenors*

Charles J. Vigil
Jeffrey L. Lowry
Melanie B. Stambaugh
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

     *Attorneys for the Defendants*

---

399 (Powell, J., dissenting). Not only does the majority's approach risk prejudice to a defendant, but it does so by disregarding the judicial system's interest in settlements and finality, see 432 U.S. at 401 (Powell, J., dissenting)("The Court also ignores the important 'principle that (s)ettlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts . . . and preventing lawsuits.'" (quoting Pearson v. Ecological Sci. Corp., 522 F.2d 171, 176 (5th Cir. 1975))), and undermining public policy behind statute of limitations, see 432 U.S. 385, 400 (Powell, J., dissenting) ("Considerations of policy militate strongly against the result reached by the Court. Our cases reflect a long tradition of respect for statutes of limitations and the values they serve.").