# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

WILLIAM D. PAYNE; NICOLE PAYNE;
LESLIE B. BENSON; KEITH BASTIAN;
JACQUELINE FERNANDEZ-QUEZADA;
CASON N. HEARD; GREGORY
OLDHAM and SHERRY K. WELCH, on
behalf of themselves and all others similarly
situated,

        Plaintiffs,

vs.                                                                          No. CIV 14-1044 JB/KBM

TRI-STATE CAREFLIGHT, LLC, and
BLAKE A. STAMPER, individually,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) the Plaintiffs Keith Bastian, Jaqueline

Fernandez-Quezada, Cason N. Heard, Gregory Oldham and Sherry K. Welch's Motion for

Award of Attorneys' Fees and Costs and Memorandum in Support, filed December 8, 2016

(Doc. 152)("First Fee Motion"); and (ii) the Plaintiffs' Supplemental Motion for Attorneys' Fees

& Costs, filed March 29, 2017 (Doc. 160)("Supp. Motion"). The Court held a hearing on August

2, 2017. The primary issues are: (i) whether to approve the Plaintiffs' counsel's proposed fee

rates, which are higher than the rates that the Court used earlier in the case when calculating fees

for the attorneys' work for the Original Plaintiffs[1]; (ii) whether to reduce the total award, because

---

[1]The Original Plaintiffs in this action -- Nicole Payne and William D. Payne -- resolved
their claims with the Defendants in November, 2015, and the Court awarded attorneys' fees to
their counsel, Christopher M. Moody and Repps D. Stanford. See Payne v. Tri-State Careflight,
<u>LLC</u>, No. CIV 14-1044 JB/KBM, 2016 WL 5376321, at *2 (D.N.M. Aug. 17, 2016). Mr.
Moody and Mr. Stanford now seek attorneys' fees for their subsequent work for the

the Plaintiffs did not respond to an early settlement offer; (iii) whether time that the Plaintiffs' counsel spent calculating damages and communicating with clients is compensable; (iv) whether to reduce one paralegal's fees because her time entries are block billed; and (iv) whether certain costs are compensable, such as travel, ordering transcripts, and using LexisNexis. The Court will award fees as the Motion requests, but will reduce the award by: (i) applying a lower attorneys' fee rate than the Plaintiffs' counsel requested; (ii) lowering the paralegal fees by $2,500.00; and (iii) not awarding costs for LexisNexis. The Court will also adjust the total award request by applying the current gross receipts tax rate. Accordingly, the Court will grant in part and deny in part the Plaintiffs' First Fee Motion and Supp. Motion, and award fees and costs in the amount of $182,867.16 ($170,108.99 in fees and costs, and $12,758.17 in tax).

### FACTUAL BACKGROUND

Defendant Tri-State Careflight, LLC operates a medical transport service providing services in New Mexico, Arizona, and Colorado. See Second Amended Complaint Representative and Class Action Complaint for Damages for Violations of New Mexico Minimum Wage Act and New Mexico Common Law ¶ 11, at 2, filed January 28, 2016 (Doc. 100)("Second Complaint"). Tri-State CareFlight operates a fleet of aircraft that it staffs with pilots and trained medical personnel. See Second Complaint ¶ 9, at 3. Tri-State Careflight employs or employed Plaintiff Keith Bastian as a flight paramedic; Plaintiffs Jaqueline Fernandez-Quezada and Sherry K. Welch as flight nurses; and Plaintiffs Cason N. Heard and Gregory Oldham as pilots. See First Fee Motion at 2-3; Errata Sheet to Opposed Motion to Intervene as Parties Plaintiff and Class Representatives at 1, filed January 4, 2016 (Doc. 84).

Plaintiffs -- Keith Bastian, Jaqueline Fernandez-Quezada, Cason N. Heard, Gregory Oldham and Sherry K. Welch. See First Fee Motion at 4.

# PROCEDURAL BACKGROUND

This case is a wage-and-hour dispute. _See_ Second Complaint ¶ 1, at 1. The Plaintiffs seek recovery of: (i) unpaid overtime compensation under the New Mexico Minimum Wage Act ("NMMWA"); and (ii) other unpaid compensation on a theory of unjust enrichment. _See_ Second Complaint ¶¶ 95-128, at 12-18.

The Original Plaintiffs, William D. Payne and Nicole Payne, filed their case in state court on September 11, 2014. _See_ _Payne v. Tri-State Careflight, LLC_, D-101-CV-2014-02048, 1st Jud. Dist. Ct., Cty. of Santa Fe, State of N.M., filed September 11, 2014 (Montes, J.). Tri-State CareFlight and Stamper removed the case to federal court on November 17, 2014. _See_ Notice of Removal, filed November 17, 2014 (Doc. 1)("Notice of Removal"). The Defendants invoked the Court's diversity jurisdiction, representing that there is complete diversity of citizenship between the Plaintiffs and the Defendants. _See_ Notice of Removal ¶ 4, at 2.

On August 24, 2015, W. Payne and N. Payne moved to amend their complaint to: (i) eliminate a claim asserted for compensation for certain travel time; and (ii) add an additional Plaintiff -- Plaintiff Leslie B. Benson. _See_ Plaintiffs' Amended Opposed Motion for Leave to File First Amended Complaint, filed August 24, 2015 (Doc. 44)("First Motion to Amend"). On September 4, 2015, W. Payne and N. Payne filed Plaintiffs' Motion for and Brief in Support of Class Certification, filed September 4, 2015 (Doc. 48)("First Motion for Class Cert.").[2] The Court held a hearing on the First Motion to Amend on October 28, 2015. _See_ Clerk's Minutes, filed October 28, 2015 (Doc. 67)("Oct. 28th Clerk's Minutes"); Notice of Motion Hearing, filed October 16, 2015 (Doc. 64). At the October 28, 2015 hearing, the Court granted the First Motion

---

[2]W. Payne and N. Payne subsequently withdrew their First Motion for Class Cert on January 26, 2016. _See_ Plaintiffs' Notice of Withdrawal of Motion for Class Certification, filed January 26, 2016 (Doc. 96).

to Amend.  <u>See</u> Oct. 28th Clerk's Minutes at 1; Order at 1, filed March 14, 2016 (Doc. 112).  The same day as the hearing, W. Payne and N. Payne filed their Amended Complaint, in which W. Payne, N. Payne, and Benson asserted one count against the Defendants for their violation of the NMMWA.[3]  <u>See</u> Amended Complaint  ¶¶ 9-36, at 1-5.

In November, 2015, W. Payne, N. Payne, and Benson each reached resolutions on their respective claims.  <u>See</u> Memorandum Opinion and Order at 47, filed August 12, 2016 (Doc. 138) ("Intervenor MOO").  The Paynes reached a settlement with the Defendants on November 19, 2015 in which the Defendants agreed to provide them with full relief under the NMMWA.  <u>See</u> Intervenor MOO at 47.  Benson, meanwhile, signed a global release in an administrative proceeding before the Occupational Safety and Health Administration ("OSHA") on or around November 19, 2015.  <u>See</u> Intervenor MOO at 42.

In December, 2015, the Plaintiffs filed Plaintiffs David and Nicole Payne's Opposed Motion for Award of Attorneys' Fees and Costs and Memorandum In Support, filed December 10, 2015 (Doc. 72)("Paynes Fees Motion").  The Plaintiffs asserted that the settlement agreements between the Paynes and the Defendants provides that the Defendants would pay the Paynes' reasonable attorney's fees and costs.  <u>See</u> Paynes Fees Motion at 4.  The parties disputed whether reasonable attorneys' fees should include fees or costs associated with: (i) work on class certification, class communication, and other class-related activities; and/or (ii) an unsuccessful legal claim.  <u>See</u> 2016 WL 5376321, at *1; Memorandum Opinion and Order at 1, filed August

---

[3]The Amended Complaint did not reassert a count against the Defendants for unjust enrichment.  <u>See</u> Amended Complaint ¶¶ 25-36, at 4-5.  Asserting honest mistake in leaving out the unjust enrichment count, the Plaintiffs sought leave to file, and filed, their Second Amended Representative and Class Action Complaint for Damages for Violation of NMMWA and New Mexico Common Law, filed January 28, 2016 (Doc. 100)("Second Amended Complaint").  <u>See</u> Order, filed January 28, 2016 (Doc. 99)(granting leave to file the Second Amended Complaint with a count of unjust enrichment).

17, 2016 (Doc. 142)("Paynes Fees MOO"). The Court granted the Paynes Fees Motion only in part, deciding: (i) to not award any fees for class-related work, and (ii) to reduce the fee award for time spent on an unsuccessful claim. See 2016 WL 5376321, at *12-14; Paynes Fees MOO at 26-28. The Court also concluded that a $350.00 per hour rate Mr. Moody and a $300.00 per hour rate for Mr. Stanford were "reasonable for federal court practice in the District of New Mexico," and noted that "the Defendants do not object to the [requested] hourly rates." 2016 WL 5376321, at *13.

With all of W. Payne, N. Payne, and Benson's claims resolved, the Plaintiffs sought to replace them, by way of intervention pursuant to rule 24 of the Federal Rules of Civil Procedure. See Opposed Motion to Intervene as Parties Plaintiff and Class Representatives, filed December 15, 2015 (Doc. 73)("First Intervention Motion"). The Plaintiffs asserted:

> [N]one of the currently named Plaintiffs will be able to pursue this matter either individually or on behalf of the putative class members who were deprived of overtime pay pursuant to Defendants' uniform and unlawful overtime policies applicable to flight nurses, flight paramedics and pilots. Intervenors seek to pick up the prosecution of this lawsuit where the current Plaintiffs are soon to depart.

First Intervention Motion at 2.

