# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

WILLIAM D. PAYNE; NICOLE PAYNE;
LESLIE B. BENSON; KEITH BASTIAN;
JACQUELINE FERNANDEZ-QUEZADA;
CASON N. HEARD; GREGORY OLDHAM
AND SHERRY K. WELCH, on behalf of
themselves and all others similarly situated,

     Plaintiffs,

vs.                                                                                  No. CIV 14-1044 JB\KBM

TRI-STATE CAREFLIGHT, LLC and BLAKE
A. STAMPER,

     Defendants.

<u>Consolidated with:</u>

KRISTY BELL; DEBORAH BEREST;
DANIEL BERGMAN; WILLIAM
DALLAS BUNDRANT, JR; ROCKY H.
BURROWS, II; CHASE CARTER;
BRENDA CASAREZ; KARA
CERVANTES; THOMAS CISLO; DAVID
DANIELS; ADAM DOYLE; DARREN
EEN; TOBY EICHER; LON ENOS;
WALTER FABIAN; HAROLD JOSEPH
FISHER; CHRISTINA FLEEMAN; LUKE
FORSLUND; SALUSTIANO FRAGOSO;
REHANNON GONZALES; KRISTEN
GRADO; COURTNEY GUERRA;
DARRIN HAMILTON; ALEXANDER
HOWELL; DANIELLE IRVIN; ALLEN
JACOBS; ALEX JONES; DONALD LUKE
KEENAN; DANIEL KUHLER; SIMON
LUCERO; RAPHAEL MAHAIM;
NATHAN MAPLESDEN; ORLANDO
MARQUEZ; CINDY D. MAXWELL;
JENNIFER MAZZANTI; BETHANY
MCCANDLESS; WILLIAM J.
MCCONNELL; DAN MEEHAN; KEVIN
NAPP; JAMES O'CONNOR; KATHY

ONSUREZ-WILSON; ERIC PARKER;
JASON PERRY; AMANDA PETERSEN;
BRENT PLACE; JIMMY RONALD
PRIMM, JR; PHILIP QUBAIN; PAUL
RATIGAN; JOSEPH ROOT; DARON
RUCKMAN; FREDERIC RUEBUSH;
JENNIFER SALAVERRY; LAUREN
SALAZAR; PAUL SERINO; CHRISTIAN
SPEAKMAN; DANIEL ST. PETERS; IAN
STEPHENS; USVALDO R. TRUJILLO;
PAUL VACULA; GRACIELA
VILLALOBOS; ERIC VOGT; GREG
WALSH; TYLER WILKINS; VIRGINIA
WILLIAMS; SARA YURKOVICH;
TERRY ZACHARIAS and MICHAEL
ZULASKI,

    Plaintiffs,

vs.              No. CIV 17-0796 JB\CG

TRI-STATE CAREFLIGHT, LLC and BLAKE
A. STAMPER,

    Defendants.

## MEMORANDUM OPINION AND ORDER

  **THIS MATTER** comes before the Court on Plaintiffs' Motion to Address Issue of Fed.

R. Civ. P. 60 for Intervenors to Proceed with Third Amended Complaint or, Alternatively Fed.

Civ. P. 60(B) Motion to Obtain Relief from Final Judgment, filed August 3, 2018

(Doc. 200)("Motion").  The Court held a hearing on September 26, 2018.  See Clerk's Minutes at

1, filed September 26, 2018 (Doc. 215).  The primary issues are: (i) whether the Basnet

Intervenors,[1] who intervened in this proposed class action after the Court entered the Final Judgment, filed November 23, 2016 (Doc. 150), for the former named plaintiffs -- the Bastian Plaintiffs[2] -- and before the Court certified a class, can prosecute the Third Amended Representative and Class Action Complaint for Damages for Violations of New Mexico Minimum Wage Act and New Mexico Common Law, filed July 19, 2017 (Doc. 177)("Third Amended Complaint"), without seeking relief from the Final Judgment under rule 60 of the Federal Rules of Civil Procedure; (ii) whether, if the Basnet Intervenors must seek relief under rule 60, they can obtain relief under rule 60(b)(5), because the Defendants Tri-State Careflight, LLC and Blake Stamper satisfied the Final Judgment for the Bastian Plaintiffs; and (iii) whether, if the Basnet Intervenors must seek relief under rule 60, they can obtain relief under 60(b)(6), because the Final Judgment for the Bastian Plaintiffs and the consequent possibility that the Basnet Intervenors may not receive American Pipe and Construction Company v. Utah, 414 U.S. 538 (1974)("American

---

[1]The Basnet Intervenors include are Shailendra Basnet, Kristy Bell, Deborah Berest, Daniel Bergman, William Dallas Bundrant, Jr., Rocky H. Burrows, II, Chase Carter, Brenda Casarez, Michael Castro, Kara Cervantes, Thomas Cislo, David Daniels, Adam Doyle, Darren Een, Toby Eicher, Walter Fabian, Harold Joseph Fisher, Christina Fleeman, Luke Forslund, Salustiano Fragoso, Rehannon Gonzales, Kristen Grado, Courtney Guerra, Darrin Hamilton, Shane Herron, Alexander Howell, Danielle Irvin, Allen Jacobs, Erin Johnson, Alex Jones, Donald Luke Keenan, Daniel Kuhler, Simon Lucero, Raphael Mahaim, Nathan Maplesden, Cindy D. Maxwell, Jennifer Mazzanti, Bethany McCandless, Ron McDearmid, Dan Meehan, Kevin Napp, James O'Connor, Kathy Onsurez-Wilson, Eric Parker, Jason Perry, Amanda Petersen, Brent Place, Jimmy Ronald Primm, Jr., Philip Qubain, Paul Ratigan, Joseph Root, Daron Ruckman, Frederic Ruebush, Jennifer Salaverry, Paul Serino, Christian Speakman, Ian Stephens, Daniel St. Peters, Usvaldo R. Trujillo, Paul Vacula, Jennifer Valdez, Graciela Villalobos, Eric Vogt, Greg Walsh, Tyler Wilkins, Virginia Williams, Terry Zacharias, and Michael Zulaski.

[2]The Bastian Plaintiffs include Keith Bastian, Cason N. Heard, Gregory Oldham, Sherry K. Welch, and Jacqueline Fernandez-Quezada.

Pipe"), tolling on all claims are extraordinary circumstances.[3]  The Court denies the Motion.  The Court concludes: (i) the Basnet Intervenors must seek relief from the Final Judgment under rule 60 before filing the Amended Complaint, because the Basnet Intervenors' putative class interest is not an exception to finality; (ii) the Basnet Intervenors cannot satisfy rule 60(b)(5), because rule 60(b)(5) does not provide relief against finality when a defendant has satisfied a judgment; and (iii) the Basnet Intervenors cannot satisfy rule 60(b)(6), because the Basnet Intervenors could have earlier intervened, and the Final Judgment and the possibility that American Pipe tolling will not apply do not rise to extraordinary circumstances.  Accordingly, the Basnet Intervenors cannot prosecute the Third Amended Complaint.

## FACTUAL BACKGROUND

The Court takes its facts from the Third Amended Complaint.  The Court provides these facts for background.  It does not adopt them as the truth, and it recognizes that these facts are largely the Basnet Intervenors' version of events.

Tri-State Careflight operates an air ambulance service in New Mexico, Arizona, Colorado, and Nevada.  See Third Amended Complaint ¶ 11, at 4.  Tri-State CareFlight employs flight paramedics, flight nurses, and pilots at each of its New Mexico location.  See Third Amended Complaint ¶ 81, at 9.  The Defendants are or were all the Basnet Intervenors' employers within the definition provided in the New Mexico Minimum Wage Act, N.M. Stat. Ann. §§ 50-4-1 through -33 ("NMMWA").  See Third Amended Complaint ¶ 6, at 3.  Tri-State CareFlight employs or employed the following people as pilots, nurses, or paramedics: Shailendra Basnet, Kristy Bell,

---

[3] American Pipe tolls the statute of limitations for putative class members when the class action is filed.  See American Pipe, 414 U.S. at 546-52.

Deborah Berest, Daniel Bergman, William Dallas Bundrant, Jr., Rocky H. Burrows, II, Chase Carter, Brenda Casarez, Michael Castro, Kara Cervantes, Thomas Cislo, David Daniels, Adam Doyle, Darren Een, Toby Eicher, Walter Fabian, Harold Joseph Fisher, Christina Fleeman, Luke Forslund, Salustiano Fragoso, Rehannon Gonzales, Kristen Grado, Courtney Guerra, Darrin Hamilton, Shane Herron, Alexander Howell, Danielle Irvin, Allen Jacobs, Erin Johnson, Alex Jones, Donald Luke Keenan, Daniel Kuhler, Simon Lucero, Raphael Mahaim, Nathan Maplesden, Cindy D. Maxwell, Jennifer Mazzanti, Bethany McCandless, Ron McDearmid, Dan Meehan, Kevin Napp, James O'Connor, Kathy Onsurez-Wilson, Eric Parker, Jason Perry, Amanda Petersen, Brent Place, Jimmy Ronald Primm, Jr., Philip Qubain, Paul Ratigan, Joseph Root, Daron Ruckman, Frederic Ruebush, Jennifer Salaverry, Paul Serino, Christian Speakman, Ian Stephens, Daniel St. Peters, Usvaldo R. Trujillo, Paul Vacula, Jennifer Valdez, Graciela Villalobos, Eric Vogt, Greg Walsh, Tyler Wilkins, Virginia Williams, Terry Zacharias, and Michael Zulaski. See Third Amended Complaint ¶¶ 12-80, at 4-9.

## PROCEDURAL BACKGROUND

This case has a long and complicated procedural history. The Court recited this procedural history in its Memorandum Opinion and Order, 327 F.R.D. 433, filed June 21, 2018 (Doc. 198)("Consolidation MOO"). The Court incorporates that recitation throughout the procedural background that the Court provides below. The Court also includes footnotes from the Consolidation MOO.

This case is a wage-and-hour dispute. See Third Amended Complaint ¶ 1, at 2. The Plaintiffs seek to recover: (i) unpaid overtime compensation under the NMMWA; and (ii) other

unpaid compensation on a theory of unjust enrichment.  See Third Amended Complaint ¶¶ 95-128, at 12-18.

      In September, 2014, William D. Payne and Nicole Payne, "on behalf of themselves and all others similarly situated," filed their original complaint against Tri-State CareFlight and Stamper.  Representative Action Complaint for Damages for Violation of New Mexico Minimum Wage Act and Unjust Enrichment at 1, Payne v. Tri-State Careflight, LLC, D-101-CV-2014-02048 (First Judicial District, County of Santa Fe, State of New Mexico)(Montes, J.), filed November 17, 2014 in federal court (Doc. 1-1)("Original Complaint").  Tri-State CareFlight and Stamper removed the case to federal court on November 17, 2014.  See Notice of Removal, filed November 17, 2014 (Doc. 1)("Notice of Removal").  They based removal on the Court's diversity jurisdiction.  See Notice of Removal ¶ 4, at 2.

      On August 24, 2015, W. Payne and N. Payne moved to amend the Original Complaint to: (i) eliminate a claim for certain uncompensated travel time from the Original Complaint; and (ii) add an additional named Plaintiff -- Leslie B. Benson.  See Plaintiffs' Amended Opposed Motion for Leave to File First Amended Complaint, filed August 24, 2015 (Doc. 44)("First Motion to Amend").  On September 4, 2015, W. Payne and N. Payne filed Plaintiffs' Motion for and Brief in Support of Class Certification, filed September 4, 2015 (Doc. 48)("First Motion for Class Cert.").[4]  The Court held a hearing on the First Motion to Amend on October 28, 2015.  See Clerk's Minutes, filed October 28, 2015 (Doc. 67)("Oct. 28th Clerk's Minutes"); Notice of Motion Hearing, filed October 16, 2015 (Doc. 64).  At an October 28, 2015, hearing, the Court granted the First Motion to Amend.  See Oct. 28th Clerk's Minutes at 1; Order at 1, filed March 14, 2016 (Doc. 112).  Later that day, W. Payne and N. Payne filed their First Amended Representative Action Complaint for Damages for Violation of New Mexico Minimum Wage Act, filed October 28, 2015 (Doc. 68)("Amended Complaint").[5]

      By November, 2015, W. Payne, N. Payne, and Benson resolved their individual claims against the Defendants.  On November 19, 2015, the Paynes

---

[4]W. Payne and N. Payne subsequently withdrew their First Motion for Class Cert. on January 26, 2016.  See Plaintiffs' Notice of Withdrawal of Motion for Class Certification, filed January 26, 2016 (Doc. 96).

[5]The Amended Complaint did not include the Original Complaint's unjust enrichment claim, see Amended Complaint ¶¶ 25-30, at 4 (asserting an NMMWA claim only), but the Plaintiffs remedied that oversight when they filed the Second Amended Representative and Class Action Complaint for Damages for Violation of New Mexico Minimum Wage Act and New Mexico Common Law . . . ¶¶ 33-45, at 5-7, filed January 28, 2016 (Doc. 100).

reached a settlement with the Defendants in which the Defendants agreed to provide them with full relief under the NMMWA, i.e., all the relief they requested in the Amended Complaint.  See Memorandum Opinion and Order at 47, 2016 WL 9738302, at *25, filed August 12, 2016 (Doc. 138)("Intervenor MOO").  Benson, meanwhile, signed a global release of his claims against Tri-State CareFlight and Stamper on October 22, 2015.  See Settlement Agreement and General Release at 1-3 (dated October 22, 2015), filed December 9, 2015 (Doc. 71-1).

With W. Payne, N. Payne, and Benson's claims resolved, a new set of named Plaintiffs -- Keith Bastian, Cason N. Heard, Gregory Oldham, Sherry K. Welch, and Jacqueline Fernandez-Quezada -- sought to keep the case alive by intervening pursuant to rule 24 of the Federal Rules of Civil Procedure.  See Opposed Motion to Intervene as Parties Plaintiff and Class Representatives at 1, filed December 15, 2015 (Doc. 73)("First Intervention Motion").  In the First Intervention Motion, the intervenors asserted:

> [N]one of the currently named Plaintiffs will be able to pursue this matter either individually or on behalf of the putative class members who were deprived of overtime pay pursuant to Defendants' uniform and unlawful overtime policies applicable to flight nurses, flight paramedics and pilots.  Intervenors seek to pick up the prosecution of this lawsuit where the current Plaintiffs are soon to depart.

First Intervention Motion at 2.

As the First Intervention Motion was pending, the Defendants moved the Court, pursuant to rule 56 of the Federal Rules of Civil Procedure, to enter summary judgment in their favor, and to dismiss all claims in the Second Amended Complaint in their entirety and with prejudice.  See Defendants Tri-State Careflight, LLC, and Blake A. Samper's Motion for Summary Judgment and Memorandum Brief in Support at 1, filed March 1, 2016 (Doc. 110)("MSJ").  The Defendants argued that federal law preempts the Named Plaintiffs' state-law claim for the alleged NMMWA violation and the state-law claim for unjust enrichment.  See MSJ at 1.  The Named Plaintiffs opposed the Defendants' MSJ, and also filed their Motion to Exclude Consideration of New Law or New Argument Raised in Defendants' Reply to the Motion for Summary Judgment or, in the Alternative, to Permit Plaintiff to File a Surreply, filed on May 2, 2016 (Doc. 123)("Motion to Exclude"), as a result of the Defendants' MSJ.

On August 12, 2016, the Court, pursuant to rule 24(b) of the Federal Rules of Civil Procedure, granted the First Intervention Motion, permitting Bastian, Heard, Oldham, Welch, and Fernandez-Quezada to intervene as Plaintiffs.  See Intervenor MOO at 1-2.  The Court determined, among other things, that the apparent resolution of W. Payne, N. Payne, and Benson's claims "did not render

this case moot under Article III because the personal stake of the indivisible class may inhere prior to a definitive ruling on class certification." Intervenor MOO at 41 (citing Lucero v. Bureau of Collection Recovery, Inc., 639 F.3d 1239, 1244-47 (10th Cir. 2011)).

In October, 2016, the Court denied the Defendants' MSJ, concluding that Congress "has not preempted the field of labor regulation for railroad and airline workers, and the present dispute does not involve the interpretation of a collective bargaining agreement." Memorandum Opinion and Order at 2 . . . 2016 WL 6396214, at *1 . . . , filed October 25, 2016 (Doc. 147)("MSJ MOO"). In the same ruling, the Court also determines that "the Defendants raised a new issue of law in their reply in support of their Motion for Summary Judgment, to which the Named Plaintiffs may reply with a surreply should they deem it appropriate." MSJ MOO at 2.

On November 2, 2016, the Defendants offered, under rule 68 of the Federal Rules of Civil Procedure, to pay the [Bastian Plaintiffs] a specific amount of money plus their pre-offer "[a]ttorneys' fees and costs actually and reasonably incurred." Offer of Judgement at 1 (dated November 2, 2016), filed November 17, 2016 (Doc. 149-1)("Offer of Judgment"). The Offer of Judgment states: "By accepting this Offer of Judgment, Plaintiffs agree to the entry of the attached form of final judgment." Offer of Judgment at 2. The Defendants informed the Court, on November 17, 2016, that [the Bastian Plaintiffs] accepted the Defendants' rule 68 offer. See Notice of Acceptance of Rule 68 Offer of Judgment at 1, filed November 17, 2016 (Doc. 149)("Acceptance Notice"). See also Email from Chris Moody, to Charles Vigil at 1 (dated November 16, 2016), filed November 17, 2016 (Doc. 149-1)("Plaintiffs accept your offer of judgment."). The Acceptance Notice states:

> Defendants hereby notify the Court that Plaintiffs have accepted Defendants' Rule 68 Offer of Judgment. A copy of the accepted Offer of Judgment is attached as Exhibit A, a copy of the Form of Judgment incorporated by reference into the Offer is attached as Exhibit B, and Plaintiff's [sic] acceptance of the offer is attached as Exhibit C.

Acceptance Notice at 1. Six days later, the Court took the Defendants' proposed final judgment and entered it with no changes. See Final Judgment at 1, filed November 23, 2016 (Doc. 150).

