IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BASNET, ET AL., on behalf of themselves
and all others similarly situated,

    Plaintiffs,

vs.                                                No. 1:14-cv-01044-JB-KBM
                                                      CLASS ACTION
                                                      JURY DEMANDED

TRI-STATE CAREFLIGHT, LLC, and
BLAKE A. STAMPER, Individually,

    Defendants.

                                                       **Consolidated with:**

BELL, ET AL., on behalf of themselves
and all others similarly situated,

    Plaintiffs,

vs.                                                 No. 2:17-cv-00796-JB-CG
                                                       CLASS ACTION
                                                       JURY DEMANDED

TRI-STATE CAREFLIGHT, LLC, and
BLAKE A. STAMPER, Individually,

    Defendants.

**PLAINTIFFS' UNOPPOSED FED R. CIV. P. 23 AND 54 MOTIONS FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
AWARD OF ATTORNEY'S FEES & COSTS**

      Pilot Plaintiffs who worked for Defendants during the relevant class period submit this unopposed Motion for Final Approval of their Fed. R. Civ. P. 23 class action settlement on their claims for unjust enrichment. As set forth in the Unopposed Motion for Preliminary Approval [Doc. 264, filed 05.18.22], which the Plaintiffs incorporate by reference, the parties reached agreement on the Class Action Settlement Agreement and Release ("Settlement Agreement," attached as Ex. 1 to Doc. 264) after exhaustive litigation and years of intense negotiations. The Settlement reached includes a monetary maximum Gross Settlement Fund amount of $350,000.00, which includes a request for $98,000.00 in attorney's fees (28% of the common

fund), $11,566.58 in costs, and $8,491.41 in applicable New Mexico gross receipts tax (7.75%)[1] on the costs and fees. Unclaimed funds will revert to Defendant Blake Stamper, and a *cy pres* approach was rejected for several reasons, including the overall dollar amount of settlement, the fact that Defendant Tri-State is no longer operational, and the additional administrative costs of completing that component. Plaintiffs now seek final approval, with appropriate payment instructions to the Settlement Administrator, along with an Order awarding attorney's fees, costs and gross receipts taxes.

**I.     INTRODUCTION & SETTLEMENT**

The history of this lawsuit is detailed in numerous pleadings, including the approved Motion for Preliminary Approval. *See Doc. 264, pp.2-4*. The terms of the Settlement Agreement are likewise detailed in the same approved Motion for Preliminary Approval and Agreement. *See Exhibit 1 to Doc. 264*. For purposes of brevity, Plaintiffs will not recount those detailed summaries. Of note, however, upon further diligent review of data and follow-up communications with opposing counsel, there are actually 118 class members remaining.

In accordance with the Order preliminarily approving the Motion, all pre-requisites to final approval have been satisfied. First, Defendants timely provided the required CAFA notice of this settlement to all appropriate state and federal officials in the relevant jurisdictions pursuant to 28 U.S.C. § 1715, with the additional information called for by Section 1715 included therewith. Neither Plaintiffs nor Defendants have received any concerns or efforts to intervene from any state or federal authority regarding the terms and conditions of the Settlement Agreement. Furthermore, more than ninety (90) days has passed since completion of the CAFA notice under Section 1715(d), so all CAFA requirements have been satisfied.

Second, the parties have utilized the services of Rust Consulting, a highly reputable Settlement Administrator, to satisfy all Rule 23(e) notice, and due process, requirements and to

---

[1] At the time of filing the Motion for Preliminary Approval, the gross receipts tax rate for Bernalillo County was 7.875%. Effective July 1, 2022, the rate was lowered to 7.75%. The gross receipts tax has been updated in the instant Motion to reflect that change. The difference is $136.96. That change will likewise be reflected in updated numbers for class members who are set to receive payment.

comport with best notification and communication practices. *See Affidavit of Lisa Pavlik, Senior Project Manager, attached hereto as* **Exhibit 1**.