As the motion to intervene was pending, the Defendants moved the Court, pursuant to rule 56 of the Federal Rules of Civil Procedure, to enter summary judgment in their favor and dismiss all claims in the Second Amended Complaint in their entirety and with prejudice. See Defendants Tri-State Careflight, LLC, and Blake A. Samper's Motion for Summary Judgment and Memorandum Brief in Support at 1, filed March 1, 2016 (Doc. 110)("MSJ"). The Defendants argued that federal law preempts the Plaintiffs' state law claim for the alleged NMMWA violation and the state law claim for unjust enrichment. See MSJ at 1. The Plaintiffs opposed the Defendants' Motion for Summary Judgment and also filed their Motion to Exclude

Consideration of New Law or New Argument Raised in Defendants' Reply to the Motion for Summary Judgment or, in the Alternative, to Permit Plaintiff to File a Surreply, filed on May 2, 2016 (Doc. 123)("Motion to Exclude"), as a result of the Defendants' MSJ.

On August 12, 2016, the Court, pursuant to rule 24(b) of the Federal Rules of Civil Procedure, granted the Plaintiffs' First Intervention Motion, permitting Bastian, Heard, Oldham, Welch, and Fernandez-Quezada to intervene as Plaintiffs. <u>See</u> Intervenor MOO at 1-2. The Court determined, among other things, that the resolution of W. Payne, N. Payne, and Benson's claims "did not render this case moot under Article III because the personal stake of the indivisible class may inhere prior to a definitive ruling on class certification." Intervenor MOO at 41 (citing <u>Lucero v. Bureau of Collection Recovery, Inc.</u>, 639 F.3d 1239, 1244-47 (10th Cir. 2011)).

In March, 2016, the Defendants filed the Defendants Tri-State Careflight, LLC, and Blake A. Stamper's Motion to Compel Plaintiffs to Supplement their Rule 26 Initial Disclosures and Answer Interrogatories and Respond to Requests for Production, filed March 28, 2016 (Doc. 116)("Motion to Compel"). In their Motion to Compel, the Defendants argued that the Court should direct the Plaintiffs to "supplement their initial disclosures with a computation of each category of damages claimed by the Plaintiffs and the identification or production of the documents and other material on which each computation is based." Motion to Compel at 1. The Plaintiffs responded with their Plaintiffs' Response to Motion to Compel, filed April 14, 2016 (Doc. 119)("MTC Response"). In their MTC Response, the Plaintiffs argued that it was not necessary for the Plaintiffs to provide precise damage amounts at that stage of discovery, because, pursuant to a Joint Status Report and Provisional Discovery Plan, the first discovery stage related only to class certification issues, not liability, and damage amounts were not

relevant to class certification. See MTC Response at 2 (citing Joint Status Report and Provisional Discovery Plan, filed February 10, 2015 (Doc. 13)). The Plaintiffs also asserted that the Defendants wanted the damage amounts "so that they can extend settlement offers to pick off and snipe one or more of the Plaintiffs to avoid the inevitable impact of class certification." MTC Response at 2 n.1. The Court granted the Motion to Compel in a hearing. See Transcript of Hearing at 7:2-3 (taken August 12, 2016)("MTC Hearing").[4]

In October, 2016, the Court denied the Defendants' MSJ, concluding that Congress "has not preempted the field of labor regulation for railroad and airline workers, and the present dispute does not involve the interpretation of a collective bargaining agreement." 2016 WL 6396214, at *1; Memorandum Opinion and Order at 2, filed October 25, 2016 (Doc. 147)("MSJ MOO"). In the same ruling, the Court also determined that the Defendants "raised a new issue of law in their reply in support of their Motion for Summary Judgment, to which the Plaintiffs may reply with a surreply should they deem it appropriate." 2016 WL 6396214, at *1; MSJ MOO at 2.

On November 17, 2016, the Defendants informed the Court that all five named Plaintiffs -- Bastian, Heard, Oldham, Welch, and Fernandez-Quezada -- had accepted the Defendants' Offer of Judgment pursuant to rule 68 of the Federal Rules of Civil Procedure. See Notice of Acceptance of Rule 68 Offer of Judgment, filed November 17, 2016 (Doc. 149) ("Acceptance Notice"). In the agreement, the Defendants agreed to pay attorneys' fees and costs "actually and reasonably incurred . . . up to the date of this offer." Offer of Judgment, filed November 17, 2016 (Doc. 149-1). A few weeks later, the Plaintiffs sought a judgment on attorneys' fees and costs. See First Fee Motion at 1.

---

[4]The Court's citations to this hearing's transcript refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

1.      **The Second Motion for Attorneys' Fees and Costs**.

In December, 2016, the Plaintiffs filed the First Fee Motion, requesting $172,231.50 in fees, $12,594.43 in New Mexico gross receipts tax on the fees, $1,973.99 in costs, and $144.35 in New Mexico gross receipts tax on the costs, for a total of $186,944.27.  See First Fee Motion at 4.   The Plaintiffs also submitted a fee statement with time entries.  See Fees Interim Statement (dated November 21, 2016), filed December 8, 2016 (Doc. 152-2)("Fee Statement").

The Plaintiffs assert that (i) the Plaintiffs' counsel Christopher M. Moody, accrued 117.3 hours at $375.00 per hour; (ii) the Plaintiffs' counsel Repps D. Stanford accrued 345 hours at $325.00 per hour; (iii) paralegal Anne M. Chavez accrued 7.5 hours at $90.00 per hour; and (iv) paralegal Chelsea Buldain accrued 171 hours at $90.00 per hour.  See First Fee Motion at 4-5.  The Plaintiffs also seek costs for court reporter charges associated with depositions of the Plaintiffs, a "modest sum for Lexis legal research costs," and travel expenses for Heard to travel to New Mexico for a deposition at the Named Defendants' request.  First Fee Motion at 5.

The Plaintiffs assert that the attorneys' rates are appropriate in light of their experience, the case's complexity, and the "excellent results obtained for the Plaintiffs."  First Fee Motion at 5.  Mr. Moody asserts, in a separate declaration, that, in his experience, "class action litigation counsel in this locality frequently bill at rates anywhere from $350 to $450 or more per hour." Declaration of Christopher Moody ¶ 11, at 3, dated December 8, 2016, filed December 8, 2016 (Doc. 152-1)("Moody Decl.").  Mr. Moody also asserts that he has "a number of clients that I charge $375 per hour."  Moody Decl. ¶ 11, at 3.  Mr. Stanford, in his separate declaration, asserts that "$300.00 is the current hourly rate that I charge on most new employment matters for which the hourly rates are not otherwise set by insurance coverage" and adds that his hourly rate for class action suits is even higher.  Declaration of Repps D. Stanford ¶ 14, at 3, filed December 8,

2016 (Doc. 152-3)("Stanford Decl."). Mr. Stanford asserts that, a recent class action lawsuit, a court approved his requested fee rate of $300.00 per hour and added that "[m]y involvement in the prosecution of this matter has been even more substantial, thereby warranting a higher fee rate here." Stanford Decl. ¶ 15 at 4. Mr. Moody also asserts that he reviewed the time records and removed "all entries for work related to the class/collective action aspects of this case." Moody Decl. ¶ 13, at 13.

### 2. The Defendants' Response to the Second Motion for Attorneys' Fees and Costs.

The Defendants filed their Response in Partial Opposition to Plaintiffs Keith Bastian, Jaqueline Fernandez-Quezada, Cason N. Heard, Gregory Oldham and Sherry K. Welch's Motion for Award of Attorneys' Fees and Costs, filed January 5, 2017 (Doc. 157)("Response"). The Defendants argue that the Plaintiffs' overall fee "should be reduced by 20 percent because they failed to timely respond to Defendants' settlement offer and refused to provide computations of damages." Response at 2. The Defendants also make several specific objections to the Plaintiffs' request. See Response at 2-3. First, the Defendants argue that the Court should "disallow the unjustified and unilateral increases in Plaintiffs' counsel's hourly rates." Response at 3. The Defendants assert that the rates which the Court previously approved -- $350.00 hourly rate for Mr. Moody and $300.00 hourly rate for Mr. Stanford, see 2016 WL 5376321, at *13; 2016 Fee MOO at 27 -- were "on the very edge of reasonable," but they did not object, Response at 4. Now, the Defendants assert, the Plaintiffs' counsel "has since decided to cross the threshold of unreasonableness by giving themselves raises" -- requesting $375.00 an hour for Mr. Moody and $325.00 an hour for Mr. Stanford, see First Fee Motion at 4 -- despite "[n]othing in the lawsuit or in the market justif[ying] such increases," Response at 4.

Second, the Defendants argue that the Court should disallow or substantially reduce fees

for the Plaintiffs' paralegals, arguing that these paralegals "block-billed large quantities of time for secretarial and administrative tasks that are not true paralegal work and that no client would pay for or accept." Response at 5.

Third, the Defendants argue that the Court should disallow time spent on "retainer agreements" and "class member contacts," because "securing new clients and formalizing retainer agreements is not legal work for which Defendants should be charged." Response at 7. Moreover, the Defendants argue that these entries are block-billed, such that it is impossible to discern how much time might be validly charged to the Defendants. See Response at 7.

Fourth, the Defendants argue that the Court should disallow time that the Plaintiffs spent resisting the Defendants' request for production of damages computations, a dispute which the Plaintiffs ultimately lost. See Response at 8.