On November 29, 2016, seventeen people sought to intervene in the case as named Plaintiffs.[6]  See Opposed Fed. R. Civ. P. 24(b) Motion and Supporting

---

[6]These seventeen people are Kristy Bell, William Dallas Bundrant, Jr., Rocky H. Burrows, II, Brenda Casarez, Adam Doyle, Julie Etchegaray, Walter Fabian, Kristen Grado, Courtney

Memorandum to Intervene as Parties Plaintiff and Class Representatives, filed November 29, 2016 (Doc. 151)("Motion to Intervene").  On June 27, 2017, fifty-two more people sought to intervene as named Plaintiffs into the case.[7]   See Opposed Fed. R. Civ. P. 24(B) Supplemental Motion and Supporting Memorandum to Intervene as Parties Plaintiffs and Class Representatives, filed June 27, 2017 (Doc. 166)("Supp. Motion to Intervene").

On August 3, 2017, while the Court considered the Motion to Intervene and the Supp. Motion to Intervene, "a number of the proposed Plaintiffs/Intervenors filed a separate, but essentially duplicative" complaint in the United States District Court for the District of New Mexico, apparently to cover their bases vis-à-vis tolling concerns.  Motion to Consolidate at 1.  See Bell v. Tri-State CareFlight, LLC, No. CIV 17-0796 ("Bell").  Tri-State CareFlight and Stamper moved to transfer that case, Bell v. Tri-State CareFlight, LLC, No. CIV 17-0796 ("Bell"), from the Honorable Kenneth J. Gonzales, United States District Judge for the District of New Mexico, to the Court.  See Bell, Defendants' Motion to Transfer Related Case to Honorable James O. Browning, filed September 26, 2017 (Doc. 11)("Motion to Transfer").  In the Motion to Transfer, the Defendants state: "Pursuant to Rule 42(a)(3) of the Federal Rules of Civil Procedure, Defendants Tri-State CareFlight, LLC and Blake A. Stamper respectfully move the Court to transfer the above-captioned case to the Honorable James O. Browning."  Motion to Transfer at 1.

On September 30, 2017, the Court granted the Motion to Intervene and the Supp. Motion to Intervene, which added sixty-[eight] current and former Tri-State CareFlight employees as named Plaintiffs.  See Memorandum Opinion and Order

---

Guerra, Donald Luke Keenan, Brent Place, Jimmy Ronald Primm, Jr., Cindy D. Maxwell, Frederic Ruebush, Daniel St. Peters, Graciela Villalobos and Michael Zulaski.

[7]These additional people are Shailendra Basnet, Deborah Berest, Daniel Bergman, Chase Carter, Michael Castro, Kara Cervantes, Thomas Cislo, David Daniels, Darren Een, Toby Eicher, Harold Joseph Fisher, Christina Fleeman, Luke Forslund, Salustiano Fragoso, Rehannon Gonzales, Darrin Hamilton, Shane Herron, Alexander Howell, Danielle Irvin, Allen Jacobs, Erin Johnson, Alex Jones, Daniel Kuhler, Simon Lucero, Raphael Mahaim, Nathan Maplesden, Jennifer Mazzanti, Bethany McCandless, Ron McDearmid, Dan Meehan, Kevin Napp, James O'Connor, Kathy Onsurez-Wilson, Eric Parker, Jason Perry, Amanda Petersen, Philip Qubain, Paul Ratigan, Joseph Root, Daron Ruckman, Jennifer Salaverry, Paul Serino, Christian Speakman, Ian Stephens, Usvaldo R. Trujillo, Paul Vacula, Jennifer Valdez, Eric Vogt, Greg Walsh, Tyler Wilkins, Virginia Williams, and Terry Zacharias.  Julie Etchegaray is not included in the Opposed Fed. R. Civ. P. 24(B) Supplemental Motion and Supporting Memorandum to Intervene as Parties Plaintiffs and Class Representatives, filed June 27, 2017 (Doc. 166).

at 60, 322 F.R.D. 647, 683, filed September 30, 2017 (Doc. 175)("Intervention MOO").  In the Intervention MOO, the Court states:

> . . . . Second, the Named Plaintiffs' settlement agreement did not render the Proposed Intervenors claims moot, because their personal stake in the class -- and, therefore, an Article III case or controversy -- inhered at the action's beginning. . . .

Intervention MOO at 2, 322 F.R.D. at 654.

Consolidation MOO at 2-7, 322 F.R.D. at 436-38.  In reaching this conclusion, the Court relies on

Lucero v. Bureau of Collection Recovery, Inc., 639 F.3d at 1249.  The Court explains: "Lucero

holds that, when a class certification is pending, 'any Article III interest a class may or may not

have in a case is or is not present from its inception' and that 'the personal stake of the class inheres

prior to certification.'"  Intervention MOO at 53, 322 F.R.D. at 679 (quoting Lucero v. Bureau of

Collection Recovery, Inc., 639 F.3d at 1249).  The Court also concludes:

> Third, relief from the Final Judgment is not necessary for the Proposed Intervenors to intervene. . . .

Intervention MOO at 2, 322 F.R.D. at 654.  The Court also determines, in the Intervention MOO, that a nonparty may, in certain circumstances, intervene into a case in which a final judgment has been entered.  See Intervention MOO at 55-56, 322 F.R.D. at 680.  The Court states:

> [T]he Proposed Intervenors need not disturb the Named Plaintiffs' Final Judgment in order to intervene; rather, they must first intervene before they can seek relief from the judgment.

> Because intervention is a precondition for a nonparty to make a rule 60(b) motion, not the other way around, the Court concludes that the Named Plaintiffs' Final Judgment presents no insurmountable obstacle to the Proposed Intervenors' Motion to Intervene.

Intervention MOO at 55-56, 322 F.R.D. at 680.

Consolidation MOO at 7-8, 327 F.R.D. at 438-39.  The Court rests its decision on United Airlines,

Inc. v. McDonald, 432 U.S. 385 (1977), wherein the Supreme Court of the United States of

America "ruled that a nonparty could intervene after a final judgment to appeal the denial of class

certification when the intervenor acted promptly upon learning that the named plaintiffs . . . did

not intend to appeal."  Intervention MOO at 55, 322 F.R.D. at 680 (citing United Airlines, Inc. v.

McDonald, 432 U.S. at 934).

> The Court did not make a determination regarding whether the intervening Plaintiffs could proceed, notwithstanding the Court's Final Judgment, without obtaining relief from that Final Judgment via a motion under rule 60(b) of the Federal Rules of Civil Procedure.  The Court also expressed its misgivings:

>> The Court arrives at this conclusion with reservations.  First, the Court is skeptical that most motions to intervene after final judgment are timely, particularly here given that the Proposed Intervenors' attorneys also represent the Named Plaintiffs and therefore had a direct hand in reaching the settlement and entering the Final Judgment.  The Proposed Intervenors, therefore, could not have been taken by surprise and presumably were capable of making their motion before the Final Judgment was entered.  Second, the Court is not eager to deprive the Defendants of the benefit of that bargain: unlike the first settlements with the Original Plaintiffs, the Defendants took the rule 68 route with the Named Plaintiffs and deliberately negotiated for the Final Judgment.  See Offer of Judgment at 2 ("By accepting this Offer of Judgment, Plaintiffs agree to the entry of the attached form of final judgment.").  The Defendants have not expressly stated why they bargained for the Final Judgment, but it could be precisely for this moment.  One possibility is that, having unsuccessfully opposed the first motion to intervene, they figured a Final Judgment might make it harder for future intervenors.  Another possibility is that the Defendants may want to do some judge-shopping: they may prefer to shut the case down before the Court and defend against the remaining claims that are undoubtedly on the way before another judge in a separate case.  A third possibility is that they may want to force their opponents to file another case and pay another filing fee.  Finally, and most likely, the Defendants may want to take advantage of any applicable statute of limitations and cut down on damages.  See Tr. at 15:8-10 (Lowry)("[W]e believe there are some people in the proposed class, assuming this proceeds as a class action, whose claims would be barred.").  By treating the Final Judgment like any other judgment -- i.e., not presuming that a post-final judgment intervention motion is untimely, or not requiring intervenors undo the final judgment via

rule 60(b) before seeking intervention -- the Defendants may be deprived of the benefit of their bargain. That outcome looks a lot like prejudice. Also, simply ignoring rule 60(b)'s plain language, as the court does in United Airlines v. McDonald, seems misguided; rules should be construed like statutes, and under the rules of statutory construction, a statute's plain language should not be overlooked. See Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004)("It is well established that when the statute's language is plain, the sole function of the courts -- at least where the disposition required by the text is not absurd -- is to enforce it according to its terms.").

With respect to prejudice, the Court shares [the misgivings that the Honorable Lewis F. Powell Jr., former Associate Justice of the Supreme Court] expressed in his dissent in United Airlines v. McDonald, 432 U.S. 385, 399-400 (Powell, J., dissenting). The dissent asserted that allowing post-final judgment intervention in that case unduly prejudices the defendant, arguing that, because only named plaintiffs may appeal a certification denial, and the settlement ended the named plaintiffs' ability to appeal the denial, then no one remained to make the appeal -- not even an unnamed member of the putative class. See 432 U.S at 399-400 (Powell, J., dissenting). Thus, the dissent asserts, "[h]aving achieved a settlement of the case, [the defendant] was prejudiced by [the intervenor's] attempt to reopen the case." 432 U.S. at 399 (Powell, J., dissenting). The majority, meanwhile, stated that the defendant "can hardly contend that its ability to litigate the issue was unfairly prejudiced simply because an appeal on behalf of putative class members was brought by one of their own, rather than by one of the original named plaintiffs." 432 U.S. at 394-95 (Powell, J., dissenting).

The Court also shares the dissent's skepticism of the majority's "casual treatment of the prejudice" to a putative class action defendant who settles with all named plaintiffs. 432 U.S. at 399 (Powell, J., dissenting). Not only does the majority's approach risk prejudice to a defendant, but it does so by disregarding the judicial system's interest in settlements and finality, see 432 U.S. at 401 (Powell, J., dissenting)("The Court also ignores the important 'principle that (s)ettlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts . . . and preventing lawsuits.'" (quoting Pearson v. Ecological Sci. Corp., 522 F.2d 171, 176 (5th Cir. 1975))), and undermining public policy behind statute of limitations,

see 432 U.S. 385, 400 (Powell, J., dissenting)("Considerations of policy militate strongly against the result reached by the Court. Our cases reflect a long tradition of respect for statutes of limitations and the values they serve.").

Intervention MOO at 59-60 n.18, 322 F.R.D. at 682 n.18.

Following the Intervention MOO, the parties' counsel began discussing a stipulated order to be filed in Bell vis-à-vis the Transfer Motion. On October 3, 2017, the Defendants' counsel wrote to the Plaintiffs' counsel:

What are your thoughts, in light of your agreement to not oppose consolidation, on the parties filing a joint motion with [the Honorable Carmen E. Garza, United States District Judge for the District of New Mexico] asking to vacate the JSR deadline and the scheduling conference?

Email from Charles J. Vigil, to Christopher M. Moody and Repps D. Stanford at 3 (dated October 3, 2017), filed October 19, 2017 (Doc. 178-1). The Plaintiffs' counsel responded:

On our call we said that we would not oppose consolidation so long as there is no appeal of the intervention order. Thinking about it, I don't think you would have an appeal anyway so assuming that you agree not to try an interlocutory appeal, we are not opposing consolidation. If we are not opposing consolidation I think it makes sense to ask Judge Garza to vacate the JSR/scheduling conference and we submit an order of consolidation and then proceed with case scheduling before Judge Browning. In our experience Judge Garza is pretty available by phone so we might want to approach it that way.

Email from Christopher M. Moody, to Charles J. Vigil and Repps D. Stanford at 3 (dated October 3, 2017), filed October 19, 2017 (Doc. 178-1). The Defendants responded: "Ok. Makes sense. We are not appealing the intervention order." Email from Charles J. Vigil, to Christopher M. Moody and Repps D. Stanford at 3 (dated October 3, 2017), filed October 19, 2017 (Doc. 178-1).

Consolidation MOO at 8-10, 327 F.R.D. 433 at 439-40.

On October 4, 2017, the Basnet Intervenors filed the Third Amended Complaint. See Third Amended Complaint at 18. The same day,

the Defendants' counsel emailed the Plaintiffs' counsel a draft of the Stipulated Order, asking for the Plaintiffs' counsel's thoughts. See Email from Jeffrey L. Lowry, to Christopher M. Moody and Repps D. Stanford at 6 (dated October 4, 2017), filed October 19, 2017 (Doc. 178-1). The Plaintiffs' counsel responded: "The order looks fine except that we think it should refer to Rule 42(a)(2) rather than (a)(3). That's the part of the rule implicated in all the class cases involving consolidation that we have seen." Email from Christopher M. Moody, to Jeffrey L. Lowry and Repps D. Stanford at 6 (dated October 4, 2017), filed October 19, 2017 (Doc. 178-1). The Defendants' counsel explained:

> The motion cited Rule 42(a)(3) because it allows the most flexibility given the unusual circumstances and status of the two cases. Nevertheless, I don't know that we need to get hung up on the subparagraph. If we revise the order to cite Rule 42 without reference to any particular part of that rule, would that be acceptable?

Email from Jeffrey L. Lowry, to Christopher M. Moody at 6 (dated October 4, 2017), filed October 19, 2017 (Doc. 178-1). Later that day, Defendants' counsel emailed Plaintiffs' counsel: "Here are the motion and order to vacate the Bell deadlines and scheduling conference as well as the final version of the stipulated order on the motion to transfer case. With your approval, I'll file / submit these today." Email from Jeffrey L. Lowry, to Christopher M. Moody at 9 (dated October 4, 2017), filed October 19, 2017 (Doc. 178-1). The Plaintiffs' counsel replied: "Looks good." Email from Repps D. Stanford, to Jeffrey L. Lowry and Christopher M. Moody at 9-10 (dated October 4, 2017), filed October 19, 2017 (Doc. 178-1). On the same day, the Plaintiffs filed the Complaint in this case, see Complaint at 1.

On October 6, 2017, [Judge Gonzales], approved Bell, Stipulated Order Granting Defendants' Motion to Transfer Related Case to Honorable James O. Browning, filed October 6, 2017 (Doc. 15)("Transfer Order"). The Transfer Order states that the "Plaintiffs do not oppose" Tri-State FlightCare's Motion to Transfer and that Judge Gonzalez grants the Motion to Transfer. Transfer Order at 1. The Transfer Order concludes with the following: "Accordingly, pursuant to Rule 42 of the Federal Rules of Civil Procedure, IT IS HEREBY ORDERED that the above captioned case be transferred to the Honorable James O. Browning, who shall preside over all future proceedings." Transfer Order at 1-2.

On October 16, 2017, the Plaintiffs' counsel's paralegal, Anne Chavez, spoke with the Court's Courtroom Deputy, Michelle Behning, to determine whether Bell and this case had been consolidated. See Declaration of Anne Chavez ¶¶ 4-6, at 1 (dated November 15, 2017), filed November 15, 2017 (Doc. 181-2)("Chavez Decl."). Behning "confirmed that the cases had not formally been consolidated, and suggested that a motion to consolidate be filed if that was the direction Counsel

wished to take." Chavez Decl. ¶ 6, at 1. That same day, the Plaintiffs' counsel emailed the Defendants' counsel:

> My paralegal spoke with Michelle at Judge Browning's chambers this morning regarding consolidation. We filed our reply brief on Friday only in the Bell case because we have not received any order consolidating the two cases from Judge Browning (just the notice from the clerk reassigning the Bell case to Judge Browning). Michelle told us that the two cases (Bell and Bastian or whatever we are calling it now) are not consolidated and that if we want them consolidated we need to file a motion. What do you think?

Email from Christopher M. Moody, to Charles J. Vigil and Jeffrey L. Lowry at 10 (dated October 16, 2017), filed October 19, 2017 (Doc. 178-1). The Defendants' counsel responded:

> Many thanks. Not being party to your paralegal's ex parte communications with Judge Browning's chambers, it is difficult for me to comment. We filed a motion to **transfer** the Bell case to Judge Browning and that is what was approved by Judge Gonzales. And, that is what has happened -- the Bell case is no[w] assigned to Judge Browning. It was most certainly never a motion to consolidate. . . . In any event, we believe consolidation is improper. To the extent Plaintiffs are entertaining making of such a motion, please be advised that the Defendants oppose and will oppose any motion to consolidate the two cases.

Email from Charles J. Vigil, to Christopher M. Moody and Jeffrey L. Lowry at 10 (dated October 16, 2017), filed October 19, 2017 (Doc. 178-1)(emphasis in original).

Consolidation MOO at 10-12, 327 F.R.D. at 440-41.

The Basnet Intervenors then filed the Basnet Intervenors' Opposed Fed. R. Civ. P. 42 (A)(1) & (A)(2) Motion to Consolidate, filed October 19, 2017 (Doc. 178)("Motion to Consolidate"), asking to consolidate this case and Bell. See Motion to Consolidate at 1. Thirteen days later, the Defendants filed the Defendants' Motion to Strike or Dismiss Third Amended Complaint, filed November 1, 2017 (Doc. 180)("Motion to Strike"), arguing that, because this case is closed, the Basnet Intervenors cannot prosecute the Third Amended Complaint. See MTD at 1.