For example, the Administrator has taken the following actions:

1. Engaged with all parties to provide notification, processing and payment related services;
2. Obtained a mailing address and identified itself as the Tri-State CareFlight Settlement Administrator in order to receive claim forms, opt-outs, objections, disputes, undeliverable class notices and other communications regarding the settlement;
3. Obtained a unique facsimile number for receiving communications about the settlement, and included that number in the Class Notice;
4. Obtained a unique email address for receiving communications about the settlement, and included that information in the Class Notice;
5. Obtained a web-site for providing relevant information about the settlement, and included that website information in the Class Notice;
6. On or about June 17, 2022, properly received communications for the Notice and Claim Form approved by the Court;
7. Drafted a properly formatted Class Notice for mailing, which the parties approved;
8. Received all contact information for class members, including names, last known addresses, social security numbers, and estimated damages amounts;
9. Processed and updated all mailing addresses through the National Change of Address Database (NCOA);
10. Mailed the Court Approved Class Notices to the remaining 118 class members contained in the class list via First Class Mail; and
11. Advised Class Members that they could submit a claim form, opt-out, or object, and then provided the post-marked date of July 25, 2022, for submission.

After mailing, Rust then performed four (4) address traces on the four (4) Class Notices that were returned as undeliverable, yielding two (2) updated addresses for two (2) of the four (4)

class members. Rust then promptly remailed the Court approved Class Notice to the two (2) updated addresses. Neither were returned as undeliverable. As of today's filing, only two (2) of the 118 Class Notices remain undeliverable but, as noted above, Rust also provided a website with information about the settlement. A number of courts have correctly recognized that due process does not require that every class member actually receive notice. *See e.g. Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994) (explaining that even in an opt-out class action, class notice standard is "best practicable," as opposed to "actually received"); *Adams v. S. Farm Bureau Life Ins. Co.*, 417 F. Supp. 2d 1373, 1380 n.6 (M.D. Ga. 2006) ("The analysis for purposes of due process is on the notice plan itself, and actual receipt of notice by each individual class member is not required."), aff'd, 493 F.3d 1276 (11th Cir. 2007); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996); *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012). Defense counsel, Plaintiffs' counsel and the Settlement Administrator complied with best practices based on all of the available information they had to work with and the notice plan comported in full with best practices, as noted by the 98.3% delivery rate.

It is also notable that the class component of this lawsuit, or some later form thereof, has been in this Court for almost six (6) years. Given the sheer volume of intervenors in this lawsuit and the companion *Armbruster* case filed in New Mexico State Court, and the close relationship of the former employees who worked for Tri-State, it is difficult to believe the existence of the lawsuit was unknown. For example, 58 of the 118 class member pilots who worked for Tri-State are already named parties in either this case or the accompanying *Armbruster* lawsuit.

As of the filing, the following additional information is noteworthy for purposes of granting final approval:

1. Rust did not receive a single objection to the Settlement;
2. Rust received one (1) opt-out form on August 8, 2022, and past the postmark date of July 25, 2022;
3. Rust received 64 substitute W-9 forms for purposes of tax withholdings; and
4. Rust received 61 Claim Forms, for which one remains incomplete, though Rust sent a

letter asking the individual to supply the missing information.

As noted above, not a single Class Member has objected to the settlement under Fed. R. Civ. P. 23(e)(5)(A). Class Counsel defers to the Court on the status of the lone, untimely opt-out but notes the following: (1) the individual received the Class Notice and opt-out form that was mailed out by Rust; (2) the Class Notice properly advised the individual that all opt-out forms must be postmarked by July 25, 2022; (3) the individual has not provided any explanation or grounds for excusable neglect to account for the untimely submission of the opt-out form; and (4) the individual's claim is only valued at a few hundred dollars, and it would be grossly unfair to those waiting for their money to incur further delay by affording a lone individual another window to opt-out. Furthermore, the individual has been properly advised of the time, date and location of the final fairness hearing and can avail himself of that opportunity to respond.[2]

Plaintiffs note that the claim participation rate is approximately 52%, which is substantial and which indicates a significant degree of acceptance of the settlement by class members. This counsels in favor of final approval. *See Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656, 665 (D.Colo.2018)(parties estimated participation rates of 5-10% in Fair Debt Collection Practices Act case; preliminary approval denied on other grounds); *Clay v. Cytosport, Inc.*, 2020 U.S. Dist. LEXIS 201919 (S.D.Cal. Oct. 29, 2020)(5.6% claims rate in consumer class action acceptable); *Ward v. Flagship Credit Acceptance LLC,* 2020 U.S. Dist. LEXIS 25612, at *7, *36 (E.D.Pa. Feb. 13, 2020)(20.5% participation rate in Telephone consumer Protection Act case; final approval denied for other reasons).