Fifth, the Defendants argue that the Court should disallow "excessive attorney time analyzing and calculating damages" -- seventy hours -- that Mr. Moody and Mr. Stanford accrued after the Court granted the Defendants' Motion to Compel. The Defendants assert that, "[a]s with the time spent resisting their discovery obligations, it would be inequitable and unreasonable to provide a windfall of fees for the time Plaintiffs' counsel spent complying with a Court order that should have been unnecessary in the first place." Response at 10. Additionally, the Defendants argue that there is no "legitimate reason" why so much attorney time would be requiring for calculating these numbers, given that (i) "putting numbers into spreadsheets and performing calculations" is clerical work, and (ii) the attorneys had already spent considerable time calculating damages before the Court granted the Defendants' Motion to Compel. Response at 10.

Sixth, the Defendants contend that the Court should disallow time spent on a brief that

was never filed. <u>See</u> Response at 10-11 (citing Fee Statement at 22 & 23).

Seventh, the Defendants argue that the Court should disallow costs that the D.N.M. LR-Civ. do not authorize. <u>See</u> Response at 11 (citing D.N.M. LR-Civ. 54.2). The Defendants contend that the Plaintiffs seek certain costs that D.N.M.LR-Civ. 54.2 do not authorize, such as expenses that are not taxable, <u>e.g.</u>, Lexis Nexis research and travel expenses. <u>See</u> Response at 11. The Defendants also argue that the transcript costs for the Plaintiffs' depositions taken by the Defendants is not taxable, because they were not, as the rule D.N.M.LR-Civ. 54.2(b)(2) requires, "reasonably necessary to the litigation." Response at 11 (quoting D.N.M. LR-Civ. 54.2(b)(2)).

Eighth, and finally, the Defendants ask the Court to reduce the Plaintiffs' fee award by twenty percent, because the Plaintiffs, after rejecting the Defendants' early settlement offer, did not make a counteroffer. <u>See</u> Response at 12. The Defendants assert that courts may consider a plaintiffs' rejection of a settlement offer when determining the appropriateness of an attorneys' fees award. <u>See</u> Response at 12 (citing <u>Sheppard v. Riverview Nursing Ctr., Inc.</u>, 88 F.3d 1332, 1337 (4th Cir. 1996)). The Defendants assert that the Plaintiffs' "refusal to make a reasonable settlement demand (indeed, a settlement demand at all), to provide damage calculations, and to engage in settlement negotiations . . . all unnecessarily delayed the resolution of this case." Response at 12-13.

In all, the Defendants request that the Court reduce its overall award by twenty-percent, apply the previously approved rates for Plaintiffs' counsel, and not award fees for the following specific entries:

1. 171.60 hours for Chelsea Buldain;

2. 7.50 hours for Anne M. Chavez;

3. 4.3 hours for Christopher Moody for "retainer agreements" and class member contacts (.6 on 11/05/2015; 2.0 on 11/18/2015; 1.2 on 11/19/2015 (block-billed with other tasks); .5 on 12/03/2015 (block-billed with another task));

4. 26.9 hours for Repps Stanford for time spent resisting and refusing to provide damages computations and briefing and arguing motion to compel on that issue. (.5 on 3/21/2016; 4.2 on 3/23/2016; 3.5 on 4/11/2016; 6.7 on 4/13/2016; 8.20 on 4/14/2016; 3.8 on 7/12/2016);

5. 2.1 hours for Christopher Moody for time spent resisting and refusing to provide damages computation and briefing motion to compel on that issue. (.8 on 3/28/2016; .5 on 4/18/2016; .4 on 4/25/2016; .4 on 7/12/2016);

6. 61 hours for Repps Stanford for post-hearing time calculating damages;

7. 11.2 hours for Christopher Moody for post-hearing time calculating damages;

8. 11.1 hours for Repps Stanford for time spent on unfiled "supplemental brief regarding FAA preemption." (3.6 on 10/07/2016; 2.9 on 10/11/2016; 4.6 on 10/24/2016);

9. All the "Expenses" set forth in the statement, along with the associated tax.

Response at 13-14.

### 3. The Reply to the Defendants' Response.

The Plaintiffs replied to the Defendants in Plaintiffs' Keith Bastian, Jaqueline Fernandez-Quezada, Cason N. Heard, Gregory Oldham and Sherry K. Welch's Reply to Motion for Award of Attorneys' Fees and Costs and Memorandum in Support, filed January 20, 2017 (Doc. 158) ("Reply"). The Plaintiffs begin by asserting that their fee increase is appropriate given that a year has passed since their last fee request and that, in the United States Court of Appeals for the Tenth Circuit, courts are to determine rates "in effect at the time the fee is being established by the court," taking into account inflation and interest. Reply at 2 (quoting Ramos v. Lamm, 713 F.2d 546, 555 (10th Cir. 1983)). The Plaintiffs next argue that the paralegals' time should be

compensated, because the Tenth Circuit has been clear that paralegal work is work "reasonably spent on the case." Reply at 3 (citing Ramos v. Lamm, 713 F.2d at 558-59). The Plaintiffs next argue that, while a court may discount block billing fees, "the Tenth Circuit has never mandated a reduction or denial of a fee request because of block billing." Reply at 3-4. The Plaintiffs next state that they are "more than willing to exclude tasks that truly fall into the domain of secretarial/clerical work," and the Plaintiffs suggest that an "overall reduction of $2,500.00 for the paralegal services sought in this lawsuit is fair." Reply at 4.

The Plaintiffs also assert that time spent on "class member contact" -- i.e., "retaining actual clients and communicating with them to discuss and explain the attorney-client relationship" -- is recoverable because such tasks are "exceptionally important and necessary exchanges." Reply at 4.

As for the time the Plaintiffs spent briefing the motion to compel damages, the Plaintiffs argue that time is compensable, because the Supreme Court, in Hensley v. Eckerhart, 461 U.S. 424 (1983), "largely rejected" the "general posture of issue attacks on fee awards." Reply at 5 (citing Hensley v. Eckerhart, 461 U.S. at 435 n.11). The Plaintiffs contend that the "foremost" factor in determining fee awards is overall results, and, in this case, the Plaintiffs achieved "100% recovery." Reply at 5. Furthermore, the Plaintiffs deny that they ever "refused to turn over" discovery; instead, according to the Plaintiffs, they contended that "damages fed into merits issues, not class certification issues," and that they did not yet have the information needed to meaningfully calculate damages. Reply at 5.

Next, the Plaintiffs assert that the time they spent computing damages is compensable because, for starters, their "meticulous" work was valuable, as it produced the exact damages amounts that the Defendants eventually agreed to pay. Reply at 5. Additionally, the Plaintiffs

contend that the payroll data was complex and time-consuming to interpret:

> Plaintiffs spent time and effort trying to interpret the payroll data, examine discrepancies, assess the nature of the settlement offers and ascertain how in the world Defendants came up with round, low-ball settlement numbers, communicate the same with their clients and discuss settlement, examine several legal issues on damages and conduct an initial damages assessment based on the voluminous payroll information.

Reply at 6. The Plaintiffs also assert that they reached out to the Defendants for help interpreting the data, but the Defendants never responded. <u>See</u> Reply at 6. To help illustrate the need for so many hours analyzing the payroll data, the Plaintiffs devote one and a half pages to summarizing the types of problems the payroll data presented.[5] <u>See</u> Reply at 6-8.

The Plaintiffs next assert that the time they spent on a supplemental brief that was ultimately never filed is compensable:

> In its October 25, 2016 Memorandum Opinion and Order . . . , the Court denied Defendants' Motion for Summary Judgment on Railway Labor Act pre-emption, but left room open for additional entertainment and briefing on Federal Aviation Act pre-emption. Given that the Rule 68 offers had not yet been extended, no settlement offers were pending and a favorable ruling on FAA pre-emption would

---

[5]Quoting just one of the paragraphs is enough to convey the gist; the Plaintiffs write:

The calculation difficulties were further exacerbated by the fact that Defendant's policy applicable to nurses and paramedics were such that they received one and one times their regular rate after working 96 hours in a two-week period. Thus, Plaintiffs had to ensure that they were not calculating double recovery in each situation in which they had already received pay at the applicable overtime rate once they hit the forty (40) hour mark for that week. Hourly rates also changed over time. It [] remained unclear from the testimony and handbook whether Defendants' work week started at 12:00 a.m. on Saturday and ran to 12:00 a.m. the next Saturday or from 8:30 a.m. on Saturday until 8:30 the next Saturday, thus forcing Plaintiffs to run several damages models to determine whether it made a difference on damages. Furthermore, the hourly summaries for each two-week period ([<u>e.g.</u>,] X worked 108 hours in a two-week period) did not correspond to the work week, so Plaintiffs had to manually convert the bi-weekly calendar to a Saturday to Saturday calendar for every single Plaintiff and then, as indicated above, ascertain the overtime hours they worked each work week and then offset.

Reply at 7.

result in the dismissal of Plaintiffs' entire lawsuit, it would have beyond folly for Plaintiffs not to start immediately the process of preparing a surreply on FAA pre-emption, particularly with their Motion for Class Certification pending. That Defendants chose to serve Rule 68 offers of judgment before its fil[ing] does not obviate the utility, reasonableness or value of necessary work performed on a dispositive issue in the lawsuit

Reply at 8 (citing MSJ MOO at 39; 2016 WL 6396214 at *19).

The Plaintiffs next address the costs issue, arguing that both federal law and the district court's local rules support finding the deposition costs compensable. Reply at 9. The Plaintiffs note, for instance, that 28 U.S.C. § 1920 states that deposition transcript fees are recoverable if the transcripts were "necessarily obtained for use in the case." Reply at 9 (quoting 28 U.S.C. § 1920(2)). The Plaintiffs argue that, in the Tenth Circuit, it does not matter that a deposition was never used in trial so long as "it appeared to be reasonably necessary at the time it was taken." Reply at 9 (citing In re Williams Sec. Litig--WCG Subclass, 558 F.3d 1144, 1149 (10th Cir. 2009)). The Plaintiffs argue that because the Defendants took the depositions, they must have "believed that those depositions were necessary for the case or they would not have taken them and charged their clients for the costs of the transcripts." Reply at 9. Furthermore, "[p]rudence dictated that Plaintiffs obtain copies of those transcripts" as well. Reply at 9.