In the Consolidation MOO, the Court granted the Basnet Intervenors' request to consolidate.  See

Consolidation MOO at 436, 450, 452-54.  The Court reasoned:

> Given that the facts, parties, and legal claims are virtually identical, consolidating the cases would be the most efficient way forward.  The Court does not see how consolidation could cause delay or prejudice; there appears to be no upside to keeping these cases separate.
>
> . . . .
>
>  . . . .  The Defendants' position is that the Court's Final Judgment means that there is no action before the court with which Bell can be consolidated.  See Consolidation Response at 7-9.  See also Fed. R. Civ. P. 42(a) (listing procedural options available for "actions before the court").  The Defendants' [sic] contend that, once a court enters a final judgment, nothing else can happen in the case unless and until the final judgment is set aside.  See Consolidation Response at 8-9 (citing Rekstad v. First Bank Sys. Inc., 238 F.3d 1259, 1261 (10th Cir. 2001); United States v. Kentucky Utilities Co., 927 F.2d 252, 255 (6th Cir. 1991)); Pedroza v. Lomas Auto Mall, Inc., 304 F.R.D. 307, 333 (D.N.M. 2014)(Browning, J.); Thompson v. THI of New Mexico at Casa Arena, [No. CIV 05-1331 JB/LCS,] 2008 WL 5999653, at *28 [(D.N.M. Dec. 24, 2008)(Browning, J.)]).
>
> Consolidating an active case with one in which Final Judgment has been entered is permissible, but rarely appropriate.  See, e.g., Shelton v. MRIGlobal, No. 11-CV-02891, 2014 WL 793464, at *2 (D. Colo. Feb. 26, 2014)(Brimmer, J.)("Courts are reluctant to consolidate a pending case with a case where a final judgment has been entered, unless the final judgment is first vacated."); Washington v. Brumbaugh & Quandahl, P.C., LLO., No. 8:15CV444, 2016 WL 1435665, at *3 (D. Neb. Apr. 11, 2016)(Strom, J.), on reconsideration, No. 8:15CV444, 2016 WL 4734393 (D. Neb. Sept. 9, 2016); Tormasi v. Hayman, No. CIV. 3:08-CV-4950, 2009 WL 3335059, at *3 (D.N.J. Oct. 15, 2009)(Thompson, J)(concluding that consolidating an active case with a closed case would not "promote the administration of justice").  But see Abels v. Skipworth, No. C10-5033BHS, 2010 WL 2376230, at *1 (W.D. Wash. June 9, 2010)[(Settle, J.)](concluding that the plaintiff's request to consolidate a case with a prior closed case is "misplaced," because rule 42(a) applies to actions before the court, and the plaintiff's prior case "is no longer an action before the Court").  Here, however, these cases' unique circumstances satisfy the Court that consolidation would help the parties resolve their disputes most efficiently.  Although the Court has entered Final Judgment in this case, the Court recently granted motions [sic] to intervene, restocking this case's docket with sixty-nine fresh named Plaintiffs.  Whether they can or must undo the Final Judgment via a rule 59 or 60 motion before proceeding any further remains to be seen, but given that the Court has already

allowed intervention, there is enough life in the case for consolidation to be a useful and efficient tool.  That low bar is enough for the Court to file documents in a docket in a consolidated case rather than keeping them separate.  When the Court has consolidated cases in the past, it has occasionally had to dismiss one of the cases and enter final judgment; yet the cases remain consolidated in a consolidation caption and the Court does not "unconsolidate" the cases.  Here, the only difference is that the Court entered a final judgment in this case before consolidating the cases rather than entering final judgment after the consolidation order.  In any event, the Court concludes that consolidating the cases will help avoid unnecessary costs and economize the Court's resources, notwithstanding the final judgment.

Consolidation MOO at 34-36, 327 F.R.D. at 452-53.  The Court chose to leave the Third Amended Complaint on file until the Basnet Intervenors demonstrate that they do not need to satisfy rule 59 or rule 60 before they prosecute the Third Amended Complaint, or that rule 59 or rule 60 permits this case to proceed.  See Consolidation MOO at 37-38, 327 F.R.D. at 453.  The Court permitted the Defendants not to file an answer to the Third Amended Complaint until the Court and the parties determined whether the Basnet Intervenors could proceed with this litigation.  See Consolidation MOO at 37-38, 327 F.R.D. at 453.  Because the arguments in the briefing and hearing on the Motion to Strike overlap with the briefings on the Motion, the Court incorporates in full its earlier summary of those briefings and that hearing.

### 3. **The Motion to Strike.**

The Defendants filed their Motion to Strike in this case on November 1, 2017.  See Motion to Strike at 1.  In the Motion to Strike, the Defendants argue that the Court should dismiss the [Third Amended] Complaint, because the case remains closed.  See Motion to Strike at 4. According to the Defendants, the Plaintiffs may not file their [Third Amended] Complaint until they convince the Court to set aside the Final Judgment.  See Motion to Strike at 4-5.  The Defendants contend that the Court should "strike or dismiss" the [Third Amended] Complaint "on jurisdictional grounds" pursuant to rule 12(b)(1) of the Federal Rules of Civil Procedure, or pursuant to rule 12(b)(6) Federal Rules of Civil Procedure, because the Court cannot provide relief so long as the Final Judgment remains in place.  Motion to Strike at 5.

. . . .

- 17 -

### 5.     The Response to the Motion to Strike.

The Plaintiffs respond to the Motion to Strike.  See Intervenors'/Plaintiffs' Response to Defendants' Motion to Strike or Dismiss Third Amended Complaint [Doc. 180], filed November 15, 2017 (Doc. 182)("Strike Motion Response").  The Plaintiffs argue that filing the [Third Amended] Complaint was proper, because -- the Plaintiffs contend -- the Court's Intervention MOO establishes that the Plaintiffs may proceed with their claims without moving to set aside the Final Judgment.  See Strike Motion Response at 3-4.  The Plaintiffs contend that they do not seek to undo the Final Judgment, which resolves five Plaintiffs' individual claims "but did not affect the nascent class interests."  Strike Motion Response at 4-5.  The Plaintiffs also contend that the Defendants, in bringing the Motion to Strike, aim to keep the Plaintiffs' claims active in the sister proceeding Bell, which could mean that some Plaintiffs' and proposed class members' claims might be time barred.  See Strike Motion Response at 7 n2.  The Plaintiffs argue that the Defendants' "procedural shenanigans" are "contrary to the spirit and intent of the Federal Rules of Civil Procedure 'to secure the just, speedy, and inexpensive determination of every action and proceeding.'"  Strike Motion Response at 7 n.2 (quoting Fed. R. Civ. P. 1)).

### 6.     The Reply to the Motion to Strike.

The Defendants reply to the Motion to Strike Response.  See Reply in Support of Defendants' Motion to Strike or Dismiss Third Amended Complaint, filed December 6, 2017 (Doc. 186)("Strike Motion Reply").  The Defendants reply that, if there is any party engaging in creative procedural stratagems, it is the Plaintiffs, given that they

> filed a separate complaint that they concede is nearly identical to the Third Amended Complaint that is at issue in the instant motion, then agreed to transfer that lawsuit to the judge presiding over this lawsuit, and then filed a motion to consolidate the two complaints that they had filed separately.

Strike Motion Reply at 1.  The Defendants argue that the Intervention MOO's wording and the authorities it cites indicate that the Plaintiffs must move to set aside the Final Judgment before proceeding in this case.  See Strike Motion Reply at 1-2 (citing Intervention MOO at 54-55, 322 F.R.D. [at] 681; United States v. Kentucky Utilities Co., 927 F.2d 252, 255 (6th Cir. 1991)).  The Defendants contend that the Plaintiffs provide no authority for their "remarkable proposition" that "final judgments have no effect or relevance at all to potential class members who are allowed to intervene after the final judgment is entered."  Strike Motion Reply at 2.  The Defendants contend that the Court rejected a similar theory in a different case.  See Strike Motion at 3 (citing Thompson v. THI of New Mexico at Casa Arena, No. CIV 05-1331, 2008 WL 5999653, at *1 (D.N.M. Dec. 24, 2008)(Browning, J.)).

### 7.     **The Hearing.**

The Court held a hearing on June 5, 2018.  See Draft Hearing Transcript (taken June 5, 2018)("Tr.").[8]  The Court began by stating that, when it drafted the Intervention MOO, it imagined that the intervenors would need to satisfy rule 60 to set aside the Final Judgment before proceeding on their claims.  See Tr. at 3:25-4:10 (Court).  . . . [T]he Court stated that it did not see a problem with leaving the Complaint alone for now until the Court determines whether the Plaintiffs may proceed despite the Final Judgment.  See Tr. at 4:24-5:12 (Court).

The Plaintiffs stated that, if the Court is comfortable consolidating the cases and then "seeing how a rule 60 motion plays out, . . . we're perfectly fine with that approach."  Tr. at 5:25-6:5 (Stanford).  The Defendants asked about the "practical effect" of consolidating a case, and the Court stated that "we simply call these cases together anytime we schedule anything[;] we indicate [they are] together until we get it resolved."  Tr. at 6:11-18 (Lowry, Court).  The Court added that, if it does not open the closed case, "then I'm not sure that it has any important consequences at all."  Tr. at 6:18-22 (Court).

The Defendants addressed the Motion to Strike and stated that allowing the [Third Amended] Complaint to remain on the docket seems inconsistent with how the Court handled a similar issue in Thompson v. THI of New Mexico at Casa Arena, 2008 WL 5999653, at *1, and also raised questions regarding the Defendants' procedural responsibilities, such as whether it would have to answer the [Third Amended] Complaint.  See Tr. at 6:25-7:20 (Lowry).  The Court responded that, if it left the [Third Amended] Complaint on the docket, the Court would not require the Defendants to answer it until the rule 60 issue is resolved.  See Tr. at 7:21-8:1 (Court).  The Plaintiffs agreed with that approach.  See Tr. at 8:2-6 (Stanford).

Consolidation MOO at 15-17, 327 F.R.D. at 442-44.

### 1.     **The Motion.**

The Basnet Intervenors now complain that the Defendants interpret the Intervention MOO

to only "permit the Intervenors to obtain *standing* to contest the final judgment . . . not that

intervenors could actually activate and prosecute the Third Amended Complaint without undoing

---

[8]The Court's citations to the hearing transcript refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

the final judgment." Motion at 4 (emphasis in original). The Basnet Intervenors want to resolve whether they must "seek relief under Fed. R. Civ. P. 60 from the final judgment . . . in order to prosecute their Third Amended Complaint" and, if they must seek such relief, under which provision they can obtain it. Motion at 4.

The Basnet Intervenors first contend that the concerns "militating against giving district courts free reign to reconsider their judgments" do not apply here. Motion at 4. The Intervenors identify two concerns: (i) an interest in finality; and (ii) an interest in "a clean jurisdictional handoff from the district court to the Court of Appeals." Motion at 5. See Motion at 4-5 (citing Anderson Living Tr. v. WPX Energy Prod., LLC, 308 F.R.D. 410, 431-32 (D.N.M. 2015)(Browning, J.)). According to the Basnet Intervenors, here, the interest in finality pertains to the Bastian Plaintiffs and not to putative class members. See Motion at 5. The Basnet Intervenors argue that "there remained a nascent interest in the class case and a pending class motion." Motion at 5. The Basnet Intervenors note that the Defendants knew when they submitted the Final Judgment that putative class members would intervene. See Motion at 5. According to the Basnet Intervenors, "cross-jurisdiction confusion" is not a concern, because the Bastian Plaintiffs will not seek an appeal. Motion at 5.

The Basnet Intervenors aver that they "should not have to file a Rule 60(b) Motion for several reasons." Motion at 5. The Basnet Intervenors describe that the Intervention MOO granted them "the permissive right to intervene in the lawsuit pursuant to Rule 24(b), to substitute in as party plaintiffs for the prior class representatives and to file the Third Amended Complaint." Motion at 5-6. According to the Basnet Intervenors, the Court would not have assessed "the doctrines of mootness, subject matter jurisdiction and intervention" if the Basnet Intervenors could

not pursue the Third Amended Complaint. Motion at 6. The Basnet Intervenors argue that, "[h]aving intervened and been substituted in, the Intervenors became the new real parties in interest and should be permitted to assert their claims and the claims of the class." Motion at 6. See Motion at 11.

The Basnet Intervenors argue that the Final Judgment applies to the Bastian Plaintiffs only, see Motion at 6, 10, and that putative class members' interests remain, see Motion at 7. The Basnet Intervenors state that they

> are unable to locate authority holding that the final judgment in a class action lawsuit, entered only as to five individual plaintiffs' claims, even impacts, let alone serves to extinguish, the rights of the putative class members against whom no final judgment was entered to intervene directly into the lawsuit pursuant to Rule 24(b).

Motion at 7. The Basnet Intervenors describe that "[t]he [United States Court of Appeals for the] Tenth Circuit has correctly recognized that the 'nascent interest' of the putative class members inhered at the inception of the class action lawsuit," Motion at 7 (citing Lucero v. Bureau of Collection Recovery Inc., 639 F.3d 1239), and that the Court recognized these nascent interests in the Intervention MOO, see Motion at 7. The Basnet Intervenors emphasize that, in Lusardi v. Xerox Corporation, 975 F.2d 964, 975-76 (3rd Cir. 1992), the United States Court of Appeals for the Third Circuit recognized that a named plaintiff's settlement agreement did not render moot putative class members' rights, deprive the court of subject-matter jurisdiction, or prevent the named plaintiff from arguing a pending class certification motion. See Motion at 8.

According to the Basnet Intervenors, when named plaintiffs leave a class, courts frequently permit new representatives to intervene or appoint new representatives. See Motion at 8 (citing In re Telectronics Pacing Sys., Inc., Accufix Atrial "J" Leads Prods. Liab. Litig., 172 F.R.D. 271, 283 (S.D. Ohio 1997)(Spiegel, J.); Shankroff v. Advest, Inc., 112 F.R.D. 190, 194 (S.D.N.Y.

1986)(Kram, J.); Manual for Complex Litigation (4th), § 21.26 at 277 (Fed. Judicial Ctr. 2004)). The Basnet Intervenors argue that the same principle should apply where, as here, the named plaintiffs settle their individual claims. See Motion at 9. According to the Basnet Intervenors, moreover, the Court should not require them to file a rule 60 motion, because rule 1 of the Federal Rules of Civil Procedure directs that the rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive administration of every action and proceeding." Motion at 9 (quoting Fed. R. Civ. P. 1).

The Basnet Intervenors further contend that, if putative class members cannot intervene after the named plaintiffs settle and the court enters a final judgment, putative class members will suffer a detriment, because defendants will pick off named plaintiffs and require the putative class members to file a new lawsuit. See Motion at 9. According to the Basnet Intervenors, the putative class members will suffer, because they will have to find a new named plaintiff and an inevitable delay will occur in filing the new lawsuit. See Motion at 9. The Basnet Intervenors note that, if the Court permits the Third Amended Complaint to proceed, the Court will not need to decide any tolling issues. See Motion at 10.

In the alternative, the Basnet Intervenors argue that the Court should permit them to seek relief against the Final Judgment under rule 60(b)(5) or rule 60(b)(6). See Motion at 11. The Basnet Intervenors concede that these circumstances differ from other situations wherein a court would apply rule 60. See Motion at 11. According to the Basnet Intervenors, the Basnet Intervenors do not seek relief from a judgment that affects them; they, the Basnet Intervenors explain, seek relief from "any 'finality' effect" that the Final Judgment has on the Third Amended Complaint. Motion at 11.

The Basnet Intervenors state that rule 60(b)(5) enables a court to relieve "a party from a final judgment if . . . the judgment has been satisfied."  Motion at 11 (citing Fed. R. Civ. P. 60(b)(5); Gibbs v. Maxwell House, A Div. of Gen. Foods Corp., 738 F.2d 1153, 1155 (11th Cir. 1984)).  The Basnet Intervenors aver: "While recognizing that the situation presented here is not the typical situation contemplated by this subsection of the rule, the circumstances literally satisfy this requirement."  Motion at 12.  The Basnet Intervenors explain that the Defendants paid the Bastian Plaintiffs pursuant to the Final Judgment and so rule 60(b)(5)'s conditions are met.  See Motion at 12.

Alternatively, the Basnet Intervenors request that the Court apply rule 60(b)(6).  See Motion at 12.  The Basnet Intervenors acknowledge that rule 60(b)(6) "is extraordinary in nature," Motion at 12 (citing Smith v. United States, 561 F.3d 1090, 1096 n.8 (10th Cir. 2009)), and argue that "the circumstances here are extraordinary and definitely justify relief," Motion at 12.  The Basnet Intervenors describe that the class interest has existed from the lawsuit's start "through the class certification motion that was pending" when the Court filed the Final Judgment "and still exists."  Motion at 12.  The Basnet Intervenors argue:

> There has been no deliberate delay on the part of the Intervenors (they filed their intervention motion just a few days after final judgment), there is no prejudice to defendants, and the failure to permit intervention in this lawsuit could jeopardize the legal claims of one or more Intervenors and putative class members if they are forced to proceed with the later filed, but recently consolidated, *Bell* lawsuit, which was filed on August 3, 2017 [Doc. 1].

Motion at 12.  According to the Basnet Intervenors, "the ends of justice require that Intervenors be permitted to proceed" and, for the Basnet Intervenors, this interest in justice "justifies relief from a final judgment."  Motion at 12-13.

The Basnet Intervenors conclude by indicating that they filed the Motion "within a reasonable time after it could have been made," pursuant to rule 60(c)(1).  Motion at 13 (citing Sprint Spectrum, L.P. v. Genesis PCS Corp., 236 F.R.D. 530, 532-33 (D. Kan. 2006)(Robinson, J.)).  The Basnet Intervenors describe first that they had to intervene before they could challenge the Final Judgment and that they believed that the Intervention MOO indicated that they did not need to seek relief under rule 60.  See Motion at 13.  The Basnet Intervenors explain that the question whether they need to seek relief arose only after the Court filed the Consolidation MOO and that they filed this Motion soon thereafter.  See Motion at 13.  The Basnet Intervenors argue that, because, in the Intervention MOO, the Court concluded that intervention would not prejudice the Defendants, the Defendants cannot argue that granting a rule 60 motion would prejudice them and that, because the plaintiffs have been continuing to prosecute this lawsuit, such a decision does not implicate finality.  See Motion at 13.