To further highlight the fairness and expediency embodied in the settlement plan, within ten (10) days after final approval of the Settlement or after the final approval hearing, the Settlement Administrator will mail the Individual Settlement Payments to those class members who have complied with the claim form process.

As explained in the Motion for Preliminary Approval, Individual Settlement Payments

---

[2] The point of the opt-out's status seems moot anyway, as he did not sign a release.

were calculated based upon a review and analysis of Tri-State's time and payroll records to establish the time worked over twelve (12) hours in a day to Class Members, assuming Named Plaintiffs' class claims were true. These amounts were then divided and allocated to the Settlement Class Members on a pro-rata basis.

Under the terms of the Settlement Agreement, each Class Member will receive a sum equal to approximately 81.55% of the total wages (and this after the reduction for fees/costs/gross receipts)[3] claimed to be due to them for the time claimed to have been worked in excess of twelve (12) hours/day. Class counsel believes this to be a remarkably fair, adequate and reasonable result, particularly considering that the legal answer to liability on the unjust enrichment claim remains unclear and the plaintiff pilots could have obtained an unfavorable ruling providing for no relief at all, other than a several years' long appeal to the Tenth Circuit Court of Appeals on a New Mexico common law issue. Plaintiffs have not pursued, and did not pursue, incentive payments, so each member is being treated equally relatively to every other class member.

## II.   ARGUMENT & AUTHORITIES

By this Motion, Plaintiffs seek Final Approval of the Settlement Agreement. "The inveterate policy of the law is to encourage, promote, and sustain the compromise and settlement of disputed claims." *Am. Home Assurance Co. v. Cessna Aircraft Co.*, 551 F.2d 804, 808 (10th Cir. 1977). "Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910), citing *Hennessy v. Bacon*, 137 U.S. 78 (1890). "The authority to approve a settlement of a class is in the sound discretion of the trial court." *Alvarado Partners, L.P. v. Mehta*, 723 F.Supp. 540, 546 (D. Colo. September 15, 1989), citing *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). As discussed more fully below, the Settlement Agreement satisfies the applicable legal standards.

### A.   Final Approval of the Settlement is Appropriate.

---

[3] Looked at another way, the total wages being sought for the unjust enrichment claim on behalf of the class, based on Tri-State's payroll, were $284,248.46. The total class settlement is for $350,000.00 on a non-fee claim.

1. **The Standard & Procedures for Final Approval.**

Final approval under Fed. R. Civ. P. 23 requires the court to determine whether the settlement is fair, reasonable, and adequate. *See Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984); Fed. R. Civ. P. 23(e). "The trial court must approve a settlement if it is fair, reasonable and adequate." *Id.* "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Jones v. Singing River Health Sys.*, No. 1:14CV447-LG-RHW, 2016 U.S. Dist. LEXIS 188753, at *44 (S.D. Miss. 2016) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)). Under Fed. R. Civ. P. 23(e)(2), a class action settlement may be approved after a finding that it is fair, reasonable, and adequate and after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment;

    (iv) any agreement required to be identified under Rule 23(e)(3)[4]; and

(D) the proposal treats class members equitably relative to each other.

Courts in the Tenth Circuit also examine the four *Rutter* factors: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Rutter & Wilbanks*

---

[4] As previously noted, the Settlement Agreement is attached to the Motion for Preliminary Approval as Exhibit 1.

*Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002) (citing *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993)); *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). Whatever differences may exist between *Rutter* and Rule 23(e)(2), and they appear conceptually interrelated in almost all respects, both serve to inform whether a settlement is fair, reasonable and adequate.

Courts have recognized a presumption of fairness, reasonableness, and adequacy as to the settlement where "a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. March 22, 2006) (citing *Wal-Mart Stores v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2nd Cir. 2005)). As set forth below, elements of Rule 23 were previously determined to be met in the Court's analysis of class certification, and remain so with respect to the proposed Settlement for purposes of preliminary approval. In addition, the Court should find that the *Rutter* factors, as well as those in the new amendments to Rule 23, are all satisfied and that final approval of the proposed Settlement under Rule 23 is warranted here.