Next, the Plaintiffs assert that the time spent researching on Lexis Nexis is compensable, because, in the Tenth Circuit, "out-of-pocket costs not normally absorbed as part of the law firm overhead is reimbursable as part of attorneys' fees awarded pursuant to a fee shifting statute," Reply at 9-10 (citing Ramos v. Lamm, 713 F.2d at 558), and that the Tenth Circuit has extended that principle to "computerized legal research," Reply at 10 (citing Case by Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan., 157 F.3d 1243, 1257-58 (10th Cir. 1998)). On the matter of Heard's travel costs, the Plaintiffs contend that flying Heard to New Mexico was meant to save the parties the time and expense of flying to meet Heard in Salt Lake City, Utah. See Reply

at 10.

Finally, the Plaintiffs assert that the Plaintiffs' rejection of the Defendants' first settlement offer provides "no justification" for reducing the overall award by twenty percent. Reply at 10. The Plaintiffs proffer three reasons why no reduction on that ground is appropriate. First, the Plaintiffs do not believe the Defendants made their first two settlement offers in good faith, given that the offers were very low and did not correlate with any sensible interpretation of its payroll data. See Reply at 10. Second, after the Plaintiffs provided their damage calculations to the Defendants, the Defendants chose not to initiate any new settlement proposals. See Reply at 11. Third, the Plaintiffs contend that individual Plaintiffs have, at times, resisted settlements, because they "chose to take both their individual and class obligations seriously and not acquiesce in the picking-off strategy with paltry settlement offers." Reply at 10. The Plaintiffs also argue that they did "try to respond with a potential resolution of this lawsuit," stating that, in the summer of 2016, the parties discussed mediation on several occasions. Reply at 11.

**4.    <u>The Supplemental Motion for Attorneys' Fees and Costs</u>.**

Two months later, the Plaintiffs submitted the Plaintiffs' Supplemental Motion for Attorneys' Fees & Costs, filed March 29, 2017 (Doc. 160)(Supp. Motion). In their Supp. Motion, the Plaintiffs seek fees and costs incurred in making the recent fees and costs request, e.g., reviewing and preparing billing records, legal research, preparing and submitting supporting fee declarations, drafting the First Fee Motion and Reply, and analyzing the Defendants' Response. See Supp. Motion at 3. Specifically, the Plaintiffs seek $10,905.00 in attorneys' fees, $797.43 in gross receipt tax on the attorneys' fees, $385.32 in costs, and $28.18 in gross receipt tax on the costs, for a total of $12,115.93.[6] See Supp. Motion at 3. The Plaintiffs assert that the

---

[6]The $12,115.95 is in addition to the $186,944.27 that the Plaintiffs request in their First

Tenth Circuit permits attorneys' fees awards to include compensation for work performed on fees and cost requests.  See Supp. Motion at 2 (citing Case by Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan., 157 F.3d 1243, 1257-58 (10th Cir. 1998); Swisher v. United States, 262 F. Supp. 2d 1203, 1211-12 (D. Kan. 2003)).

### 5.     **The Defendants' Response to the Supplemental Motion.**

The Defendants submitted the Defendants' Response to Plaintiffs' Supplemental Motion for Attorneys' Fees & Costs, filed April 19, 2017 (Doc. 162)("Supp. Response").   The Defendants argue that until the Court rules on the Plaintiffs' First Fee Motion, the Plaintiffs' Supp. Motion is "premature," because, if the Court chooses to substantially reduce their fee award, the Court should also reduce the award for fees incurred in doing the briefing.  Supp. Response at 2.  The Defendants add that the "Plaintiffs should not be rewarded for spending unnecessary time trying to recover fees and costs for inappropriate or uncompensable activities." Supp. Response at 2.

The Defendants make three arguments for fee and cost reduction.  First, the Defendants argue once again that the Plaintiffs' increase in their requested rates is inappropriate and that the Court should not award attorneys' fees at the new higher rates.  See Supp. Response at 2. Second, the Defendants argue that the Court should not award attorneys' fees for the time that the Plaintiffs spent researching the Court's previous opinions on attorneys' fees and rates, because that research led to no citations in the Plaintiffs' Reply brief.  See Supp. Response at 3. The Defendants theorize that the research led to no briefing citations, because the Plaintiffs could not find opinions awarding fees at the hourly rates that the Plaintiffs now request.  See Supp. Response at 3 ("Defendants should not have to pay unreasonably high rates, and they also should

---

Fee Motion, see First Fee Motion at 4, for a grand total of $199,060.22.

not have to pay for the time spent in a futile attempt to support those unreasonably high rates."). Third, the Defendants assert that the Court should not award fees for time spent reviewing time sheets to find and remove "unallowable time" and "uncompensable 'administrative activities.'" Supp. Response at 3-4. Fourth, the Defendants argue that the Court should not award fees for time spent researching and briefing on expenses that federal or local rules do not allow. See Supp. Response at 4. Fifth, and finally, the Defendants argue that Lexis Nexis research time is not a recoverable expense under local rules and the Court's Final Judgment's terms. See Supp. Response at 4 (citing Final Judgment, filed November 23, 2016 (Doc. 150)).

**6.** **The Plaintiffs' Reply to the Defendants' Response.**

The Plaintiffs submitted the Plaintiffs' Reply to Supplemental Motion for Award of Attorney's Fees and Costs, filed May 2, 2017 (Doc. 163)("Supp. Reply"). In their Supp. Reply, running only two pages, the Plaintiffs do not proffer new arguments, but reiterate that the "New Mexico Minimum Wage Act . . . and the relevant case law[] permit recovery of reasonable attorney's fees incurred by the prevailing party in drafting a fee application." Supp. Reply at 2. The Plaintiffs add, in a footnote, that they did not cite the Court's prior cases on attorney fee rates, because, "[i]n the undersigned's experience, it is readily apparent that this Court is well aware of its prior rulings and hardly needs counsel to educate the Court on the same." Supp. Reply at 1 n.1.

**7.** **The Hearing.**

The Court held a hearing on August 2, 2017. See Draft Transcript of Hearing (taken August 2, 2017)("Tr.").[7] The Court began by asking the Plaintiffs about the Defendants' assertion that the Plaintiffs' failure to respond to the Defendants' first settlement offer led to

---

[7]The Court's citations to this hearing's transcript refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

much of the attorneys' fees.  <u>See</u> Tr. at 20:13-17 (Court).  The Plaintiffs responded by recognizing that failing to respond to a settlement offer may be a factor in determining attorneys' fees, but added that such an offer must be a reasonable one.  <u>See</u> Tr. at 20:18-20 (Stanford).  The Plaintiffs asserted that "if you . . . compare the amounts that our clients got [and] the offers that they made, they're not even close."  Tr. at 20:20-22 (Stanford).  The Plaintiffs stated that, at the time they received the Defendants' first offer, they "had very limited data with regard to the numbers in terms of the overtime exposure," Tr. at 21:25-22:1 (Stanford), but that they got the necessary information "within a couple weeks," Tr. at 22:7-8 (Stanford).  The Plaintiffs contended that after the Defendants gave them that information, "they tendered . . . the exact same settlement offers," which made the Plaintiffs assume that the Defendants "clearly hadn't done any analysis of what the actual overtime exposure would be."  Tr. at 22:8-13 (Stanford).  The Plaintiffs then insisted that, following the Defendants' first offers, the Plaintiffs "didn't sit idly on the sidelines."  Tr. at 22:14 (Stanford).  Rather, the Plaintiffs said that they "reached out" to the Defendants and spoke about "going to mediation and developing in more detail discussions that could take place," Tr. at 22:22-25 (Stanford), going so far as to choose an arbitrator, <u>see</u> Tr. at 23:8 (Stanford), but the mediation discussions ultimately "subsided," Tr. at 7-8 (Stanford).  The Plaintiffs added that once they provided the Defendants with specific damage amounts, in July, 2016, the Defendants did not respond with a revised settlement offer.  <u>See</u> Tr. at 23:12-15 (Stanford).  The Plaintiffs contended that the Defendants did not make a revised settlement offer because they "wanted to get some inclination from the Court how it might rule" on other issues, such as the Defendants' preemption motion.  Tr. at 23:15-19 (Stanford).

The Plaintiffs then argued that the cases that the Defendants cited in support of their

request for a twenty-percent fee reduction are inapposite, as they deal with a fact-specific scenario in a Title VII action context.  See Tr. at 25:7-26:25 (Stanford).  In this case, the Plaintiffs contended, the appropriate framework is under Hensley v. Eckerhart, 461 U.S. 424 (1983), where the court starts "with a presumptive lodestar," and makes adjustments based on the results the winners obtained.  Tr. at 26:20-24 (Stanford).

The Plaintiffs also contended that they never refused to provide damages information; instead, they "took the position . . . we didn't need to provide disclosed damages information" in light of an earlier agreement to bifurcate the liability and damages," and once the Court directed the Plaintiffs to provide that information, they complied "in a timely manner."  Tr. at 28:23-29:11 (Stanford).  In any case, the Plaintiffs assert, the dispute over bifurcation should not support reducing an overall fee award.  See Tr. at 29:10-13 (Stanford).

Next, the Plaintiffs stated that Tenth Circuit law does not call for a "wholesale dismissal" of all paralegal work that is block billed, only that such amount could be reduced.  Tr. at 30:17-25 (Stanford).  The Plaintiffs then stipulated that "we think a good estimate is $2,500 to take out of Ms. Buldain's time . . . ."  Tr. at 31:2-6 (Stanford).