### 3.    The Response.

The Defendants respond in the Defendants' Response in Opposition to Plaintiffs' Motion to Address Issue of Fed. R. Civ. P. 60 for Intervenors to Proceed with Third Amended Complaint, or Alternatively Fed. R. Civ. P. 60(B) Motion to Obtain Relief from Final Judgment, filed August 27, 2018 (Doc. 205)("Response").  The Defendants argue that the Basnet Intervenors must satisfy rule 60(b).  See Response at 3.  According to the Defendants, the Court has indicated that the Basnet Intervenors must satisfy rule 59 or rule 60 before they can proceed with the Third Amended Complaint.  See Response at 1-2.  The Defendants contend that, when the Court permitted the Defendants not to answer the Third Amended Complaint, the Court "implicitly reaffirm[ed] the litigation could not proceed unless and until the Court set aside the Final Judgment."  Response at

2-3 (citing Consolidation MOO at 38, 327 F.R.D. at 453).  The Defendants indicate that the Court earlier observed "that '[o]nce a case is 'unconditionally dismiss[ed],' the court loses all jurisdiction over the case other than the ability to hear motions under rule 60(b).'"  Response at 3 (citing Abraham v. WPX Energy Prod., LLC, 322 F.R.D. 627, 668 (D.N.M. 2017)(Browning, J.)).  The Defendants quote the Court's observation that the Federal Rules of Civil Procedure establish "a jurisdiction phased de-escalation process wherein the district court goes from pre-final judgment plenary jurisdiction, to limited review for the first twenty-eight days post-final judgment, and, finally, *to solely rule 60 review after twenty-eight days*."  Response at 3 (emphasis in Response)(internal quotation marks omitted)(quoting Abraham v. WPX Energy Prod., LLC, 322 F.R.D. at 607).  The Defendants also cite Thompson v. THI of New Mexico at Casa Arena, wherein, according to the Defendants, the Court clarified that a plaintiff could not raise a claim against a new party after the Court entered final judgment in the case.  See Response at 3-4.  The Defendants argue:

> In *Thompson*, the claim against the new party had not been adjudicated, and there is no question that the plaintiff had a "nascent interest" in pursuing such a claim if the plaintiff wished to do so.  Neither the fact that there was a new, different party nor a new, different interest ("nascent" or otherwise), however, meant that the case should be reopened.

Response at 3-4.  The Defendants contend that final judgments pose a jurisdictional obstacle and that, where, as here, the Court has entered a final judgment, the Court's jurisdiction is limited to rule 60's exceptions.  See Response at 4.  According to the Defendants, the Court has made clear that, after the first twenty-eight days following a final judgment, like here, the Court can reopen a case only under rule 60.  See Response at 4 (citing Abraham v. WPX Energy Prod., LLC, 322 F.R.D. at 607).  In the Defendants' view, for this reason, the Court clarified that "intervention was

- 25 -

a 'precondition' for a motion to reopen a lawsuit."  Response at 4.  The Defendants also cite for

support United States v. Kentucky Utilities Company, 927 F.2d 252 (6th Cir. 1991), in which the

United States Court of Appeals for the Sixth Circuit clarified that an intervenor must satisfy rule

60(b)(6) before obtaining relief.  See Response at 4 (citing United States v. Ky. Utils Co., 927 F.2d

at 255).

The Defendants argue that the Basnet Intervenors cite no authority, and disparage the

Basnet Intervenors' "policy" arguments.  Response at 5.  First, the Defendants contend that the

"interest in finality" is implicated here.  Response at 5.  The Defendants describe that, after the

Final Judgment, they "reasonably expected that *that* litigation was concluded, regardless of

whether other employees would file other lawsuits against them."  Response at 5.  According to

the Defendants, they should receive the benefits of the Final Judgment, including the end of the

statute of limitations' tolling, even if other employees might file suit.  See Motion at 5.  The

Defendants note that the Basnet Intervenors will receive more benefits from reopening this case

than from adhering to the Final Judgment, but, according to the Defendants, "[t]hat the Defendants

are the primary beneficiaries of the 'interest in finality' . . . does not make the interest any less

real."  Response at 5.  The Defendants dispute that the Court should overlook rule 60 simply

because the Basnet Intervenors "believe . . . that the rules should be different than they are."

Response at 5.

The Defendants contest that the Basnet Intervenors cannot satisfy rule 60.  See Response

at 6.  According to the Defendants, rule 60(b)(5) permits a court to relieve parties from a final

judgment when "the judgment has been satisfied, released or discharged."  Fed. R. Civ. P. 60(b)(5).

Response at 6.  The Defendants argue that a plaintiff cannot use this rule to obtain relief from the

Final Judgment when the defendant has paid the judgment that it owes.  See Response at 7.
According to the Defendants, "one treatise observed that this provision 'has been relied on very
rarely,' and the very few cases it cites all involve relieving *defendants* from judgment liability."
Response at 7 (emphasis in Response)(quoting 11 Charles Alan Wright & Arthur R. Miller,
Federal Practice and Procedure § 2863 (3d ed. 2012)).  The Defendants contend that the Basnet
Intervenors' argument for applying rule 60 is illogical, because, under the Basnet Intervenors'
reasoning, a defendant could ensure finality only by not paying the judgment.  See Response at 7.
The Defendants argue that such a rule would result in bad policy and that rule 60(b)(5) does not
fulfill the Basnet Intervenors' desire, which is to be excused from finality but not from the
judgment.  See Response at 7.

The Defendants describe 60(b)(6) as "a 'residual catch-all' that allows district courts to
relieve parties from final judgments for 'any other reason that justifies relief.'"  Response at 8
(quoting Fed. R. Civ. P. 60(b)(6)).  The Defendants cite the Court's summary of the rule:

> "If the reasons offered for relief from judgment could be considered under one of
> the more specific clauses of Rule 60(b)(1)-(5), those reasons will not justify relief
> under Rule 60(b)(6)."  12 J[ames] Moore et al., Moore's Federal Practice, Civil
> § 60.48[2], at 60-182 (3d ed. 2013).  Accord Liljeberg v. Health Servs. Acquisition
> Corp., 486 U.S. [847,] 863 n.11 [(1988)]("This logic, of course, extends beyond
> clause (1) and suggests that clause (6) and clauses (1) through (5) are mutually
> exclusive.").

Response at 8 (quoting Intervention MOO at 37, 322 F.R.D. at 671).  The Defendants argue that
some putative class members intervened in this case before the Court entered the Final Judgment
and that the Basnet Intervenors do not explain why they did not previously intervene; according to
the Defendants, "they [(the Basnet Intervenors)] simply did not do so."  Response at 8.  The
Defendants aver: "Whether Plaintiffs characterize their failure to intervene earlier as a 'mistake'

or 'inadvertence' or 'excusable neglect,' those set of circumstances [sic] fall squarely within the ambit of Rule 60(b)(1) and cannot be used to justify relief now, more than a year after the Final Judgment was entered, under Rule 60(b)(6)."  Response at 8 (citing Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863 n.11; Intervention MOO at 37, 322 F.R.D. at 671).

The Defendants further describe that "circumstances must be 'extraordinary'" to warrant relief under 60(b)(6).  Motion at 8 (quoting Intervention MOO at 38, 322 F.R.D. at 671).  The Defendants describe that the Bastian Plaintiffs acted entirely ordinary when they accepted the Final Judgment and the Court entered the Final Judgment.  See Response at 9.  The Defendants argue: "There is certainly nothing in the record to suggest that a natural disaster or any other crisis or 'extraordinary' act played any role in the timing of the motion or any of the other relevant procedural events of this lawsuit."  Response at 9.  Moreover, for the Defendants, "[e]ven Plaintiffs' assertion that 'failure to permit intervention [*sic*] in this lawsuit could jeopardize the legal claims of one or more Intervenors,' which Defendants contend are not the kind of 'extraordinary' circumstances contemplated by the rule, is unexplained and unsupported." Response at 9 (footnote omitted)(sic in Response)(quoting Motion at 12).  The Defendants note that the Basnet Intervenors do not specify which claims will be jeopardized and how those claims will be jeopardized.  See Response at 9.  According to the Defendants, the "Plaintiff [sic] have a heavy burden; of satisfying the Rule 60(b)(6) requirements," Response at 9 (quoting Mayberry v. Maroney, 558 F.2d 1159 1163 (3d Cir. 1977)), and, in the Defendants' view, the Basnet Intervenors do not meet this burden.  See Response at 9.

The Defendants aver, moreover, that "the United States Supreme Court has made clear that if a party is even *partly* at fault, Rule 60(b)(6) relief does not apply."  Response at 9 (emphasis in

Response)(citing <u>Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd.,</u> 507 U.S. 380, 393 (1993)).

Response at 9.  According to the Defendants, the Basnet Intervenors controlled when they filed

the Motion to Intervene and the Supp. Motion to Intervene, so the Basnet Intervenors bear

responsibility for their situation and cannot obtain relief under rule 60(b)(6).  <u>See</u> Response at 9.

The Defendants argue that the Basnet Intervenors avoid this problem by putting responsibility on

the Bastian Plaintiffs, <u>see</u> Response at 10; according to the Defendants, "[e]ven if Plaintiffs could

convince the Court that others are partly responsible . . . that would not justify applying the rule.

Partial responsibility is enough to deny relief under Rule 60(b)(6)," Response at 10 (citing Motion

at 5; <u>Schwartz v. United States,</u> 976 F.2d 213 (4th Cir. 1992)).  The Defendants continue, arguing

that the Basnet Intervenors cannot distance themselves from the Bastian Plaintiffs.  <u>See</u> Response

at 10.  The Defendants allege that the Bastian Plaintiffs knew and understood their roles as class

representatives.  <u>See</u> Response at 10.  According to the Defendants, for instance, the Bastian

Plaintiffs confirmed in the Plaintiffs' Reply to Motion for Class Certification, filed June 27, 2016

(Doc. 134), that each named plaintiff understood his or her role as a class representative.  <u>See</u>

Response at 10 (citing Plaintiffs' Reply to Motion for Class Certification at 10-11).  The

Defendants advocate that the Court should read the Final Judgment with the assumption that the

class representatives understood their responsibilities to the class.  <u>See</u> Response at 10.  According

to the Defendants, the Bastian Plaintiffs did not control when the Basnet Intervenors chose to

intervene, and the Defendants note that the same attorneys represented the Bastian Plaintiffs as

represent the Basnet Intervenors and that those attorneys should have been able to easily coordinate

strategy.  <u>See</u> Response at 11.

4.    **The Reply**.

In reply, the Basnet Intervenors reiterate their arguments from the Motion.  See Reply to Response in Support of Motion to Address Issue of Fed. R. Civ. P. 60 for Intervenors to Proceed with Third Amended Complaint or, Alternatively Fed. R. Civ. P. 60(B) Motion to Obtain Relief from Judgment at 2, filed September 14, 2018 (Doc. 211)("Reply").  The Basnet Intervenors argue that they "are not inventing a differential fiction here"; according to the Basnet Intervenors, "case law, treatises, manuals, pocket guides and law review articles . . . confirm" that class action lawsuits differ from other lawsuits.  Reply at 3.  The Basnet Intervenors describe that "the Tenth Circuit itself, as well its sister circuits, has expressly recognized the 'nascent interest' of the class members that obtains with the filing of the class action lawsuit and, by relation and extension, a filed but yet undecided motion for class certification."  Reply at 3 (citing Lucero v. Bureau of Collection Recovery Inc., 639 F.3d 1239 (10th Cir. 2011)).

The Basnet Intervenors contend that the Defendants do not address how the Final Judgment binds the putative class members.  See Reply at 3.  According to the Basnet Intervenors, the Final Judgment could not "bring finality to the putative class members' claims."  Reply at 3.  The Basnet Intervenors indicate neither party cites a case on point, "in which putative class members are seeking to pick up a class action lawsuit that was left unresolved."  Response at 4.  The Basnet Intervenors summarize that, in Thompson v. THI of New Mexico at Casa Arena, the named party sought to add an additional claim against a new defendant.  See Response at 4.  The Basnet Intervenors differentiate United States v. Kentucky Utilities Company, arguing that the plaintiff in United States v. Kentucky Utilities Company sought to modify the settlement agreement and that the case "involved a final judgment on *all* of the issues presented in the underlying lawsuit, and a

third party sought to attack a specific portion of it." Reply at 4 (emphasis in original). According

to the Basnet Intervenors, here, "settlement and final judgment . . . specifically did not resolve the

putative class members' claims or even seek to extinguish the putative class members' rights."

Reply at 4.

The Basnet Intervenors contend that they face potential harm, because the Defendants will

argue that <u>American Pipe</u> tolling, does not protect all the Basnet Intervenors' claims. <u>See</u> Reply

at 5.

> The Basnet Intervenors describe:
>
> Defendants intend to argue either for no tolling of the three (3) year statute of
> limitations on the NMMWA claims or for limited tolling in order to pick off certain
> plaintiffs and/or class members if Plaintiffs are forced to seek relief for themselves
> and the class only through the later-filed *Bell* lawsuit.

Reply at 5.

The Basnet Intervenors insist that they can satisfy rule 60. <u>See</u> Reply at 5. The Basnet

Intervenors contend that, even if defendants are more likely seek to seek relief under rule 60(b)(5),

the rule is not intended to benefit solely defendants. <u>See</u> Reply at 5. The Basnet Intervenors

indicate that <u>Gibbs v. Maxwell House, A Division of General Foods Corp.</u> "nowhere provides that

rule 60(b)(5) only serves as a procedural tool for a defendant." Reply at 5. The Basnet Intervenors

contend that the their "principal point is that because the judgment has been satisfied, there will be

no disturbance whatsoever in that portion of the lawsuit that was resolved between the five *Bastian*

plaintiffs and the two Defendants." Reply at 6. According to the Basnet Intervenors, the Final

Judgment will remain intact and the Court "will not have to alter, modify or amend the benefit to

which the parties bargained." Reply at 6. To the Defendants' concerns about applying rule

60(b)(5) here, the Basnet Intervenors reply that a party can file "for writs of garnishment and

execution, along with post-judgment discovery," to obtain rapid enforcement of the judgment. Reply at 6.  The Basnet Intervenors continue:

> As a secondary concern, if enough time passes and the defendant refuses to satisfy the Rule 68 offer, it invites a Rule 60(b)(3) motion on the grounds that the Rule 68 offer constituted a fraud and/or misrepresentation.  In either the first or the second case, the defendant against whom judgment was taken is faced with additional costs, attorney's fees and the like for the failure to satisfy a Rule 68 offer promptly.

Reply at 6.  The Basnet Intervenors argue that a defendant will not likely delay in paying a judgment anyway.  See Reply at 6.  The Basnet Intervenors summarize that class action defendants often prefer to pay the judgment quickly and "hope that the clock continues to tick on any other class claims."  Reply at 6-7.

Regarding rule 60(b)(6), the Basnet Intervenors contend that the rule "does not require a 'natural disaster or any other crises,'" as the Defendants suggest.  See Reply at 7 (quoting Response at 9; and citing Smith v. United States, 561 F.3d at 1096 n.8).  The Basnet Intervenors allege that the Defendants know that the Court's preclusion of the Third Amended Complaint will prejudice the Basnet Intervenors.  See Reply at 7.  The Intervenors argue: "The fact remains that select individuals who were intentionally paid improperly and in derogation of the NMMWA may lose out on relief because of time, not merits.  That, coupled with the arguments in the motion, support Rule 60(b)(6) relief."  Reply at 7.

5.     __The Hearing__.

The Basnet Intervenors admitted that they could not locate a case that is on point.  __See__
Draft Hearing of Transcript at 3:1-13 (taken September 26, 2019)(Stanford)("Sep. 26 Tr.").[9]  The
Intervenors described that the closest case that they could locate was __Lusardi v. Xerox Corp.__,
wherein, after the plaintiffs stipulated to dismiss the case, the intervenors tried to file a class
certification motion.  __See__ Sep. 26 Tr. at 3:14-22 (Stanford).  According to the Basnet Intervenors,
the Third Circuit held that the intervenors could not file the motion, but noted that, if a class
certification motion had been pending, the intervenors could have picked up and argued that
pending motion.  __See__ Sep. 26 Tr. at 3:23-4:3 (Stanford).

The Basnet Intervenors emphasized that this case differs from other circumstances in which
a court has entered a final judgment, because, according to the Basnet Intervenors, the Final
Judgment here reflects an agreement that only the Bastian Plaintiffs made with the Defendants and
that left the putative class members with their nascent interest in this case.  __See__ Sep. 26 Tr. at 4:9-
5:9 (Stanford).  The Basnet Intervenors stressed that the Bastian Plaintiffs had no authority to
extinguish the class action or to settle the putative class members' claims.  __See__ Sep. 26 Tr. at 5:10-
18 (Stanford).  The Basnet Intervenors reiterated that courts are sensitive to putative class
members' interests, and frequently allow a putative class member to "pick up the case and not have
some kind of obstacle for their ability to do so."  Sep. 26 Tr.at 6:4-6 (Stanford).  The Basnet
Intervenors argued that, initially, the Court and the parties had a sense that rule 60 would not
obstruct the Basnet Intervenors' prosecution of the case, and, according to the Basnet Intervenors,

---

[9]The Court's citations to the transcript of the hearing refer to the court reporter's original,
unedited version.  Any final transcript may contain slightly different page and/or line numbers.

this sense is evidence that the Basnet Intervenors can proceed, because the Intervention MOO permits the Basnet Intervenors to intervene and to file the Third Amended Complaint, and the Defendants asked for additional time in which to answer the Third Amended Complaint. See Sep. 26 Tr. at 6:6-16 (Stanford).

Alternatively, the Basnet Intervenors contended that they can satisfy rules 60(b)(5) and (6). See Sep. 26 Tr. at 7:1-2 (Stanford). The Basnet Intervenors summarized that they deserve relief, because, if they cannot in this case, the Defendants will argue that American Pipe tolling bars some of their claims. See Sep. 26 Tr. at 7:2-23 (Stanford). The Basnet Intervenors could not estimate the number of claims that such arguments would affect, but the Basnet Intervenors expressed their goal for all class members to receive the compensation that they deserve. See Sep. 26 Tr. at 8:7-9:4 (Stanford). Lastly, the Plaintiffs argued that they can satisfy 60(b)(5), because, according to the Basnet Intervenors, "the rule says what it says." Sep. 26 Tr. at 9:4-5 (Stanford). The Basnet Intervenors averred:

> It's within the discretion of the Court to set aside a judgment if that's the . . . procedural mechanism that is necessary here for the intervenors to intervene[.] . . . [T]he Court can do so when the judgment has been satisfied, and there is no, as I put in the reply brief, there is no special provision in there that says that's only for defendant to use that particular [provision].

Sep. 26 Tr. at 9:5-13 (Stanford).

The Court asked what the Basnet Intervenors envisioned doing in this case if the Court permits them to prosecute the Third Amended Complaint. See Sep. 26 Tr. at 10:16-18 (Court). The Court continued, questioning whether, although it has entered the Final Judgment, the Basnet Intervenors imagined having an initial scheduling conference and trial in this case. See Sep. 26 Tr. at 10:20-23 (Court). The Basnet Intervenors explained that this case would proceed in parallel

with the <u>Bell</u> case, with some discovery and a class certification motion.  <u>See</u> Sep. 26 Tr. at 10:24-11:18 (Court).  The Court wondered about proceeding through an entire case after the Final Judgment's entry:

> Are we [running] real risk by having a final judgment sitting there.  The Tenth [Circuit] teaches courts that that's a very important thing to them, a final judgment there.  Are they just going to say sorry guys, that was very interesting down there, I don't know what y'all were doing, but we don't . . . have jurisdiction because it ran a long time ago.