### 2. The Prerequisites of Rule 23(a) & 23(b)(3) Remain Satisfied.

Since the filing of this Court's Memorandum, Opinion & Order certifying the unjust enrichment class, the Plaintiffs pilots continue to satisfy the underlying Rule 23 elements necessary for approval of a Rule 23 class. Counsel is not aware of any evidence that would necessitate revisiting this issue, and certainly not for purposes of final approval under Rule 23.

### 3. The proposed settlement was fairly and honestly negotiated.

The proposed Settlement achieved here was the result of multiple years of vigorous and protracted litigation, settlement framing, and steadfast negotiations by experienced and qualified counsel. Plaintiffs confirm the Settlement was reached as the result of good-faith, detailed, arm's-length dealings over the course of several formal mediation sessions, as well as a number of telephone conferences, written emails, and information sharing between counsel. Communications were particularly heavy on the potential damages' models associated with the proposed losses asserted by the class on their claim that Defendants were unjustly enriched by compensating class

member pilots for only up to twelve (12) hours of work per day, though they regularly worked more hours in any given day.

In addition, the Settlement was ultimately aided by the assistance of two (2) experienced and venerated mediators (Bill Madison, Esq. and Mark Jarmie, Esq.), both of whom remain well-versed in the nuances of wage and hour class actions. *See Sandoval v. Tharaldson Employee Mgmt., Inc.,* 2010 U.S. Dist. LEXIS 69799, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Milliron v. T-Mobile USA, Inc.*, 2009 U.S. Dist. LEXIS 101201, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."); *Montgomery v. Cont'l Intermodal Grp.-Trucking LLC*, No. 19-940 GJF, 2021 U.S. Dist. LEXIS 68946, at *12 (D.N.M. Apr. 9, 2021).

### 4. Serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt.

Neither party moved for Fed. R. Civ. P. 56 summary judgment on the unjust enrichment theory, but during settlement negotiations counsel for both sides expressed opinions regarding the bona fides of the unjust enrichment theory and possibility that their respective clients might eventually appeal from any unfavorable bench trial outcome. There is likewise no definitive *legal* answer to the question of liability under New Mexico wage and hour law for what is essentially a fixed "daily rate of pay." That left substantial uncertainty in the outcome, and the inevitability of an appeal. The parties further disagreed on the potential amount owed to the class in the event of liability, as well as the amount of interest that could be due on the same. Thus, both liability and damages presented serious questions of fact and law as of the date on which the proposed settlement was finally reached. Settlement resolves those legitimate disputes to the benefit of the class members.

The settlement amount is not only reasonable, but an excellent result given the risks of further litigating the claims to a judicial outcome, along with the uncertainty of the potential

recovery. Specifically, while the recovery could possibly be greater if the class were to succeed fully on their claims at trial and survive an appeal, there is the possibility of zero recovery should Tri-State ultimately prevail. Not surprisingly, Tri-State contends there has been no violation of New Mexico common law and therefore there is no basis for damages. They likewise dispute the wage amounts at issue, as well as any interest award. They also appear to contend entitlement to an offset where class member pilots worked *less than* twelve (12) hours in a day. Nonetheless, as a result of Plaintiffs' extensive efforts, the parties were able to alight upon settlement terms that are undoubtedly favorable to the class and eliminate all of the liability and damages risks embodied in the unjust enrichment claim.

### 5. The value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.

The "value of an immediate recovery" means the "monetary worth of the settlement." *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993), abrogated on other grounds by *Devlin v. Scardelletti*, 536 U.S. 1 (2002). This value should be measured against "the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *Gottlieb*, 11 F.3d at 1015. When the risks of further litigation could result in no recovery for Class Members, or a significantly lower recovery than the current settlement, it is prudent for the parties to "take the bird in the hand instead of a prospective flock in the bush." *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974) (citation omitted). For these reasons, the value of an immediate settlement can far outweigh the uncertainty of any future relief, justifying approval of a Settlement Agreement.