The Plaintiffs also stated that "when we originally filed our motion, the gross receipts tax was lower [and] because it's currently 7.5 percent as of July of 2017[,] . . . there would need to be a recalculation of that."  Tr. at 34:23-34:1 (Stanford).

The Defendants then took their turn, beginning by asserting that "[t]he Plaintiffs seem to think that if they get a successful recovery, whatever they asked for, they get.  And that's not the case."  Tr. at 35:21-23 (Lowry).  The Defendants noted that the fee award following the Defendants settling with the Original Plaintiffs -- the Paynes -- came to $77,000, where now, with the same claims and damage theories, the Plaintiffs request $186,000 in fees, a disparity

which "shocked" the Defendants.  Tr. at 36:10-16 (Lowry).

The Defendants also assert that, under rule 26 of the Federal Rules of Civil Procedure, the Plaintiffs have the "burden of establishing and computing" their damages, but they resisted until a Court order directed them to do so.  Tr. at 36:19-23 (Lowry).  The Defendants also disputed the insinuation that an offer of "round numbers" indicates that they were not genuine offers; "I don't think there's any requirement that the first settlement offer be every penny that the Plaintiffs think they're entitled to."  Tr. at 37:2-9 (Lowry).

The Defendants also stated that the reason for not making another offer to the Plaintiffs after receiving the damage numbers was because they were "sort of in a box," figuring that because the Plaintiffs have not made a counteroffer, they did not want to bid against themselves. Tr. at 37:11-16 (Lowry).  "Ultimately we did bid against ourselves and made the rule 68 offers." Tr. at 37:17-18 (Lowry).

Next, the Defendants assert that "the key point" of their position is that "the Plaintiffs are entitled to reasonable fees, not all fees that they asked for."  Tr. at 38:16-18 (Lowry).

As to the Plaintiffs' counsels' fee rates, the Defendants contended that the Plaintiffs' counsel, in June 2016, filed a motion for attorneys' fees in a different case in which they requested lower rates than they are asking for now, and cited to the Courts' attorneys' fees ruling following the Paynes' settlement to justify that rate.  See Tr. at 38:21-39:7 (Lowry).  "They said [those rates were] reasonable then, and we don't believe that our clients should have to pay a higher rate for work done even earlier than that."  Tr. at 39:5-6 (Lowry).

The Court then asked the Defendants why the fees incurred in working out retainer agreements and making contact with class members should not be compensable, and the Defendants replied that those tasks were better characterized as "business expense[s]," and, in

any case, not necessary to reach the rule 68 settlement.  Tr. at 39:19-40:1-4 (Court, Lowry).

Next, the Defendants recognized that "there is a significant amount of time that can be spent

getting computations right," but they contend that, in this case, "the legal issues are pretty

straightforward."  Tr. at 40:14-19 (Lowry).  Consequently, the Defendants argue, they are not

challenging the 31 hours that the Plaintiffs' counsel devoted to computing damages after the

Court ordered them to produce the evidence, but do object to the seventy hours spent after that,

as "the legal issues are pretty straightforward," and they "don't think there is more than thirty

hours of genuine legal work [to be done] about damages."  Tr. at 40:21-25 (Lowry).

The Defendants next argued that awarding attorneys' fees for time spent on a motion that

was never filed would be improper, and "would set a bad precedent" by rewarding working on

"phantom motions" that "never get before the Court."  Tr. at 41:3-8 (Lowry).  The Court then

asked what the difference would be between working on a memo that was never filed and, say,

asking an associate to prepare a memo, and then, based on the memo, deciding not to file a

particular brief?  Tr. at 41:9-16 (Court).  The Defendants replied that they would draw a

distinction between work that is "preliminary in terms of doing an analysis of whether it's worth

bringing a particular motion or filing a particular brief versus working on a brief that we've

never seen that was never filed."  Tr. at 41:17-21 (Lowry).

The Defendants then began to discuss costs.  As to the transcription costs, the Defendants

contended that the depositions were not taken in preparation of trial or for the rule 68 settlement,

but rather only in connection to class certification, "which the Court has already ruled the

Plaintiffs cannot recover for."  Tr. at 42:5-10 (Lowry).  As to the travel costs, the Defendants

asserted that they do not believe that the Court can award travel costs because the local rules do

not permit it.  See Tr. at 42:11-14 (Lowry)(citing D.N.M. LR-Civ. 54.2(c)(1)(D)).  Finally, the

Defendants asserted that they "have no objection" to recalculating the gross receipts tax under the accurate rate. Tr. at 42:15-19 (Lowry).

The Plaintiffs' counsel asserted that, in attorneys' fees disputes, he has "always had a hard time" understanding the position that "one side bills for exactly the same services that it says the other side shouldn't get when the other side prevails." Tr. at 44:6-11 (Stanford).

As to the Defendants' initial offers, the Plaintiffs assert that because the Defendants had, at the time, the information about payroll and hours such that they "should have known what the range was in terms of overtime exposure and the treble damages and the interest," the initial figures that they offered the Plaintiffs should have been plainly too low. Tr. at 45:9-19 (Stanford).

The Plaintiffs then addressed the attorneys' fees' rates that the Plaintiffs' counsel submitted in a separate action in Rio Arriba County, the Plaintiffs asserted that "the principal factor in adjusting rates is looking at the marketplace as a starting point," and the marketplace in Rio Arriba County "has a little different standards than Albuquerque." Tr. at 45:20-46:4 (Stanford). Additionally, the Plaintiffs contended, the Rio Arriba Case deals with a different kind of issue -- the Whistleblower Protection Act -- such that the market rate for attorneys' may be different than with NMMWA cases. See Tr. at 46:1-18 (Stanford).

The Plaintiffs next addressed why the time spent communicating with clients should be included in the attorneys' fees award, and the Plaintiffs argued that these communications were necessary, and required by the Rules of Professional Ethics, to help the clients understand, e.g., the case in general and their role as class representatives. See Tr. at 46:19-47:7 (Stanford). The Plaintiffs add that such client relations are "no different on the plaintiff's side than it is on the defense side; the time is reasonable and necessary to the case." Tr. at 47:4-7 (Stanford).

The Plaintiffs concluded by asserting that the Defendants took several months to pay attorneys' fees the last time the Court so ordered, so the Plaintiffs requested that the Court indicate in its order a "reasonable payment period of 30 days" for the Defendants to pay the award. Tr. at 51:12-23 (Stanford).

The Court then stated that it thinks that reducing the fees incurred in block billing should may be appropriate in light of the clerical work that they contain. <u>See</u> Tr. at 52:6-10 (Court). However, the Court stated that it is not inclined to reduce fees based on the length of time it took to reach a settlement. <u>See</u> Tr. at 52:11-17 (Court). The Court also indicated that it did not see a problem with attorneys calculating damages given the importance of the damages to the case; moreover, the time the attorneys spent on the calculations did not strike the Court as unreasonable. <u>See</u> Tr. at 52:18-25 (Court). Finally, the Court stated that it does not have a problem with an increase in the overall attorneys' fees from the last time the Court awarded attorneys' fees in this case, given that the Plaintiffs' counsel have been representing more clients. <u>See</u> Tr. at 53:4-7 (Court). Ultimately, the Court expected that the fee award "is going to be closer . . . to the Plaintiffs' request than it is to the Defendants' request." Tr. at 53:8-10 (Court).

## <u>LAW REGARDING ATTORNEY'S FEES</u>

The obligation to pay attorneys' fees can arise by statute or contractual agreement. <u>See United States ex rel. Trustees of the Colo. Laborers Health & Welfare Trust Fund & Expert Env'l Control, Inc.</u>, 790 F. Supp. 250, 251-52 (D. Colo. 1992)(Kane, J.)(citing <u>F.D. Rich, Inc. v. United States ex rel. Indus. Lumber Co.</u>, 417 U.S. 116 (1974)). Whether the obligation to pay reasonable attorneys' fees arises from statute or contract, the court's analysis of the reasonableness of the fees is similar. <u>See United States ex rel. Trustees of the Colo. Laborers Health & Welfare Trust Fund & Expert Env'l Control, Inc.</u>, 790 F. Supp. at 251-52 (citing

United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc., 834 F.2d 1533 (10th Cir. 1987)). The Tenth Circuit has explained that, in evaluating fees that a contract awards, the Court may consider "the familiar factors from the federal court cases awarding fees in the statutory context" as Ramos v. Lamm, 713 F.2d 546 (10th Cir. 1983), defines them. United States ex rel. Trustees of the Colo. Laborers Health & Welfare Trust Fund & Expert Env'l Control, Inc., 790 F. Supp. at 251-52 (citing United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc., 834 F.2d at 1550).

"To determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998). The lodestar is "'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate,' which produces a presumptively reasonable fee that may in rare circumstances be adjusted to account for the presence of special circumstances." Anchondo v. Anderson, Crenshaw & Assoc., LLC, 616 F.3d 1098, 1102 (10th Cir. 2010)(quoting Hensley v. Eckerhart, 461 U.S. at 433, and Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 543-44 (2010)). "The party requesting attorney fees bears the burden of proving" the two components used to calculate the fee award: (i) "the amount of hours spent on the case"; and (ii) "the appropriate hourly rates." United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1233 (10th Cir. 2000). See New Mexico v. Valley Meat Co., LLC, 2015 WL 9703255, at *22 (D.N.M. Dec. 14, 2015)(Browning, J.)(citing United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d at 1233). Once the Court makes these two determinations, the fee "claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." Robinson v. City of Edmond, 160 F.3d at 1281.