Sep. 26 Tr. at 11:19-12:6 (Court).  The Basnet Intervenors stated that they could not imagine in what scenario the Court's prediction would occur.  <u>See</u> Sep. 26 Tr. at 12:7-9 (Stanford).  The Court replied: "It may be a great situation for me; nobody can [appeal] me, you know, so it may be judgment proof for whatever I do for that.  But it seems to me it may put both of you guys at risk." Sep. 26 Tr. at 12:10-13 (Court).  The Basnet Intervenors responded that they could not envision what an appeal would look like, because: (i) the Court made one substantive decision in this case, and the Basnet Intervenors could not imagine appealing that decision, and (ii) the Basnet Intervenors saw no grounds for attacking the Paynes' settlement or the Final Judgment, because both were settlements to which the named plaintiffs and the Defendants had agreed.  <u>See</u> Sep. 26 Tr. at 12:14-13:13 (Stanford).

The Defendants summarized that the Basnet Intervenors propose "a class action exception to the final judgment rule" and that the Defendants contend that no such exception exists.  Sep. 26 Tr. at 14:14-15 (Lowry).  <u>See id.</u> at 14:14-18 (Lowry).  The Defendants argued that the Court recognized no class action exception to the final judgment in <u>Abraham v. WPX Energy Production, LLC</u>, which the Court issued the same day as the Intervention Motion.  <u>See</u> Sep. 26 Tr. at 14:22-15:7 (Lowry).  The Defendants contended that the Basnet Intervenors envision a case with multiple

final judgments and indicate that, if the Tenth Circuit concludes that the Court lacks jurisdiction after the first final judgment, "anything that happened after that [final judgment]" might be inoperative. Sep. 26 Tr. at 16:1-5 (Lowry).

The Defendants argued that rule 60(b)(5) does not apply. See Sep. 26 Tr. at 16:12-13 (Lowry). The Defendants stated that they found no cases in which a plaintiff successfully set aside a final judgment under rule 50(b)(5). See Sep. 26 Tr. at 16:14-17 (Lowry). The Defendants reiterated their arguments from their Response that the Basnet Intervenors' stance leads to absurd results, and that the Basnet Intervenors want to set aside the finality rule and not the Final Judgment. See Sep. 26 Tr. at 16:17-17:9 (Lowry). The Defendants also argued that the Basnet Intervenors do not carry their burden under rule 60(b)(6) for three reasons: (i) that the Basnet Intervenors did not intervene earlier "could be characterized as a mistake or as inadvertence or as excus[able neglect]," Sep. 26 Tr. at 17:15-16 (Lowry), and the Basnet Intervenors are outside the timeframe for rule 60(b)(1), which addresses those issues, and cannot seek relief under 60(b)(6), see Sep. 26 Tr. at 17: 12-23; (ii) for rule 60(b)(6) to apply, the circumstances leading to the final judgment must be extraordinary, and the Defendants dispute the Basnet Intervenors' contention that this case is extraordinary because a statute of limitations will apply if the Court does not set aside the Final Judgment, Sep. 26 Tr. at 17:23-18:9 (Lowry); and (iii) "if a party is even partly at fault for the circumstances leading to the final judgment then Rule 60(b)[(6)] cannot be used to undue it," Sep. 26 Tr. at 18:9-12 (Lowry), and the Basnet Intervenors are partly at fault because they could have intervened earlier, see Sep. 26 Tr. at 18:12-18.

The Court indicated that it had heavily relied on United Airlines v. McDonald[10] in granting the Intervention Motion and asked the Defendants if they remembered what had occurred after the intervention in that case.  See Sep. 26 Tr. at 18:22-19:8 (Court).  The Defendants replied that they did not know to which case the Court was referring.  See Sep. 26 Tr. at 19:16-20 (Lowry).

The Basnet Intervenors summarized that they seek "relief as to finality."  Sep. 26 Tr. at 20:9-10 (Stanford).  They admitted that their request differs from other rule 60 motions, because they do not want to change the Final Judgment.  See Sep. 26 Tr. at 20:17-24 (Stanford).  The Basnet Intervenors explained that the concern "really is the statute of limitations and its impact on the timing," Sep. 26 Tr. at 21:1-2 (Stanford), and that, if the Court and the Defendants worry that the Final Judgment precludes the Court from acting unless it reobtains jurisdiction under rule 59 or rule 60, the Basnet Intervenors will seek relief under rule 60, see Sep. 26 Tr. at 21:3-16 (Stanford).

The Court concluded that it needed to "thin[k] . . . about this some more."  Sep. 26 Tr. at 21:18.  The Court explained that United Airlines v. McDonald dictates that the Court allow the Basnet Intervenors to intervene, but that the Court is not sure whether United Airlines v. McDonald requires it to permit the Basnet Intervenors to proceed with this case.  See Sep. 26 Tr. at 21:22-25 (Court).  The Court indicated that, unless United Airlines v. McDonald requires such proceedings, the Court tends to agree with the Defendants that a case cannot have two final judgments.  See Sep. 26 Tr. at 22:1-5 (Court).  The Court noted that multiple final judgments are permitted if the

---

[10]In the interest of portraying the hearing accurately, the Court notes that, at the hearing, the Court and the parties could not remember the name of this case.  See Sep. 26 Tr. at 18:22-23 (Court); id. at 19:16-18 (Lowry).  The name of the case is United States v. McDonald, and the Court will use the name in the text.

Court certifies them under rule 54(b) of the Federal Rules of Civil Procedure but that, in this case, the Court and the parties did not take the steps for such certification.  See Sep. 26 Tr. at 22:5-11 (Court).  The Court indicated that it was inclined to deny the Motion but that it would further consider the issue.  See Sep. 26 Tr. at 23:3-9 (Court).  The Court also stated that 60(b)(5) likely does not apply, see Sep. 26 Tr. at 23:9-11 (Court), and that the 60(b)(6) standard is "a pretty high standard," Sep. 26 Tr. at 23:12.  The Court issues this Memorandum Opinion and Order after further consideration of the issues.

## LAW REGARDING FINAL JUDGMENTS

"A final decision is one that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"  Rekstad v. First Bank Sys., 238 F.3d at 1261 (quoting Catlin v. United States, 324 U.S. 229, 233 (1945)).  "A final judgment terminates the Court's jurisdiction over the main case -- those claims over which the Court has original, pendent, or pendent-party jurisdiction."  Pedroza v. Lomas Auto Mall, Inc., 304 F.R.D. at 333-34.  With few exceptions, "federal appellate courts have jurisdiction solely over appeals from '*final decisions* of the district courts of the United States.'"  Rekstad v. First Bank Sys., 238 F.3d at 1261 (internal quotation marks omitted)(emphasis in original)(quoting 28 U.S.C. § 1291).

Where a suit involves multiple claims, the district court must, pursuant to rule 54(b), "adjudicate every claim before the court's decision can be considered final and appealable." Rekstad v. First Bank Sys., 238 F.3d at 1261 (citing Fed. R. Civ. P. 54(b)).  In certain, limited circumstances, however, the district court "may direct the entry of final judgment as to one or more but fewer than all the claims" to secure immediate appellate review of certified final orders. Rekstad v. First Bank Sys., 238 F.3d at 1261 (internal quotation marks omitted)(quoting Fed. R.

Civ. P. 54(b)).  Otherwise, appellate review is foreclosed until all claims have been terminated on the merits.  See Rekstad v. First Bank Sys., 238 F.3d at 1261.

Under rule 58(a) of the Federal Rules of Civil Procedure, "[e]very judgment and amended judgment must be set out in a separate document," save for orders disposing of certain motions. Fed. R. Civ. P. 58.  A final judgment "must be a self-contained document, saying who has won and what relief has been awarded, but omitting the reasons for this disposition, which should appear in the court's opinion."   In re Taumoepeau, 523 F.3d 1213, 1217 n.5 (10th Cir. 2008)(internal quotation marks)(quoting Moore's Federal Practice §58.05[4][a]).  The Supreme Court has stated that the separate-document rule must be "mechanically applied" in determining whether an appeal is timely.  Allison v. Bank One-Denver, 289 F.3d 1223, 1232-33 (10th Cir. 2002)(internal quotation marks omitted)(quoting Bankers Tr. Co. v. Mallis, 435 U.S. 381, 386 (1978)).  "Strict application of Rule 58 eliminates any question as to when the clock for filing post judgment motions . . . begins to tick.  Orders disposing of certain enumerated motions, including post judgment motions under Fed. R. Civ. P. 59 and 60, are excepted from Rule 58's separate judgment requirement."  Warren v. Am. Bankers Ins. of Fla., 507 F.3d 1239, 1242 (10th Cir. 2007). Thus, the Tenth Circuit "strictly adhere[s] to the Supreme Court's directive to apply Rule 58 'mechanically.'"  Warren v. Am. Bankers Ins. of Fla., 507 F.3d at 1243.

Final judgments implicate two important concerns militating against giving district courts free reign to reconsider their judgments.  First, when a case is not appealed, there is an interest in finality.  The parties and the lawyers expect to go home, quit obsessing over the dispute, and put the case behind them, and the final judgment -- especially once the twenty-eight-day window of robust district court review and the thirty-day window of appeal have both closed -- is the

disposition upon which they are entitled to rely.  Second, when a case is appealed, there is the need

for a clean jurisdictional handoff from the district court to the Court of Appeals.  "[A] federal

district court and a federal court of appeals should not attempt to assert jurisdiction over a case

simultaneously," as doing so produces a "danger [that] a district court and a court of appeals w[ill]

be simultaneously analyzing the same judgment."  Griggs v. Provident Consumer Disc. Co., 459

U.S. 56, 58-59 (1982).

The "touchstone document" for this jurisdictional handoff is the notice of appeal, not the

final judgment, Griggs v. Provident Consumer Disc. Co., 459 U.S. at 58 ("The filing of a notice

of appeal is an event of jurisdictional significance -- it confers jurisdiction on the court of appeals

and divests the district court of its control over those aspects of the case involved in the appeal."

(citations omitted)); Garcia v. Burlington N. R.R., 818 F.2d 713, 721 (10th Cir. 1987)("Filing a

timely notice of appeal . . . transfers the matter from the district court to the court of appeals.  The

district court is thus divested of jurisdiction.  Any subsequent action by it is null and void."

(citations omitted)); Kirtland v. J. Ray McDermott & Co., 568 F.2d 1166, 1170 (5th Cir.

1978)("[I]t is the filing of the appeal, not the entering of a final judgment, that divests the district

court of jurisdiction." (citations omitted)), but, because the final judgment starts the parties' thirty-

day clock for filing a timely notice of appeal, the Federal Rules of Civil Procedure and the Tenth

Circuit have chosen to curtail the district court's jurisdiction over the case in the roughly month-

long period of potentially overlapping trial- and appellate-court jurisdiction that immediately

follows the entry of final judgment, see Servants of the Paraclete v. Does, 204 F.3d 1005, 1009

(10th Cir. 2000)(noting that post-final judgment motions at the district court level are "not intended

to be a substitute for direct appeal").  Rather than suddenly divesting the district court of all

jurisdiction over the case -- potentially resulting in the district court being unable to rectify easily fixable problems with the final judgment before the case goes to the Tenth Circuit, or even requiring appeal of a case that might otherwise not need to be appealed -- the Federal Rules set forth a jurisdiction phased de-escalation process, wherein the district court goes from pre-final judgment plenary jurisdiction, to limited review for the first twenty-eight days post-final judgment, and, finally, to solely rule 60 review after twenty-eight days.

### LAW REGARDING MOTION TO ALTER OR AMEND UNDER RULE 59(E)

Motions to reconsider in civil cases fall into three categories:

(i) a motion to reconsider filed within twenty-eight[11] days of the entry of judgment is treated as a motion to alter or amend the judgment under rule 59(e); (ii) a motion to reconsider filed more than [twenty-eight] days after judgment is considered a motion for relief from judgment under rule 60(b); and (iii) a motion to reconsider any order that is not final is a general motion directed at the Court's inherent power to reopen any interlocutory matter in its discretion.

Pedroza v. Lomas Auto Mall, Inc., 258 F.R.D. at 462 (citing Price v. Philpot, 420 F.3d 1158, 1167 & n.9 (10th Cir. 2005)).  See Computerized Thermal Imaging, Inc. v. Bloomberg. L.P., 312 F.3d 1292, 1296 n.3 (10th Cir. 2002).

---

[11]Former rule 59 provided for a ten-day period after entry of judgment to file motions to reconsider.  In 2009, the rule was amended, extending the filing period to twenty-eight days:

Experience has proved that in many cases it is not possible to prepare a satisfactory post-judgment motion in 10 days, even under the former rule that excluded intermediate Saturdays, Sundays, and legal holidays.  These time periods are particularly sensitive because Appellate Rule 4 integrates the time to appeal with a timely motion under these rules.  Rather than introduce the prospect of uncertainty in appeal time by amending Rule 6(b) to permit additional time, the former 10-day periods are expanded to 28 days.

Fed. R. Civ. P. 59 advisory committee's notes.

Whether a motion for reconsideration should be considered a motion under rule 59 or rule 60 is not only a question of timing, but also "depends upon the reasons expressed by the movant." Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc., 680 F.3d 1194, 1200 (10th Cir. 2011). Where the motion "involves 'reconsideration of matters properly encompassed in a decision on the merits,'" a court considers the motion under rule 59(e). Phelps v. Hamilton, 122 F.3d 1309, 1323-24 (10th Cir. 1997)(quoting Martinez v. Sullivan, 874 F.2d 751, 753 (10th Cir. 1989)). In other words, if the reconsideration motion seeks to alter the district court's substantive ruling, then it should be considered a rule 59 motion and be subject to rule 59's constraints. See Phelps v. Hamilton, 122 F.3d at 1324. "[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000). A motion to alter or amend under rule 59(e), however, is an "inappropriate vehicle[] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." Servants of Paraclete v. Does, 204 F.3d at 1012. A district court has considerable discretion in ruling on a motion to reconsider. See Phelps v. Hamilton, 122 F.3d at 1324.

The Tenth Circuit reviews a district court's ruling on a motion to alter or amend "under an abuse of discretion standard." Phelps v. Hamilton, 122 F.3d at 1324. Under that standard "a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." 122 F.3d at 1324. "The purpose [of a rule 59(e)] motion is to correct manifest errors of law or to present newly discovered evidence." Monge v. RG Petro-Machinery

(Group) Co. Ltd., 701 F.3d 598, 611 (10th Cir. 2012)(internal quotation marks omitted)(quoting Webber v. Mefford, 43 F.3d 1340, 1345 (10th Cir. 1994)).  "Where the motion requests a substantive change in the district court's judgment or otherwise questions its substantive correctness, the motion is a Rule 59 motion, regardless of its label."  Yost v. Stout, 607 F.3d 1239, 1243 (10th Cir. 2010).

The Tenth Circuit has determined that the "law of the case doctrine has no bearing on the revisiting of interlocutory orders, even when a case has been reassigned from one judge to another."  Rimbert v. Eli Lilly & Co., 647 F.3d 1247, 1252 (10th Cir. 2011)(citing Been v. O.K. Indus., Inc., 495 F.3d at 1225).  In this context, "the doctrine is merely a 'presumption, one whose strength varies with the circumstances.'"  Been v. O.K. Indus., Inc., 495 F.3d at 1225 (quoting Avitia v. Metro. Club of Chi., Inc., 49 F.3d 1219, 1227 (7th Cir. 1995)).  "[D]istrict courts generally remain free to reconsider their earlier interlocutory orders."  Been v. O.K. Indus., 495 F.3d at 1225.  In short, a district court can use whatever standard it wants to review an earlier interlocutory order.  It can review the earlier ruling de novo and essentially reanalyze the earlier motion from scratch, it can review the ruling de novo but limit its review, it can require parties to establish one of the law-of-the-case grounds, or it can refuse to entertain motions to reconsider altogether.

The best approach, in the Court's eyes, is to analyze motions to reconsider differently depending on three factors.  Cf. Been v. O.K. Indus., Inc., 495 F.3d at 1225 ("[T]he doctrine is merely a 'presumption, one whose strength varies with the circumstances.'" (quoting Avitia v. Metro. Club of Chi., Inc., 49 F.3d 1219, 1227 (7th Cir. 1995)).  First, the Court should restrict its review of a motion to reconsider a prior ruling in proportion to how thoroughly the earlier ruling

addressed the specific findings or conclusions that the motion to reconsider challenges. How "thoroughly" a point was addressed depends both on the amount of time and energy the Court spent on it, and on the amount of time and energy that the parties spent on it -- in briefing and orally arguing the issue, but especially if they developed evidence on the issue. A movant for reconsideration thus faces a steeper uphill challenge when the prior ruling was on a criminal suppression motion, class certification motion, or preliminary injunction,[12] than when the prior ruling is, e.g., a short discovery ruling. The Court should also look, not to the prior ruling's overall thoroughness, but to the thoroughness with which the Court addressed the exact point or points that the motion to reconsider challenges. A movant for reconsideration thus faces an easier task when he or she files a targeted, narrow-in-scope motion asking the Court to reconsider a small, discrete portion of its prior ruling than when he or she files a broad motion to reconsider that rehashes the same arguments from the first motion, and essentially asks the Court to grant the movant a mulligan on its earlier failure to present persuasive argument and evidence.

---

[12]The Court typically makes findings of fact and conclusions of law in ruling on these motions. At first glance, it appears that the Federal Rules of Civil Procedure set forth additional standards -- beyond that which applies to other interlocutory orders -- for amending findings of fact and conclusions of law: "**Amended or Additional Findings.** On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings -- or make additional findings -- and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59." Fed. R. Civ. P. 52(b). This rule appears to limit motions to reconsider orders with findings of fact and conclusions of law to twenty-eight days. The rule's use of the term "entry of judgment," its reference to rule 59, and its adoption of the same time period that applies to motions to alter or amend a judgment, all lead the Court to conclude, however, that rule 52(b) -- and its twenty-eight-day time limit -- does not apply to interlocutory orders. The time limit applies only to findings of fact and conclusions of law supporting a case-ending judgment -- such as those entered after a bench trial -- and to those giving rise to an interlocutory appeal that, if filed, divests the district court of its jurisdiction -- such as those entered in support of a preliminary injunction.