First, with respect to the Plaintiffs' range of possible recovery, Plaintiffs believe that the value of the Settlement is fair and reasonable given the various challenges facing Plaintiffs. Specifically, based upon the multiple risks continued litigation would entail, and the risk that Plaintiffs and the putative class could recover nothing, the proposed Settlement is more than fair, adequate, and reasonable. As held in *Davis v. J.P. Morgan Chase & Co.*, "it is unnecessary to scrutinize the merits of the parties' positions, but it is fair to say that there would have been an

uncertain outcome, and significant risk on both sides, had this case gone to trial." 827 F. Supp. 2d 172, 178 (W.D.N.Y. 2011).

Second, the prosecution of this case has been, and would continue to be, lengthy, protracted and endlessly expensive. If this Settlement is not approved, the Parties face an extended and costly battle with motion practice, trial preparation and trial, in addition to potentially lengthy appeals. Further, if the Parties do not settle the unjust enrichment class claim, it would likely take several years (in addition to the multiple years the case has been pending) and additional legal fees before reaching any final resolution of those claims. This way, the class finally now gets meaningful compensation after years buried in litigation.

Third, litigation—and especially class actions—inherently involve risks. The risks to both sides are apparent here. While Plaintiffs believe they could and would prevail, Defendants believe they could and would prevail. Defendants would certainly mount a strong challenge, as evidenced by the arguments set forth in their various papers to this Court. It is hard to predict how either this Court or the 10th Circuit Court of Appeals would resolve liability and/or damages, such that each side currently bears substantial risks going forward, absent settlement. As aptly stated in *Davis v. J.P. Morgan Chase & Co.,* 827 F.Supp.2d 172, 177 (W.D.N.Y. 2011), "[s]ince the Court cannot foresee with absolute certainty the outcome of the case, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." (Internal citations omitted). That balancing act militates in favor of approval.

### 6. It is the judgment of the parties that the settlement is fair and reasonable.

The Parties agree that the Settlement Agreement is fair and reasonable, and believe the Court should accord substantial weight to that reasoned conclusion. This Court has shared that principle. *See In re Thornburg Mortg., Inc.,* 912 F. Supp. 2d 1178, 187 (D.N.M. November 6, 2012) (quoting *Marcus v. Kan. Dep't of Revenue*, 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002)) ("Counsels' judgment as to the fairness of the agreement is entitled to considerable weight."). Counsel for both sides have litigated numerous state law wage and hour class actions, and have

negotiated settlements on both an individual and a class-wide basis. They are experienced in addressing the issues that arise in complex litigation and settlements. Their judgment, background and experience should be accorded appropriate value in assessing satisfaction of the Rule 23 final approval factors here. Simply put, the parties would not have reached the instant Settlement without relying upon the same to reach a fair, adequate and reasonable result.

**7.  Rule 23(g) is Satisfied. The class representatives and class counsel have adequately represented the class.**

Plaintiffs' counsel has expended an inordinate amount of time and resources litigating this matter, as evidenced in the declaration of Christopher M. Moody, Esq. attached hereto as ***Exhibit 2***. The work included moving for class certification on several occasions, engaging in discovery, working with plaintiff pilots, and analyzing documents produced by Defendants in discovery. Counsel and their hired consultant also completed damages' models for the class members, which required the analysis of each employee's daily time records and bi-weekly pay stubs. Upon final analysis, Plaintiffs' damages did not match Defendants' damages, but that motivated settlement even more. Counsel also participated in two (2) full mediation sessions and regularly communicated with class representatives and others to strategize settlement. Unsurprisingly, all of the designated class representatives agreed to the terms of the settlement. In sum, the class has been adequately represented at all stages, including settlement.

**8.  The relief provided to the class is adequate, and the Settlement treats class members equitably relative to each other.**

As set forth above, the relief provided under the Settlement Agreement is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims payment; and (iii) the content of the Settlement Agreement itself. Furthermore, each member will receive the same percentage of their actual, respective damages as every other member of that state class; there are no incentive payments; and each party is evenly assuming both the benefits and the risks associated with the Settlement. Finally, the terms of the attorney fee/cost award, and the

timing of the same, are set forth below. Those terms, and the extant case law on fee awards, confirms that the fee is reasonable in light of the overall relief obtained and that the class members who have properly submitted claim forms stand to receive in excess of eighty percent (80%) of their calculated daily wages, and in a lawsuit where they could have obtained no relief at all. Given the necessity of incurring substantial fees to litigate this matter, while underscoring the fees' modest impact on the class members' overall monetary relief, the Settlement should be deemed more than sufficiently fair, reasonable and adequate.