"To determine what constitutes a reasonable rate, the district court considers the prevailing market rate in the relevant community." New Mexico v. Valley Meat Co., LLC, 2015 WL 9703255, at *23 (quoting Lippoldt v. Cole, 468 F.3d 1204, 1224-25 (10th Cir. 2006)). See Malloy v. Monahan, 73 F.3d 1012, 1018 (10th Cir. 1996). The party entitled to fees must provide the district court with sufficient information to evaluate prevailing market rates. See Lippoldt v. Cole, 468 F.3d at 1225. Moreover, the party must also demonstrate that the rates are similar to rates for similar services by "lawyers of reasonably comparable skill, experience, and reputation" in the relevant community and for similar work. Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). See Case v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1255-56 (10th Cir. 1998); Ramos v. Lamm, 713 F.2d at 555 ("The hourly rate should be based on the lawyers' skill and experience in civil rights or analogous litigation."), overruled in part on other grounds, Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 483 U.S. 711, 725 (1987). Courts may also consider their own knowledge of market rates. See Lippoldt v. Cole, 468 F.3d at 1225. The party seeking fees "should submit evidence supporting the hours worked and rates claimed." Hensley v. Eckerhart, 461 U.S. at 434. Although "[t]here is no precise rule or formula," district courts have discretion to make an "equitable judgment" as to "eliminate" or "reduce" requested fees "to reflect a plaintiff's overall success level." Hensley v. Eckerhart, 461 U.S. at 436-37. See General Protecht Grp., Inc. v. Leviton Manufacturing Co., 122 F. Supp. 3d 1114, 1135 (D.N.M. 2015)(Browning, J.)("A district court may also make adjustments to the lodestar figure to reflect a plaintiff's overall success level."); Ysasi v. Brown, 2015 WL 403930, at *10 (D.N.M. Jan. 7, 2015)(Browning, J.). The court may adjust the lodestar figure to reflect various factors, including the degree of success obtained, the significance of the legal issues involved, and the public interest advanced by the litigation. See Farrar v. Hobby, 506 U.S. 503, 120-22 (1992).

The Court has discretion "to adjust or even deny a contractual award of fees if such an award would be inequitable or unreasonable." United States ex rel. Trustees of the Colo. Laborers Health & Welfare Trust Fund & Expert Env'l Control, Inc., 790 F. Supp. at 251-52 (citing United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc., 834 F.2d at 1548). In awarding fees, the district court should "provide a concise but clear explanation of its reasons for [a] fee award." Hensley v. Eckerhart, 461 U.S. at 438.

N.M. Stat. § 50-4-26(E), the statute at issue in this case, provides:

> The court in any action brought under Subsection D of this section shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow costs of the action and reasonable attorney fees to be paid by the defendant. In any proceedings brought pursuant to the provisions of this section, the employee shall not be required to pay any filing fee or other court costs necessarily incurred in such proceedings.

N.M. Stat. § 50-4-26(E).

## ANALYSIS

The Court will award fees as the Motion requests but will reduce the award by: (i) applying a lower attorneys' fee rate than the Plaintiffs' counsel requested; (ii) lowering the paralegal fees by $2,500; and (iii) not awarding costs for LexisNexis. The Court will also adjust the total award request by applying the current gross receipts tax rate.

## I. THE PLAINTIFFS ARE ENTITLED TO REASONABLE ATTORNEYS' FEES AND COSTS PURSUANT TO N.M. STAT. ANN. § 50-4-26(E) AND THEIR SETTLEMENT AGREEMENT WITH THE DEFENDANTS.

On November 17, 2016, the Defendants notified the court they had made an Offer of Judgment to the Plaintiffs pursuant to rule 68 of the Federal Rules of Civil Procedure and that the Plaintiffs had accepted. See Notice of Acceptance of Rule 68 Offer of Judgment, filed November 17, 2016 (Doc. 148). The agreement stipulated that the Defendants would pay the Plaintiffs for "reasonable attorneys' fees and costs actually and reasonably incurred by counsel

for Plaintiffs."  Offer of Judgment at 1, filed November 17, 2016 (Doc. 149-1).[8]  Consequently,

---

[8]The Court notes that the Plaintiffs have asserted, and the Defendants do not dispute, that they may be owed attorneys' fees and costs for time spent seeking attorneys' fees.  See Supp. Fee Motion; Supp. Response.  The parties' settlement agreement, however, appears to contemplate limiting the attorneys' fees award to only those fees and costs accrued up to a certain date.  See Offer of Judgment; Final Judgment.  In the Offer of Judgment, the Defendants "offer to allow Plaintiffs to take judgment against all Defendants" for damages and "[a]ttorneys' fees and costs actually and reasonably incurred by counsel for Plaintiffs up to the date of this offer, subject to determination of the Court."  Offer of Judgment at 1 (emphasis added).  The Defendants made their offer on November 2, 2016.  The Final Judgment -- which, as a condition to the Plaintiffs' acceptance of the Offer of Judgment, the parties submitted to the Court for entry -- states that judgment is "entered in favor of Plaintiffs for reasonable attorneys' fees and costs incurred by counsel for Plaintiffs up to the date Plaintiffs accepted Defendants' Rule 68 Offer of Judgment."  Final Judgment at 1-2 (emphasis added).  The Plaintiffs accepted the Offer of Judgment on November 16, 2016, see Email from Mr. Moody to Mr. Vigil and Mr. Lowry (sent November 16, 2016), filed November 17, 2016 (Doc. 149-1), and got to work on their Second Fees Motion the next day, see Supplemental Interim Statement at 1, filed March 29, 2017 (Doc. 160-2)("Supp. Fee Statement")(showing the first time entry as being on November 17, 2016).

In other words, the Defendants appear to have made an offer that caps fees and costs at the date of the offer -- November 2, 2016 -- so long as the Plaintiffs also agree to submit a proposed Final Judgment to the Court, which caps fees and costs at the date of acceptance -- November 16, 2016.  Capping fees and costs on these dates would be significant: the Plaintiffs assert that, between November 2, 2016 and November 16, 2016, they incurred fees and costs totaling $2,775.00.  See Fee Statement at 24 (entries from November 3, 2016 to November 11, 2016).  The Plaintiffs also assert that, after November 16, 2016, they incurred fees and costs totaling $12,115.93.

The Offer of Judgment and Final Judgments' ostensible time caps are not the whole the story, however, because the Plaintiffs bring their First Fee Motion based on the NMMWA's fee-shifting provision.  See  First Fee Motion at 1 (stating that they are "seeking attorneys fees and cost pursuant to the New Mexico Minimum Wage Act . . .  and specifically § 50-4-26(E).")  The Defendants agree that the Plaintiffs' claims derive from the NMMWA.  See Response at 1 ("Attorneys' fees are authorized by, and an appropriate component of a final judgment pursuant to, the New Mexico Minimum Wage Act, the statutory basis for Plaintiffs' claims for unpaid overtime." (citing N.M. Stat. Ann. § 50-4-26(E)).    Section 50-4-26(E) states that when a plaintiff's NMMWA claim is successful, a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow costs of the action and reasonable attorney fees to be paid by the defendant."  Given the parties' agreement that the NMMWA provides the basis for the attorneys' fees and cost award, the Court will not limit the award by the ostensible time limits outlined in the Offer of Judgment and Final Judgment.  See  Grubb v. Kempthorne, No. CIV.06-1260JB/DJS, 2008 WL 5999637, at *10 (D.N.M. Aug. 25, 2008)(Browning, J.)("[T]he primary goal of contract interpretation is to determine and give effect to the intention of the parties." (quoting Atlantic Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1149 (10th Cir. 2000))); Gallup Med Flight, LLC v. Builders Tr. of New Mexico, 240 F. Supp. 3d 1161, 1220–

the Plaintiffs are entitled to reasonable attorneys' fees and costs.

## II. THE COURT WILL ADJUST AWARDED ATTORNEYS FEES AND COSTS BY APPLYING AN UPDATED GROSS RECEIPTS TAX RATE, AND ATTORNEYS' FEE RATES THAT ARE LOWER THAN THE RATES THE PLAINTIFFS REQUESTED.

The Court will apply, pursuant to the parties' agreement, an updated gross receipts tax rate to any attorneys' fees and costs it awards. See Tr. at 42:15-19 (Lowry)("[W]e have no objection . . . to apply the current gross receipts tax rate"). When the Plaintiffs submitted their First Fee Motion, the Albuquerque's gross receipts tax was 7.1875%; now it is 7.5%. See Gross Receipts Tax Rates, New Mexico Taxation & Revenue Department, http://www.tax.newmexico.gov/gross-receipts-tax-historic-rates.aspx. See Garcia v. Farmington, No. CIV. 12-383 JCH/SCY, 2017 WL 4271230, at *3 (D.N.M. Jan. 31, 2017)(Herrera, J.) (applying the most up-to-date gross receipts tax rate to attorneys' fees award when one party requested that rate and the other party did not object).

The Court will not approve the attorneys' fee rates that the Plaintiffs' counsel have submitted, and, instead, will apply the rate that the Court approved for those same counsel in an earlier attorneys' fees request. "To determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998). The lodestar is "'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate,' which produces a presumptively reasonable fee that may in rare circumstances be adjusted to account for the

---

21 (D.N.M. 2017)(Browning, J.)("'[T]he fact finder may consider extrinsic evidence of the language and conduct of the parties and the circumstances surrounding the agreement, as well as oral evidence of the parties' intent.'" (quoting Mark V, Inc. v. Mellekas, 1993-NMSC-001, ¶ 13, 114 N.M. 778, 845 P.2d 1232, 1236)).

presence of special circumstances." Anchondo v. Anderson, Crenshaw & Assoc., LLC, 616 F.3d 1098, 1102 (10th Cir. 2010)(quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983), and Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 543-44 (2010)). "The party requesting attorney fees bears the burden of proving" the two components used to calculate the fee award: (i) "the amount of hours spent on the case;" and (ii) "the appropriate hourly rates." United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1233 (10th Cir. 2000). See New Mexico v. Valley Meat Co., LLC, 2015 WL 9703255, at *22 (D.N.M. Dec. 14, 2015)(Browning, J.)(citing United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1233 (10th Cir. 2000)). Once the Court makes these two determinations, the fee "claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998).