Second, the Court should consider the case's overall progress and posture, the motion for reconsideration's timeliness relative to the ruling it challenges, and any direct evidence that the parties may produce, and use those factors to assess the degree of reasonable reliance which the opposing party has placed in the Court's prior ruling. See 18B Charles Alan Wright, et al., Federal Practice & Procedure § 4478.1 (2d ed. 2018)("Stability becomes increasingly important as the proceeding nears final disposition . . . . Reopening should be permitted, however, only on terms that protect against reliance on the earlier ruling."). For example, if a defendant (i) spends tens of thousands of dollars removing legacy computer hardware from long-term storage; then (ii) obtains a protective order in which the Court decides that the defendant need not produce the hardware in discovery; then (iii) returns the hardware to long-term storage, sustaining thousands more in expenses; and (iv) several months pass, then the plaintiffs should face a higher burden in moving the Court to reconsider its prior ruling than they faced in fighting the motion for protective order the first time.

Third, the Court should consider the factors from Servants of the Paraclete v. Does. The Court should be more inclined to grant motions for reconsideration if the movant presents (i) new controlling authority -- especially if the new authority overrules prior law or sets forth an entirely new analytical framework; (ii)  new evidence -- especially if the movant has a good reason why the evidence was not presented the first time around; or (iii) a clear indication -- one that manifests itself without the need for in-depth analysis or review of the facts -- that the Court erred.

These three factors should influence the degree to which the Court restricts its review of a prior ruling, but they do not necessarily mean that the Court should always apply a deferential standard of review.  The Court should pause before applying a standard of review to its own

interlocutory orders that is more deferential than the standard that the Court of Appeals will apply to it, unless the Court concludes that the alleged error in the prior ruling was harmless, or the party moving for reconsideration waived its right to appeal the alleged error by not raising the appropriate argument. Even in circumstances where the Court concludes that it is insulated from reversal on appeal, there are principled reasons for applying a de novo standard. After all, if the Court was wrong in its earlier decision, then, generally speaking, it is unjust to maintain that result -- although the Court should weigh this injustice against any injustice that would result from upending the parties' reliance on the earlier ruling, which is the balancing test that the three factors above represent.

What the Court means by "restricting its review" is less about applying a deferential standard of review -- although that may be appropriate in some circumstances -- and more about reducing (i) the depth of the Court's analysis the second time around -- thus conserving judicial resources; and (ii) the impositions that relitigation of the prior ruling will impose on the party opposing the motion for reconsideration. The Court should consider the time and expense that the party opposing reconsideration spent in winning the earlier ruling, and should try to prevent that party from having to bear the same impositions again. Basically, even if the Court ultimately analyzes a motion to reconsider under the same standard which it analyzed the motion that produces the earlier ruling, it should analyze the motion in a different way -- one focused on reducing the litigation burdens of the party opposing reconsideration. For example, when a party moves the Court for a preliminary injunction, standard practice is that the Court holds an evidentiary hearing as a matter of course, regardless whether it looks as if the party has a good chance of prevailing. If the party loses and the Court denies the injunction, however, and the party

moves for reconsideration, the party should not be entitled to the presumption of an evidentiary hearing merely because he or she received that presumption the first time the Court considered the motion.

In light of these statements, it is perhaps better to characterize the increased burden that a movant for reconsideration faces as one of production and not of persuasion. The Court analyzes motions to reconsider by starting where it ended in the prior ruling -- not by starting anew. Parties opposing reconsideration can do the same, and they may stand on whatever evidence and argument they used to win the earlier ruling. Movants for reconsideration, on the other hand, carry the full burden of production: they must persuade the Court, using only the evidence and argument they put before it, that it should change its prior ruling; they must do all of the legwork, and not rely on the Court to do any supplemental fact-finding or legal research; and they must convincingly refute both the counterarguments and evidence that the opposing party used to win the prior ruling and any new arguments and evidence that the opposing party produces while opposing the motion to reconsider. Unlike the motion that produced the prior ruling, a motion to reconsider is not -- and is not supposed to be -- a fair fight procedurally. The deck is stacked against a movant for reconsideration, and if such a movant hopes to prevail, he or she must have not only a winning legal position, but the work ethic and tenacity to single-handedly lead the Court to his or her way of thinking.

The Court has recently commented on parties rearguing the same issues on a rule 59(e) motion:

> Under rule 59(e)'s framework, the Court is not restricted to rule 50(b)'s remedies and may alter the judgment when there is: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice." <u>Servants of Paraclete v. Does</u>,

204 F.3d at 1012.  The Tenth Circuit has noted that motions to alter, amend, or reconsider should not rehash old arguments, or advance new arguments or facts that could have been raised earlier.  See United States v. Amado, 841 F.3d [867], 871 [(10th Cir. 2016)]("A proper motion to reconsider does not simply state facts previously available or make arguments previously made."); Servants of Paraclete v. Does, 204 F.3d at 1012 ("Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing.").  As the Court has already noted, the Defendants' Motion raises the same arguments that the Defendants previously argued during their Motion to Alter.  The Court, however, also concludes that Servants of Paraclete v. Does does not force the Court to deny a motion to amend or alter, simply because it raises identical issues; rather, it affords the Court the option to deny that motion for reasons of judicial efficiency.  A court need not review a motion to alter or amend with the same rigor if the motion raises issues already considered, because it would waste time by forcing a judge to rewrite an opinion already rendered.  If, on the other hand, a party raises an identical issue on a motion to alter, and, upon the district judge's reflection, perhaps after passions have cooled, he or she concludes that he or she erred previously, Servants of Paraclete v. Does does not chain that district judge to an erroneous legal conclusion. There is no sound reason for a district judge to be unable to change a ruling he or she has made if he or she has become concerned that he or she is wrong.

Nelson v. City of Albuquerque, 283 F. Supp. 3d 1048, 1099 (D.N.M. 2017)(Browning, J.)(altering a judgment, because officers were entitled to qualified immunity).

## LAW REGARDING RULE 60(b)

Rule 60(b) allows a court to relieve a party from a judgment or order.  See Fed. R. Civ. P. 60(b).  "Rule 60(b) is an extraordinary procedure permitting the court that entered judgment to grant relief therefrom upon a showing of good cause within the rule."  Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d 1442, 1444 (10th Cir. 1983).  Rule 60(b) "is not a substitute for appeal and must be considered with the need for finality of judgment." Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d at 1444 (citing Brown v. McCormick, 608 F.2d 410, 413 (10th Cir. 1979)).  The rule was designed to strike a "delicate balance" between respecting the finality of judgment and, at the same time, recognizing the court's principal interest

of executing justice. <u>Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.</u>, 715 F.2d at 1444 (quoting <u>Seven Elves, Inc. v. Eskenazi</u>, 635 F.2d 396, 401 (5th Cir. 1981)). Once a case is "unconditionally dismiss[ed],"[13] the Court loses all jurisdiction over the case other than the ability

---

[13]Rule 41(a)(2), which governs all dismissals undertaken by way of a court order, grants courts discretion to condition dismissal "on terms that the court considers proper," Fed. R. Civ. P. 41(a)(2), formerly, "on terms and conditions as the court deems proper," <u>Smith v. Phillips</u>, 881 F.2d 902, 904-05 (10th Cir. 1989)(quoting Fed. R. Civ. P. 41(a)(2) (1988)). Such conditions "could include retention of some jurisdiction by the court." <u>Smith v. Phillips</u>, 881 F.2d at 905 (citing <u>McCall-Bey v. Franzen</u>, 777 F.2d 1178, 1188-90 (7th Cir. 1985)). The Tenth Circuit has stated that, if the dismissal is pursuant to rule 40(a)(1)(A)(ii), undertaken without a court order, then the court "is powerless to condition dismissal . . . upon a retention of jurisdiction." <u>Smith v. Phillips</u>, 881 F.2d at 905. This rule is likely no longer true; the district court can probably attach a condition retaining jurisdiction, but only if the parties agree.

> Even when . . . the dismissal is pursuant to Rule 41(a)(1)(ii) [(now rule 41(a)(1)(A)(ii))] (which does not by its terms empower a district court to attach conditions to the parties' stipulation of dismissal) we think the court is authorized to embody the settlement contract in its dismissal order or, what has the same effect, retain jurisdiction over the settlement contract) [sic] if the parties agree.

<u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 381-82 (1994).

The only factors counseling hesitation in endorsing the view that a court may retain jurisdiction of a case dismissed pursuant to rule 41(a)(1)(A) are that: (i) the proclamation in <u>Kokkonen v. Guardian Life Insurance Co. of America</u> was dicta, and "[i]t is to the holdings of [the Supreme Court's] cases, rather than their dicta, that we must attend," 511 U.S. 375, 379; and (ii) the Court refers to "embody[ing] the settlement contract in its dismissal order," but rule 41(a)(1)(A) provides -- in its very title -- that it pertains to dismissals effectuated "*Without a Court Order*," Fed. R. Civ. P. 41(a)(1)(A) (emphasis in original). <u>Smith v. Phillips</u> must, however, be interpreted in light of the Supreme Court's subsequent decision in <u>Kokkonen v. Guardian Life Insurance Co. of America</u>, 511 U.S. 375 (1994), in which the Supreme Court held that a district court's ancillary jurisdiction does not extend to the post-dismissal enforcement of federal case settlement agreements, unless: (i) there is an independent basis of federal subject-matter jurisdiction to hear the claims; (ii) the court incorporated the terms of the settlement agreement into its order of dismissal; or (iii) the court includes a term "'retaining jurisdiction'" in its order of dismissal. <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. at 381. That decision continues to permit district courts to condition dismissals under rule 41(a)(2), <u>see</u> 511 U.S. at 381, and appears to have no bearing on courts' power to reopen cases pursuant to rule 60(b), <u>see</u> 511 U.S. at 378 (noting, without opining on, the practice of "[s]ome Courts of Appeals" to

---

to hear motions under rule 60(b).  Smith v. Phillips, 881 F.2d 902, 904 (10th Cir. 1989)("We agree with the [United States Court of Appeals for the] Seventh Circuit that '[a]n unconditional dismissal terminates federal jurisdiction except for the limited purpose of reopening and setting aside the judgment of dismissal within the scope allowed by [Fed. R. Civ. P.] 60(b)." (alterations in original)(quoting McCall-Bey v. Franzen, 777 F.2d 1178, 1190 (7th Cir. 1985))).  See Thompson v. THI of N.M. at Casa Arena, 2008 WL 5999653, at *28 (requiring, after dismissing a complaint, that a plaintiff reopen the case before amending the complaint, because "[w]hen a complaint has been dismissed, there is nothing to amend. . . .  Allowing amendment of a dismissed complaint would also evade the specific grounds, such as rule 60(b), that the Federal Rules of Civil Procedure have established for court action on cases in which final judgment has been entered").

Motions to obtain relief from a judgment or order based on "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), must be brought "within a reasonable time . . . no more than a year after the entry of the judgment or order or the date of the proceeding," Fed. R. Civ. P. 60(c)(1).  See Blanchard v. Cortes-Molina, 453 F.3d 40, 44 (1st Cir. 2006)("[R]elief from judgment for reasons of 'mistake, inadvertence, surprise, or excusable neglect,' must be sought within one year of the judgment." (quoting Fed. R. Civ. P. 60(b))).  This deadline may not be extended and is not subject to the court's discretion.  See Fed. R. Civ. P. 6(b)(2) ("A court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b).").  The pendency of an appeal does not toll the time requirement for pursuing a motion under rule 60(b).

---

"reopen[ ] . . . dismissed suit[s] by reason of breach of the agreement that was the basis for dismissal").

See Fed. R. Civ. P. 60(c)(1);  Griffin v. Reid, 259 F. App'x 121, 123 (10th Cir. 2007)(unpublished);[14] Tool Box, Inc. v. Ogden City Corp., 419 F.3d 1084, 1088 (10th Cir. 2005)("[A]n appeal does not toll or extend the one-year time limit of Rule 60(b).").  No time limit applies to rule 60(b)(6), other than that the motion be made within a reasonable time.  See Fed. R. Civ. P. 60(c)(1).

1.      **Rule 60(b)(1).**

The Tenth Circuit uses three factors in determining whether a judgment may be set aside in accordance with rule 60(b)(1): (i) whether the moving party's culpable conduct caused the default; (ii) whether the moving party has a meritorious defense; and (iii) whether setting aside the judgment will prejudice the nonmoving party.  See United States v. Timers Preserve, 999 F.2d 452, 454 (10th Cir. 1993).  Under some circumstances, for instance, a party can rely on rule 60(b)(1) for a mistake by their attorney or when their attorney acted without their authority.  See Yapp v. Excel Corp., 186 F.3d 1222, 1231 (10th Cir. 1999)("Rule 60(b)(1) motions premised upon

---

[14]Griffin v. Reid is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that Griffin v. Reid, Pyeatt v. Does, 19 F. App'x 785 (10th Cir. 2001)(unpublished), and Chavez v. Primus Auto. Fin. Servs., 125 F.3d 861, 1997 WL 634090 (10th Cir. 1997)(unpublished table decision), have persuasive value with respect to material issues, and will assist the Court in its disposition of this Memorandum Opinion and Order.

mistake are intended to provide relief to a party . . . when the party has made an excusable litigation mistake or an attorney has acted without authority . . . .").  Mistake in this context entails either acting without the client's consent or making a litigation mistake, such as failing to file or comply with deadlines.  See Yapp v. Excel Corp., 186 F.3d at 1231.  If the alleged incident entails a mistake, then it must be excusable, meaning that the party was not at fault.  See Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. at 395 ("This leaves, of course, the Rule's requirement that the party's neglect be 'excusable.'"); Cashner v. Freedom Stores, Inc., 98 F.3d 572, 577 (10th Cir. 1996)("If the mistake alleged is a party's litigation mistake, we have declined to grant relief under Rule 60(b)(1) when the mistake was the result of a deliberate and counseled decision by the party."); Pelican Prod. Corp. v. Marino, 893 F.2d 1143, 1146 (10th Cir. 1990)(holding attorney carelessness is not a basis for relief under Rule 60(b)(1)).

Courts will not grant relief when the mistake of which the movant complains is the result of an attorney's deliberate litigation tactics.  See Cashner v. Freedom Stores, Inc., 98 F.3d at 577. This rule exists because a party

> voluntarily chose [the] attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. at 397 (internal quotation marks omitted)(quoting Link v. Wabash R.R., 370 U.S. 626, 633-34 (1962)).  The Tenth Circuit has held that there is nothing "novel" about "the harshness of penalizing [a client] for his attorney's conduct" and has noted that those "who act through agents are customarily bound," even though, when "an attorney is poorly prepared to cross-examine an expert witness, the client suffers the

consequences." <u>Gripe v. City of Enid</u>, 312 F.3d 1184, 1189 (10th Cir. 2002).  The Court has

previously stated:

> There is a tension between how the law treats attorney actions that are without authority, thus permitting relief under rule 60(b), and how the law treats those attorney actions which are inexcusable litigations decisions, thus failing to qualify for relief; although the distinction between those actions may not always be logical, it is well established.

<u>Wilson v. Jara</u>, No. CIV 10-0797 JB/WPL, 2012 WL 1684595, at *7 (D.N.M. May 10,

2012)(Browning, J.).[15]

---

[15]The Supreme Court has recognized that individuals must be "held accountable for the acts and omissions of their chosen counsel," and that the "proper focus is upon whether the neglect of respondents and their counsel was excusable."  <u>Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship</u>, 507 U.S. at 397 (emphasis in original).  At the same time, the Tenth Circuit has held that, when counsel acts without authority, rule 60(b)(1) provides relief from judgment.  <u>See Cashner v. Freedom Stores, Inc.</u>, 98 F.3d at 576 ("[A]s a general proposition, the 'mistake' provision in Rule 60(b)(1) provides for the reconsideration of judgment only where . . . an attorney in the litigation has acted without authority from a party . . . .")(quoting Fed. R. Civ P. 60(b)(1).  "There is a tension between these decisions, because, ordinarily, a client will not authorize his or her attorney to act in a negligent manner or to make a mistake."  <u>Wilson v. Jara</u>, 2012 WL 1684595, at *7 n.7.  When the client acknowledges that he or she has hired the attorney, there is a difference between decisions which terminate the litigation, such as settlement or a stipulation of dismissal, and other litigation decisions, because decisions to terminate the litigation are ordinarily left to the client.  <u>See Chavez v. Primus Auto. Fin. Servs.</u>, 125 F.3d 861, 1997 WL 634090, at *4-5 (10th Cir. 1997)(unpublished table decision)(citing <u>Navajo Tribe of Indians v. Hanosh Chevrolet-Buick, Inc.</u>, 1988-NMSC-010 ¶ 3, 749 P.2d 90, 92; <u>Bolles v. Smith</u>, 1979-NMSC-019 ¶ 11, 526, 591 P.2d 278, 280).  "Otherwise the Court has difficulty explaining attorney decisions which are made without authority and attorney decisions for which it is acceptable that the client suffer the consequences."  <u>Wilson v. Jara</u>, 2012 WL 1684595, at *7 n.7.

In <u>Chavez v. Primus Automotive Financial Services</u>, the Tenth Circuit recognized that "the mere employment of an attorney does not give him the actual, implied or apparent authority to compromise his client's case."  1997 WL 634090, at *4.  Few Tenth Circuit cases analyze whether an attorney has acted without authority.  The cases in which the Tenth Circuit has found a lack of authority appear to fall into two categories: (i) cases in which the attorney entered an appearance without the client's knowledge, <u>see FDIC v. Oaklawn Apartments</u>, 959 F.2d 170, 175-76 (10th Cir. 1992)(finding that there were factual issues which the district court needed to resolve where "[t]here is nothing in the record indicating when Appellants became aware of the lawsuit and of Newcombe's purported representation"); and (ii) cases in which the attorney's actions terminate

2.      **Rule 60(b)(6).**

Rule 60(b)(6) provides that a court may relieve a party from final judgment, order, or

proceeding for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6).  No time limit

---

the litigation, see Thomas v. Colo. Tr. Deed Funds, Inc., 366 F.2d 136, 139-40 (10th Cir. 1966)(finding that, as to one of the plaintiffs, "the record shows that he did not participate in the transactions and negotiations with the S.E.C. and did not consent to the execution of the stipulation of the judgment"); Cashner v. Freedom Stores, Inc., 98 F.3d at 577 (citing with approval Surety Ins. Co. of Cal. v. Williams, 729 F.2d 581, 582-83 (8th Cir. 1984), which held that a "judgment entered upon an agreement by the attorney may be set aside on affirmative proof that the attorney had no right to consent to its entry").  Because decisions that terminate the litigation are ordinarily the client's prerogative, those decisions fit more squarely within rule 60(b)(1)'s "lack of consent" prong.