      **B.    The Attorney's Fees and Costs Should Be Approved Pursuant to Fed. R. Civ. P. 23(H) and Fed. R. Civ. P. 54.**

In class action cases, counsel who obtain a common fund settlement are entitled to recover reasonable attorney's fees paid from the fund. *See Blum v. Stenson*, 465 U.S. 886, 900, 104 S. Ct. 1541, 79 L. Ed. 2d 891 n.l6 (1984) (in common fund cases, "a reasonable fee is based on a percentage of the fund bestowed on the class."); *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994). The Tenth Circuit has expressed a preference for determining the reasonableness of a fee award in a common fund case utilizing the percentage of fund method. *Id.*, 483. New Mexico has similarly used the percentage of fund method without a lodestar cross-check on a number of occasions. *See, Ramah Navajo v. Jewell*, 167 F. Supp. 3d at 1241-42 (D.N.M. 2016); *Ramah Navajo Chapter v. Babbitt,* 50 F. Supp. 2d 1091, 1097 (D.N.M. 1999); *Ramah Navajo Chapter v. Kempthorne*, Case No. CIV 90-0957 LH/KBM, 2008 U.S. Dist. LEXIS 143974, 2008 WL 11342943, at *5 (D.N.M. Aug. 27, 2008) (same); *Robles v. Brake Masters Sys., Inc.*, Case No. CIV 10-0135 JB/WPL, 2011 U.S. Dist. LEXIS 14432, 2011 WL 9717448, at *19 (D.N.M. Jan. 31, 2011); *Acevedo v. Sw. Airlines Co.*, 1:16-CV-00024-MV-LF, 2019 U.S. Dist. LEXIS 213691, 2019 WL 6712298, at *1 (D.N.M. Dec. 10, 2019), report and recommendation adopted, 2020 U.S. Dist. LEXIS 4571, 2020 WL 85132 (D.N.M. Jan. 7, 2020).

Regardless of any lodestar cross-check that may be performed, the "percentage reflected in a common fund award must be reasonable [and] the district court must 'articulate specific reasons for fee awards.'" *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454) (10th Cir. 1988)

(quoting *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983)).  In determining the reasonableness of a percentage award, courts should apply the factors set forth in *Johnson v. Ga. Highway Express Inc.,* 488 F.2d 714, 717 (5th Cir. 1974). These are: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee-this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

With that said, "rarely are all of the Johnson factors applicable." *Uselton v. Commercial Lovelace Motor Freight, Inc*., 9 F.3d 849, 854 (10th Cir.1993). Moreover, the relevant weight given to any considered *Johnson* factor may vary, including factors that might be of greater importance to a lodestar approach than a common fund approach. *Brown*, 838 F.2d at 456 (10th Cir. 1988).

Plaintiffs seek attorney's fees in the amount of $98,000.00, which is 28% of the common fund, less than what is normally requested and approved in class cases in this Circuit. *See e.g. Montgomery v. Cont'l Intermodal Grp.-Trucking LLC,* No. 19-940 GJF, 2021 U.S. Dist. LEXIS 68946, at *19 (D.N.M. Apr. 9, 2021) (approving requested fee of 31.47% of the settlement amount); *In re Thornburg Mortg., Inc. Sec. Litig*., 912 F. Supp. 2d 1178, 1257 (D.N.M. 2012) ("Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingency fee basis."); *Cook v. Rockwell Int'l Corp*., 2017 U.S. Dist. LEXIS 181814, 2017 WL 5076498, at *1-2 (D. Colo. Apr. 28, 2017) (explaining forty percent fee falls within acceptable range in Tenth Circuit); 4 Newberg On Class Actions § 14:6 (4th ed. 2002) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."); *In re Bank of Am. Wage & Hour Employment Litig*., 10-MD-2138-JWL, 2013 U.S. Dist. LEXIS 180056, 2013 WL 6670602, at *3 (D. Kan. Dec. 18, 2013) (awarding $18.25 million plus up to $900,000 in costs from $73

million dollar settlement fund in hybrid wage case).  Accordingly, there is ample legal authority in support of the fee percentage recovery that Plaintiffs seek here.