The Plaintiffs' counsel request a $375.00 an hour rate for Mr. Moody and a $320.00 an hour rate for Mr. Stanford. See First Fee Motion at 4-5. In support of the requested rates, Mr. Moody submits an affidavit listing his bona fides: Mr. Moody graduated from Duke University of School of Law in 1983, is A.V. rated by Martindale-Hubble, and has handled about "several hundred" litigation matters relating to fields such as wage-and-hour, employment law, whistleblower actions, and wrongful termination, and "was certified as co-class counsel for plaintiff classes in two large national employment discrimination cases in the United States District Court for the District of Columbia," which involved classes of more than two thousand members. Moody Decl. ¶¶ 3, 5-6, 9, at 1-3. Mr. Stanford also submitted an affidavit, asserting that he graduated from the University of New Mexico School of Law, is a shareholder at Moody & Warner, P.C., has "successfully litigated, settled and defended numerous employment cases . . . in both state and federal courts," tried "at least five (5) jury cases in state and federal

courts involving employment disputes," and "served as lead counsel or co-counsel in at least five (5) class or collective action lawsuits."  Stanford Decl. ¶¶ 3, 5, 7, 10, at 1-2.

The Plaintiffs explain the rate increase by noting that a year has passed since their last fee request, and Tenth Circuit courts determine rates "in effect at the time the fee is being established by the court," taking into account inflation and interest.  Reply at 2 (quoting Ramos v. Lamm, 713 F.2d at 555).  At the hearing, when the Defendants stated that the Plaintiffs counsel, in a separate but recent matter in a Rio Arriba County court, requested figures equal to what the Court previously approved, see Tr. at 38:21-39:7 (Lowry), the Plaintiffs replied that the differences in the market between Rio Arriba County and Albuquerque, and the difference in the field of litigation, explains the discrepancy, see Tr. at 46:1-18 (Stanford).

The Defendants object to these rates, noting that the Plaintiffs' counsel previously requested that the Court approve lower rates, see Response at 4 (citing 2016 WL 5376321, at *13 (approving a $350.00 per hour rate for Mr. Moody and $300.00 per hour rate for Mr. Stanford)), and contend that "[n]othing in the lawsuit or in the market justifies" the increase, see Response at 4.

The Plaintiffs have not established that their requested rates are on par with the prevailing market rate for similar work in Albuquerque.  "To determine what constitutes a reasonable rate, the district court considers the prevailing market rate in the relevant community."  New Mexico v. Valley Meat Co., LLC, 2015 WL 9703255, at *23 (quoting Lippoldt v. Cole, 468 F.3d 1204, 1224-25 (10th Cir. 2006)).  See Malloy v. Monahan, 73 F.3d 1012, 1018 (10th Cir. 1996).  The party entitled to fees must provide the district court with sufficient information to evaluate prevailing market rates.  See Lippoldt v. Cole, 468 F.3d at 1225.  See also United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d at 1233 ("[The] party requesting attorney fees bears the

burden of proving . . . . the appropriate hourly rates."); <u>Blum v. Stenson</u>, 465 U.S. 886, 895 (1984)("[T]he burden is on the fee applicant to produce satisfactory evidence -- in addition to the attorney's own affidavits -- that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.").  The Plaintiffs assert that, in their experience, "class action litigation counsel in this locality frequently bill at rates anywhere from $350 to $450 or more per hour," Moody Decl. at 3, but do not provide any other evidence.  The Court found a recent poll indicating that the mean hourly rate for New Mexico attorneys working in the "Class Action/Mass Tort" field is $306, and the median rate is $339.  <u>See</u> The Economics of Law Practice in New Mexico, May 2017, Research & Polling Inc., at 49.  The only market rate authority for wage-and-hour class action suits in Albuquerque that the Court can find in case law is the Court's own fee award earlier in this litigation, where the Court approved $350.00 per hour for Mr. Moody and $300.00 per hour for Mr. Stanford -- rates to which the Defendants do not object.  <u>Payne v. Tri-State Careflight, LLC</u>, No. CIV 14-1044 JB/KBM, 2016 WL 5376321, at *13 (D.N.M. Aug. 17, 2016)("[T]he Defendants do not object to the hourly rates that the Paynes' counsel requests. The Court therefore will use the hourly rates that the Motion uses.").  The Defendants object to the new rates.  <u>See</u> Response at 4.  In light of the Defendants' resistance, the Court would need to see more evidence than the Plaintiffs have provided supporting the Plaintiffs proposed rates before it will approve them.  It may well be that the proposed rates are justified; the problem is that the Plaintiffs have not done the spadework -- affidavits of other lawyers or evidence of other cases -- to nudge towards an upward adjust at this time.  In other words, it may be more of a failure of proof than anything.  In any case, at this time, the best measure of the prevailing market rates for wage-and-hour class action litigation in Albuquerque is the Court's previous

approval of $350.00 an hour for Mr. Moody and $300.00 an hour for Mr. Stanford; the Court will apply those same rates here.

## III.    THE COURT WILL AWARD ATTORNEYS' FEES, BUT REDUCE THE REQUESTED AMOUNT WITH RESPECT TO BLOCK BILLED PARALEGAL WORK.

The Court will reduce the time that the Plaintiffs' paralegals billed by $2,500.00, because their block billed time entries do not allow the Court to distinguish how much time was spent on non-compensable administrative tasks.    The Plaintiffs request $15,444.00 for work their paralegal Buldain performed, and $675.00 for work that another paralegal, Anne M. Chavez, performed.    See Interim Fee Statement at 22.    The Defendants argue that the Court should disallow all the paralegal fees, because they recorded their time in blocks that include clerical or administrative tasks which are not compensable as attorneys' fees.    See Response at 5.    The Plaintiffs respond that, in light of the block billing, a $2,500.00 reduction from Buldain's fees would be an appropriate adjustment.  See Reply at 4.

Block billing does not call for disallowing the entire sum, although the Court may reduce the overall amount.  See, e.g., U.S. ex rel. Belt Con Const., Inc. v. Metric Const., Inc., No. CIV 02-1398 JB/LAM, 2007 WL 5685140, at *11 (D.N.M. Dec. 1, 2007)(Browning, J.)(reducing block billed time by thirty percent).    A closer look at Buldain's entries indicates that the Plaintiffs' suggested $2,500.00 reduction -- about fifteen percent of the overall paralegal fees -- is about right.  It is true that many of Buldain's entries chronicle virtually no compensable work, such as the .8 hours on March 17, 2016: "Phone call with Island Court Reporting and confirmed that they will do Mr. Oldham's deposition via Skype; discussed with attorney C. Moody; emailed the Hawaii court reporter information to Ms. Bronikoswi[.]"  Fee Statement at 9 (entry for March 17, 2016).    Many entries, however, catalog multiple activities that are plainly

compensable, such as the eight hours Buildain worked on January 25, 2016:

> Attended Status Conference with attorneys C. Moody and R. Stanford; revised/updated Second Amended Complaint and emailed to C. Moody to review; drafted Motion for Leave to Amend and Order granting, and sent to C. Moody and R. Stanford for review; finalized Second Amended Complaint, Motion for Leave and Order, and emailed each to opposing counsel to approve; drafted Notice of Withdrawal for Motion for Class Certification, and sent to R. Stanford and C. Moody to review; met and discussed matters with R. Stanford and C. Moody[.]

Fee Statement at 5 (entry for January 25, 2016). Furthermore, many of the entries that appear, at first glance, to document mostly non-compensable tasks reveal that, on careful scrutiny, the few compensable tasks likely took up much more time than the many non-compensable ones: "Voicemail to Ms. Jackie Fernandez-Quezada regarding case; reviewed, edited and finalized the Motion to Intervene; met and discussed the case and the Motion details with attorney C. Moody; filed the Motion through the CM/ECF filing system[.]" Fee Statement at 3 (entry for December 15, 2015). Although leaving voicemails, filing documents, and having discussions may not be compensable, none of those tasks take much time; however, the one clearly compensable task -- editing a Motion to Intervene -- likely required more time than the other tasks put together. Accordingly, the Court will accept the Plaintiffs' suggestion and reduce the paralegal award fees by $2,500.00.

**IV.     THE COURT WILL NOT REDUCE THE AWARD FOR TIME SPENT CALCULATING DAMAGES, DEVELOPING A BRIEF THAT WAS NOT FILED, CONTACTING CLIENTS AND DEVELOPING RETAINER AGREEMENTS, OR AS A PENALTY FOR A DELAY IN SETTLEMENT.**

The Defendants argue that the Court should not award attorneys' fees for time the Plaintiffs spent resisting production of damage amounts, which the Court eventually ordered them to produce. See Response at 8. The Plaintiffs argue that the "foremost" factor in determining reasonable attorneys' fees is the prevailing party's overall results and that the Court

should not reduce the amount for not prevailing on every issue. Reply at 5 (citing <u>Hensley v. Eckerhart</u>, 461 U.S. at 435 n.11). Furthermore, the Plaintiffs deny that they ever "refused to turn over" discovery; instead, according to the Plaintiffs, they contended that "damages fed into merits issues, not class certification issues," and that they did not yet have the information needed to meaningfully calculate damages. Reply at 5. The Plaintiffs should not be penalized for failing to prevail on an issue disputed in good-faith. <u>See Hensley v. Eckerhart</u>, 461 U.S. at 435 n.11 (rejecting a "mathematical approach comparing the total number of issues in the case with those actually prevailed upon [because] [s]uch a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors" (citations omitted)). The Plaintiffs' position contends, among other things, that they did not, at that time, need to produce liability-related evidence during the class certification stage.[9] <u>See</u> MTC Response at 2. In the Court's view, this position was not an unreasonable one,[10] although it failed to carry the day. Consequently, the Court will award attorneys' fees for time the Plaintiffs' spent objecting to the Defendants' request for production and responding to the Defendants' Motion to Compel.