Decisions where the purported client is unaware of the litigation, or of the attorney's attempt to act on his or her behalf, would also fit within rule 60(b)(1)'s "lack of consent" prong, because an individual has the right to choose his or her own attorney, or to decide whether he or she wishes to have any attorney.  Other litigation decisions are made jointly or are within the attorney's control, see Model Code of Prof'l Conduct R. 1.2 cmt. 1 (2011)("With respect to the means by which the client's objectives are to be pursued, the lawyer shall consult with the client . . . and may take such action as is impliedly authorized to carry out the representation."); Pittman ex rel. Sykes v. Franklin, 282 F. App'x 418, 427 n.6 (6th Cir. 2008)(unpublished)("[T]he decision to allege comparative fault as an affirmative defense falls within a narrow band of circumstances in which an attorney may act without consulting his or her client."), and, thus, to give final judgments meaning and allow cases to terminate, it is logical that those decisions must fall within the "excusable litigation mistake" prong, or be based on a substantive mistake of law or fact.

Although the Tenth Circuit does not appear to have expressed its views on where the line is drawn between attorneys acting without consent and litigation mistakes, or acknowledged the tension between these two categories, the Court concludes that the appropriate division is, when the client is aware that the attorney is acting on his or her behalf, between decisions which dispose of the case and ordinarily require client consent, and other routine attorney decisions which take place over the course of the case.  The Court also notes that rules of professional conduct require, "[i]n a criminal case," for a lawyer to "abide by the client's decision, after consultation with the lawyer, as to the plea to be entered, whether to waive a jury trial and whether the client will testify." Model Rules of Prof'l Conduct R. 1.2(a).  While a decision on the plea to be entered in a criminal case is comparable to whether to settle a civil case, the Court has not located any decisions permitting rule 60(b) relief when a civil attorney waives his or her client's right to jury trial.  One unpublished decision from the United States Court of Appeals for the Fourth Circuit discusses briefly a scenario where, without resolving the issue's merits, a criminal defendant raised through a rule 60(b) motion in a habeas preceding that "his trial counsel had prevented him from testifying in his defense." United States v. McMahan, 8 F. App'x 272, 274 (4th Cir. 2001)(unpublished).

applies to rule 60(b)(6), save that the motion be made within a reasonable time.  See Fed. R. Civ.

P. 60(c)(1).  "Thus, to the extent it is applicable, clause (6) appears to offer a means of escape from

the one-year limit that applies to motions under clauses (1), (2), and (3)."  11 Charles Alan Wright,

Arthur R. Miller & Mary Kane, Federal Practice & Procedure § 2864, at 490 (2d ed. 2012).  In

Pioneer Investment Services Co. v. Brunswick Associates Ltd., the Supreme Court reasoned that,

to avoid abrogating the one-year time limit for rule 60(b)(1) to (3), rule 60(b)'s "provisions are

mutually exclusive, and thus a party who failed to take timely action due to 'excusable neglect'

may not seek relief more than a year after the judgment by resorting to subsection (6)."  507 U.S.

at 393 (citing Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 & n.11 (1988)).  "If

the reasons offered for relief from judgment could be considered under one of the more specific

clauses of Rule 60(b)(1)-(5), those reasons will not justify relief under Rule 60(b)(6)."  12 James

Wm. Moore et al., Moore's Federal Practice, Civil § 60.48[2], at 60-182 (3d ed. 2013).  Accord

Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863 n.11 ("This logic, of course, extends

beyond clause (1) and suggests that clause (6) and clauses (1) through (5) are mutually

exclusive.").

     Rule 60(b)(6) is a "grand reservoir of equitable power to do justice in a particular case."

Van Skiver v. United States, 952 F.2d 1241, 1244 (10th Cir. 1991)(internal quotation marks

omitted)(quoting Pierce v. Cook & Co., 518 F.2d 720, 722 (10th Cir. 1975).  "The Rule does not

particularize the factors that justify relief, but we have previously noted that it provides courts with

authority 'adequate to enable them to vacate judgments whenever such action is appropriate to

accomplish justice,' while also cautioning that it should only be applied in 'extraordinary

circumstances.'"  Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863 (quoting Klapprott

v. United States, 335 U.S. 601, 614-15 (1949)).  Generally, the situation must be one beyond the control of the party requesting relief under rule 60(b)(6) to warrant relief.  See Ackermann v. United States, 340 U.S. 193, 202 (1950)("The comparison [of prior precedent] strikingly points up the difference between no choice and choice; imprisonment and freedom of action; no trial and trial; no counsel and counsel; no chance for negligence and inexcusable negligence.").  Legal error that provides a basis for relief under rule 60(b)(6) must be extraordinary, as the Tenth Circuit discussed in Van Skiver v. United States:

> The kind of legal error that provides the extraordinary circumstances justifying relief under Rule 60(b)(6) is illustrated by Pierce [v. Cook & Co., 518 F.2d 720, 722 (10th Cir. 1975)(en banc)].  In that case, this court granted relief under 60(b)(6) when there had been a post-judgment change in the law "arising out of the same accident as that in which the plaintiffs . . . were injured."  Pierce, 518 F.2d at 723.  However, when the post-judgment change in the law did not arise in a related case, we have held that "[a] change in the law or in the judicial view of an established rule of law" does not justify relief under Rule 60(b)(6).  Collins v. City of Wichita, 254 F.2d 837, 839 (10th Cir. 1958).

Van Skiver v. United States, 952 F.2d at 1244-45.

"Courts have found few narrowly-defined situations that clearly present 'other reasons justifying relief.'"  Wright et al., supra, § 2864, at 483 (quoting Fed. R. Civ. P. 60(b)(6)).  See Marcotte, In re Ortega v. Burlington N. Santa Fe Rail Corp., No. CIV 04-0836 JB/RLP, 2007 WL 5685130, at *29 (D.N.M. Oct. 11, 2007)(Browning, J.)("Rule 60(b)(6), given its more liberal time restraints, is reserved for the most egregious cases.).  The Supreme Court expounded:

> To justify relief under subsection (6), a party must show "extraordinary circumstances" suggesting that the party is faultless in the delay.  If a party is partly to blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable.  In Klapprott [v. United States, 335 U.S. 601 (1949)], for example, the petitioner had been effectively prevented from taking a timely appeal of a judgment by incarceration, ill health, and other factors beyond his reasonable control.  Four years after a default judgment had been entered against him, he sought to reopen the matter under Rule 60(b) and was permitted to do so.

Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. at 393 (citing Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863 & n.11; Ackerman v. United States, 340 U.S. 193, 197-200 (1950); Klapprott v. United States, 335 U.S. at 613-14).  See Gonzalez v. Crosby, 545 U.S. 524, 535 (2005)("[O]ur cases have required a movant seeking relief under Rule 60(b)(6) to show 'extraordinary circumstances' justifying the reopening of a final judgment."(quoting Ackerman v. United States, 340 U.S. at 199)).  In Gonzalez v. Crosby, the Supreme Court found a change in the law during the pendency of a habeas petition was not an extraordinary circumstance.  See 545 U.S. at 537.

When the Supreme Court first addressed rule 60(b)(6) a year after it was introduced to the federal rules, while the Justices were sharply divided on other issues, no dispute arose from the statement of the Honorable Hugo Black, former Associate Justice of the Supreme Court: "[O]f course, the one year limitation would control if no more than 'neglect' was disclosed by the petition.  In that event the petitioner could not avail himself of the broad 'any other reason' clause of 60(b)."  Klapprott v. United States, 335 U.S. at 613 (quoting Fed. R. Civ. P. 60(b)).  See Wright et al., supra, § 2864, at 493.

Examples where courts apply rule 60(b)(6) include "settlement agreements when one party fails to comply" and courts use the rule "to return the parties to the status quo," or in cases where fraud is used by a "party's own counsel, by a codefendant, or by a third-party witness," which does not fit within rule 60(b)(3)'s provision for fraud by an adverse party.  Wright et al., supra, § 2864, at 485, 487.  The most common application is to grant relief "when the losing party fails to receive

notice of the entry of judgment in time to file an appeal."[16]  Wright et al., <u>supra</u>, § 2864, at 488. When moving for relief pursuant to rule 60(b)(6), it is not enough to argue the same issues that a court has already addressed.    See <u>Pyeatt v. Does</u>, 19 F. App'x 785, 788 (10th Cir. 2001)(unpublished)(concluding that a motion to reconsider that "simply reasserts information considered by the district court in its initial determination . . . does not meet the extraordinary circumstances standard required for Rule 60(b)(6) relief").

## <u>ANALYSIS</u>

The Court denies the Basnet Intervenors' Motion.  The Court concludes, first, that the Basnet Intervenors must satisfy rule 60(b) before they can prosecute their Third Amended Complaint.  Having reached this conclusion, the Court considers whether the Basnet Intervenors meet the requirements for either rule 60(b)(5) or 60(b)(6) as the Basnet Intervenors contend that they do.  The Basnet Intervenors' arguments for applying either rule do not convince the Court. Accordingly, the Court will not permit the Basnet Intervenors to proceed with the Third Amended Complaint.

---

[16]According to commentators,

[m]ost of those cases, however, predate the 1991 amendment to Appellate Rule 4(a)(6), which now provides relief from the strict appellate filing rule if the party did not learn of the entry of the judgment.  In light of that change, most courts have held that resort to Rule 60(b) as a means of extending the appeal time no longer is appropriate, although the Rule 60(b) approach is still utilized in some courts, primarily in the [United States Court of Appeals for the] Sixth Circuit.

Wright et al., <u>supra</u>, § 2864, at 489-90 (citations omitted).  See <u>Clark v. Lavallie</u>, 204 F.3d 1038, 1041 (10th Cir. 2000)("Rules 4(a)(6) and 77(d) 'preclude[] the use of Fed. R. Civ. P. 60(b)(6) to cure problems of lack of notice.'" (citations omitted)).

I.    **TO PROCEED WITH THE THIRD AMENDED COMPLAINT, THE BASNET INTERVENORS MUST SHOW THAT THEY ARE ENTITLED TO RELIEF FROM THE FINAL JUDGMENT.**

Now that they have intervened, the Basnet Intervenors seek to litigate anew the putative class action, beginning with the Third Amended Complaint. The Court agrees with the Defendants that the Basnet Intervenors cannot simply begin this action again. The Basnet Intervenors must obtain relief from the judgment before proceeding with this case.

Preliminarily, in the Intervention MOO, the Court did not decide whether the Basnet Intervenors would need to satisfy rule 60 for the Third Amended Complaint to move forward. The Court permitted the Basnet Intervenors to intervene, because it believed that United Airlines v. McDonald counseled it to do so, but the Court did not go further and determine that the Basnet Intervenors might need to satisfy rule 60. See Intervention MOO at 49-50, 322 F.R.D. at 678-82. That, in the Intervention MOO, the Court discusses subject-matter jurisdiction and mootness does not mean that the Court determined that the Basnet Intervenors can prosecute the Intervention MOO. See Motion at 6. For the Basnet Intervenors to intervene, the Court needed jurisdiction over them, and the Basnet Intervenors could expect the Court to address whether it had such jurisdiction.

The Court will not do as the Basnet Intervenors request and reopen this case while the Final Judgment remains undisturbed. After a party accepts an offer of judgment, a clerk "must . . . enter judgment." Fed. R. Civ. P. 68. Such "[a] final judgment terminates the Court's jurisdiction over the main case," Pedroza v. Lomas Auto Mall, Inc., 304 F.R.D. at 333-34; once a case is "unconditionally dismiss[ed]," the Court loses all jurisdiction over the case other than the ability to hear motions under rule 60(b). Smith v. Phillips, 881 F.2d at 904. The Federal Rules of Civil

Procedure clearly delineate the circumstances in which the Court may set aside a Final Judgment, see Fed. R. Civ. P. 59-60, and "[t]he proper procedural device for relief from a Rule 68 judgment is the same as for any other judgment: Rule 60," Rule 68 -- Offer of Judgment, Steven S. Gensler, 2 Federal Rules of Civil Procedure, Rules and Commentary (Feb. 2019)(quoting Webb v. James, 147 F.3d 617, 622 (7th Cir. 1998)).  The Bastian Plaintiffs and the Defendants entered a Final Judgment in which they agreed that "[t]he amount of this judgment is in full settlement of all of Plaintiffs' claims against Defendants, including claims for attorneys' fees," Final Judgment at 2; the Final Judgment reserves no claims or issues on which the case should continue, see Final Judgment at 1-2.  To reconsider the Final Judgment and reopen the case here the Basnet Intervenors must proceed under rule 60.  Cf. United States v. Ky. Utils. Co., 927 F.2d at 255 (requiring an intervenor to file a rule 60(b)(6) motion when the court had already entered a final judgment)

Contrary to the Basnet Intervenors' contentions, although the Court has recognized that the Basnet Intervenors maintain an interest in this action,[17] Intervention MOO at 53, 322 F.R.D. at 679, this interest does not provide a green light to restart the litigation.  The Tenth Circuit drew the conclusion that putative class members have a "nascent interest" in putative class actions, see

---

[17]In the Intervention MOO, the Court states:

Lucero holds that, when a class certification is pending, "any Article III interest a class may or may not have in a case is or is not present from its inception" and that "the personal stake of the class inheres prior to certification."  639 F.3d at 1249.  The Proposed Intervenors' assertions, taken at face value, demonstrate that they have wage claims for which the proposed classes were designed.  Although the Proposed Intervenors are new to this putative class action, their interest in it is not, having effectively "attached" at this litigation's beginning.

Intervention MOO at 53.

Lucero v. Bureau of Collection Recovery Inc., 639 F.3d at 1249, upon which the Basnet Intervenors rely, from a line of cases that recognize class members continuing interests after the mooting of a class members' claims, see Lucero v. Bureau of Collection Recovery Inc., 639 F.3d at 1245-49 (discussing Deposit Guaranty Nat'l Bank v. Roper, 445 U.S. 326 (1980); U.S. Parole Comm'n v. Geraghty, 445 U.S. 388 (1980); Gerstein v. Pugh, 420 U.S. 103 (1975); Sosna v. Iowa, 419 U.S. 393 (1975), Clark v. State Farm Mutual Auto Ins., 590 F.3d 1134 (10th Cir. 2009); Weiss v. Regal Collections, 385 F.3d 337 (3rd Cir. 2004); Reed v. Heckler, 756 F.2d 779 (10th Cir. 1985); Zeidman v. J. Ray McDermott & Co., 651 F.2d 1031 (5th Cir. 1981)). In Lusardi v. Xerox Corp., the Third Circuit comments that a settlement agreement did not render moot a putative class action when it discusses two exceptions to traditional mootness doctrines:

> [A] named plaintiff whose individual claim has expired may continue in his representative capacity to litigate class certification issues only for two limited purposes: (1) to argue a certification motion that was filed before his claims expired and which the district court did not have a reasonable opportunity to decide; and (2) to appeal a denial of a class certification motion presented when his claims were live.

Lusardi v. Xerox Corp., 975 F.2d at 975. These cases and statements turn on class and putative class members' continuing interests for the purposes of Article III's case or controversy jurisdiction. See, e.g., U.S. Parole Comm'n v. Geraghty, 445 U.S. at 395-96; Sosna v. Iowa, 419 U.S. at 398; Lucero v. Bureau of Collection Recovery Inc., 639 F.3d at 1242; Clark v. State Farm Mutual Auto Ins., 590 F.3d at 1138. The Supreme Court has recognized a certain flexibility in such mootness doctrines in the context of class actions. See Clark v. State Farm Mut. Auto. Ins., 590 F.3d at 1138 ("In light of the relative independence of the class entity from any one party, the Court has recognized the more 'flexible character of the Art. III mootness doctrine' in the class action context." (quoting U.S. Parole Comm'n v. Geraghty, 445 U.S. at 400)). What the Basnet

Intervenors ask, however, is for the Court to apply the same style of flexibility to a different doctrine -- that doctrine supporting the finality of a final judgment.

The Court has found no caselaw that encourages it to reach a different decision here.  In United Airlines, Inc. v. McDonald, on which the Court relied in its Intervention MOO, the Supreme Court permitted a putative class member to intervene to appeal the denial of a class certification. See United Airlines, Inc. v. McDonald, 432 U.S. at 935-96.  The case is inapposite here.  An appeal continues the lawsuit from its procedural posture after the judgment; it does not restart a lawsuit from the complaint.  Although the Basnet Intervenors argue that courts routinely substitute new named plaintiffs when an earlier named plaintiff's claim becomes moot, in the cases that the Basnet Intervenors cite and all the cases that the Court found, the courts had not entered a final judgment when it made such a substitution.  See, e.g., In re Telectronics Pacing Sys., Inc., Accufix Atrial "J" Leads Prods. Liab. Litig., 172 F.R.D. at 283 (citing the idea that a court should permit substitution of class representatives to permit a class member without an individual claim to fill a position as class representative); Shankroff v. Advest, Inc., 112 F.R.D. at 194 (certifying a class subject to the requirement that the plaintiffs put forth a class representative within thirty days).  In Lusardi v. Xerox Corp., although the Third Circuit enumerated exceptions to the mootness requirement, it did not address whether a class action overcomes the finality rules.  975 F.2d at 975.  The Court suspects that this lack of authority reflects an assumption that a final judgment, without reservations, is final.  Cf. Hooks v. Landmark Indus., Inc., 797 F.3d 309, 315 (5th Cir. 2015)("We agree that '[a] plaintiff seeking to represent a class should be permitted to accept an offer of judgment on her individual claims under Rule 68, receive her requested individual relief, and have the case dismissed, or reject the offer and proceed with the class action.'" (quoting

Yaakov v. ACT, Inc., 987 F. Supp. 2d 124, 128 (D. Mass. 2014)(Hillman, J.)); Bais Yaakov of Spring Valley v. Graduation Source, LLC, 167 F. Supp. 3d 582, 584 (S.D.N.Y. 2016)(Román, J.)(describing that a live claim remains when "this Court has not entered judgment in favor of Plaintiff and has not, by 'express, written order' released the funds to Plaintiff"). But cf. William B. Rubenstein, 1 Newberg on Class Actions § 2:15 (5th ed. 2018)("However, if the courts do fashion a mootness exception in accordance with the terms outlined at the end of Campbell-Ewald[, 136 S. Ct. 663 (2016)], or if the representative's claim is mooted because she accepts the offer of judgment, a question then arises concerning the viability of the class suit.").