A more detailed analysis of the relevant *Johnson* factors should likewise confirm for the Court the reasonableness of the fee request. Plaintiff discusses the relevant, applicable factors in turn.

1. **Time & Labor:** The attached affidavit of Christopher M. Moody, attached hereto as Exhibit 2, demonstrates that counsel expended a vast amount of time and labor in the prosecution, and ultimate settlement, of this lawsuit. *See Ex. 2, ¶¶ 4-8, 10-12*.  The time that counsel and their staff have devoted to this matter, in fact, greatly exceeds the 28% fee request from the common fund, counsel having expended closer to $180,000.00 in time/labor pursuing this unjust enrichment claim, while parsing out substantial amounts of time for the separate, but heavily inter-related, overtime claim. *Id., ¶¶ 10-12*.  There should likewise be no dispute that this was a hotly contested and laborious lawsuit that required substantial effort in pursuing and reviewing discovery, convening for numerous depositions, moving for class certification, fending off other motions, participating in mediation, computing and cross-checking damages, communicating with class representatives and class members, and ultimately obtaining the Settlement. That work has continued throughout this summer and even through this brief, wherein counsel has easily expended additional amounts of time and effort filing approval motions, fielding class member questions, and coordinating with the Settlement Administrator.

2. **Novelty and Difficulty of the Questions:**  Plaintiffs will not reinvent the wheel, but the legal questions of the propriety of a "daily rate," the measure of damages, and entitlement to any offset were complex and technical under state law. Obtaining Rule 23 certification presented no easy feat either.  Ultimately, counsel remained undeterred by these uncertainties, and proceeded in full to prosecute the claims in the faces of these unknowns. They then successfully negotiated a Settlement that provides meaningful recovery for the class.  And even the fee request seeks a moderate recovery, counsel choosing to forego the expected fee premium given the complexities involved.

**3. Skill requisite to perform the legal services properly:** This Court has already addressed Plaintiffs' counsel's fee requests in two (2) prior decisions on fee recovery under the NMMWA, reviewed counsel's background, education and experience, and observed first-hand counsel's efforts in this lawsuit, including the time and skill devoted to obtaining class certification under Rule 23 and prosecuting the unjust enrichment claim. Counsel humbly believe they have more than satisfied the skills necessary to get this class claim positioned to where it stands today, namely an exceptional recovery for the class pilots.

**4. Preclusion of other employment by the attorney due to acceptance of the case:** "Attorneys attempting to handle a large class are precluded by the ticking of the clock from taking certain other cases given that they have decided to take a chance on a possible recovery in a contingent fee case." *Whittington v. Taco Bell of America, Inc.,* 2013 WL 6022972 at *6 (D. Colo. Nov. 13, 2013). Counsel spent significant hours and were, thereby, required to forego other work to undertake this case.

Counsel undertook the class representation of the unjust enrichment claim on a contingency fee basis, and the class claim is a non-fee claim. Courts have recognized the importance of such arrangements, noting that many workers "cannot afford to retain counsel at fixed hourly rates ... yet they are willing to pay a portion of any recovery they may receive in return for successful representation." *Rothe v. Battelle Memorial Institute*, 2021 WL 2588873 (D. Colo. June 24, 2021) (citing *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990). Thus, "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation ... and transfer a significant portion of the risk of loss to the attorneys taking a case." *In re Abrams,* 605 F.3d 238, 245-46 (4th Cir. 2010). "Access to the courts would be difficult to achieve without compensating attorneys for that risk." *Id*. In this case, Class Counsel would not have recovered any of their fees and out-of-pocket costs had they not obtained a settlement or prevailed at trial.

**5**. **The customary fee:** As set forth above, the customary common fund recovery is thirty to forty percent, with 1/3 often being the norm. The 28% percentage request here is below that customarily awarded. While counsel was under no obligation to deviate from the 33% norm, the

additional money stands to increase the overall recovery to the class, to avoid concerns over excessive fee recovery, and to eliminate any potential fee risk for final approval. Additionally, the fee request, cross-checked under the lodestar approach, is actually well below a customary fee that would be awarded in a fee recovery motion made under a fee statute. Plaintiffs reasonably attribute in excess of $180,000.00 to the work expended on the unjust enrichment claim, yet are seeking only $98,000.00, approximately 54.44% of the actual time expended on the matter. This should more than satisfy the customary fee factor for approving Plaintiffs' fee request.