The Court will also award all attorneys' fees incurred while calculating damage amounts. The Defendants argued that the Court should not award attorneys' fees for seventy hours that the Plaintiffs' attorneys spent calculating damages because the time was excessive. <u>See</u> Response at 10. The Plaintiffs contend that all that time was necessary because the payroll data was so

---

[9]The parties agreed to split discovery into two stages: first, the certification stage to determine questions relating to certifying a class, and second, the post-certification stage, if necessary, to determine liability. <u>See</u> Joint Status Report and Provisional Discovery Plan at 7, filed February 10, 2015 (Doc. 13); Order Adopting Joint Status Report and Provisional Discovery Plan at 1, filed February 19, 2015 (Doc. 19).

[10]"Courts . . . struggle to balance the fact that the certification decision overlaps with the merits with the idea that certification ought to be resolved before the merits, perhaps before full-on merits discovery." William B. Rubenstein, Newberg on Class Actions § 7:17 (5th ed.).

complex.  <u>See</u> Reply at 6.  The Plaintiffs explain:

> Plaintiffs spent time and effort trying to interpret the payroll data, examine discrepancies, assess the nature of the settlement offers and ascertain how in the world Defendants came up with round, low-ball settlement numbers, communicate the same with their clients and discuss settlement, examine several legal issues on damages and conduct an initial damages assessment based on the voluminous payroll information.

Reply at 6.

> The Court stated at the hearing:

> I don't think there's any problem with . . . attorneys calculating damages.  That's just something that I think attorneys do in plaintiff's work . . . .  They may rely upon a bookkeeper or an expert or a paralegal to help put some things together, but that's just such an important phase of the case.  It seems reasonable to me that attorneys would spend the time doing it, and it doesn't seem the amounts are unreasonable.

Tr. at 52:18-25 (Court).  Damages are the most important element in a case like this one, and the Plaintiffs' counsel must have calculated the damages well and with precision, because the Defendants paid the amount the Plaintiffs' counsel calculated, without deduction or adjustment.  It seems the Defendants dumped their information on the Plaintiffs, and the Plaintiffs had to do the work.  They should be compensated for that work.

The Court will also award attorneys' fees for time spent developing retainer agreements with clients.  The Court agrees with the Plaintiffs that such work is "exceptionally important and necessary" to their effective representation in the litigation that has brought about a settlement.  Reply at 4.

The Court also declines to reduce the overall attorneys' fees by twenty percent, as the Defendants request, in light of the delay that the Defendants contend the Plaintiffs caused by rejecting their first settlement offer and not making a counteroffer.  <u>See</u> Response at 12.  As the Court stated at the hearing, "I'm not inclined to think there was some huge delay that should

knock out attorneys' fees or call for some flat reduction amount" given that the lack of traction on the settlement issue can be explained as simply the "ebb and flow that you have in litigation about what to do with an early settlement offer when you don't have damages information." Tr. at 52:18-25 (Court). It is hard to fault a party for not settling a case until they got their damages figured out. The Court does not see sound reason to believe the Plaintiffs acted irrationally or intended to cynically drag out things.

As for the time spent on a motion that was not filed, the Court will award attorneys' fees, because that time was reasonably spent. The Plaintiffs explain that they began work on the motion -- a surreply on FAA preemption -- at a time when it would have been "beyond folly" not to do the research, and that the need for it went away only when the Defendants made their rule 68 offer. Reply at 8. The Defendants argue that awarding attorneys' fees for motions that are never filed "would set a bad precedent" by rewarding work on "phantom motions" that "never get before the Court." Tr. at 41:3-8 (Lowry). The Court is not worried about encouraging "phantom motions," however, because the requirement that attorneys' fees be reasonable provides a sufficient limiting principle to dissuade wasteful efforts.

The Court will award attorneys' fees for time spent researching the Court's prior opinions on attorney fee rates. The Defendants argue that this time is not compensable, because, they contend, that research failed to turn up any authority upon which the Plaintiffs could cite in support of their increased attorneys' fee rates. See Supp. Reply at 3. The Court does not believe that failing to cite authority necessarily means that the search for it was unreasonable. It could have guided them in what to request and what not to request. Looking at the presiding judge's opinions on a subject is probably always prudent and reasonable, even if there is nothing worth citing or quoting.

Finally, the Court will award fees for time spent reviewing time statements for unallowable administrative tasks. The Defendants cite no authority indicating that reviewing time entries is not compensable, nor can the Court find any. The Court encourages parties to scrutinize their time entries, and understands that an attorney is best positioned to know what to include and what to leave out. If attorneys, on their can, can remove time that is not compensable, the less time they will spend arguing about it in court.

## V. THE COURT WILL AWARD COSTS FOR TRAVEL AND THE DEPOSITION TRANSCRIPTION, BUT NOT FOR THE LEXISNEXIS RESEARCH.

The Defendants argued that the Court should not award costs that the local rules -- D.N.M. LR-Civ. 54 -- do not authorize, including LexisNexis research time, travel expenses, and a deposition transcription that, they contend, was not necessary to litigation. <u>See</u> Response at 11 (citing D.N.M. LR-Civ. 54.2).

The Court will award the requested travel costs. The Defendants object to paying for one of the Plaintiffs -- Heard -- to travel from Salt Lake City to Albuquerque for a deposition. Response at 11. The Defendants contend that the Court may not award such costs for pursuant to D.N.M. LR-Civ. 54.2(c)(1)(D), which holds that a "party will not receive a witness fee, mileage or allowance for subsistence." Those same rules also empower the Court to waive rules "to avoid injustice." D.N.M. LR-Civ. 1.7. Not awarding travel costs in this case would be an injustice: as the Plaintiffs asserted, flying Heard to New Mexico saved the parties the time and expense of flying both parties' attorneys out to depose Heard in Salt Lake City. <u>See</u> Reply at 10.

The Court will award costs for ordering a transcript deposition. The Defendants argued that the transcript costs are not taxable, because they were not, as the rule D.N.M. LR-Civ. 54.2(b)(2) requires, "reasonably necessary to the litigation." Response at 11 (quoting D.N.M. LR-Civ. 54.2(b)(2)). The Plaintiffs argued that what matters is whether the deposition "appeared

to be reasonably necessary at the time it was taken," Reply at 9 (citing <u>In re Williams Sec.</u> <u>Litig--WCG Subclass</u>, 558 F.3d at 1149), and that the Defendants must have "believed that those depositions were necessary for the case or they would not have taken them and charged their clients for the costs of the transcripts," Reply at 9. The Court concludes that it is reasonable to believe that the opponent's deposition of a party member would be necessary to the litigation and not just discovery. A prudent lawyer is going to get a transcript that the other side takes, because it will probably be necessary to respond and site to the transcription at the summary judgment stage.

The Court will not, however, award costs for LexisNexis legal research. The Court has, to be sure, awarded online research costs in the past. <u>See</u>, <u>e.g.</u>, <u>Lane v. Page</u>, 862 F. Supp. 2d 1182, 1206 (D.N.M. 2012)(Browning, J.)(awarding costs for LexisNexis and Westlaw research); <u>Bank of New York v. Mehner</u>, No. CIV 05-355 JB/WDS, 2005 WL 3664743, at *2 (D.N.M. Nov. 15, 2005)(Browning, J)("[T]he Court . . . finds persuasive the fact that Westlaw charges are awardable under the fee-shifting provision of 42 U.S.C. § 1988."). The Plaintiffs do not provide any information about what they researched, or for what purpose: the Fee Statement states that they incurred LexisNexis costs of $8.02 on October 16, 2014, $32.28 on January 15, 2015, $19.73 on February 10, 2015, $50.78 on June 11, 2015, and $43.19 on September 14, 2016. <u>See</u> Fee Statement at 25. The Supp. Fee Statement lists LexisNexis costs of $385.32 incurred on February 7, 2017. <u>See</u> Supp. Fee Statement at 2. There are no fee entries corresponding to those dates that might offer guidance on what they researched or for what purpose. <u>See</u> Fee Statement at 1 (featuring November 5, 2015 as the earliest entry). The Court cannot soundly award LexisNexis costs without knowing for what the Plaintiffs used LexisNexis.

**IT IS ORDERED** that the requests in Plaintiffs Keith Bastian, Jaqueline Fernandez-

Quezada, Cason N. Heard, Gregory Oldham and Sherry K. Welch's Motion for Award of Attorneys' Fees and Costs and Memorandum in Support, filed December 8, 2016 (Doc. 152), and in the Plaintiffs' Supplemental Motion for Attorneys' Fees & Costs, filed March 29, 2017 (Doc. 160), are granted in part and denied in part. The Court will grant the Plaintiffs' request that it award fees and costs in the amount of $182,867.16 ($170,108.99 in fees and costs, and $12,758.17 in tax).

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Christopher M. Moody
Repps D. Stanford
Alice Kilborn
Moody & Warner, P.C.
Albuquerque, New Mexico

      *Attorneys for the Plaintiffs*

Charles J. Vigil
Jeffrey L. Lowry
Melanie B. Stambaugh
Rodey, Dickason, Sloan, Akin
  & Robb, P.A.
Albuquerque, New Mexico

      *Attorneys for the Defendants*