The Basnet Intervenors' concerns about offers of judgment permitting class-action defendants to pick off named plaintiffs are not unique. Other courts have noted that rule 68 creates concerns in the context of class actions. See, e.g., Smith v. NCO Fin. Sys., Inc., 257 F.R.D. 429, 434-35 (E.D. Pa. 2009)(Rufe, J.)("Rule 68 was not meant to test the strength of a plaintiff's motion for class certification. . . . [I]f Plaintiff were to consider Defendants' amended offer of judgment, the determinative factor will be whether she believes the Court will certify a class action, not . . . the merits of her claims."). While permitting putative class members to appeal the denial of a class certification, the Supreme Court noted:

> Requiring multiple plaintiffs to bring separate actions, which effectively could be "picked off" by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions; moreover it would invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievement.

Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper, 445 U.S. at 339. The Honorable Gerald E. Rosen, United States District Court for the Eastern District of Michigan, has observed:

> As a number of courts have recognized, service of a Rule 68 offer of judgment on the named plaintiff in a putative class action poses a dilemma to this party, as it

forces him to choose between (i) accepting an offer that, like Defendants' offer here, reflects "payment in full of his own individual claim for relief," and thereby "abandon[ing]" the interests of the putative class, or (ii) rejecting the offer and "continuing to represent the interests of the [putative] class," while running the risk of "incur[ring] the cost-shifting liability imposed by Rule 68." *Johnson v. U.S. Bank National Ass'n*, 276 F.R.D. 330, 334-35 (D. Minn. 2011); *see also Smith v. NCO Financial Systems, Inc.*, 257 F.R.D. 429, 433-34 (E.D. Pa. 2009); *Stewart v. Cheek & Zeehandelar, LLP*, 252 F.R.D. 384, 386 (S.D. Ohio 2008).

Combe v. Goodman Frost, PLLC, 217 F. Supp. 3d 986, 987-89 (E.D. Mich. 2016)(Rosen, J.).

See Charles A. Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, A. Benjamin Spencer, Adam N. Steinman, 12 Federal Practice and Procedure Civil § 3001.1 (3d ed. 2018)("[T]he potential coercive impact of the rule on the class representative could create a conflict of interest for [the named plaintiff] since possible personal responsibility for defendant's costs for a full class action may be far out of proportion to the class representative's stake in a possible individual recovery." (footnotes omitted)).  Other commentators have noted that rule 68 offers cut-off putative classes earlier and force earlier certification motions.  Cf. O. Randolph Bragg, Ohio Consumer Law § 5:31 (2018)(expressing concerns that rule 68 offers will force premature class certification motions).  But see Combe v. Goodman Frost, PLLC, 217 F. Supp. 3d at 988 ("[W]hile a Rule 68 offer of judgment to the named plaintiff in a putative class action might present this party with a 'difficult choice' . . . , 'this merely reflects the strategic nature of our adversary system and in no way indicates a defect in the Federal Rules of Civil Procedure.'" (quoting Mey v. Monitronics International, Inc., No. 5:11-CV-90, 2012 WL 983766, at *5 (N.D.W. Va. March 22, 2012)(Rosen, J.))).

The Court disagrees with these other courts' concerns.  This case shows that there is little harm to this "picking off."  Some plaintiffs have been fully compensated.  The plaintiffs' attorney has been fully paid.  And there is still a pending class action certification.  From a justice standpoint

-- which is what law and especially class actions are all about -- the plaintiffs and their counsel can hardly argue. Moreover, "[t]he notion that a defendant may short-circuit a class action by paying off the class representatives either with their acquiescence or, as here, against their will, deserves short shrift. Indeed, were it so easy to end class actions, few would survive." Roper v. Consurve, Inc., 578 F.2d 1106, 1110-11 (5th Cir. 1978). Where a corporate defendant pays some plaintiffs so readily, it can expect more plaintiffs. It has to think once, twice, and three times before employing such a strategy.

In any case, despite the Court's views, that the Defendants cut short the development of the putative class here is the reality of the rules as they now stand. These policy concerns do not persuade the Court to overlook the Final Judgment's effects. The Federal Rules of Civil Procedure permit offers of judgment pursuant to rule 68 in putative class actions and then limit the circumstances in which a court may reconsider judgments. "[E]ven if a Rule 68 offer of judgment were viewed as potentially undermining the class action mechanism set forth in Rule 23, '[r]ecognizing the existence of a problem does not, without more, give [the court] the authority to craft a solution.'" Combe v. Goodman Frost, PLLC, 217 F. Supp. 3d at 988 (quoting White v. Ally Fin. Inc., Civil Action No. 2:12-cv-00384, 2012 WL 2994302, at *4 (S.D.W. Va. July 20, 2012)(Goodwin, J.)).

The Court cannot ignore that the Bastian Plaintiffs and the Basnet Intervenors could have avoided this situation. The Bastian Plaintiffs did not have to accept the Offer of Judgment. A putative class action can proceed after a rejected offer of judgment, and the frequency with which such cases appear in the Court's research and the Supreme Court's decision to resolve such cases suggest that such rejections occur with relative frequency. See Campbell-Ewald Co. v. Gomez,

136 S. Ct. at 669-70.  The Bastian Plaintiffs made a strategic choice; they acted for themselves rather than for the class.  Moreover, the Basnet Intervenors share the same counsel as the Bastian Plaintiffs, and this counsel could have refused a final judgment.  In any case, counsel knew that the Bastian Plaintiffs would enter the Final Judgment.  Although, as the Basnet Intervenors contend, finding new class representatives and filing an intervention motion requires time, the Basnet Intervenors could have anticipated the offer of judgment as a strategy of the litigation.

II.    **THE BASNET INTERVENORS CANNOT OBTAIN RELIEF UNDER RULE 60(b).**

As the Court has concluded that the Basnet Intervenors must satisfy rule 60(b) before they proceed in this litigation, the Court moves to the Basnet Intervenors' alternative contentions that they deserve relief from the Final Judgment under rules 60(b)(5) and 60(b)(6).  Fundamentally, rule 60(b) cannot fulfill the Basnet Intervenors' goal.  The Basnet Intervenors admit that they do not seek what rule 60(b) provides -- relief from a final judgment; they desire relief from the Final Judgment's finality.  See Motion at 11; Sep. 26 Tr. at 20:17-24 (Stanford).  On its terms, rule 60(b) permits a court to "relieve a party . . . from a final judgment, order, or proceeding," but not from the final judgment's finality.  Fed. R. Civ. P. 60.[18]  The Basnet Intervenors might be able to gain relief if they could satisfy a rule 60 provision, but they cannot squeeze their attempt to overturn the Final Judgment's effect into either of the subsections that they cite.  See Motion at 11. Accordingly, the Court will not set aside the Final Judgment to allow the Basnet Intervenors to progress this litigation.

A.    **THE BASNET INTERVENORS CANNOT OBTAIN RELIEF UNDER RULE 60(b)(5).**

---

[18]In the Intervention MOO, the Court permits the Basnet Intervenors to intervene so that they may gain standing as parties to raise a rule 60 motion.

The Court cannot and will not say, as the Basnet Intervenors' propose, that, because the Defendants paid the Bastian Plaintiffs the relief required in the Final Judgment, the Basnet Intervenors deserve relief from the Final Judgment.  As the Basnet Intervenors contend, rule 60(b)(5) literally states that a "court may relieve a party . . . from a final judgment" when "the judgment has been satisfied, released, or discharged." Fed. R. Civ. P. 60.  Contrary to the Basnet Intervenors' arguments, however, this subsection contemplates the situation in which changed circumstances make full satisfaction of an existing judgment inequitable; the rule 60(b)(5) "standard is based on the historic power of a court of equity to modify its decree in light of changed circumstances." Alpine Bank v. Hubbell, No. 05-CV-00026-CMA-KLM, 2010 WL 1258002, at *8 (D. Colo. March 24, 2010)(Arguello, J.)(quoting Zimmerman v. Quinn, 744 F.2d 81, 82 (10th Cir. 1984)).  Courts grant rule 60(b)(5) motions to relieve an owing party of its obligations under the judgment when the party has contributed to or fully satisfied the judgment.  See, e.g., Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, A. Benjamin Spencer, and Adam N. Steinman Federal Practice and Procedure Civil § 2863 (3d ed. 2018)(citing Frew v. Janek, 780 F.3d 320 (5th Cir. 2015)("dissolving provisions of the consent decree" when the state complied with the requirements); BUC Intern. Corp. v. Int'lYacht Council Ltd., 517 F.3d 1271 (11th Cir. 2008)(noting that rule 60(b)(5) could provide credit for settlement amounts that tortfeasors had paid to the injured party); Snowden v. D.C. Transit Sys., Inc., 454 F.2d 1047 (D.C. Cir. 1971)(finding that a court should have considered under 60(b)(5) a codefendants' motion to reduce a judgment by the amount paid in settlement); Candiano v. Moore-McCormack Lines, Inc., 407 F.2d 385 (2d Cir. 1969)(resolving under rule 60(b)(5) an argument to mark a judgment satisfied before the defendant paid post-judgment interest); Sierra Club v. Mason, 365 F. Supp. 47

(D. Conn. 1973)(Newman, J.)(concluding that an "[i]njunction restraining defendants from dredging harbor until an environmental impact statement had been dissolved after the impact statement is filed"); Caraway v. Sain, 23 F.R.D. 657 (N.D. Fla. 1959)(Carswell, J.)(approaching under rule 60(b)(5) a reduction in a judgment by the amount paid in settlement)).

The Basnet Intervenors' situation does not fit the circumstances in which courts have applied rule 60(b)(5). No changed circumstances justify altering an owing party's obligations. The Basnet Intervenors do not even ask that the Court consider the obligations under the Final Judgment that are paid or owing. The Basnet Intervenors want simply that the Court ignore the Final Judgment, but rule 60(b)(5) does not offer such relief.

The Court also agrees with the Defendants that the Basnet Intervenors' proposal to apply rule 60(b)(5) here would lead to nonsensical results. See Response at 7. The Court will not read the rule to mean that a party deserves relief every time a party against whom a court has imposed a judgment satisfies in part or in whole that judgment. See Response at 7. Such a rule would create perverse incentives by precluding a party from reopening an action only when the owing party did not fulfill its obligation. See Response at 7. The Basnet Intervenors seek to overcome this shortcoming by listing a series of alternate means to force defendants to pay judgments, including such devices as writs of garnishment and post-judgment discovery. See Reply at 6. Although such practical tools may help coerce parties to pay judgments, they do not substitute for the basic assumption that an owing party should pay a judgment. The Basnet Intervenors' contention reverses this assumption.

To such objections, the Basnet Intervenors respond that their "principal point is that because the judgment has been satisfied, there will be no disturbance whatsoever in that portion of

the lawsuit that was resolved between the five *Bastian* plaintiffs and the two Defendants."  Reply at 6.  The Court cannot imagine how this interpretation reflects rule 60(b)(5)'s basis in equity.  See Alpine Bank v. Hubbell, 2010 WL 1258002, at *8.  The Basnet Intervenors' facts are not the changed circumstances for which equity would dictate relief from a judgment.  No owing party has partially fulfilled its obligations or should not be forced to continue its obligations.  Under the Basnet Intervenors' view, any additional party with a potential interest in a case could reopen a lawsuit the judgment for which a defendant had satisfied.  Rule 60(b)(5) does not provide for this "relief."

### B.    THE BASNET INTERVENORS ALSO CANNOT SATISFY RULE 60(b)(6).

The Court also will not apply rule 60(b)(6) to provide the Basnet Intervenors relief.  "'Rule 60(b)(6) relief is even more difficult to attain' than relief under the other sections of rule 60(b)." Thompson v. THI of N.M. at Casa Arena, 2008 WL 5999653, at *21 (quoting Yapp v. Excel Corp., 186 F.3d at 1232).  "To justify relief under subsection (6), a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay.  If a party is partly to blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable."  Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. at 393.  "Generally speaking, the grant of relief under Rule 60(b) lies within the Court's discretion, but is 'extraordinary and may only be granted in exceptional circumstances.'"  SOLIDFX, LLC v. Jeppesen Sanderson, Inc., No. 11-CV-1468-WJM-BNB, 2018 WL 803663, at *3 (D. Colo. Feb. 9, 2018)(Martinez, J.)(quoting Servants of Paraclete v. Does, 204 F.3d at 1009).  Generally, the situation must be one beyond the control of the party requesting relief under rule 60(b)(6) to warrant relief.  See Ackermann v. United States, 340 U.S. at 202; Thompson v. THI of N.M. at

Casa Arena, 2008 WL 5999653, at *21 (denying a rule 60(b)(6) motion partially because a party was "trying to extricate himself" from a situation that was "largely his own fault"). Further, "[w]hile the rule 60(b)(6) analysis that courts have employed focuses on fault, what the movant stands to lose if his motion is denied is certainly part of the equation." Thompson v. THI of N.M. at Casa Arena, 2008 WL 5999653, at *23 (citing Thompson v. Kerr-McGee Refining Corp., 660 F.2d 1380, 1385 (10th Cir. 1981))). That a party has other avenues through which to pursue its claims or that its claims may be futile has weighed against granting relief. See Thompson v. THI of N.M. at Casa Arena, 2008 WL 5999653, at *23-27.

The Basnet Intervenors have not convinced the Court that it should grant them rule 60(b)(6) relief. Preliminarily, the Basnet Intervenors submitted the Motion after the Court and the parties began debating seriously whether the Basnet Intervenors had to satisfy rule 60(b), and in response to the Court's explicit request that they submit an argument on whether or how they satisfy rule 60(b), see Motion at 13, so the Court does not consider the Basnet Intervenors' request untimely. The Basnet Intervenors partially caused, however, their situation by not intervening before the Court entered the Final Judgment. Although finding new class representatives and filing an intervention requires time, the Basnet Intervenors' counsel, who also represented the Bastian Plaintiffs, might have anticipated that the Defendants would make a strategic offer of judgment and, once the Defendants made the offer, would have known that the Final Judgment was pending. The Basnet Intervenors only argument that they face extraordinary circumstances is that, if they cannot proceed in this litigation, some of their claims might lose American Pipe tolling and be subject to dismissal. See Reply at 7; Sep. 26 Tr. at 7:2-23 (Stanford). The Basnet Intervenors are, however, all parties to Bell, with which this case is consolidated, and the Basnet Intervenors cannot

identify how many individuals' claims and/or potential damages this tolling will affect.  See Sep. 26 Tr. at 8:7-9:4 (Stanford).  The Basnet Intervenors unjust enrichment claim faces a four-year statute of limitations, see N.M. Stat. Ann. § 37-1-3, and the NMMWA claim has a three-year statute of limitations, see N.M. Stat. Ann. § 37-1-5.  It is likely none of the Basnet Intervenors are losing entire claims; at most, failure to be able to pursue the Third Amended Complaint means that the Basnet Intervenors will lose some damages because of the statute of limitations.  Again, that the Basnet Intervenors tarried as the statute of limitations ran is not a convincing reason to disturb the Final Judgment for which the Bastian Plaintiffs and the Defendants bargained.  Any individuals who will lose their claims or, more likely, some of their damages, admittedly face a difficult situation; they and their counsel may have relied, or at least hoped to rely, on American Pipe tolling in deciding not to intervene in this case earlier or to file their own suits.  The existing rules, however, allow the Defendants to use rule 68 offers of judgment to pick off named plaintiffs.  That a statute of limitations, a common procedural rule, now applies to the Basnet Intervenors' claims, because the Basnet Intervenors did not foresee the Defendants' tactics, is not sufficient to warrant the extraordinary rule 60(b)(6) relief.  See, e.g., McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc., 298 F.3d 586, 596 (6th Cir. 2002)(finding that "strategic miscalculation" does not rise to the "rigorous standard" for relief under rule 60(b)(6)); Aikens v. Ingram, No. 5:06-CV-185-D, 2008 WL 4831420, at *5 (E.D.N.C. Nov. 5, 2008)(Dever III, J.)(noting that "'extraordinary circumstances' do not arise due to time limitations that otherwise apply, and a plaintiff cannot use Rule 60(b)(6) to evade such time limitations"), aff'd, Aikens v. Ingram, 652 F.3d 496, 503 (4th Cir. 2011).

The Basnet Intervenors do not want the Court to relieve them of the Final Judgment anyway. They hope that the Court will take pity on their failure to satisfy the statute of limitations for some potential damages, reopen a closed suit, and let them use this vehicle despite the Final Judgment to which their counsel agreed. The Court does not believe that it can, consistent with the Federal Rules of Civil Procedure and the caselaw interpreting it, allow the Basnet Intervenors to use this old case. Accordingly, the Court will not set aside the Final Judgment and the Basnet Intervenors will not be permitted to proceed with their Third Amended Complaint.

**IT IS ORDERED** that Plaintiffs' Motion to Address Issue of Fed. R. Civ. P. 60 for Intervenors to Proceed with Third Amended Complaint or, Alternatively Fed. R. Civ. P. 60(B) Motion to Obtain Relief from Final Judgment, filed August 3, 2018 (Doc. 200), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Christopher M. Moody
Alice Kilborn
Repps D. Stanford
Moody & Stanford, P.C.
Albuquerque, New Mexico

 *Attorneys for the Plaintiffs and Intervenors*

Charles J. Vigil
Melanie B. Stambaugh
Jeffrey L. Lowry
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

 *Attorneys for the Defendants*