      **6. Amount involved and the results obtained:** "The most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (internal quotation marks omitted); *Dalal v. Alliant Techsystems, Inc.*, 927 F. Supp. 1374, 1381 (D. Colo. 1996), aff'd, 182 F.3d 757 (10th Cir. 1999). The $350,000.00 settlement represents a significant recovery on behalf of the class members in light of the numerous risks and the damages involved in the shortages arising from the "daily rate" compensation system, which Plaintiff's principal damages model calculated to be $284,248.46. Accordingly, the settlement exceeds the recoverable amount. Furthermore, after reductions for costs/fees/gross receipts taxes, the wage recovery of each class pilot stands at 81.55%, an excellent settlement result in a lawsuit in which the class member pilots could have obtained no monetary relief at all, depending on the outcome of a trial and any appeal. *See Brown*, 838 F.2d at 456 (stating that the amount involved and the results obtained may be given greater weight). This factor further counsels in favor of granting the fee request.

      **7. Experience, Reputation, and Ability of the Attorneys:** Plaintiffs incorporate by reference the arguments set forth in Paragraph 3, *supra*.

      **8. Awards in similar cases:** Counsel has not canvassed cases, but in their combined sixty (60) years of experience both prosecuting and defending wage and hour cases in New Mexico, a wage recovery in excess of eighty percent (80%), after reductions for fees/costs/taxes and after years of protracted litigation to get there, is well above the normal recovery, particular where the law is unsettled and undeveloped on entitlement to wage recovery, as was the case here. In sum,

this Court should approve the fee request of 28% of the common fund, or $98,000.00, as reasonable and necessary in the successful prosecution of this lawsuit.

Finally, counsel has determined that a fair allocation of expenses to the unjust enrichment claims is 10% of the damages' consultant's fee of $13,799 and two-thirds of the $15,204.00 initially estimated fees of the settlement administrator.[5] *See Exhibit 2, ¶¶14-15*. A larger portion of the settlement administration costs are being attributed to the unjust enrichment claims due to the mailing to class members, processing of claims paperwork from class members and similar expenses, while the settlement administrator's role in connection with the overtime claims is limited to distributing payments. This results in expenses attributable to the unjust enrichment claims of $1,379.90 for the damages' consultant and $10,186.68 for settlement administration fees for a total of $11,566.58. *Id.* New Mexico mandates gross receipts tax, currently at 7.75% on fees and costs, for an additional amount of $8491.41.

### III. CONCLUSION

For the foregoing reasons, the Plaintiffs request that this Court enter the proposed Final Approval Order (*attached hereto as* **Exhibit 3**), which, *inter alia*: (1) asserts and maintains jurisdiction over the implementation and administration of the Settlement Agreement; (2) finds that the Settlement Agreement is within the range of reasonableness, and may be adjudicated to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23 and the CAFA; (3) authorizes the Settlement Administrator to mail wage payments to those who have promptly complied with the Class Notice; (4) approves the fee and cost request of Plaintiffs' counsel; and (5) provides any additional relief deemed just and proper.

Respectfully submitted,

**MOODY & STANFORD, P.C.**

By: */s/ Repps D. Stanford 2022.09.08*
      Christopher M. Moody

---

[5] The Settlement Administrator has actually estimated the administrative fees to be $16,873. *See Ex. 1, ¶19*. Counsel has elected to absorb that additional difference as part of its overhead and to expedite completion of this lawsuit for everyone, including the class members.

Repps D. Stanford<br>
4169 Montgomery Blvd. NE<br>
Albuquerque, NM 87109<br>
(505) 944-0033<br>
moody@nmlaborlaw.com<br>
stanford@nmlaborlaw.com<br>
*Attorneys for Plaintiffs*

We hereby certify that we have served a copy of this pleading on the following counsel of record by filing the same in the CM/ECF filing system this 8th day of September 2022:

CHARLES J. VIGIL
SAMANTHA M. HULTS
*Attorneys for Defendants*

**MOODY & STANFORD, P.C.**
By: */s/ RDS 2022.09.08*